# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WALMART, INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

Plaintiff Vassilios Kukorinis ("Plaintiff"), by and through his undersigned counsel, brings this class action complaint against Defendant Walmart, Inc. ("Walmart" or the "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

## NATURE OF THE ACTION AND SUMMARY OF FACTS

1.     Walmart, which dominates the United States market for grocery sales, touts that it "helps people around the world save money and live better" by servicing approximately 230 million customers a week worldwide.[1] Walmart

---

[1] Source: Walmart Inc., Form 10-K Annual Report pursuant to the Securities Exchange Act of 1934, for the fiscal year ended January 31, 2022 (filed with the

publicly represents that "a cornerstone of our business" is "our commitment to price leadership", and "[b]y leading on price, we earn the trust of our customers every day by providing a broad assortment of quality merchandise…at everyday low prices." Source: 2021 Form 10-K.

2.    The reality, however, is that Walmart uses unfair and deceptive business practices to deceivingly, misleadingly, and unjustly pilfer, to Walmart's financial benefit, its customers' hard-earned grocery dollars.

3.    Like most grocery stores, Walmart advertises the price of its groceries using a price tag or sticker that is displayed on or near the product, often the sticker is affixed to the store shelf where the product is presented for sale (the "Price Sticker(s)"). Typically, Walmart's Price Stickers provide the Customer with: an abbreviated description of the product, the product's retail price, and the unit price (the per ounce or per pound price) of the product.

4.    However, Plaintiff and thousands of other Walmart customers ("Customers") have been subjected to the following four systemic unfair and deceptive business practices implemented by Walmart in its stores in Florida and nationwide, which result in Customers being charged and paying more than a product's lowest advertised per pound/ounce price.

---

Securities & Exchange Commission ("SEC") on March 18, 2022), herein after referenced as the "2022 Form 10-K" found at: https://www.sec.gov/ix?doc=/Archives/edgar/data/104169/000010416922000012/wmt-20220131.htm.

5.   **Falsely Inflating Product Weight**: Walmart sells groceries that are sold and priced by weight (the "Sold-by-Weight Products").[2] Walmart utilizes Price Stickers to advertise to Customers the Sold-by-Weight Products' unit price (*i.e.* the per ounce or per pound price). In addition, Sold-by-Weight Products are offered at sale prices; Walmart's version of a sale is called a "Rollback", which is a markdown from the original base price of an item that is in effect for 90 days. A Rollback is identified by customers shopping at Walmart typically by red signage that is displayed with the product or affixed to the product's sticker price on the shelf (a "Rollback Sticker"). For Sold-by-Weight Products Walmart advertises the Rollback price as a new, reduced per pound or ounce price ("Rollback Price"). It is reasonable and expected for Plaintiff and Customers to rely on, and reasonable to expect that they will pay, the lowest advertised price on a Price Sticker and/or Rollback Sticker. However, Walmart ultimately does not charge, and the Customer does not pay the lowest advertised price on the Rollback Sticker or Price Sticker for the Sold-by-Weight products. Instead, at the register, when the Customer checks-out, Walmart's Point of Sale ("POS") system deceptively, systemically and artificially increases the weight of the product at checkout, resulting in

---

[2] "Sold-by-Weight Products" are meat, poultry, seafood, bakery items, and produce that are sold by weight for a price calculated as the product's net weight times the price per unit of weight for the product.

the Customer paying an inflated price. This deceptive conduct is referenced herein as "Falsely Inflating (or Inflated) Product Weight", and is further addressed in paragraphs 39-51, *infra*.

6.    **Mislabeling Weight of Bagged Produce**: Specifically, Walmart uses Price Stickers to sell its bulk produce (often sold in mesh or plastic bags) (the "Bagged Produce").  Walmart, however, sells Bagged Produce utilizing a Price Sticker that is false, misleading and deceptive, in that it falsely represents and advertises a weight of the Bagged Produce that is materially more than the actual weight of the Bagged Produce being sold. As a result, Plaintiff and Customers paid more per ounce than what Walmart offered and advertised on the Price Sticker for the Bagged Produce. This wrongdoing is referenced herein as "Mislabeled Bagged Produce", and is further addressed in paragraphs 52-58, *infra*.

7.    **Overcharging of Sold-by-Weight Clearance Products**: When Sold-by-Weight Products are nearing their expiration dates or put on sale due to overstock (the "Clearance Products"), Walmart will advertise them for sale at a reduced price, denoted by a yellow sticker affixed directly to the product ("Yellow Sticker"). The Yellow Sticker provides the Customer with: the date on which Walmart "REDUCED" the price of the product; a brief identification of the product; the offered and advertised price per pound/ounce of the product; the amount the Customer will "SAVE"; and the "You Pay!" price. However,

4

when the product's weight is multiplied by the advertised per pound sale price on the Yellow Sticker, the price does not equal the "You Pay!" price. Instead, the "You Pay!" price is materially higher. At the register, Walmart charges the Customer the inflated "You Pay!" price. Customers are deceived and misled into paying more than the advertised per pound price on the Yellow Sticker. This wrongdoing is referenced herein as "Overcharging on Sold-by-Weight Clearance Products", and is further addressed in paragraphs 59-73, *infra*.

8.     **Overcharging of Sold-by-Weight Seafood Products**: Walmart advertises the price of its seafood using a Price Sticker (discussed above). Walmart, however, sells Sold-by-Weight seafood products utilizing a Price Sticker that is false, misleading and deceptive, in that it falsely represents and advertises a per pound or ounce price of the Sold-by-Weight seafood products that is materially less than the per pound / ounce price charged to the Customers at check-out. As a result, Plaintiff and Customers paid more per ounce than what Walmart offered and advertised on the Price Sticker for the Sold-by-Weight seafood products. This wrongdoing is referenced herein as "Overcharging on Sold-by-Weight Seafood Products", and is further addressed in paragraphs 74-83, *infra*.

9.     Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products and Overcharging on Sold-by-Weight Seafood Products has occurred

5

during the four years prior to the date of the filing of this Complaint ("Relevant Period").

10.    The information on Rollback Stickers, Price Stickers, and Yellow Stickers associated with the Sold-by-Weight Products, Bagged Produce, and Clearance Products, is objective pricing information, it induces Plaintiff and Customers to purchase the product, it is material to their purchasing decisions, and Customers reasonably rely on it to: be accurate; not mislead or deceive; identify the price for the product; identify products that are on sale or clearance; and, compare pricing among brands by retail price, unit price, or quantity.

11.    Walmart's conduct is systemic and driven by its POS software that is programed to falsify weights, unit prices and ultimate product prices. Plaintiff's experiences and counsel's investigation reveal that the frequency and consistent pattern of the falsification practices are not mere errors. Rather, they are symptomatic of a programmed fraudulent scheme.

12.    When Walmart employees have been confronted with evidence of the overcharges alleged herein, they (a) could not explain how weight falsification and unit pricing manipulation had occurred; (b) could not correct the weight and/or price information at check-out or were required to attempt to "override" the POS (often unsuccessfully); (c) acknowledged instances of prior improper pricing; and (d) expressed fear in losing their job if they

acknowledged the wrongful pricing conduct. In instances when a Walmart employee acknowledged improper pricing any correction (based on Plaintiff's knowledge and his observations) affected the one transaction brought to their attention, and there was no correction to in-store signage, product labels, or, more broadly, Walmart's POS software.

13. As a result of Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, Plaintiff and Customers were overcharged by Walmart for Sold-by-Weight Products, Bagged Produce, and Clearance Products, thereby suffering actual damage.

14. Walmart's false, misleading, unfair and deceptive conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, individually and in the aggregate, violates state consumer protection statutes and state common law in each state where Sold-by-Weight Products, Bagged Produce and Clearance Products are offered and sold by Walmart.

15. Plaintiff brings this action on behalf of classes of persons who, within the applicable statutes of limitations, purchased Sold-by-Weight Products, Bagged Produce and Clearance Products, from or at Walmart and

were overcharged by being charged amounts that exceeded the lowest advertised prices on Rollback Stickers, Price Stickers, and/or Yellow Stickers due to Walmart Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and/or Overcharging on Sold-by-Weight Seafood Products.

16.    On behalf of himself and other similarly situated Customers, Plaintiff seeks: to recover actual damages, refunds, attorneys' fees, and the costs of this litigation; and, class-wide injunctive relief to permanently enjoin these deceptive, unfair, and unconscionable practices that Walmart continues to employ.

## PARTIES

17.    Plaintiff Vassilios Kukorinis ("Plaintiff") is a resident of Tampa Florida. At various times during the Relevant Period, including on the dates identified in paragraphs 45-51, 56-57, 66-68, 79, 82-83, *infra*, Plaintiff purchased from and at Walmart stores in Florida, and specifically in this judicial district, Sold-by-Weight Products, Bagged Produce and Clearance Products, with Rollback Stickers, Price Stickers, and Yellow Stickers (as applicable), and paid amounts that exceeded the lowest per pound/ounce advertised prices.

18.    Defendant Walmart, incorporated in Delaware with its principal offices located in Bentonville, Arkansas, is engaged in global operations of

8

retail, wholesale and other units, as well as eCommerce, located throughout the U.S., Africa, Canada, Central America, Chile, China, India and Mexico. Walmart's operations are conducted in three reportable segments: Walmart U.S., Walmart International and Sam's Club. Source: 2022 Form 10-K.

19.   Walmart U.S. is Walmart's largest segment and operates over 4,700 stores in the U.S., including in all 50 states, Washington D.C. and Puerto Rico. Source: 2022 Form 10-K. Walmart U.S. is a mass merchandiser of consumer products, operating under the "Walmart" and "Walmart Neighborhood Market" brands, as well as walmart.com and other eCommerce brands. Source: 2022 Form 10-K.

20.   Walmart U.S.'s net sales represent the majority of Walmart's net sales: for fiscal 2022, Walmart U.S. had net sales of $393.2 billion, representing 69% of Walmart's fiscal 2022 consolidated net sales, and had net sales of $370.0 billion and $341.0 billion for fiscal 2021 and 2020, respectively. Source: 2022 Form 10-K.

21.   Of Walmart's three operating segments, Walmart U.S. has historically had the highest gross profit as a percentage of net sales and has historically contributed the greatest amount to Walmart's net sales and operating income. Source: 2022 Form 10-K. In its fiscal year ended January 1, 2022, Walmart U.S. alone reported $470.295 billion in revenues representing

over 80% of Walmart's total revenues. Source: 2022 Form 10-K.

22.     Walmart U.S. does business in three strategic merchandise units (source: 2022 Form 10-K):

(a)     **Grocery:** Walmart's grocery merchandise unit consists of "a full line of grocery items, including dry grocery, snacks, dairy, meat, produce, deli & bakery, frozen foods, alcoholic and nonalcoholic beverages, as well as consumables such as health and beauty aids, pet supplies, household chemicals, paper goods and baby products…"

(b)     **General merchandise**: Walmart's general merchandise unit consists of "Entertainment (e.g., electronics, toys, seasonal merchandise, wireless, video games, movies, music and books); Hardlines (e.g., automotive, hardware and paint, sporting goods, outdoor living and stationery); Apparel (e.g., apparel for men, women, girls, boys and infants, as well as shoes, jewelry and accessories); and Home (e.g., housewares and small appliances, bed & bath, furniture and home organization, home furnishings, home decor, fabrics and crafts)."

(c)     **Health and wellness**: Walmart's health and wellness merchandise unit consists of "pharmacy, over-the-counter drugs and other medical products, optical services and other clinical services."

23.     Brand name merchandise represents a significant portion of the merchandise sold in Walmart U.S., but Walmart also markets lines of

merchandise under its private brands including the "Marketside" brand of produce. Source: 2022 Form 10-K.

24.    Walmart, through its Walmart U.S. segment, has enjoyed increased net sales since 2020. Net sales for the Walmart U.S. segment increased $23.3 billion or 6.3% and $29.0 billion or 8.5% for fiscal 2022 and 2021, respectively, when compared to the previous fiscal year. Walmart's increases in net sales were primarily due to increases in comparable sales of 6.4% and 8.7% for fiscal 2022 and 2021, respectively.

25.    As of January 31, 2022, Walmart's Walmart U.S segment operates 340 Walmart Supercenters, Discount Stores, Neighborhood Markets and other small store formats in Florida, and over 4,700 Walmart Supercenters, Discount Stores, Neighborhood Markets and other small store formats in the United States. Source: 2022 Form 10-K.

26.    Each of Walmart's Supercenters, Discount Neighborhood Markets are identified by Walmart as providing Customers with "grocery". *Id.* at 7.

## JURISDICTION AND VENUE

27.    The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Walmart.

28.    This Court has personal jurisdiction over Walmart because Walmart conducts significant business in Florida. Walmart has 341 retail stores in Florida, employing and providing goods and services to tens of thousands of Florida residents. Source: https://www.walmart.com/store-directory/fl, last visited 10/19/2022.

29.    Because Walmart markets, advertises, promotes, distributes, and sells the Sold-by-Weight Products, Bagged Produce and Clearance Products, and uses Rollback Stickers, Price Stickers, and Yellow Stickers with such products, in Florida, the claims arise out of or relate to Walmart's contacts with Florida and Walmart is subject to personal jurisdiction in Florida.

30.    Because Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products and Overcharging on Sold-by-Weight Seafood Products, occurred in Florida, and in Walmart stores in Florida, Walmart is subject to personal jurisdiction in Florida.

31.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

32.    Venue is also proper under 28 U.S.C. § 1391(c) because Walmart is a corporation that does business in and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A.    Walmart Dominates U.S. Grocery Sales

33.    According to the National Retail Federation, Walmart is ranked as the number one retailer based on US sales (with Amazon a distant second)[3]; it "has [] ridden a tidal wave of growth during the pandemic. Sales are up about 9% since 2019, to $573 billion..."[4]. Indeed, from 1990 to 2020, the number of items stocked in grocery stores like Walmart nearly doubled from 16,500 to 31,119, and from 1995 to 2020, the average grocery store size grew by 30%.[5]

34.    Walmart is also the U.S. leader in grocery sales.   Walmart accounted for **more than one-quarter of __all__ grocery revenues** in the United States, with fiscal year 2022 sales of $467 billion.[6] Walmart "dominates the U.S. grocery market and is, by far, the largest food retailer in the country and so it remains the number one grocery chain." *Id.*

35.    Gone are the days of the neighborhood grocer and abundant small, local retail businesses. Walmart's "strategy of race-to-the-bottom prices

---

[3] Source: 2022 Top 100 Retailers, bused on US Sales, https://nrf.com/blog/2022-top-100-retailers last visited on 10/19/2022.

[4] Source: Forbes, Lauren Debter, "The World's Largest Retailers 2022", available at:    https://www.forbes.com/sites/laurendebter/2022/05/12/worlds-largest-retailers-2022-amazon-walmart-alibaba/?sh=3f36050559e3, last visited on 10/19/2022.

[5] Source: FMI (The Food Industry Association), Supermarket facts (various years), available at https://www.fmi.org/our-research/supermarket-facts, last visited on 10/19/2022.

[6] Source: FoodIndustry.com, *Who are the top 10 Grocers in the United States?*, updated for 2020 (n.d.),   https://www.foodindustry.com/articles/top-10-grocers-in-the-united-states-2019/ last visited on 10/19/2022.

squeezed out many smaller grocers and other local retailers", including by causing other larger supermarket chains to respond by expanding their own market presence by purchasing and integrating other regional chains.[7]

36.     Walmart dominates with its consolidated and vertically integrated shopping experience, with stores that include deli, meat, seafood counters and in-store bakeries as well as in-store pharmacies, gasoline pump stations, ready-to-go meals and snacks, and general merchandise.[8]

37.     Indeed, the majority of Walmart U.S. *net* sales by merchandise category are in the <u>Grocery Category</u>, with $218.944 billion, $208.413 billion, and $192.428 billion for 2022, 2021, 2021 fiscal years respectively, out of $393.247 billion, $369.963 billion, and $341.004 billion of Walmart U.S.'s total *net* sales for 2022, 2021, 2021 fiscal years, respectively. Source: 2022 Form 10-K.

---

[7] Source: Food & Water Watch, 11/2021, Issue Brief, The Economic Cost of Food Monopolies: The Grocery Cartels, available at https://www.foodandwaterwatch.org/wp-content/uploads/2021/11/IB_2111_FoodMonoSeries1-SUPERMARKETS.pdf, last visited on 10/19/2022.

[8] Source: Jenny Rudd, Checking out productivity in grocery stores, 8 PRODUCTIVITY 1 (Dec. 2019), U.S. Bureau of Labor Statistics, available at https://www.bls.gov/opub/btn/volume-8/checking-out-productivity-in-grocery-stores.htm, last visited on 10/19/2022.

**B.** **Walmart's False, Misleading, Unfair and Deceptive Practices**

38.    Plaintiff and millions of other Walmart Customers have been subjected to the following four systemic, unfair and deceptive business practices implemented by Walmart throughout it stores with respect to grocery products sold in Florida and nationwide. Each practice results in Customers being overcharged an amount in excess of the lowest advertised price on Rollback Stickers, Price Stickers, and/or Yellow Stickers.

### (1)   Falsely Inflating Product Weight

39.    Walmart sells Sold-by-Weight Products. Walmart utilizes Price Stickers to advertise to Customers the Sold-by-Weight Products' unit price (*i.e.* the per ounce or per pound price), and, when Walmart puts those products on a "Rollback" sale, Walmart typically utilizes a Rollback Sticker, which is signage displayed with the product or affixed to the product's Price Sticker.

40.    Examples of Price Stickers and Rollback Stickers for Sold-by-Weight Products are depicted in the **Photos A.1, A.2, A.3**:



**Photo A.1**



**Photo A.2**



**Photo A.3**

41.    As depicted in the examples in **Photos A.1, A.2 and A.3**, above, for Sold-by-Weight Products Walmart advertises: (a) a per pound/per ounce price on the Price Sticker; and (b) a Rollback Price, as a new, reduced per pound / ounce price.  Customers reasonably rely on and reasonably expect to be charged and to pay the lowest advertised price on the Price Sticker or Rollback Sticker, as applicable.

42.    However, Walmart ultimately does not charge, and the Customer does not pay, the lowest advertised price for the Sold-by-Weight Products.

43.    **Instead, at the register, when the Customer checks-out, Walmart's POS system deceptively, programmatically and artificially increases the weight of the Sold-by-Weight Products.**

44.    Walmart's Falsely Inflating Product Weight is depicted in the following pictures (all highlighting/interlineations/redactions have been added to all photos herein). As reflected in the corresponding information on the product's package and the receipt, Walmart and its POS **falsely changed and inflated the net weight of each product** at check out, resulting in the Plaintiff and Customer being charged more than the lowest advertised price.

45.    **Photo B.1. below** reflects pertinent information for a purchase made by Plaintiff on July 21, 2022 at the Walmart on Kennedy Blvd. in Tampa, Florida. The original price per pound for the product was $8.98, which for the 1-pound item yielded an $8.98 price. The Rollback Sticker shows the per pound

price being reduced to $7.98, which should have yielded a $7.98 price for the 1-pound item.   Instead, at check out, Walmart and its POS: (a) inflated the weight of the Sold-by-Weight Product from 1 pound to 1.13 pounds; (b) multiplied the inflated weight by $7.98 per pound, and (c) charged Plaintiff $8.98, instead of the correct, advertised price of $7.98. Accordingly, Plaintiff was overcharged $1.00.



**Photo B.1**

46.     **Photo B.2 below** reflects pertinent information for a purchase made by Plaintiff on September 25, 2022 at the Walmart on W. Kennedy Blvd in Tampa, Florida.  The original price per pound for the product was $2.34 which, when multiplied by the indicated weight of 5.13 lbs., yielded a $12.00 price. The Rollback Sticker shows the per pound price being reduced to $2.12, which should have yielded a $10.87 price for the item. Instead, at check out, Walmart and its POS: (a) inflated the weight of the Sold-by-Weight Product from 5.13 pounds to 5.660 pounds, (b) multiplied the inflated weight by $2.12, and (c) charged Plaintiff $12.00, instead of the correct, advertised price of $10.87 (5.131 lbs. x $2.12). Accordingly, Plaintiff was overcharged $1.13.



**Photo B.2.**

47.    **Photo B.3 below** reflects pertinent information for a purchase made by Plaintiff on July 1, 2022 at the Walmart on W. Gandy Blvd. in Tampa, Florida.  The Price Sticker (as does the receipt) shows the per pound price as $3.78, which should have yielded a $11.87 price for the item (3.14 pounds x $3.78 per lb).  Instead, at check out, Walmart and its POS (a) inflated the weight of the Sold-by-Weight Product from 3.14 pounds to 3.310 pounds; (b) multiplied the inflated weight by $3.78, and (c) charged Plaintiff $12.50, instead of the correct, advertised price of $11.87. Accordingly, Plaintiff was overcharged $0.63.



**Photo B.3**

48.    **Photo B.4 below** reflects pertinent information for a purchase made by Plaintiff on July 10, 2022 at the Walmart on Causeway Blvd in Brandon, Florida. The Price Sticker (as does the receipt) shows the per pound price as $7.98, which should have yielded a $7.42 price for the item (.93 pounds x $7.98 per lb). Instead, at check out, Walmart and its POS (a) inflated the weight of the Sold-by-Weight Product from 0.93 pounds to 1.050 pounds, (b) multiplied the inflated weight by $7.98, and (c) charged Plaintiff $8.35, instead of the correct, advertised price of $7.42. Accordingly, Plaintiff was overcharged $0.93.



**Photo B.4**

49.   **Photos B.5.1-B.5.2 below** reflect pertinent information for a purchase made by Plaintiff on July 10, 2022 at the Walmart on Kennedy Blvd. in Tampa, Florida. The original price per pound for the product was $4.36 which, when multiplied by the indicated weight of 2.41 lbs., yielded a $10.51 price. The Rollback Sticker shows the per pound price being reduced to $3.92, which should have yielded a $9.45 price for the item. Instead, at check out,

24

Walmart and its POS: (a) inflated the weight of the Sold-by-Weight Product from 2.41 pounds to 2.680 pounds, (b) multiplied the inflated weight by $3.92, and (c) charged Plaintiff $10.51, instead of the correct, advertised price of $9.45. Accordingly, Plaintiff was overcharged $1.06.



**Photo B.5.1**

**Photo B.5.2**

50.    **Photo B.6 below** reflects pertinent information for a purchase made by Plaintiff on October 17, 2022 at the Walmart on W. Kennedy Blvd. in Tampa, Florida. The Price Sticker (as does the receipt) shows the per pound price as $5.68, which should have yielded a $7.44 price for the item (1.31 pounds x $5.68 per lb).  Instead, at check out, Walmart and its POS (a) inflated the weight of the Sold-by-Weight Product from 1.31 pounds to 1.4 pounds, (b) multiplied the inflated weight by $5.68, and (c) charged Plaintiff $7.96, instead of the correct, advertised price of $7.42. Accordingly, Plaintiff was overcharged $0.54.



**Photo B.6**

51.   **Photo B.7 below** reflects pertinent information for a purchase made by Plaintiff on October 17, 2022 at the Walmart on W. Kennedy Blvd. in Tampa, Florida. The Price Sticker (as does the receipt) shows the per pound price as $11.47, which should have yielded a $13.88 price for the item (1.21 pounds x $11.47 per lb). Instead, at check out, Walmart and its POS (a) inflated the weight of the Sold-by-Weight Product from 1.21 pounds to 1.32 pounds, (b) multiplied the inflated weight by $11.47, and (c) charged Plaintiff $15.09, instead of the correct, advertised price of $11.47. Accordingly, Plaintiff was overcharged $1.21.



**Photo B.7**

**(2)**     **Mislabeling Weight of Bagged Produce**

52.     Like most grocery stores, Walmart advertises the price of its groceries using a Price Sticker that is displayed on or near the product, and often the sticker is affixed to the store shelf where the product is presented for sale, as depicted in the following Photos C1, C2 (lines added):



**Photo C.1**



**Photo C.2**

53.     As depicted in the foregoing Photos C.1, C.2, Walmart's Price Stickers provide the Customer with: (a) an abbreviated description of the product; (b) the product's retail price; and, (c) the unit price (the per ounce or per pound price) of the product.

54.     Walmart, however, sells Bagged Produce utilizing a Price Sticker that is false, misleading and deceptive, in that it falsely represents and advertises a weight of the Bagged Produce that is materially more than the actual weight of the Bagged Produce being sold. As a result, Plaintiff and

Customers paid more per ounce than what Walmart offered and advertised on the Price Sticker for the Bagged Produce.

55.     Walmart's Mislabeling Weight of Bagged Produce is depicted in the following examples.

56.     **Photo C.3 below** reflects pertinent information for a purchase made by Plaintiff on January 17, 2022 at the Walmart on W. Kennedy Blvd. in Tampa, Florida. On the product's Price Sticker Walmart offered and advertised that the Bagged Produce contained 3 lbs of tangerines. In addition, Walmart's Price Sticker advertised that the tangerines were 9.1 cents per ounce. However, (A) the Bagged Produce only contained 2 lbs of tangerines; and (B) at check out, Walmart charged Plaintiff $4.34 (3 lbs/48 oz x 9.1 cents per ounce), instead of $2.91 for the 2 lb bag of tangerines (2 lbs/32 oz x 9.1 cents per ounce). Plaintiff was overcharged by $1.43.



**Photo C.3**

57.    **Photos C.4.1, 4.2 and 4.3 below** reflect pertinent information for a purchase made by Plaintiff on January 13, 2022 at the Walmart on N. Dale Mabry Highway in Tampa, Florida. On the product's Price Sticker Walmart offered and advertised that the Bagged Produce contained 4 lbs of oranges.  In addition, Walmart's Price Sticker advertised that the oranges were 9.9 cents per ounce. However: (A) the Bagged Produce only contained 3 lbs of oranges; and (B) at check out, Walmart charged Plaintiff $6.28 (4 lbs/64 oz x 9.9 cents per ounce), instead of $4.75 for the 3 lb bag of oranges (3lbs/48 oz x 9.9 cents per ounce). Plaintiff was overcharged by $1.53, a 33% overcharge.





**Photo C.4.1**                                    **Photo C.4.2**



**Photo C.4.3**

58.    **Photo C.5 below** reflects pertinent information about a voided transaction made by Plaintiff on January 16, 2022 at the Walmart on Causeway Blvd. in Brandon, Florida. On the product's Price Sticker, Walmart offered and advertised that the Bagged Produce contained 5 lbs of grapefruit. In addition, Walmart's Price Sticker advertised that the grapefruit were 7.3 cents per ounce. However: (A) the Bagged Produce only contained 4 lbs of grapefruit; and (B) at check out, Walmart's POS displayed a price of $5.78 instead of $4.67 for the 4 lb bag of grapefruit (4lbs/64 oz x 7.3 cents per ounce).

33



**Photo C.5**

**(3)**   **Overcharging of Sold-by-Weight Clearance Products:**

59.   Walmart advertises Sold-by-Weight Clearance Products using a Yellow Sticker, examples of which are **Photos D.1.1 and D.1.2**:



**Photo D.1.1**



**Photo D.1.2**

60.     As depicted in **Photos D.1.1 and D.1.2 above**, Walmart's Yellow Sticker provides the Customer with: (A) the date on which Walmart "REDUCED" the price of the product; (B) a brief identification of the product; (C) the offered and advertised price per pound/ounce of the product; (D) the amount the Customer will "SAVE"; and (D) the "You Pay!" price.

61.     However, the "SAVE" and "You Pay" amounts on the Yellow Stickers are false and misleading.

62.     When the product's weight is multiplied by the per pound sale price that is advertised on the Yellow Sticker, the price *does not* equal the "You Pay!" price. Instead, the "You Pay!" price is materially higher. At the register, Walmart charges the Customer the inflated "You Pay!" price.

63.     Customers are deceived and misled into paying more than the per pound price that is advertised on the Yellow Sticker.

64.     In addition, Customers are deceived by the information on the Yellow Sticker, having reasonably believed and expected (and it is exactly what Walmart intended the Customer to believe) that, on the Yellow Sticker Walmart, had "done the math" for the Customer, and that the math (*i.e.* the calculation of the "You Pay" price was done correctly).  It was not.

65.     Walmart's Overcharging of Sold-by-Weight Clearance Products is depicted in the following examples.

66.     **Photo D.2 below** reflects pertinent information for a purchase made by Plaintiff on or about June 18, 2021 at the Walmart on W. Dale Mabry Highway in Tampa, Florida. Walmart advertised on its Yellow Sticker that the Sold-by-Weight Clearance Product "IS $7.34/LB". However, when the weight of the product, *i.e.* 1.45 pounds, is multiplied by the advertised per pound sale price of $7.34/lb, the price to Plaintiff should have been **$10.64**.  Instead, the

Yellow Sticker identifies a higher "You Pay!" price of $13.17, which is what Walmart charged Plaintiff. Walmart overcharged Plaintiff by $2.53, a 24% overcharge.



**Photo D.2**

67.   **Photo D.3 below** reflects pertinent information for a purchase made by Plaintiff on September 18, 2022 at the Walmart on W. Kennedy Blvd. in Tampa, Florida. Walmart advertised on its Yellow Sticker that the Sold-by-Weight Clearance Product "IS $2.61/LB". However, when the weight of the product, *i.e.* 2.61 pounds, is multiplied by the advertised per pound sale price

of $2.61/lb, the price to Plaintiff should have been **$6.81**.  Instead, the Yellow Sticker identifies a higher "You Pay!" price of $7.17, which is what Walmart charged Plaintiff.  At check out, Walmart and its POS: (a) inflated the weight of the Sold-by-Weight Product from 2.61 pounds to 2.750 pounds, (b) multiplied the inflated weight by $2.61, and (c) charged Plaintiff $7.17, instead of the correct, advertised price of $6.81 (2.61 lbs x $2.61 per lb). Walmart overcharged Plaintiff by $0.36.



**Photo D.3**

68.    **Photo D.4 below** reflects pertinent information for a purchase made by Plaintiff on June 18, 2021 at the Walmart on N. Dale Mabry Hwy. in Tampa, Florida. Walmart advertised on its Yellow Sticker that the Sold-by-Weight Clearance Products "IS $2.87/LB" and "IS $3.72/LB". However, when the weight of the products, *i.e.* 1.07 and 0.99 pounds, are multiplied by the advertised per pound sale price of $2.87 and $3.72, the price to Plaintiff should have been **$3.07 and $3.68**, respectively.  Instead, the Yellow Stickers identify a higher "You Pay!" price of $3.20 and $3.81, respectively, which is what Walmart charged Plaintiff.



**Photo D.4**

69.   **Photo D.5 below** reflects pertinent information observed by Plaintiff on or about February 25, 2022 at a Walmart in Florida. Walmart advertised on its Yellow Sticker that the per pound price for the Sold-by-Weight Clearance Product "IS $8.16/LB". However, when the weight of the product, *i.e.* 1.84 pounds, is multiplied by the advertised per pound sale price of $8.16/lb, the price should have been **$15.01**.  Instead, the Yellow Sticker identifies a higher "You Pay!" price of $20.07, an over 33% overcharge.



**Photo D.5**

70.   **Photo D.6 below** reflects pertinent information observed by Plaintiff on or about May 27, 2022 at the Walmart on Kennedy Blvd. in Tampa, Florida. Walmart advertised on its Yellow Sticker that the per pound price for the Sold-by-Weight Clearance Product "IS $2.95/LB". However, when the weight of the product, *i.e.* 3.43 pounds, is multiplied by the advertised per pound sale price of $2.95/lb, the price should have been **$10.12**.  Instead, the Yellow Sticker identifies a higher "You Pay!" price of $10.65.



**Photo D.6**

71.   **Photo D.7 below** reflects pertinent information observed by Plaintiff on or about June 16, 2021 in a Walmart store in Florida. For the Sold-by-Weight Clearance Product, Walmart advertised on the Yellow Sticker that the per pound price for the product "IS $4.31/LB". However, when the weight of the product, *i.e.* 2.74 pounds, is multiplied by the advertised per pound sale price of $4.31/lb, the price should have been **$11.81**.   Instead, the Yellow Sticker identifies a higher "You Pay!" price of $13.88. Therefore, Walmart charges Customers $2.07 in excess of the lowest advertised sale price on the Yellow Sticker.



**Photo D.7**

72.   **Photo D.8 below** reflects pertinent information observed by Plaintiff on or about June 16, 2021 in a Walmart store in Florida. For the Sold-by-Weight Clearance Product, Walmart advertised on the Yellow Sticker that the price per pound for the product "IS $10.11/LB". However, when the weight of the product, *i.e.* 0.56 pounds, is multiplied by the advertised per pound sale price of $10.11/lb, the price should have been **$5.66**.   Instead, the Yellow Sticker identifies a higher "You Pay!" price of $6.32, and Walmart charges the Customer $6.32. Therefore, Walmart charges Customers $0.66 in excess of the lowest advertised sale price on the Yellow Sticker.



**Photo D.8**

45

73.   **Photo D.9 below** reflects pertinent information observed by Plaintiff on or about June 18, 2021 in a Walmart store in Florida. For the Sold-by-Weight Clearance Product, Walmart advertised on the Yellow Sticker that the per pound price for the product "IS $3.85/LB". However, when the weight of the product, *i.e.* 2.57 pounds, is multiplied by the advertised per pound sale price of $3.85/lb, the price should have been **$9.89**.  Instead, the Yellow Sticker identifies a higher "You Pay!" price of $10.23. Therefore, Walmart charges Customers $0.34 in excess of the lowest advertised sale price on the Yellow Sticker.



**Photo D.9**

### C.     Overcharging of Sold-by-Weight Seafood Products

74.     Walmart advertises the price of its seafood using a Price Sticker (discussed above).

75.     Customers reasonably rely on and reasonably expect to be charged and to pay the lowest advertised price on the Price Sticker.

76.     However, Walmart ultimately does not charge, and the Customer does not pay, a price for the Sold-by-Weight Seafood Products that is the lowest advertised price on the Price Sticker.

77.     Walmart's Price Stickers for Sold-by-Weight Seafood Products utilize and display a Price Sticker that is false, misleading and deceptive.  It falsely represents and advertises a per pound or ounce price of the Sold-by-Weight Seafood Products that is *materially less* than the per pound / ounce price charged by Walmart and its POS. As a result, Plaintiff and Customers paid more per ounce for Walmart's Sold-by-Weight Seafood Products than what Walmart offered and advertised on the Price Sticker for those products.

78.     Walmart's Overcharging of Sold-by-Weight Seafood Products is depicted in the following pictures (highlighting/interlineations/redactions added to photos).

79.     **Photos E.1 and E.2. below** reflect pertinent information for a purchase made by Plaintiff on March 30, 2020 at the Walmart on W. Gandy Blvd. in Tampa, Florida. The weight of the product is 8 ounces and the Price

Sticker for the product represents and offers the product at $8.83 per pound (or $0.55 per ounce). Therefore, the price for the product should have been $4.40 (8 ounces x $0.55). Instead, at check out, Walmart and its POS charged Plaintiff $6.62. Accordingly, Plaintiff was overcharged $2.22.



**Photo E.1**



**Photo E.2**

80.     **Photo E.3** reflects pertinent information observed by Plaintiff in or around February 2020 at a Walmart store in Florida. The weight of the product is .55 pounds and the Price Sticker for the product represents and offers the product at $20.00 per pound. Therefore, the price for the product should have been $11.00 (.55 x $20). Instead, the price is $20.81, *90% or $9.81 more* than the lowest advertised price on the Price Sticker.



**Photo E.3**

81.    **Photo E.4** reflects pertinent information observed by Plaintiff on or after March 14, 2020 at a Walmart store in Florida. The weight of the product is 10 ounces and the Price Sticker for the product represents and offers the product at $8.31 per pound, which is $0.52 per ounce. Therefore, the price for the product should have been $5.20 (10 oz x $0.52). Instead, the price is $6.23, *$1.03 more* than the lowest advertised price on the Price Sticker.



**Photo E.4**

82.     **Photo E.5** reflects pertinent information for a purchase made by Plaintiff on October 17, 2022 at the Walmart on W. Kennedy Blvd. in Tampa, Florida. The weight of the product is 1.23 lbs and the Price Sticker for the product represents and offers the product at $6.58 per pound. Therefore, the price for the product should have been $8.09 (1.23 lbs x $6.58). Instead, at check out, Walmart and its POS: (a) inflated the weight of the Sold-by-Weight Seafood Product from 1.23 pounds to 1.25 pounds; (b) multiplied the inflated weight by $6.58 per pound, and (c) charged Plaintiff $8.22, instead of the correct, advertised price of $8.09. Accordingly, Plaintiff was overcharged $0.13.



**Photo E.5**

83.     **Photo E.6** reflects pertinent information for a purchase made by
Plaintiff on October 17, 2022 at the Walmart on W. Kennedy Blvd. in Tampa,
Florida. The weight of the product is .55 lbs and the Price Sticker for the
product represents and offers the product at $14.98 per pound. Therefore, the
price for the product should have been $8.24 (.55 lbs x $14.98). Instead, at
check out, Walmart and its POS: (a) inflated the weight of the Sold-by-Weight
Seafood Product from .55 pounds to .59 pounds; (b) multiplied the inflated
weight by $14.98 per pound, and (c) charged Plaintiff $8.90, instead of the
correct, advertised price of $8.24. Accordingly, Plaintiff was overcharged $0.66.



**Photo E.6**

53

**D.     Walmart's Conduct Deceives and Misleads Customers, and Causes Actual Damage**

84.     Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, has occurred during the Relevant Period.

85.     On information and belief, Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, has occurred during the Relevant Period in Walmart's stores nationwide.

86.     The information on Rollback Stickers, Price Stickers, and Yellow Stickers associated with the Sold-by-Weight Products, Bagged Produce, and Clearance Products, is objective pricing information. It is the information that Plaintiff and Customers are entitled to reasonably rely on to:

- •   identify the price for the product;

- •   identify products that are on sale or clearance; and,

- •   compare pricing among brands by retail price, unit price, or quantity.

87.     Further, the information on Rollback Stickers, Price Stickers, and Yellow Stickers is integral to the Plaintiff's and Customers' decisions, as it

54

induces them to purchase the offered Sold-by-Weight Products, Bagged Produce, and Clearance Products.

88.   The information on Rollback Stickers, Price Stickers, and Yellow Stickers is relied on by Customers to clearly and accurately convey, and not mislead or deceive about pricing of the product and what the Customer will be charged and pay for the product.

89.   In addition, Plaintiff and Customers reasonably expect to be charged and to pay the advertised per pound/ounce price on Rollback Stickers, Price Stickers, and Yellow Stickers for Sold-by-Weight Products, Bagged Produce and Clearance Products (as applicable), and have such advertised per pound/per ounce price applied to the actual net weight of the product offered and being purchased by Walmart, and not applied to a false, artificially inflated weight of the Sold-by-Weight Product.

90.   Further, Walmart is dominant in the US grocery market, and Plaintiff and Customers often do not have a reasonable alternative to shopping at Walmart for their groceries. Plaintiff will continue to shop at Walmart.

91.   As a result of Walmart's conduct of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, Plaintiff and Customers were charged and paid amounts that exceeded the lowest advertised prices on Rollback Stickers, Price Stickers, and Yellow

Stickers for Sold-by-Weight Products and Bagged Produce thereby suffering actual damage.

92.    Plaintiff's counsel's investigation identified Walmart's unfair and deceptive pricing practices of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, at Walmart stores in the United States.

### E.    Walmart's POS Systems

93.    Walmart utilizes proprietary and sophisticated point of sale / point of service technology that, among other things, manages, tracks and stores Walmart's product sales and inventory data nationwide.

94.    On information and belief, Walmart currently uses its legacy Point-of-Sale and next-generation Cloud Powered Checkout services. In addition, Walmart has maintained, among other database management systems, transactional information databases called "Teradata" and the "Walmart Pay" application. The preceding are collectively referred to "Walmart's POS Systems".

95.    Even over a decade ago, "trillions of bytes' worth of shopper history [was] stored in [Walmart's] computer network", and, "[b]y its own count, [Walmart] has 460 terabytes of data stored on Teradata mainframes… at its Bentonville headquarters. **To put that in perspective, the Internet has**

**less than half as much data, according to experts**."[9] Indeed,

> Wal-Mart amasses more data about the products it sells and its shoppers' buying habits than anyone else, so much so that some privacy advocates worry about potential for abuse.

> With 3,600 stores in the United States and roughly 100 million customers walking through the doors each week, Wal-Mart has access to information about a broad slice of America -- from individual Social Security and driver's license numbers to geographic proclivities for Mallomars, or lipsticks, or jugs of antifreeze.

> **The data are gathered item by item at the checkout aisle, then recorded, mapped and updated by store, by state, by region.**

> Information about products, and often about customers, is most often obtained at checkout scanners. Wireless hand-held units, operated by clerks and managers, gather more inventory data. In most cases, such detail is stored for indefinite lengths of time….

*Id.*

96.    In addition to its POS Systems, for well over two decades Walmart has made available to its suppliers Walmart's Retail Link®, a reporting software developed by Walmart that collects point of sale data and inventory data.[10] Walmart uses Retail Link® to provide suppliers all information about their sales through data via SKU, per hour and per store.[11]

---

[9] Source: Hays, Constance, NYT, 11/14/2004, "What Walmart Knowns About Customers' Habits", Available at: https://www.nytimes.com/2004/11/14/business/yourmoney/what-walmart-knows-about-customers-habits.html, last accessed 10/19/2022.

[10] "WALMART'S RETAIL LINK® – AN INVALUABLE TOOL FOR SELLERS!" https://18knowledge.com/blog/walmart-retail-link-invaluable-tool-for-sellers/   last accessed 10/19/2022.

[11] "Retail Link – How Does it Help?", https://supplierwiki.supplypike.com/articles/retail-link-how-does-it-help   last accessed 10/19/2022.

97.    Further, Walmart maintains detailed purchase data on a per customer basis consisting of the purchased products' UPC or serial number, the price paid, the date of purchase, and the store at which the product was purchased. This information is used by Walmart for, among other things, Customers who seek to return items without receipts and Walmart's loss-prevention purposes. For non-receipted returns, Walmart's policy states that "If you do not have your receipt or order number, the store may be able to look up your purchase if you have: - The credit or debit card used to make the purchase in-store. - The email or phone number used to make the purchase online." https://www.walmart.com/cp/returns/1231920.   As to Walmart's loss prevention policy, Walmart stores Customer information to be able to track non-receipted return activity; Customers who attempt an excessive amount of non-receipted returns may become ineligible to make a return without a receipt.

98.    The existence, maintenance, use and availability of such detailed data by Walmart, at the corporate level for its stores nationwide, is also confirmed, for example, by the production and use of such data in litigation involving Walmart. For example, in *Farneth v Walmart Stores, Inc.,* Civil Action-Class Action, No. G.D. 13-11472, Allegheny County, Pennsylvania, Court of Common Pleas*,* counsel for the certified class sought and Walmart was ordered in 2018 to produce the following detailed data production: for each

and every transaction occurring at a Walmart store in Pennsylvania where at least one coupon was tendered, and the manufacturer's code from the coupon was read or captured by the Walmart POS system (or any Walmart database management system) matched the manufacturer's code of at least one taxable item purchased, Walmart was to produce the name and address of the customer for each transaction where the customer used a form of payment other than cash and/or presented any form of identification, the transaction code (or "TC#") assigned to the transaction by Walmart (or the "visit number" assigned by Walmart if different than the TC#, the date of the transaction or visit; the address of the Walmart store at which the transaction or visit occurred, and the amount of each coupon tendered. Indeed, approximately a year earlier, in granting a motion for class certification, the court pointed to a declaration proffered by Walmart that it maintains "the Teradata system" which is a comprehensive database used by Walmart regarding transactional information, as well as other database management systems. *Farneth v. Wal-Mart Stores, Inc.*, 2017 Pa. Dist. & Cnty. Dec. LEXIS 2259, *15 (March 21, 2017).

99.    Law enforcement even subpoenas detailed purchasing data from Walmart, including specifically from the "Walmart Pay application", to aid in their investigations. "Walmart Pay" is a free feature in the Walmart mobile app for Android and iOS that easily allows for quick and secure payment by a

Customer with their mobile device in Walmart stores, at any register. *See* "How Walmart Pay Works", https://www.walmart.com/cp/walmart-pay/3205993. For example, in *United States v. Whipple*, No. 3:20-CR-31-KAC-HBG, 2021 U.S. Dist. LEXIS 260740, at *3-4 (E.D. Tenn. Dec. 1, 2021), In *Whipple*, Walmart was able to identify for law enforcement, from its databases, recent purchases of specific products (specifically, red rain ponchos and tan Dickies-brand jackets), and then subsequently identified, through its Walmart Pay application, the requested transactional data and subscriber information for those purchased items, providing law enforcement an email with a copy of the receipt from the transaction and a document with the name, address, and telephone number of the individual who made that purchase. *Id.*

### E.    Walmart's Conduct is Recidivist and Willful

100.   In addition to using its extensive, sophisticated database management and POS Systems to maximize its profits, Walmart deploys these database management and POS Systems to implement, facilitate, cause, and/or fail to prevent, nationwide, Falsely Inflating (Inflated) Product Weight, the sale of Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products and Overcharging on Sold-by-Weight Seafood Products.

101.   Further, based on information and belief, Walmart's Falsely Inflating Product Weight, the Overcharging on Sold-by-Weight Clearance Products and Overcharging on Sold-by-Weight Seafood Products, are directly

related to Walmart's use and implementation of programming, coding and logic which programmatically results in the weight of the product being inflated and the Customer being overcharged, instead of charged the lowest advertised price for the product.

102.   Walmart is aware of the requirement, importance and need that its display pricing (including on Rollback Stickers, Price Stickers and Yellow Stickers) be accurate, not false, and not mislead its Customers.

103.   Walmart is aware that inaccurate pricing misleads and deceives Customers.

104.   Walmart is aware that charging a Customer a price for an item that is more than the lowest advertised, quoted, posted, or marked price is an impermissible overcharge.

105.   To this point, in addition to the Federal Trade Commission ("FTC") Act's prohibition on "unfair or deceptive acts or practices in or affecting commerce" (Section 5 of the FTC Act, 15 USC §45), the FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

106.   Even if the deceptive conduct and the overcharges of the nature alleged herein were discovered by regulators, any resulting fines to Walmart

amount to a tap on the wrist.[12]

107.   In addition to the foregoing, even when Plaintiff informed Walmart of other false and misleading pricing practices and overcharges in a lawsuit Plaintiff filed in 2019 against Walmart in the United States District Court for the Southern District of Florida, captioned *Vassilios Kukorinis, et al. v. Walmart, Inc.,* Case No. 1:19-cv-20592-JEM, Walmart did not implement policies, procedures and/or changes to its POS Systems to prevent the use of false and misleading pricing, and the improper and damaging overcharging of Customers.

108.   Further, the Court in *Vassilios Kukorinis, et al. v. Walmart, Inc.,* Case No. 1:19-cv-20592-JEM rejected Walmart's attempt to dismiss Plaintiff's claims of other false and misleading pricing practices and overcharges alleged there because Plaintiff continued to purchase products from Walmart that resulted in the overcharges. *Id.* Dkt. 20, June 1, 2020 Order at 10. The Court pointed out that "another plausible inference is that the misrepresentations were so subtle that Plaintiff and other reasonable consumers failed to notice

---

[12] *E.g.* In March 2012, Walmart was assessed a $2 million fine for violating a 2008 ruling requiring it to resolve pricing errors at checkout (https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-announces-wal-mart-pay-21-million-failing-stop); In November 2021, the North Carolina Department of Agriculture and Consumer Services fined two Walmart stores in Wilmington, North Carolina for "repeated" and "excessive" price-scanner errors that resulted in customer overcharges (https://www.starnewsonline.com/story/news/2021/11/09/wilmington-nc-walmart-dollar-general-fined-price-scanning-errors/6358289001/)

until a closer inspection was made. Again, this fact may highlight the pervasive effect of the alleged misconduct." *Id.* Here, too, the misrepresentations are subtle, and Walmart's conduct as alleged herein with respect to these grocery products has a pervasive nature and effect.

109.   Walmart has failed to implement policies, procedures and/or changes to its POS Systems to prevent the use of false and misleading pricing, and the improper and damaging overcharging of Customers as alleged herein.

110.   Walmart knowingly failed to implement policies and procedures to correct and/or prevent the systemic deceptive practices and overcharges alleged herein.

## CLASS DEFINITIONS AND ALLEGATIONS

111.   Plaintiff brings this action pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated, as members of the following Florida Class, Nationwide Class (under the laws of the state of Florida), and Multi-State Consumer Protection Class:

> **Florida Class**: All persons in the State of Florida who purchased Sold-by-Weight Products, Bagged Produce, and/or Clearance Products ("Products") from or at Walmart in the United States, within the statutes of limitations for each cause of action alleged and until the date notice is disseminated, and paid higher prices for the Products than advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the Products.

**Nationwide Class:** All persons who purchased Sold-by-Weight Products, Bagged Produce, and/or Clearance Products ("Products") from or at Walmart in the United States, within the statutes of limitations for each cause of action alleged and until the date notice is disseminated, and paid higher prices for the Products than advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the Products.

**Multi-State Consumer Protection Class**: All persons who purchased Sold-by-Weight Products, Bagged Produce, and/or Clearance Products ("Products") from or at Walmart in Florida and any state with similar laws,[13] within the applicable statutes of limitations and until the date notice is disseminated, and paid higher prices for the Products than advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the Products.

---

[13] Subject to, but not limited to, information propounded in discovery, under the facts of the Action, at least the following states have similar laws to that of Florida warranting certification of the Multi-State Consumer Protection Class that includes such states: California (Cal. Civ. Code § 1770(a)(9)); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, et seq.); Delaware (Del. Code tit. 6, §§ 2511, et seq.); District of Columbia (D.C. Code § 28-3901, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Hawaii (Haw. Rev. Stat. § 480-1, et seq.); Idaho (Idaho Code § 48- 601, et seq.); Illinois (815 ICLS § 505/1, et seq.); Maryland (Md. Comm. Law Code Ann. § 13-1301, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.311, et seq.) (the notice requirement set forth in § 445.311, et seq. does not apply where, as here, the seller intentionally charges more for a consumer item than the price displayed for the item in pursuant to Mich. Comp. Laws § 445.319(4)); Minnesota (Minn. Stat. § 325F.67, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); Nebraska (Neb. Rev. Stat. § 59 1601, et seq.); Nevada (Nev. Rev. Stat. § 598.0915, et seq.); New Hampshire (N.H. Rev. Stat. § 358A:1, et seq.); New Jersey (N.J. Stat. Ann. § 56:8-1, et seq.); New Mexico (N.M. Stat. § 57-12-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); North Dakota (N.D. Cent. Code § 51-15-01, et seq.); Oklahoma (Okla. Stat. tit. 15, § 751, et seq.); Oregon (Or. Rev. Stat. § 646.605, et seq.); Pennsylvania (73 Pa. Stat. § 201-1 et seq.); Rhode Island (R.I. Gen. Laws § 6-13.1-1, et seq.); South Dakota (S.D. Code Law § 37-24- 1, et seq.); Utah (Utah Code § 13-11-1, et seq.); Virginia (VA Code § 59.1-196, et seq.); Vermont (Vt. Stat. tit. 9, § 2451, et seq.); Washington (Wash. Rev. Code § 19.86.010, et seq.); West Virginia (W. Va. Code § 46A-6-101, et seq.).

112. Excluded from the Classes are: (i) Walmart; (ii) Walmart's employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; (iii) governmental entities; (iv) all persons who make a timely election to be excluded from the Classes; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

113. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

114. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

115. *Numerosity:* The members of the proposed Classes are so numerous and geographically dispersed that the individual joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and is in the exclusive control of Walmart, it is ascertainable by appropriate discovery including through Walmart's sophisticated databases and POS Systems. Plaintiff is informed and reasonably believes that Class members include hundreds of thousands, or more, of geographically diverse people.

116. *Commonality and Predominance*: This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including, but not limited to:

i.   whether Walmart's pricing practices of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, are false, deceptive, misleading, unfair and/or unlawful;

ii.  whether Walmart's Rollback Stickers, Price Stickers, and/or Yellow Stickers utilized with Sold-by-Weight Products, Bagged Produce, and/or Clearance Products are false, misleading and deceptive;

iii. whether Walmart's conduct violates the Florida's Consumer Fraud Act, Florida common law, and other states' laws;

iv.  whether Walmart should be enjoined (temporarily and permanently) from selling Sold-by-Weight Products, Bagged Produce, and/or Clearance Products with Rollback Stickers, Price Stickers, and/or Yellow Stickers (as applicable) that are false, misleading and deceptive;

v.   whether Walmart should be enjoined from charging Customers anything but the lowest offered price for Sold-by-Weight

66

Products, Bagged Produce, and/or Clearance Products that is identified on the Rollback Stickers, Price Stickers, and/or Yellow Stickers;

vi. whether Walmart is required to modify its databases and POS Systems and implement controls to ensure that Walmart is only charging Customers the lowest offered price for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products that is identified on the Rollback Stickers, Price Stickers, and/or Yellow Stickers;

vii. whether Walmart is required to modify its databases and POS Systems and implement controls to ensure that Walmart does not manipulate and falsify weights for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products,

viii. whether Walmart is required to modify its databases and POS Systems and implement controls to ensure that the pricing information on Walmart's Rollback Stickers, Price Stickers, and/or Yellow Stickers for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products is accurate, consistent, and not misleading;

ix. whether Plaintiff and the Classes members sustained actual damages; and

x. whether Walmart has unjustly enriched itself by its deceptive conduct.

117. *Typicality:* Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the substantially uniform misconduct of Walmart with respect to its use of false and misleading Rollback Stickers, Price Stickers, and/or Yellow Stickers for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products (as applicable). Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff that would render Plaintiff atypical under Fed. R. Civ. P. 23 and applicable jurisprudence. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

118. *Adequacy of Representation:* Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

119. *Superiority:* A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual

difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

120. Further, Defendant has acted or refused to act on grounds generally applicable to each of the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to members of the Classes as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

121. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

122.   This Action is brought on behalf of the Multi-State Consumer Protection Class because: (a) the allegations of fraud against Walmart satisfy the elements of the consumer protection laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class, there are no variations that may exist among consumer fraud statutes that would affect the outcome under any state's laws given the allegations in this complaint; and (b) Walmart stipulated to a nationwide settlement class in another case accusing it of pricing misconduct and overcharges.

## CAUSES OF ACTION

### COUNT I
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Florida Statute Section 501.201, *et seq.*
### (On Behalf of Plaintiff and the Florida Class)

123.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-122 as if fully set forth herein.

124.   Plaintiff brings this cause of action individually and on behalf of the Florida Class.

125.   Florida's Deceptive and Unfair Trade Practices Act Florida Statute Section 501.201, et seq. ("FDUPTA") was enacted to "protect the consuming public and legitimate business enterprises from those who engage in unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and "to make state consumer protection and enforcement

70

consistent with established policies of federal law relating to consumer protection."

126.   FDUPTA, Section 501.204 provides that:

- "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" and

- "It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."

127.   Plaintiff is a "consumer" as defined by Florida Statute § 501.203(7).

128.   Walmart's advertising, soliciting and offering of, and the Plaintiff's and the Customer's transactions of purchasing from or at Walmart, the Sold-by-Weight Products, Bagged Produce, and/or Clearance Products, is "trade or commerce" as defined by Florida Statute § 501.203(8).

129.   For the reasons discussed herein, Walmart violated FDUPTA, Florida Statute § 501.201, *et seq.,* by Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, as described herein.

130. Walmart's unconscionable, deceptive, and unfair acts and practices of Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight Seafood Products, as described herein, were likely to, and did in fact, deceive members of the public, including Customers (like Plaintiff and Class members) who were acting reasonably under the circumstances and to their detriment.

131. In committing the acts alleged above, Walmart engaged in unconscionable, deceptive, and unfair acts and practices acts by charging Customers prices for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products that exceeded the lowest advertised prices on those products' Rollback Stickers, Price Stickers, and/or Yellow Stickers (as applicable).

132. As a result of Walmart's conduct alleged herein, Plaintiff and Customers paid higher prices for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the products, resulting in actual damages by such overpayments for the products.

133. Walmart's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Walmart advertised, marketed, and sold the Sold-by-Weight Products, Bagged Produce, and/or Clearance

Products at one value but charged consumers a higher value at checkout, thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Customers.

134.   Walmart's conduct is unconscionable, deceptive and unfair, as it is likely to, and did, mislead Customers who were acting reasonably under the circumstances.

135.   Walmart induced Customers to select and purchase Sold-by-Weight Products, Bagged Produce, and/or Clearance Products based on the pricing information on the Stickers and then to purchase these products at higher prices for Walmart's benefit.

136.   As a direct and proximate result of Walmart's conduct, Plaintiff and Class members have been harmed and suffered actual damages in that they paid Walmart more for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products than advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

137.   Plaintiff and Class members have been and will continue to be deceived or misled by Walmart's false, misleading, unfair and deceptive pricing practices which, on information and belief, are ongoing.

138.   Walmart knew and calculated that its practices would mislead consumers, continuing such practices despite knowledge of the deception and

the harm it caused and causes. Such conduct thus is willful and in wanton disregard of Plaintiff's and Class members' rights.

139.   Plaintiff and Class members are entitled to: recover actual damages to the extent permitted by law, including § 501.211, Florida Statutes; reasonable attorneys' fees and costs; injunctive relief; and other relief as deemed appropriate or permitted pursuant to the relevant law.

140.   Plaintiff reserves the right to allege other violations of FDUPTA as discovery unfolds and as Defendant's conduct is ongoing.

## COUNT II
### Declaratory Judgment
### Pursuant to Florida's Deceptive and Unfair Trade Practices Act
### Florida Statute Section 501.201/211, *et seq.*
### (On Behalf of Plaintiff and the Florida Class)

141.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-140 as if fully set forth herein.

142.   FDUPTA, Section 501.211 provides that "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

143.   As alleged *supra*, and also specifically in Count I, Plaintiff and the members of the Florida Class have been aggrieved by Walmart's violation of FDUPTA.

74

144.   Plaintiff, individually and on behalf of the members of the Florida Class, seeks to obtain a declaratory judgment:

A.   Finding that Walmart's conduct of (i) Falsely Inflating Product Weight, (ii) selling Mislabeled Bagged Produce, (iii) Overcharging on Sold-by-Weight Clearance Products, and (iv) Overcharging on Sold-by-Weight Seafood Products, individually and in the aggregate, are acts and practices that violate FDUPTA; and,

B.   Enjoining Walmart, which has violated, is violating, and is likely to continue to violate FDUPTA with respect to (i) Falsely Inflating Product Weight, (ii) selling Mislabeled Bagged Produce, (iii) Overcharging on Sold-by-Weight Clearance Products, and (iv) Overcharging on Sold-by-Weight Seafood Products, from continuing to sell Sold-by-Weight Products, Bagged Produce, and/or Clearance Products, until and only if, Walmart has implemented procedures, controls and processes, including modifications to its databases and POS Systems, to ensure that (a) Walmart's Rollback Stickers, Price Stickers, and/or Yellow Stickers are accurate and not misleading with respect to the unit price and retail price of the product, and the products' weight; and (b) Walmart only charges Customers the lowest offered price for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products that is identified on the Rollback

Stickers, Price Stickers, and/or Yellow Stickers.

145.   Plaintiff and Class members are entitled to declaratory and injunctive relief, reasonable attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

## COUNT III
## VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and
### the Multi-State Consumer Protection Class)

146.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-145 as if fully set forth herein.

147.   Plaintiff and Class members have been injured as a result of Walmart's violations of the state consumer protection statutes listed, *supra*, each of which prohibits, and provides recourse to Plaintiff and Class members, Walmart's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

148.   Walmart's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

149.   Walmart violated the unfair and deceptive acts and practices laws of the states comprising the Multi-State Consumer Protection Class by Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, Overcharging on Sold-by-Weight Clearance Products, and Overcharging on Sold-by-Weight

Seafood Products, as described herein

150.   Walmart's unfair and deceptive acts were likely to, and did in fact, deceive members of the public, including Customers (like Plaintiff and Class members) who were acting reasonably under the circumstances and to their detriment.

151.   In committing the acts alleged above, Walmart engaged in unconscionable, deceptive, and unfair acts and practices acts by charging Customers prices for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products that exceeded the lowest advertised prices on those products' Rollback Stickers, Price Stickers, and/or Yellow Stickers (as applicable).

152.   As a result of Walmart's conduct alleged herein, Plaintiff and Customers paid higher prices for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers associated with the products, resulting in actual damages by such overpayments for the products.

153.   Walmart's actions constitute unconscionable, deceptive, or unfair acts or practices under each state encompassed by the Multi-State Consumer Protection Class because, as alleged herein, Walmart advertised, marketed, and sold the Sold-by-Weight Products, Bagged Produce, and/or Clearance Products at one value but charged consumers a higher value at checkout,

thereby offending an established public policy, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Customers.

154.   Walmart's conduct is unconscionable, deceptive and unfair, as it is likely to, and did, mislead Customers who were acting reasonably under the circumstances.

155.   By misleading Plaintiff and Class members into believing that they were purchasing Sold-by-Weight Products, Bagged Produce, and/or Clearance Products for the prices represented on the Rollback Stickers, Price Stickers, and/or Yellow Stickers, Walmart induced them to select such products based on the pricing information on the Stickers.

156.   Customers and Class members relied on and were misled by Walmart's unfair and deceptive practices to their detriment (and Walmart's benefit) by purchasing the Sold-by-Weight Products, Bagged Produce, and/or Clearance Products at prices higher than were advertised on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

157.   As a direct and proximate result of Walmart's conduct, Customers, Plaintiff and Class members have been harmed and suffered actual damages in that they paid Walmart more for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

158.   Customers and Class members have been and will continue to be deceived or misled by Walmart's false, misleading, unfair and deceptive pricing practices which, on information and belief, are ongoing.

159.   Walmart knew and calculated that its practices would mislead consumers, continuing such practices despite knowledge of the deception and the harm it caused and causes. Such conduct thus is willful and in wanton disregard of Plaintiff's and Class members' rights.

160.   Walmart's misrepresentations were material to Plaintiff's, Customers' and Class members' decision to purchase the Sold-by-Weight Products, Bagged Produce, and Clearance Products.

161.   Walmart made its untrue and/or misleading statements and representations willfully, wantonly, and /or with reckless disregard for the truth and for the rights of consumers.

162.   As a result of Walmart's violations of the states' unfair and deceptive practices laws, Plaintiff, Customers and Class members paid higher prices for Sold-by-Weight Products, Bagged Produce, and Clearance Products.

163.   Pursuant to the states' unfair and deceptive practices laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant

law.

## COUNT IV
## <u>UNJUST ENRICHMENT</u>
### (On Behalf of Plaintiff and the Nationwide Class)

164.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-144 as if fully set forth herein.

165. To the extent of any overlap of claims, Plaintiff's Unjust Enrichment cause of action herein is pled in the alternative to Counts I, II, and III.

166.   Plaintiff brings this action individually and on behalf of the Nationwide Class.

167.   Plaintiff and the Class members conferred benefits on Walmart by purchasing Sold-by-Weight Products, Bagged Produce, and/or Clearance Products.

168.   Plaintiff and Class members conferred a monetary benefit on Walmart by paying more for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products than the lowest advertised price on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

169.   Walmart has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the Class's purchases of the Sold-by-Weight Products, Bagged Produce, and/or Clearance Products at prices that exceeded the lowest advertised price on the Rollback Stickers, Price

Stickers, and/or Yellow Stickers. Retention of those monies under these circumstances is unjust and inequitable because Walmart's Stickers were false and misleading to Customers, which caused injuries to Plaintiff and the other members of the Classes.

170.   Walmart knew that Plaintiff and Class Members conferred a benefit on Walmart and accepted or retained that benefit.

171.   Through its false, misleading, unfair and deceptive pricing practices, Walmart unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged, and the failure to provide the Sold-by-Weight Products, Bagged Produce, and/or Clearance Products at the lowest prices advertised and represented on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

172.   By and through Walmart's false, misleading, unfair and deceptive pricing practices, Walmart has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

173.   Walmart should not be permitted to retain the money belonging to Plaintiff and Class members.

174.   Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Walmart's conduct.

175.   Plaintiff and Class members have no adequate remedy at law.

81

176. Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Walmart, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the Classes proposed in this Action, respectfully requests that the Court enter judgment in Plaintiff's favor and against Walmart as follows:

A.      Declaring that this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel.

B.      Entry of a Declaratory Judgment, (I) finding that Walmart's conduct of (a) Falsely Inflating Product Weight, (b) selling Mislabeled Bagged Produce, (c) Overcharging on Sold-by-Weight Clearance Products, and (d) Overcharging on Sold-by-Weight Seafood Products, individually and in the aggregate, are acts and practices that violate FDUPTA; and, (II) enjoining Walmart from continuing to sell Sold-by-Weight Products, Bagged Produce, and/or Clearance Products, until and only if, Walmart has implemented procedures, controls and processes,

including modifications to its databases and POS Systems, to ensure that (a) Walmart's Rollback Stickers, Price Stickers, and/or Yellow Stickers are accurate and not misleading with respect to the unit price and retail price of the product, and the products' weight; and (b) Walmart only charges Customers the lowest offered price for Sold-by-Weight Products, Bagged Produce, and/or Clearance Products that is identified on the Rollback Stickers, Price Stickers, and/or Yellow Stickers.

C.     Ordering injunctive relief as permitted by law or equity, including enjoining Walmart from continuing the unlawful, unfair and deceptive business practices as set forth herein, and requiring it to implement systemic controls to prevent the same from continuing to occur;

D.     Ordering restitution and disgorgement of all profits and unjust enrichment that Walmart obtained from Plaintiff and the Class members as a result of Walmart's unlawful, unfair and deceptive business practices;

E.     Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

F.     Ordering Walmart to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G. Ordering Walmart to pay both pre- and post-judgment interest on any amounts awarded; and

H. Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: October 19, 2022

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

*By: /s/ Zachary P. Beatty*
Nicholas E. Chimicles (special admission pending)
Kimberly M. Donaldson-Smith (special admission pending)
Zachary P. Beatty
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
nec@chimicles.com
kds@chimicles.com

***Counsel for Plaintiff and the proposed classes***