## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 8:22-cv-02402-VMC-TGW |
| WALMART INC., | |
| Defendant. | |

## DEFENDANT WALMART INC.'S MOTION TO DISMISS

Defendant Walmart Inc. ("Walmart") respectfully submits this Motion to Dismiss the Class Action Complaint [D.E. 1] ("Complaint") filed by Plaintiff Vassilios Kukorinis ("Plaintiff"), under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF LAW

Plaintiff alleges that Walmart defrauded him out of about $13.29 over about 29 months, after visiting 4 Walmart stores and buying 14 items. *See* Compl. ¶¶ 45-48, 50-51, 57, 66-68,79, 82-83.[1] He contends that, for some items, the total price or weight on his receipt was different from what appeared on the shelf tag or the product packaging.[2]

---

[1] The 14 items were purchased in 13 transactions. Many other examples alleged do not reflect an actual purchase. Rather, Plaintiff merely alleges that he "observed" them. *See* Compl. ¶¶ 69-73, 80-81. In addition, three alleged examples are "voided" transactions where Plaintiff did not end up buying the items. *See id.* ¶¶ 49, 56, 58. As Plaintiff could not possibly have standing or suffered economic damages related to items he did not actually buy, *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021), this motion focuses on those items that Plaintiff actually purchased.

[2] Plaintiff defines shelf tags and the labels or stickers on the product collectively as "Price Stickers." Compl. ¶ 3. By doing so, Plaintiff incorrectly refers to shelf tags and the labels affixed to products

Yet for each purchase, Plaintiff received a receipt showing what was charged and paid, and he expressly alleges he could identify the discrepancies. Rather than ask for a refund, Plaintiff kept shopping at Walmart stores, took photographs of other allegedly "mispriced" products, and then filed this class action alleging mispricing. *See id.* ¶¶ 12, 40-83, 90, 107.

Far from showing fraud, these allegations, even if true, simply reflect minor discrepancies that are not misleading to reasonable consumers. And even if there is an error on a product's label or on the shelf tag, consumers like Plaintiff are given multiple opportunities to ensure that the **total** prices charged match their expectations, including at checkout. Plaintiff has not alleged facts that plausibly state any claim, and his Complaint should be dismissed in its entirety.

Count I (Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")) fails to state a claim for at least <u>two</u> reasons: *First*, Plaintiff does not allege facts showing that Walmart caused any alleged injury; he purchased—and continues purchasing—products even though he knows of the alleged weight and price discrepancies. *Second*, Plaintiff does not allege Walmart engaged in any deceptive act or unfair practice that gives rise to a FDUTPA claim. Any alleged mistakes on product labels or shelf tags are unlikely to mislead because (i) Plaintiff has not alleged facts plausibly showing that reasonable consumers ignore the "total price" advertised (which even Plaintiff concedes was correctly stated on the shelf tags and/or product

---

interchangeably. For clarity, Walmart refers in this Motion to shelf tags and product labels separately and does not adopt Plaintiff's definition.

labels for most of his purchases) and instead rely only on the per-pound/ounce price (or "unit price"), and (ii) the total price actually paid is disclosed to the customer at checkout and on receipts, even for those items with allegedly incorrect shelf tags and/or product labels, thus dispelling any alleged deception.

Count II (Declaratory Judgment under FDUTPA) should be dismissed as duplicative of Count I because it is based on the same alleged conduct as the FDUTPA claim and raises no additional issue or requested relief that could not be fully addressed by the FDUTPA claim.

Count III (Violations of State Consumer Protection Statutes) is an impermissible "shotgun pleading" that lumps together over two dozen state statutes and 145 preceding allegations, and improperly attempts to assert claims under the laws of states in which Plaintiff has alleged no injury.

Count IV (Unjust Enrichment) also fails. Because Plaintiff alleges that Walmart engaged in deceptive or misleading conduct, any relief must be pursued through his FDUTPA claim, not unjust enrichment. Plaintiff also fails to allege that no adequate legal remedy exists, as required by Florida law to assert an equitable claim like unjust enrichment.

Finally, even if any of Plaintiff's claims were sufficiently pled, Plaintiff waived and released many of the claims he attempts to re-assert here in his prior class settlement agreement. *See Vassilios Kukorinis, et al. v. Walmart, Inc.*, Case No. 1:19-cv-20592-JEM (S.D. Fla.) ("*Kukorinis I*"). Thus, claims based on alleged conduct pre-dating the release are barred.

For all these reasons, the Court should dismiss the entire Complaint.

## BACKGROUND

Plaintiff Vassilios Kukorinis alleges that certain Walmart "pricing practices" are "false, misleading, and deceptive" because certain product labels and/or shelf tags incorrectly state the product's unit price. Compl. ¶¶ 4-8, 11, 92. According to Plaintiff, these "deceptive" pricing practices "result in Customers being charged and paying more than a product's lowest advertised per pound/ounce price." *Id.* ¶¶ 4, 91.

Plaintiff alleges that he bought 14 items where there was an error on the product's label or on the shelf tags regarding the product's (a) weight, (b) the unit price and/or (c) the total price. *See id.* ¶¶ 45-48, 50-51, 57, 66-68, 79, 82, 83. For all 14 of these items, the *total* price charged at the cash register *matched* the *total* price stated on the labels affixed to the product or, for those products with no such label, the *total* price stated on the shelf tags. Plaintiff complains however that: (a) the product labels or shelf tags for seven items showed an incorrect unit price, *see id.* ¶¶ 66-68, 79, 82-83;[3] (b) one item had a shelf tag with the incorrect weight, *see id.* ¶ 57;[4] and (c) for six items the unit price on the label was higher than stated on the shelf tag and at the register. *See id.* ¶¶ 45-48, 50-51.[5]

---

[3] The Complaint refers to this discrepancy as "Overcharging of Sold-by-Weight Clearance Products" and "Overcharging of Sold-by-Weight Seafood Products." Compl. ¶¶ 7-8.

[4] The Complaint refers to this discrepancy as "Mislabeling Weight of Bagged Produce." *See id.* ¶ 6.

[5] The Complaint refers to this discrepancy as "Falsely Inflating Product Weight." *See id.* ¶ 5.

Plaintiff acknowledges that he knows about these alleged pricing discrepancies. Compl. ¶¶ 12, 107. He sued Walmart in a prior class action (*Kukorinis I*) involving largely the same alleged weight and price discrepancies and settled his claims as part of a class settlement approved by the court. *Id.* ¶ 107 In settling, Plaintiff agreed to a broad release of any and all claims "that were asserted" or "that could have been asserted" in *Kukorinis I*, whether "known or unknown," that were "on the basis of, connected with, arising out of, or related in whole or in part to any or all of the alleged" conduct that was "directly or indirectly alleged or . . . referred to in" that litigation. *See Kukorinis I*, D.E. 41-1 (Settlement Agreement), attached as **Exhibit 1** ¶ 13.1.

Despite that settlement, Plaintiff has continued to shop at Walmart and buy items with alleged price and weight discrepancies. He claims he has "confronted" Walmart employees about these discrepancies (Compl. ¶ 12) but has continued to buy allegedly mismarked items, carefully taking pictures of shelf and product tags and receipts (*id.* ¶¶ 45-51, 56-57, 66-69, 79, 82-83) and "will continue to shop at Walmart" (*id.* ¶ 90).

Based on these discrepancies, Plaintiff asserts claims under FDUTPA (Count I), Declaratory Judgment under FDUTPA (Count II), "violations of state consumer protection statutes" (Count III), and unjust enrichment (Count IV). He seeks to assert these claims on behalf of himself and "other similar situated Customers." *Id.* ¶¶ 16, 111.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, 515 F. Supp. 3d 1218, 1221 (M.D. Fla. 2021) (Covington, J.). Although the Court may draw reasonable inferences from the factual allegations in the complaint, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Further, Plaintiff must allege "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

### I. Count I (Violation of FDUTPA) Fails to State a Claim.

To state a FDUTPA claim, Plaintiff must allege facts plausibly showing (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525, 529 (11th Cir. 2017). Under Rule 9(b), Plaintiff also must "state with particularity the circumstances constituting fraud or mistake" and must allege with specificity "the manner in which" he was misled. *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12–cv–1366–J–20JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s

heightened pleading requirements").[6]

Under this standard, Plaintiff's FDUTPA claim fails. First, Plaintiff cannot allege facts showing causation and damages—Plaintiff was aware of the alleged price discrepancies, and he kept buying the products. Thus, any purported damages result from Plaintiff's voluntary actions, not the alleged deceptive practices by Walmart. Second, Plaintiff failed to plausibly allege that Walmart engaged in a deceptive or unfair practice. In most instances, the label on the product or the shelf tag stated the correct total price. And in all instances, the total price actually paid is disclosed at checkout, eliminating any possible confusion based on mistakes in a product's shelf tag.

## A.   Plaintiff Cannot Allege Facts Showing Causation and Damages.

To state a FDUTPA claim, Plaintiff must allege facts plausibly showing that he was damaged as a result of the alleged misconduct. *See Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997) (affirming dismissal because plaintiff "must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act"); *Marrache v. Bacardi U.S., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021)

---

[6] Because Plaintiff's claims are grounded on allegations of "false" and "misleading" representations part of a "fraudulent scheme," Rule 9(b) applies. *See, e.g.*, Compl. ¶¶ 5-11; *Heyward v. Wells Fargo Bank, NA*, No. 8:20-cv-572-T-33AAS, 2020 WL 10353829, at *6 (M.D. Fla. Oct. 6, 2020) (Covington, J.) (applying Rule 9(b) standard to FDUTPA claim); *Fid. Nat'l Fin., Inc. v. Attachmate Corp.*, No. No. 3:15-cv–01400–HES–PDB, 2017 WL 3726687, at *3 (M.D. Fla. Mar. 1, 2017) ("Claims arising under FDUTPA must satisfy the more rigorous pleading requirements of Rule 9(b) when the complaint sounds in fraud.").

(plaintiff "cannot state a cause of action under FDUTPA if the consumer fails to plead that they suffered actual damages"). Plaintiff cannot allege causation or damages because he was aware of the alleged price and weight discrepancies and continued buying the items anyway.

For example, in *Prohias v. Pfizer*, the plaintiffs alleged misleading statements about Lipitor, but the court ruled that they could not state a claim because they kept buying the drug even after learning of its alleged limitations. 485 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2007). The court explained that "[t]aking the allegations in the complaint in the light most favorable to these plaintiffs, who continue to pay for Lipitor with knowledge as to its alleged limitations, I cannot come up with any theory upon which they are actually injured or aggrieved by the allegedly misleading advertisement." *Id.* at 1336. Similarly, in *Sweeney v. Kimberly-Clark Corp.*, the court rejected a FDUTPA claim because plaintiffs "continue to pay the alleged 'price premium' despite their knowledge and belief that the wipes are not flushable." No. 8:14-CV-3201-T-17EAJ, 2016 WL 727173, at *6 (M.D. Fla. Feb. 22, 2016).[7]

As in *Prohias* and *Sweeney*, Plaintiff cannot state a FDUTPA claim because he

---

[7] *See also, e.g., Krouch v. Wal-Mart Stores, Inc.*, No. 12–cv–02217–YGR, 2014 WL 5463333, at *9 (N.D. Cal. Oct. 28, 2014) (rejecting California's Consumer Legal Remedies Act ("CLRA") claim based on allegedly misleading oil change sticker where plaintiff "continued to obtain oil changes from Walmart"); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("If Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the [California Unfair Competition Law] or the CLRA."); *Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG, 2010 WL 1641364, at *3-5 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 Fed. App'x. 688 (9th Cir. 2011) (finding plaintiff's continued payment of subscription fees suggested she did not consider a challenged practice material and dismissing CLRA and False Advertising Law claims).

knows about the alleged price and weight discrepancies and keeps buying these products anyway (or in some cases, starting the purchase process before voiding it). *See* Compl. ¶¶ 12, 90, 107. Plaintiff sued Walmart before over the same alleged weight and price discrepancies and settled his claims. *Id.* ¶ 107. Plaintiff has kept buying items with these discrepancies, not because he was deceived, but apparently *because* he believes they were mismarked. Plaintiff alleges he has "confronted" Walmart employees about these discrepancies, (*id.* ¶ 12), but has continued to buy mismarked items, taking pictures of shelf tags, product labels and receipts (*id.* ¶¶ 45-51, 56-57, 66-69, 79, 82-83), and "will continue to shop at Walmart" (*id.* ¶ 90).

Plaintiff alleges that, in the prior case, the court declined to dismiss because his continued purchases might be consistent with being misled. *Id.* ¶ 108. But given the prior case and his current allegations, Plaintiff, like the plaintiffs in *Prohias* and *Sweeney*, knew about the alleged price and weight discrepancies when he made his purchases. Plaintiff carefully alleges that "Customers and Class members relied on and were misled by Walmart's" practices (*id.* ¶ 156), but nowhere alleges that *he* was deceived or damaged by these practices. And that is because he was aware of these alleged discrepancies and apparently shopped Walmart stores to find them. Thus, Plaintiff cannot allege causation or damages, and his FDUTPA claim should be dismissed.

**B.      Plaintiff Also Fails to Plausibly Allege that Walmart Engaged in Any Deceptive Act or Unfair Practice.**

Plaintiff also does not allege facts showing an "unfair method of competition, unconscionable act or practice, or unfair or deceptive act or practice." Fla. Stat. § 501.204(1); *Horton v. Woodman Labs, Inc.*, No. 8:13-CV-3176-T-30MAP, 2014 WL 1329355, at *4 (M.D. Fla. Apr. 2, 2014) (dismissing FDUTPA claim when "the complaint fail[ed] to allege facts associated with [the defendant's] deceptive or unfair practices"). To plead an unfair or deceptive act under FDUTPA, Plaintiff must allege that the alleged conduct "is likely to mislead [a] consumer acting reasonably in the circumstances, to the consumer's detriment." *Attachmate Corp.*, 2017 WL 3726687, at *2. This standard requires "a showing of 'probable, not possible deception' that is 'likely to cause injury to a reasonably relying consumer.'" *Id.* (quoting *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). While actual reliance is not required, Plaintiff must allege facts showing that "an objectively reasonable person would have been deceived." *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). Plaintiff fails to allege facts showing that an objectively reasonable consumer would be misled for at least <u>two</u> reasons.

**First**, for eight of Plaintiff's purchases, the photographs embedded in Plaintiff's Complaint demonstrate that the *total price* advertised on the product label (or on the shelf tag for the one item purchased with no price label) matches the *total price* charged

at the register. *See* Compl. ¶¶ 57, 66-68, 79, 82-83.[8] For example, looking at Plaintiff's alleged purchase of jumbo raw shrimp on March 30, 2020, the product's packaging displays a label showing (a) the product's weight of 8 ounces, and (b) the total price of **$6.62**. *Id.* ¶ 79. Next to the shrimp, a shelf tag prominently advertises: "JUMBO RAW SHRIMP 8 OZ **$6.62**." *Id.* (emphasis added). Another smaller shelf tag likewise states that the total price is "**$6.62**." *Id.* Plaintiff's receipt shows that he was in fact charged **$6.62** for the jumbo shrimp, as advertised. *Id.*

But Plaintiff points to the smaller font on the smallest shelf tag stating that the shrimp is "$8.83 per pound." *Id.* He alleges that, when the price of $8.83 per pound is converted to ounces, it equates to a price of $0.55 per ounce, which, when multiplied by the product's weight of 8 ounces, yields a price of $4.40. *Id.* According to Plaintiff, a consumer *might* perform this multi-step calculation and expect to pay the amount produced by that formula—not the price of $6.62 as advertised in three places as the "total price" that the customer will pay for the product. *Id.*

But Plaintiff alleges no facts showing that a reasonable consumer would ignore the "total price" featured on shelf tags and product labels, and instead rely exclusively on weight details, perform math—including a conversion of price-per-pound to price-per-ounce—and blindly expect to pay that amount even though the total price shows that the customer will be charged a different amount. Thus, "where [p]laintiffs base

---

[8] For the remaining six purchases, Plaintiff alleges that there were two different advertised unit prices, but the total price charged at checkout nevertheless matched the total price on the product label. *See* Compl. ¶¶ 45-48, 50-51.

deceptive advertising claims on unreasonable or fanciful interpretations o[f] labels or other advertising, dismissal on the pleadings may well be justified." *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1244 (S.D. Fla. 2021) (dismissing FDUTPA claim where price signage would not mislead reasonable consumers); *see also WM Aviation, LLC v. Cessna Aircraft Co.*, No. 6:11-cv-2005-ORL-18GJK, 2012 WL 13145516, at *5-6 (M.D. Fla. Apr. 13, 2012) (dismissing FDUTPA claim because defendant's failure to disclose two facts before sale was not "likely to mislead the consumer acting reasonably in the circumstances"). Because Plaintiff has not alleged facts showing that alleged mistakes in the unit price are likely to mislead a reasonable consumer when the total price is correctly stated, the FDUTPA claim fails for those purchases.

**Second**, for all of Plaintiff's purchases, the total price is disclosed to the customer during the checkout process before payment, thus eliminating any possibility of confusion allegedly caused by an incorrect unit price on a shelf tag or product label. *See* Compl. ¶¶ 43-44 (the price is disclosed "at the register, when the customer checks-out" and the customer is "charged"). A transaction takes place not when a shopper first sees product signage but when the product is scanned at the register, and "[r]easonable consumers generally do not choose to ignore accurate pricing information displayed conspicuously during the transaction." *Kurimski v. Shell Oil Co.*, No. 21-80727-CV, 2022 WL 2913742, at *10, *12 (S.D. Fla. June 30, 2022) (dismissing FDUTPA claim where final price was disclosed before payment). If the total price shown at checkout does not match a consumer's expectations, he or she can decline to purchase that item. Plaintiff's own allegations show he exercised that option at least

three times, as shown by Plaintiff's receipts stating that the purchases were "voided." *See* Compl. p. 31, photo C.3 (receipt showing "VOIDED ENTRY" for subject purchase); p. 34, Photo C.5 (same); p. 26, Photo B.5.2 (same).

Courts have dismissed FDUTPA claims for precisely this reason. For example, in *Kurimski*, plaintiffs alleged that a gas station's exterior signage misleadingly displayed the price per gallon by showing a lower price that only applied to cash. *Kurimski*, 570 F. Supp. 3d at 1243. The court dismissed because, even if the exterior signage were misleading, "the disclosure at the pump" of the price the consumer was to be charged "negates any claim of deception." *Id.* at 1246. Indeed, "no reasonable consumer would be misled as to price when the price they will be charged is clearly presented during the transaction but before any charges are incurred." *Id.* The Court should reach the same conclusion here.

Even if a consumer does not realize the discrepancy until *after* he has already bought the item, he has yet another opportunity to address the issue by returning the item. Plaintiff acknowledges that Walmart has a robust and generous return policy, which even permits customers to return items without the receipt. *See id.* ¶ 97. Walmart's return policy, which is quoted in the Complaint, states that customers who are "[n]ot 100% satisfied with [their] item" may return it in accordance with the policy's terms for a full refund of the purchase price. *See* Walmart Return Policy (available at https://www.walmart.com/help/article/walmart-standard-return-

policy/adc0dfb692954e67a4de206fb8d9e03a), attached as **Exhibit 2**; Compl. ¶ 97.[9]

Under this policy, Plaintiff could have returned any item he bought for any reason.

Thus, even if Plaintiff was confused by a product's label or by the shelf tag (or anything

else) he could have returned the items for a full refund and thus was not harmed.

In sum, Plaintiff has not alleged facts showing that a reasonable consumer would be misled. He has not alleged facts showing that alleged mistakes in the unit price are likely to mislead a reasonable consumer when the total price is correctly stated. Plaintiff also ignores that he admittedly received the correct total price at checkout, and ignores that Walmart has policies in place that help ensure that customers are satisfied with their purchases. Thus, Plaintiff has not plausibly alleged an unfair, deceptive, or unconscionable act, and the Court should dismiss Count I.

## II.    Count II (Declaratory Judgment under FDUTPA) Should Be Dismissed As Duplicative of the FDUTPA Claim.

Count II, which purports to assert a stand-alone claim for declaratory judgment and injunctive relief under FDUTPA, hinges on the same alleged conduct as Count I. *See* Compl. ¶ 143 ("As alleged *supra*, and also specifically in Count I, Plaintiff and the members of the Florida Class have been aggrieved by Walmart's violation of FDUTPA"). Count II expressly re-alleges and incorporates Plaintiff's FDUTPA

---

[9] The Court may consider such documents in ruling on a motion to dismiss when, as here, a plaintiff refers to a document in his complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *See* Compl. ¶ 97 (citing and quoting Walmart's publicly available return policy); *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (court properly considered insurance policy referenced in complaint and attached to motion to dismiss).

count. *Id.* ¶ 141. Because Count II does not raise any issues that could not be addressed by the FDUTPA claim, the Court should dismiss it as duplicative. *See, e.g.*, *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-CV-81-FTM-38UAM, 2019 WL 5084138, at *2 (M.D. Fla. Mar. 18, 2019) (dismissing declaratory relief claim that "does not raise any issues that cannot be addressed in Count 1").[10]

As shown above, this claim also fails because Plaintiff was not "aggrieved" by a violation of FDUTPA. Fla. Stat. § 501.211(1) (only a person who has been "aggrieved by a violation of this part may bring an action to obtain a declaratory judgement . . . and to enjoin a person . . . .").[11] Thus, although FDUTPA allows plaintiffs to pursue injunctive relief even if they would not personally benefit from the injunction, that rule "does not override" the requirement to allege facts showing an injury-in-fact that is not "merely conjectural or hypothetical." *Kurimski*, 570 F. Supp. 3d at 1240 (dismissing FDUTPA claim seeking injunctive relief). A plaintiff's "general

---

[10] *See also, e.g.*, *Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 16-CV-81019, 2017 WL 1292983, at *4 (S.D. Fla. Jan. 31, 2017) (dismissing Plaintiff's FDUTPA declaratory judgment claim because it merely "seeks a declaration that [Defendants'] actions violated the FDUTPA[, and such] a declaration has no apparent legal significance beyond [Plaintiff's] immediate attempt to collect damages"); *Diaz Fritz Grp., Inc. v. Westfield Ins. Co.*, No. 8:20-cv-785-T-33AAS, 2020 WL 2735332, at *3 (M.D. Fla. May 26, 2020) (dismissing declaratory judgment claim as "duplicative" of breach-of-contract claim, as they both "involve the same factual disputes"); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374-75 (M.D. Fla. 2008) (dismissing declaratory judgment claim when the parties' infringement claims "will decide the issues at stake in [the] claim for declaratory judgment"); *Seigel v. Provident Life & Accident Ins. Co.*, No. 8:16-cv-00584-EAK-TGW, 2016 WL 4059248, at *2 (M.D. Fla. July 27, 2016) ("[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts . . . through which the plaintiff will be able to secure full, adequate and complete relief.").

[11] *See also, e.g.*, *Prohias*, 485 F. Supp. 2d at 1336 (plaintiff not "aggrieved" under Section 501.211); *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (dismissing FDUTPA claim when plaintiff did not allege a consumer was actually aggrieved by the alleged misconduct); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) (dismissing FDUTPA claim where plaintiff "fail[ed] to allege how he was 'aggrieved by' Defendant's acts").

interest in curbing deceptive or unfair conduct" cannot satisfy this standard. *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022). Thus, Count II should be dismissed for this reason as well.

### III.   Count III (Violations of State Consumer Protection Statutes) Fails As An Improper "Shotgun" Pleading.

Count III asserts a single count for alleged violations of a long list of various "state consumer protection statutes" by re-alleging and incorporating by reference the preceding 145 paragraphs, with no attempt to allege which allegations apply to which statute. *See* Compl. ¶ 146.

When, as here, a claim "adopts the allegations of all preceding counts" and "does not separate into a different count each cause of action or claim for relief," it constitutes an impermissible "shotgun pleading." *Rivera v. Feld Entm't, Inc.*, No. 8:20-cv-1526-T-33CPT, 2020 WL 5423213, at *2 (M.D. Fla. Sept. 10, 2020) (Covington, J.) (internal quotations omitted). Courts in the Eleventh Circuit routinely dismiss such shotgun pleadings because they fail to give adequate notice of the claims being brought and the grounds on which each claim rests. *See, e.g.*, *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (complaint was a "quintessential 'shotgun' pleading of the kind [the Eleventh Circuit] ha[s] condemned repeatedly" because "[e]ach count incorporate[d] by reference the [preceding] allegations . . . which comprise[d] 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede[d] it.").

Like the complaint in *Magluta*, Count III re-alleges and incorporates all preceding 145 paragraphs. Compl. ¶ 146. It also purports to assert violations of "the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class," including a laundry list of state statutes that are allegedly "similar laws to that of Florida." *Id.* ¶ 148; *id.* ¶ 111, n.13. But this wholesale incorporation and lumping together over two-dozen state statutes into a single count makes it impossible to discern what statutes Plaintiff alleges Walmart violated, or how they have purportedly been violated. Because Count III fails to "give [Walmart] adequate notice of the claims against [it] and the grounds upon which each claim rests," it should be dismissed as an impermissible shotgun pleading. *Rivera*, 2020 WL 5423213, at *2.[12]

Count III also fails because Plaintiff cannot, as he attempts here, assert claims under the laws of states other than Florida, because he alleges no injury in any other state. *See Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Mgmt., Inc.*, No: 2:16-cv-206-FtM-38MRM, 2017 WL 10604140, at *5 (M.D. Fla. Apr. 11, 2017) (A named plaintiff cannot assert claims "on behalf of a class unless one named plaintiff suffered

---

[12] *See also, e.g.*, *N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, No. 607-cv-1503-Orl-19KRS, 2009 WL 1513389, at *14 (M.D. Fla. May 27, 2009) (dismissing claim where complaint did not "specify the particular paragraphs containing the relevant facts and requires [defendant], as well as this Court, to sift through the prior 111 paragraphs and speculate as to which facts [plaintiff] refers"); *Hummer v. Adams Homes of Nw. Fla., Inc.*, No. 8:13-CV-1981-T-17AEP, 2014 WL 897083, at *2 (M.D. Fla. Mar. 6, 2014) (dismissing complaint with leave to replead to "specify which factual allegations support each separate claim, rather than lumping all factual allegations and all claims together"); *Ellis v. Terrell*, No. 3:08-cv-1161-J-32JRK, 2010 WL 3385278, at *3 (M.D. Fla. Aug. 25, 2010) (a count that "provides no meaningful basis for a court to assess the sufficiency of a plaintiff's claims . . . may properly be dismissed.").

the injury giving rise to the claim."). In *Wave Length*, plaintiff was an entity "incorporated under Florida laws, [had] its principal place of business in Florida," and asserted claims based exclusively on acts in Florida. *Id.* at *6. Thus, the plaintiff was barred from bringing claims on behalf of a nationwide class based on any state law other than Florida. *Id.*

Similarly, here, Plaintiff is a Florida resident, and all his alleged purchases were in Florida. Compl. ¶ 17. Thus, Plaintiff cannot assert claims under consumer protection statutes of any state other than Florida, and Count III should be dismissed. *See Stone v. Crispers Rests., Inc.*, No. 6:06-cv-1086-Orl-31KRS, 2006 WL 2850103, at *1 (M.D. Fla. Oct. 3, 2006) (dismissing claim brought under "wage-related laws of Alabama, . . . Georgia, South Carolina, and Tennessee" because the Complaint contained no "suggestion [that plaintiff] ever resided or worked in any state other than Florida").[13]

## IV.   Count IV (Unjust Enrichment) Fails As a Matter of Law.

The unjust enrichment claim is based on the same alleged conduct as the FDUTPA claim—*i.e.*, that "Plaintiff and the class members conferred a monetary benefit on Walmart by paying more for" groceries as a result of Walmart's allegedly "false, misleading, unfair and deceptive pricing practices." *See* Compl. ¶¶ 168, 169,

---

[13] *See also Lewis v. Mercedes-Benz*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. 2021) ("Plaintiffs here, however, do not have standing to assert an unjust enrichment claim under any state's law but their own . . . ."); *In re: Takata Airbag Prods. Liab. Litig.*, Master File Nos. 15–2599–MD–MORENO, 14–24009–CV–MORENO, 2016 WL 1266609, at *4, *6 (S.D. Fla. Mar. 11, 2016) (plaintiff "cannot rely on unidentified persons within those states to state a claim for relief."); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371-72 (S.D. Fla 2001) (dismissing claims under state statutes where named plaintiff could not allege injury in those states).

171, 172. It fails for the same reasons the FDUPTA claim fails, as well as *two* additional reasons.

**First**, as this Court has explained, a claim for unjust enrichment should be reserved for when, even though defendant committed no misconduct, it would still "be inequitable for the defendant to retain [a] benefit without paying for it," such as a mistaken transfer. *Day v. Sarasota Doctors Hosp., Inc.*, No. 8:19-cv-1522-T-33TGW, 2020 WL 7390153, at *7 (M.D. Fla. Feb. 7, 2020) (Covington, J.). When a plaintiff's grievance is based "on wrongful conduct of a defendant," the right to recover "arises from the wrong of the alleged tort rather than unjust enrichment." *Electrostim Med. Servs., Inc. v. Lindsey*, No. 8:11–cv–2467–T–33TBM, 2012 WL 1560647, at *4 (Covington, J.).[14] In other words, "as soon as a claimant relies on a wrong to supply the unjust factor [of an unjust enrichment claim], the right on which he relies arises from that wrong, not from unjust enrichment." *AstroTel, Inc. v. Verizon Fla.*, LLC, No. 8:11-CV-2224-T-33TBM, 2012 WL 1581596, at *10 (M.D. Fla. May 4, 2012).

Plaintiff ignores this rule and tries to base his unjust enrichment claim on the same allegedly wrongful conduct underlying the FDUTPA claim. For example, Plaintiff alleges that "[r]etention of those monies under these circumstances is unjust and inequitable because Walmart's Stickers were *false and misleading* to Customers,

---

[14] *See also State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021) (Covington, J.); *FreeStyle Slides, Inc. v. Super Sweet Air, Inc.*, No. 6:17-cv-169-Orl-41GJK, 2018 WL 3819073, at *5 (M.D. Fla. July 9, 2018) ("Because Plaintiff's unjust enrichment claim is premised on wrongful conduct allegedly committed by [Defendant], among others, Plaintiff's claim fails as a matter of law.").

which caused injuries to Plaintiff and the other members of the Classes." Compl. ¶ 169 (emphasis added). Thus, Plaintiff's right to recovery—if any—lies in FDUTPA.

**Second**, it is "well settled" that unjust enrichment, an equitable doctrine, is "not available where there is an adequate legal remedy." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (to pursue an unjust enrichment claim, "a party must allege that no adequate legal remedy exists."). Thus, an unjust enrichment claim must be dismissed when, as here, it is "predicated on the same set of allegations supporting" an FDUTPA claim—a legal remedy. *Id.* (dismissing unjust enrichment claim "predicated on the same set of allegations supporting . . . claims under. . . FDUTPA"). In *State Farm Mut. Auto. Ins. Co. v. Lewin*, this Court dismissed an unjust enrichment claim alleged in the "alternative" because it was based on the same factual allegations as the other tort claims. 535 F. Supp. 3d 1247, 1267 (M.D. Fla. 2021) (Covington, J.). Likewise, here, Plaintiff tries to couch his unjust enrichment claim as one alleged "in the alternative" (Compl. ¶ 165), but the rest of the Complaint shows he has an adequate legal remedy. *See id.* ¶¶ 124-140; *Weaver v. Mateer & Harbert, P.A.*, No. 5:09–cv–514–Oc–34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012) (dismissing unjust enrichment claim pled in the "alternative" because FDUTPA provided "an adequate legal remedy").[15]

## V.    Plaintiff Waived and Released His Price Discrepancy Claims Prior to August 26, 2020.

---

[15] *See also PB Prop. Mgmt, Inc.*, 2013 WL 12172912, at *7 ("Plaintiff cannot plead unjust enrichment—an equitable, quasi-contract claim—because it has an adequate remedy at-law; namely, its express warranty and FDUTPA claims.").

As acknowledged in the Complaint, Plaintiff previously asserted claims against Walmart in the Southern District of Florida based on the same alleged discrepancies he attempts to re-assert here. *See Kukorinis I*; Compl. ¶¶ 107-108. That litigation was resolved by a class settlement containing a broad release, approved by the court covering the time period from February 13, 2015 to August 26, 2020. Any claims that pre-date August 26, 2020, are barred by the release.

In *Kukorinis I*, Plaintiff alleged that Walmart "advertised false unit prices" because the "final sales prices" stated on the product labels for "a broad range of Weighted Goods"—that is, "beef, pork, poultry, fish, and other types of packaged foods marked with unit pricing and sold accordingly thereto"—"did not coincide with the unit sales prices based on the weight of the products," leading to overcharges. *Kukorinis I*, D.E. 15 (Amended Complaint), at ¶¶ 1, 2, 8, 25.[16] In connection with the court's approval of a nationwide class settlement (*Kukorinis I*, D.E. 97), Plaintiff agreed to a broad release of any and all claims "that were asserted" or "that could have been asserted" in *Kukorinis I*, whether "known or unknown," that were "on the basis of, connected with, arising out of, or related in whole or in part to any or all of the alleged" conduct that was "directly or indirectly alleged or . . . referred to in" that litigation. *See*

---

[16] Walmart asks this Court to take judicial notice of all docket entries from *Kukorinis I* cited in this Motion. Courts may take judicial notice of publicly filed documents from a prior lawsuit—including complaints, orders, motions, discovery, depositions, and trial or hearing transcripts—without converting a motion to dismiss into a motion for summary judgment. *See Harrell v. Bank of Am., N.A.*, 813 Fed. App'x 397, 400 (11th Cir. May 7, 2020); *Baloco v. Drummond Co.*, 767 F.3d 1229, 1241 n.13 (11th Cir. 2014); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010); *Universal Express, Inc. v. SEC*, 177 Fed. App'x 52, 53 (11th Cir. 2006).

*Kukorinis I*, D.E. 41-1 (Settlement Agreement), at Exhibit 1 ¶ 13.1.[17] The release expressly acknowledges that it is a "full and final general release" applying not only to those claims "currently known, anticipated, or disclosed," but also to claims "presently unknown, unanticipated, or undisclosed" "arising out of or related to the alleged facts, circumstances, and occurrences underlying the claims set forth in" *Kukorinis I. Id.* ¶ 13.3.

In determining whether claims are barred by a release of allegations "arising out of" prior litigation, like the broad *Kukorinis I* release, the allegations need not be identical. Rather, courts look to whether "the primary right and duty are the same." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007). Thus, such a release bars "not only . . . the precise legal theory presented in the previous litigation," but "all legal theories and claims *arising out of the same operative nucleus of fact*." *Id.* (emphasis added).

The Eleventh Circuit's analysis in *Adams* is instructive. There, plaintiffs tried to bring a second putative class action alleging that an insurance company engaged in "deceptive and fraudulent practices" in recommending replacement life insurance products such as "flexible premium and universal life insurance policies" without disclosing that the premiums for these policies could increase over time. *Adams*, 493 F.3d at 1283. The defendant argued that these claims were barred by a settlement agreement and release in a prior class action. *Id.* at 1284. The prior action alleged that

---

[17] The Settlement Agreement is attached as **Exhibit 1**.

defendant "fraudulently induce[d] existing policyholders to replace their existing policies" without "adequately informing the policyholders that by doing so they would lose substantial cash values, pay new and significant commission charges, and, if they lived beyond a certain age, pay significantly greater premiums, and/or be forced to accept less insurance or have their insurance lapse." *Id.* at 1279. In the second case, plaintiffs argued that their allegations were different because their claims involved "increasing premiums" insurance policies—that is, the defendant's "failure to disclose that their policy premiums might increase in the event interest rates turned out to be lower than those projected"—while the earlier class action was based on "vanishing premium" policies—that is, where "the policy holder expected the premium to disappear once the cash value was large enough to cover the required premiums." *Id.* at 1289-90. According to the plaintiffs, there was a "factual distinction" between "premiums that would suddenly increase without warning" versus "premiums that failed to disappear after a period of time." *Id.*

The district court held that the plaintiffs' claims were barred by the prior class settlement, which released all claims asserted or that "could have been" asserted in that litigation "on the basis of, connected with, arising out of, or related to, in whole or in part," the subject transactions. *Id.* at 1290. The Eleventh Circuit affirmed, explaining that "although the [plaintiffs] attempt to construe their claims as being based on 'increasing premium' policies," rather than "vanishing premium" policies, all of these policies relate to "flexible premium policies." *Id.* The "increasing premium" insurance policies that were the subject of the prior class action "were only

'increasing' in the sense that the premium required to cover the policies might be greater if interest rates took an unforeseen downward turn." *Id.* Thus, even though there were differences in the alleged misrepresentations, the claims in the second action still arose from the same "nucleus of fact" as the first. *Id.*

The Court should reach the same conclusion here. *Kukorinis I* was based on allegations that the unit price advertised on product labels, when multiplied by the product's stated weight, did not coincide with the total price, leading to an overcharge to customers allegedly deceived by the discrepancy. *Kukorinis I*, D.E. 15 (Amended Complaint), at ¶¶ 1, 2, 8, 25. The Complaint here likewise asserts that unit price is incorrectly stated on product labels or shelf tags, leading to an overcharge to customers. Compl. ¶¶ 3-8.

These claims all arise from the same fundamental theory: that Walmart allegedly deceived customers through inconsistencies in the advertised weight, unit price, or total price, leading to overcharges. That some alleged discrepancies are evident in the store aisle, and some are evident at check-out, is not a material difference because at their core, all the claims relate to alleged deception as a result of incorrectly advertised weight or unit price. Thus, although Plaintiff may argue that there are variations, any variation is no more than in *Adams. See Adams*, 493 F.3d at 1290.[18]

---

[18] *See also, e.g., Kreger v. Medicredit, Inc.*, No. 8:16-cv-1481-T-33JSS, 2016 WL 3906960, at *4 (M.D. Fla. July 19, 2016) (Covington, J.) (dismissing putative class action as barred by prior settlement and release because "[b]oth cases arose from the same TCPA violations"); *iStar FM Loans LLC v. East*, No. 8:10-cv-2009-T-33TBM, 2011 WL 5826568, at *3-4 (M.D. Fla. Nov. 18, 2011) (Covington, J.) (barring claims that arose "out of the same nucleus of operative fact" as prior litigation); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1340 (11th Cir. 2012) (prior class action settlement barred later claims based on res judicata); *Papazian v. Gold Key Lease, Inc.*, 962 F. Supp. 1469, 1470-71 (M.D. Fla. 1997) (granting

Because Plaintiff waived and released the claims he attempts to re-assert here, the Court should bar any such claims based on alleged transactions before August 26, 2020—the effective date of the release. *See Kukorinis I*, D.E. 97 (Omnibus Order on Final Approval of Class Action Settlement), at p. 7 (certifying class for settlement purposes encompassing "[a]ll persons who purchased Weighted Goods from Walmart in the United States from February 13, 2015 to August 26, 2020 (i.e., the date the Court entered its preliminary approval), whose Weighted Goods' unit sale price was not accurately reflected in the final sale price."); *Kukorinis I,* D.E. 42 (preliminary approval); Compl. ¶¶ 79, 80, 81 (allegations based on transactions in March 2020 and February 2020).

## CONCLUSION

For all these reasons, Defendant asks the Court to dismiss the entire Complaint with prejudice.

*[Signature page follows]*

---

motion to dismiss because prior class action settlement barred plaintiff's claims based on res judicata); *Sec. of Labor v. Copomon Enters., LLC*, 601 F. App'x 823, 826 (11th Cir. 2015) ("In both cases, the Secretary alleged that Copomon failed to ensure that containers of formaldehyde-containing products . . . reflected adequately (1) that the products contained formaldehyde and (2) the hazards of formaldehyde exposure. Thus, both cases arise out of the same nucleus of operative fact and are based upon the same factual predicate.").

Dated: January 6, 2023

Respectfully submitted,

*/s/ Raymond D. Jackson*

Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Raymond D. Jackson (FBN 1028350)
jacksonra@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
Secondary email: farrark@gtlaw.com;
FLService@gtlaw.com

Naomi G. Beer*
beern@gtlaw.com
**GREENBERG TRAURIG, LLP**
1144 15th Street, Ste. 3300
Denver, Colorado 80202
Telephone: (303) 572-6500
Facsimile: (303) 572-6540

Robert J. Herrington*
robert.herrington@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East Suite 1900 Los
Angeles CA 90067
Telephone: (310) 586-7700
Facsimile: (312) 586-7800

*Motions for Special Admission
Forthcoming*

*Attorneys for Defendant Walmart Inc.*

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

The Parties met and conferred regarding Plaintiff's claims by telephone and email in December 2022. These conversations included discussions regarding the merits of Plaintiff's claims as well as Walmart's position that the claims here overlap with Plaintiff's earlier class action that he settled. In addition to those discussions, prior to filing this Motion to Dismiss, on January 6, 2023, Walmart's counsel sent an email to Plaintiff's counsel outlining more specifically the grounds for its Motion to Dismiss and offered to discuss the motion at any time during that business day. In the event Plaintiff's counsel was unavailable, Walmart's counsel also offered to discuss any time during the next three business days of January 9, 10 and 11 as contemplated by Local Rule 3.01(g)(3).  Plaintiff's counsel declined to provide her availability and took the position that a meet and confer call should have been scheduled earlier and, because such a call had not yet occurred, that Walmart had not sufficiently conferred about the specific grounds of its Motion to Dismiss in compliance with Local Rule 3.01(g)(1). After these email exchanges, Walmart's counsel also called Plaintiff's counsel on January 6, 2023. Plaintiff's counsel declined to discuss the merits of Walmart's Motion to Dismiss and reiterated her position that a call was required to be scheduled earlier. Walmart's counsel remains available to meet and confer regarding the Motion to Dismiss during the next three business days, will continue to try diligently to contact Plaintiff's counsel for such discussion, and will supplement this disclosure as contemplated by Local Rule 3.01(g)(3).

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

<u>*/s/ Raymond D. Jackson*</u>
Attorney