# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VASSILIOS KUKORINIS,
individually and on behalf of all
others similarly situated,

                Plaintiff,

  v.

WALMART, INC.,

                Defendant.

Case No. 8:22-cv-02402-VMC-TGW

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Vassilios Kukorinis ("Plaintiff"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Walmart, Inc.'s Motion to Dismiss [D.E. 25, "Walmart's Motion" or "Mot."].

Plaintiff's Complaint [D.E. 1], cited as "¶__" herein,[1] sets forth detailed, particularized factual allegations that state claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and analogous state consumer protection statutes, and for unjust enrichment, in accordance with the applicable jurisprudence from the Eleventh Circuit and the standards governing consideration of those claims pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").

The Complaint's allegations and applicable legal precedent belie Walmart's argument that the allegations "simply reflect minor discrepancies that are not

---

[1] Unless otherwise stated, all capitalized terms have the same meaning as set forth in the Complaint.

misleading to reasonable consumers" (Mot. at 2). Faced with serious allegations of misrepresentations and deceptions that are rooted in its POS Systems, and a legal standard under which the Complaint's allegations are considered from the standpoint of a reasonable customer, Walmart posits throughout its Motion an alternate reality of a reasonable grocery shopper's experience and behavior—one where the burden is on each shopper, during each shopping trip and as to each product the shopper considers buying, to conduct her own investigation and remediation of Walmart's deceptions. For Walmart, apparently, it is the shopper's responsibility to put on her "green eyeshades" and pull out her calculator to determine whether or not Walmart's POS System was inflating or misrepresenting a Sold-by-Weight product's weight to derive the price charged or was properly "doing the math" to determine an accurate price for Sold-by-Weight products. Then, for Walmart, if the shopper successfully identified the deception, it was her responsibility to have documented it and immediately advocated at checkout or with customer service for a price adjustment. That is not reasonable nor a plausible or probable reality.

Walmart's attempts to interject facts and arguments that, at bottom, fail to account for (or flatly contradict) the Complaint's detailed allegations and applicable law, are inapplicable and unpersuasive. Thus, for the reasons set forth herein, Walmart's Motion should be denied in full.

## I.    <u>THE ALLEGATIONS</u>

The Complaint details how Walmart falsely advertises the prices that Customers, including Plaintiff, pay for four specific categories of grocery products sold

at Walmart, and how such misconduct is systemically occurring in and caused by Walmart's POS Systems.

The Complaint details the following four categories of wrongdoing:

(i)      Walmart advertises "Rollback" (sale) prices for Sold-by-Weight groceries, but employs software, programming, and POS Systems that circumvent the advertised sale by inflating the weight of each product, and overcharging Customers ("Falsely Inflating Product Weight") (¶¶5, 39-51);

(ii)     Walmart advertises a per unit price for Bagged Produce, but its POS Systems, in addition to falsely identifying the weight of the Bagged Produce on the Price Sticker, charges Customers more than the lowest price advertised ("Mislabeled Bagged Produce") (¶¶6, 52-58);

(iii)    Walmart advertises a per unit price for Sold-by-Weight groceries nearing their expiration, but its POS Systems erroneously calculate an inflated "You Pay" price, resulting in Customers being deceived into being charged more than the lowest price advertised ("Overcharging on Sold-by-Weight Clearance Products") (¶¶7, 59-72);

(iv)     Walmart advertises a per unit price for seafood products, but its POS Systems erroneously calculate and display inflated prices for the seafood products on the label and Price Stickers, resulting in Customers being charged a higher per unit price than the lowest price advertised ("Overcharging on Sold-by-Weight Seafood Products") (¶¶8, 74-83).

For each of the four categories, the Complaint alleges the date, location, and other pertinent details (including with photos of Price Stickers, product labels, and

register receipts) of Plaintiff's purchases of each of the product categories at issue. *See* Falsely Inflating Product Weight at ¶¶45-51; Mislabeled Bagged Produce at ¶¶56-57; Overcharging on Sold-by-Weight Clearance Products at ¶¶66-68; Overcharging on Sold-by-Weight Seafood Products at ¶¶79, 82-83.

Likewise, for each of the four categories, the Complaint alleges the details of Walmart's false advertising and conduct, how it would likely deceive a Customer acting reasonably under the circumstances, and ties it to how Walmart's conduct results in the overcharges and damages alleged, as follows:

(i)     With respect to Walmart's Falsely Inflating Product Weight, the Complaint's detailed allegations describe how Walmart advertises sale or "Rollback" prices for its Sold-by-Weight products. ¶¶45-51. The Complaint details that the harm occurs when, at checkout, Walmart's POS Systems systemically override or circumvent the Rollback sale price, failing to charge the Customer the lowest advertised sale/Rollback price for the product. *Id.* Walmart's POS Systems do this by inflating the weight of the Sold-by-Weight product when scanned and deceptively applying the "Rollback" per unit price to the inflated weight, which calculation results in Plaintiff and the Customers being wrongly charged the *non*-sale price. *Id.*

(ii)    With respect to the Bagged Produce, the Complaint's detailed allegations describe how Walmart's Price Stickers advertise the total weight and a per pound/ounce price for the Bagged Produce being offered for sale. ¶¶52-57. The Complaint explains that the Price Stickers for the Bagged Produce consistently and falsely advertise a per unit price for the Bagged Produce but misstate that it is of a

materially higher weight than the actual weight of the Bagged Produce being sold (*e.g.* identifying a 4lb bag when the actual bag being sold has 3lb of product). *Id.* As a result, Customers do not get charged the price per pound/ounce advertised on Walmart's Shelf Tags but, instead, are charged materially more for the Bagged Produce. *Id.*

(iii)    With respect to Walmart's Overcharging on Sold-by-Weight Clearance Products, the Complaint's detailed allegations describe how Walmart's POS Systems miscalculate the price that is advertised on the Yellow Stickers affixed to Walmart's clearance products. ¶¶59-73. As a result, Walmart charges Customers materially more for the clearance products than the per pound price advertised on the Yellow Sticker for the clearance products. *Id.*

(iv)    With respect to Walmart's Overcharging on Sold-by-Weight Seafood Products, the Complaint's detailed allegations state that Walmart's POS Systems miscalculate the price that is advertised on the label affixed to the seafood product and on its Price Sticker. ¶¶74-83. As a result, Walmart charges Customers materially more for the seafood than the per pound/ounce price advertised on the Price Sticker for the products. *Id.*

The Complaint also alleges why the falsely advertised information, which is objective pricing information about the products being offered for sale by Walmart, is material to reasonable Customers' purchasing decisions. That Walmart's POS System would accurately calculate and charge the advertised lowest price to the Customer at checkout for Sold-by-Weight Products are events that Customers reasonably expect to

be accurate. Such information is used by a reasonable Customer to make purchasing decisions, to accurately identify prices for the products that are on sale or clearance, and to compare pricing among brands by retail price, unit price, and/or quantity. ¶¶10, 84-90.[2]

Notably, none of the four categories of Walmart's deceptive conduct alleged in the Complaint can be read, viewed, or presumed to be one-off errors by a Walmart store clerk in Florida who put out the wrong Price Sticker. Rather, the Complaint's allegations detail and demonstrate systemic misconduct by Walmart driven by and rooted in "Walmart's POS Systems," including software that is programed to inflate product weights, fails to properly calculate prices for Sold-By-Weight Products based on the advertised unit prices, and overcharges Customers for the Sold-by-Weight Products by miscalculating the products' price. ¶¶11-12, 43-44, 93-101.[3]

Further, whether the Plaintiff was overcharged $13 or $1,300 based on the purchases identified in the Complaint (Motion at 1) is not a persuasive or relevant point (though, for pleading purposes, as noted above, the Complaint appropriately

---

[2] Walmart is, of course, aware of the importance and need that its display pricing (including on Rollback Stickers, Price Stickers, and Yellow Stickers) must be accurate, not false, and not mislead its Customers. To this point, in addition to the Federal Trade Commission ("FTC") Act's prohibition on "unfair or deceptive acts or practices in or affecting commerce" (Section 5 of the FTC Act, 15 U.S.C. § 45), the FTC requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

[3] "The data are gathered item by item at the checkout aisle, then recorded, mapped and updated by store, by state, by region. Information about products, and often about customers, is most often obtained at checkout scanners…. In most cases, such detail is stored for indefinite lengths of time…." ¶95; *see also,* ¶¶93-99. "Even over a decade ago, 'trillions of bytes' worth of shopper history [was] stored in [Walmart's] computer network', and, '[b]y its own count, [Walmart] has 460 terabytes of data stored on Teradata mainframes… at its Bentonville headquarters. To put that in perspective, the Internet has less than half as much data, according to experts.'" ¶95.

identifies the specific amounts Walmart charged the Plaintiff for each product identified). Walmart accounts for more than one-quarter of <u>all</u> grocery revenues in the United States with fiscal year 2022 sales of $467 billion. ¶34. Walmart "dominates the U.S. grocery market and is, by far, the largest food retailer in the country and so it remains the number one grocery chain." *Id.* Indeed, the majority of Walmart U.S.'s *net* sales by merchandise category are in the <u>Grocery Category</u> and consisted of over $192 billion of ***net sales*** for *each* of its 2022, 2021, 2021 fiscal years. *Id.*

Indeed, Plaintiff's experience and his "$13" overcharge are demonstrative of the experiences and overcharges Walmart perpetrated on the tens of thousands of Walmart Customers who spent millions on the Sold-by-Weight Products that Walmart and its POS Systems have overcharged Customers for by inflating the products' weights and miscalculating the products' price based on the lowest advertised prices. The Complaint has amply detailed allegations that support Plaintiff's claims.

Finally, the Complaint affirmatively noted that Plaintiff filed a lawsuit in 2019 against Walmart in the United States District Court for the Southern District of Florida, captioned *Vassilios Kukorinis, et al. v. Walmart, Inc.,* Case No. 1:19-cv-20592-JEM (the "2019 Action"). ¶¶107-108. In May 2020, the court denied in its entirety Walmart's motion to dismiss the 2019 Action. *Vassilios Kukorinis v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 265146, at *2 (S.D. Fla. May 29, 2020). Just over two months later, on August 7, 2020, the parties entered into a nationwide class action settlement of the claims in the 2019 Action.

## II.   ARGUMENT

Taking as true the allegations in the Complaint, as summarized above, construing them in the light most favorable to the Plaintiff, and favoring Plaintiff with all reasonable inferences therefrom, as Eleventh Circuit precedent requires (*see Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) and *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990)), Plaintiff has adequately pled his claims for violations of the FDUTPA and analogous state consumer protection statutes and for unjust enrichment. The Complaint, consistent with the requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), does not rest on "a formulaic recitation of the elements of a cause of action" but provides detailed factual allegations that "raise a right to relief above the speculative level."

### A.   Plaintiff has Sufficiently Pled that Walmart Violated the FDUTPA

"[U]nder FDUTPA, the plaintiff must only establish three <u>objective</u> elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. GM Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016) (emphasis original) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)). In enacting the FDUTPA, "the Florida Legislature intended to create a simplified statutory cause of action . . . [for] citizens of this state to recover economic damages related to products or services purchased in a transaction infected with unfair or deceptive trade practices or acts." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 776 (Fla. 2003).

Contrary to Walmart's erroneous arguments (Motion at 7-14), Walmart's

objectively deceptive conduct is likely to deceive Customers, is directly linked to Walmart overcharging Customers, and individual reliance is not an element under the FDUTPA. Beyond that, Walmart's arguments concerning causation and damages are factual and, thus, improper bases for a Rule 12(b)(6) motion.

### (i) Plaintiff Sufficiently Pleads Causation and Damage

Walmart first argues that "Plaintiff cannot allege causation or damage because he was aware of the alleged price and weight discrepancies and continued buying the items anyway..." Motion at 7-9. Courts are clear that Walmart's arguments, which are speculative and factual, concerning causation and actual damages, are not appropriately addressed on a Rule 12(b)(6) motion. *See Schojan v. Papa Johns Int'l, Inc.*, No. 8:14-cv-1218, 2014 U.S. Dist. LEXIS 169400, at *14 (M.D. Fla. Dec. 8, 2014) (Covington, J.) (declining "to address the [FDUTPA] elements of causation and actual damages at this juncture"); *James v. Yamaha Motor Corp., U.S.A.*, No. 15-cv-23750, 2016 U.S. Dist. LEXIS 70702, at *36 (S.D. Fla. May 31, 2016) (rejecting "a fact-based [causation] argument which is inappropriate in a Rule 12(b)(6) analysis.").

Walmart's argument that Plaintiff's knowledge and that he continued to shop at Walmart affects causation and damages is misplaced. By that argument, Walmart erroneously seeks to impose "a reliance inquiry by another name" on the named Plaintiff when none exists. *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016); *see* Motion at 8–9. Arguments analogous to Walmart's, that a plaintiff does not allege an economic injury because the plaintiff, for example, concedes that she knew the

accurate price, are rejected as a basis to find a plaintiff does not have standing or has not suffered damages or an injury-in-fact:

> Defendants first argue that Plaintiff does not allege an economic injury because Plaintiff concedes that she knew the accurate debit price per gallon before she completed the transaction... However, when assessing standing, "the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims."

*Rebekah Kurimski v. Shell Oil Co.*, No. 21-cv80727, 2022 U.S. Dist. LEXIS 136040, at *10 (S.D. Fla. June 29, 2022) (citations omitted).

The cases Walmart relies on—*Sweeney v. Kimberly-Clark Corp.*, No. 8:14-cv-3201, 2016 U.S. Dist. LEXIS 21141 (M.D. Fla. Feb. 22, 2016) and *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007)—do not support its argument. Instead, both *Sweeney* and *Prohias* held that continued purchases of a product after knowing that it does not have some falsely advertised attribute *negates a "price-premium" damages theory*. For example, in *Sweeney*, the plaintiffs alleged they were damaged by paying a premium price for defendants' "flushable" wipes. *Id.* at *17. Because the plaintiffs testified that they continued to purchase the "flushable" wipes for aesthetic reasons after knowing they were not actually flushable, the court held—**at summary judgment**—that plaintiffs were "not truly seeking damages under a 'price premium' theory." *Id.* at *20; *cf. Prohias*, 485 F. Supp. 2d at 1336 ("price inflation" damages were "too speculative" where plaintiff continued to purchase Lipitor after knowing it did not have other falsely advertised attributes).[4] Here, by contrast, Plaintiff is not seeking

---

[4] Walmart's citations to California cases are likewise unhelpful to it. *Krouch v. Wal-Mart Stores, Inc.*,

some unknown "price premium" for the goods based on the misrepresentation. Plaintiff is seeking the return of his sum-certain overpayment for the goods based on the misrepresented price. ¶132.

Under the FDUTPA, causation only requires allegations that Walmart's misrepresentations "were likely to deceive a consumer acting reasonably under the circumstances. Reliance is not required for causation under FDUTPA." *Harris v. Nordyne, LLC*, No. 14-cv-21884, 2014 U.S. Dist. LEXIS 189248, at *17 (S.D. Fla. Nov. 13, 2014); *see Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011). Rather than reliance, the FDUTPA requires a "direct" causal connection between defendant's conduct and plaintiff's damages. *Knowles v. McDonald's USA, LLC*, No. 16-cv-81657, 2018 U.S. Dist. LEXIS 232744, at *18 (S.D. Fla. Feb. 9, 2018). And, to adequately allege damages, Plaintiff must allege a difference in value between the goods as advertised and the goods purchased. *See, e.g., id.* at *20–21 ("Here, the proper measure of damages . . . would be the difference between the advertised price and the amount Plaintiff was lured into paying . . .").

Plaintiff has alleged a direct causal connection between Walmart's conduct and his (and the Customers') damages. As detailed in Section I, *supra,* each of the four categories of Walmart's deceptive and unfair price-labeling and POS-System tactics

---

No. 12-cv-02217, 2014 U.S. Dist. LEXIS 152755, at *26 (N.D. Cal. Oct. 28, 2014) (summary judgment motion); *Doe v. Successfulmatch.com*, 70 F. Supp. 3d 1066, 1081 (N.D. Cal. 2014) (dismissing under Rule 9(b) for failure to allege "when, how, or under what circumstances Plaintiffs made their purchases"); *Leong v. Square Enix of Am. Holdings, Inc.*, No. 09-cv-4484, 2010 U.S. Dist. LEXIS 47296, at *11–12 (C.D. Cal. Apr. 20, 2010) (dismissing claims based on failure to disclose a forfeiture clause when, in fact, the clause was in the user manual).

results in Walmart charging Plaintiff and Customers more than the lowest advertised price for the Sold-by-Weight products.

> **(ii)  Plaintiff Sufficiently Pleads Deceptive Acts and Unfair Practices by Walmart That Were Likely to Deceive or Mislead Reasonable Consumers**

Walmart also asserts that Plaintiff has not alleged facts showing an "unfair method of competition, unconscionable act or practice, or unfair or deceptive act or practice." Motion at 10-15. Under the FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (cleaned up) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)).

"This standard requires a showing of 'probable, not possible, deception.'" *Id.* (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of Atty. Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000)). Furthermore, an objective test is used to determine whether "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo*, 823 F.3d at 983-84 (internal citation omitted). Plaintiff's allegations amply satisfy those standards.

As detailed in Section I, *supra*, and the Complaint, a Customer acting reasonably would likely be deceived by each of the four categories of deceptive and unfair price-labeling and Walmart's POS System tactics.

The Complaint's allegations of deceptive conduct are readily distinguishable

from the two cases relied on by Walmart (Motion at 12-13). In *WM Aviation, LLC v. Cessna Aircraft Co.*, No. 6:11-cv-2005, 2012 U.S. Dist. LEXIS 207955, at *16 (M.D. Fla. Apr. 13, 2012), tort, negligence, antitrust, and product liability claims were brought after a Cessna skidded off a runway at JFK Airport. In what is, here, a wholly non-instructive, non-analogous opinion, the court held that Cessna's non-disclosure of two facts to a purchaser would not constitute an unfair or deceptive practice under the FDUTPA: "that it does not disclose its proprietary engineering data to third parties and that the manufacturer-seller is the only federally-certified investigator of sites of incidents involving the product sold." *Id.* This case does not support dismissal.

The second case relied on by Walmart, *Kurimski v. Shell Oil Co.*, No. 21-cv80727, 2022 U.S. Dist. LEXIS 136040, at *10 (S.D. Fla. June 29, 2022), also does not support its position. Walmart argues (Motion at 10-14), using one example from the Complaint, from one of the four categories of wrongdoing, that a reasonable consumer would not have been deceived or overcharged because, for the seafood products, the price on the package is what the customer was charged. *Id.* at 11. Walmart does not accurately state the allegations and claims. The allegation is that the price was miscalculated by Walmart's POS Systems and that incorrect price was advertised on the seafood package and charged to the Customer at the register. ¶¶77-83. The accurate charge and what was required to be on the seafood label was based on the lowest advertised unit price. Tellingly, Walmart does not dispute two points: the information that is advertised and disclosed to the Consumer is, at minimum, inconsistent, and

Walmart's POS is "doing the math" wrong. This is unlike the plaintiff in *Kurimski*, 2022 U.S. Dist. LEXIS 136040, at *10, who, the court found, was given accurate prices, but as to the gravamen of her claim, "several factors indicate that reasonable consumers would not, upon seeing a cash price and a credit price posted outside a gas station, probably, as opposed to merely possibly, be deceived into thinking that the cash price will apply to debit transactions." *Id.* Contrary to Walmart's assertions (at 12, 13) the *Kurimski* "reasonable consumer" analysis about debit versus credit card transactions is not dispositive or on point.

Here, Walmart's conduct in miscalculating the price charged and circumventing the "Rollback" sale prices, through its POS Systems' falsely inflating a product's weight and not using the lowest advertised price for the product, was "likely to deceive a consumer acting reasonably under the circumstances" when shopping for groceries. *Harris*, 2014 U.S. Dist. LEXIS 189248, at *17, and the subtlety of the misrepresentations does not mean consumers are not likely to be deceived but rather "highlight the pervasive effect of the alleged misconduct," *Kukorinis v. Walmart, Inc.*, 2020 U.S. Dist. LEXIS 265146, at *15 (S.D. Fla. June 1, 2020).

Finally, Walmart claims that "even if a consumer does not realize the discrepancy until *after* he has already bought the item, he has yet another opportunity to address the issue by returning the item." Motion at 13-14. That argument is erroneous for several reasons. If valid and countenanced, it would undermine the FDUPTA. It would give every retailer and manufacturer *carte blanche* to violate the

FDUPTA, so long as they offered a return policy. Moreover, it is based on a misstatement of how "generous" Walmart's return policy is; Walmart "reserves the right to limit or decline returns or exchanges regardless of whether the customer has a receipt… The store manager retains final authority to accept or decline any item that is eligible for return." *See* https://www.walmart.com/cp/returns/1231920 (last visited 2.2.2023, screenshots attached as Exhibit A). Indeed, the very point of the lawsuit is for Plaintiff and the putative class to obtain damages for Walmart's unfair and deceptive conduct, specifically for the amount Walmart overcharged them as a result of the fraud, and to stop Walmart from continuing its deceptive and unfair price-labeling and POS System tactics.

### B.   Plaintiff has Adequately Alleged a FDUTPA Claim for Declaratory and Injunctive Relief in Count II

In Count II, Plaintiff seeks a declaratory judgment and injunctive relief to enjoin Walmart from continuing its unfair and deceptive acts, as the FDUTPA expressly permits. ¶¶144.a–b. The FDUTPA Section 501.211(1) states:

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment . . . and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

First, the express language of the FDUTPA permits Plaintiff to seek both damages, including monetary damages, as Plaintiff has in Count I, and declaratory and injunctive relief, "[w]ithout regard to any other remedy or relief" (*id.*), as Plaintiff has in Count II. Therefore, Walmart's argument that Count II should be dismissed as

"duplicative" of Plaintiff's claim for damages is meritless.[5] Motion 14–15.

Second, as noted above, Plaintiff has suffered "actual damages," but the FDUTPA also permits "anyone aggrieved" to also seek declaratory/injunctive relief. Florida courts have explained that "'aggrieved' is more expansive than 'damaged' or 'suffered' a loss" and includes persons "angry or sad on grounds of perceived unfair treatment." *O'Keefe v. Pick Five Imps.*, No. 8:18-cv-1496, 2019 U.S. Dist. LEXIS 240218, at *29–30 (M.D. Fla. June 14, 2019) (quoting *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172 (Fla. 1st Dist. Ct. App. 2015)). Plaintiff's allegations amply demonstrate how he, and Walmart Customers, are aggrieved by Walmart's deceptive conduct. *E.g.*, ¶¶4, 132, 141.[6]

Finally, Plaintiff has Article III standing to pursue injunctive relief. As Walmart concedes, the FDUTPA is "broadly worded to authorize declaratory and injunctive

---

[5] None of the cases Walmart cites is on point because, with one exception, they do not address FDUTPA and instead hold that declaratory relief is duplicative of a breach of contract claim, because logically (but inapplicable here) a declaration that a party breached a contract is tantamount to holding it liable for breach of contract. *See Waterford Condo. Ass'n of Collier Cty. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81, 2019 U.S. Dist. LEXIS 177731 (M.D. Fla. Mar. 18, 2019) (declaratory relief claim duplicative of breach of contract claim); *Diaz Fritz Grp., Inc. v. Westfield Ins. Co.*, No. 8:20-cv-785, 2020 U.S. Dist. LEXIS 91009, at *7 (M.D. Fla. May 26, 2020) (same); *Seigel v. Provident Life & Accident Ins. Co.*, No. 8:16-cv-00584, 2016 U.S. Dist. LEXIS 98330 (M.D. Fla. July 27, 2016) (anticipatory breach of contract and declaratory relief); *see also Knights Armament Co. v. Optical Sys. Tech.*, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) (declaratory judgment of violation of trademark duplicative of trademark violation claim). Of course, that context is also distinguishable from Plaintiff's Count II, grounded in a statute that expressly permits injunctive relief to enjoin continuing deceptive and unfair conduct. Fla. Stat. § 501.211. In the other case cited by Walmart, *Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 16-cv-81019, 2017 WL 1292983 (S.D. Fla. Jan. 31, 2017), the court dismissed the FDUTPA claim for declaratory relief because the alleged losses actually flowed from the breach of contract claim. Here, of course, there is no contract claim.

[6] The cases Walmart relies on are irrelevant as the plaintiffs in those cases did not actually purchase the product at issue there. *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (not aggrieved because no allegation that any consumer purchased the medication at issue); *Haun v. Don Mealey Imps.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) (not aggrieved because plaintiff did not purchase the vehicle at issue); *see also Prohias*, 485 F. Supp. 2d at 1336 (discussed *supra*).

relief even if those remedies might not benefit the individual consumers who filed the suit." *O'Keefe*, 2019 U.S. Dist. LEXIS 240218, at *35 (citation omitted). Although Plaintiff must plead a likelihood of future injury to establish Article III standing, that requirement is satisfied when Plaintiff "allege[s] an intent to resume purchasing the products at issue in the future." *Jackson v. Anheuser-Busch Inbev SA/NV, LLC*, No. 20-cv-23392, 2021 U.S. Dist. LEXIS 155556, at *24 (S.D. Fla. Aug. 18, 2021) (collecting cases). Plaintiff alleged he "will continue to shop at Walmart." ¶¶4, 90, 108, 110, 137. Plaintiff has standing to pursue declaratory and injunctive relief. Thus, having sufficiently pled a separate FDUTPA claim, in Count II, for declaratory and injunctive relief, Walmart's Motion must be denied.

### C.   Count III is Not a "Shotgun" Pleading

Walmart's arguments with respect to Count III (Motion at 16-18) are misplaced for two primary reasons. *First*, the Eleventh Circuit recently confirmed that seeking dismissal on shotgun-pleading grounds is proper "when 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Inform Inc. v. Google LLC*, No. 21-13289, 2022 U.S. App. LEXIS 24107, at *11-13 (11th Cir. Aug. 26, 2022). In *Inform,* the Eleventh Circuit held that despite the complaint not being a "paragon of clarity," that "did not prevent the district court or the Google defendants from understanding the basis of Inform's core antitrust claims for monopolization offenses, exclusive dealing, and tying." *Id.*

In stark contrast, here, in this single Defendant case (so that all alleged conduct

is applicable to and pled as against it), wherein the Counts are based on the same misconduct and allegations, Walmart has more than "adequate notice of the claims against [it] and the grounds upon which each claim rests," even if the "complaint [were to] display some of the characteristics of . . . shotgun pleadings . . . ." *Id.* at *13-14 (cleaned up).[7] Likewise, in *Wave Length Hair Salons v. CBL & Assocs. Props.*, No. 2:16-cv-206, 2017 U.S. Dist. LEXIS 223693, at *26-27 (M.D. Fla. Apr. 10, 2017), the court held that the "re-alleging of a common fact section into each count does not necessarily constitute a shotgun-pleading unless the failure to allot facts into each count materially increases the burden of understanding the factual allegations associated with each" count. *Id.* In this Action, there is no need nor requirement under the facts and claims alleged to "allot" facts, as the factual allegations in the Complaint are all applicable to Walmart and to each Count. There is no burden on, or lack of understanding by, Walmart present here. The factual allegations are plainly stated, set forth in a methodical, orderly fashion, and all the factual allegations are associated with each Count of the Complaint.

*Second*, Walmart's "shotgun pleading" argument includes an assertion that Plaintiff "cannot assert claims under the laws of states other than Florida, ***because he alleges no injury*** in any other state." Motion 17-18 (emphasis added). At best, Walmart's argument is premature. In fact, Plaintiff does not need to allege an injury

---

[7] *Compare Magluta v. Samples*, 256 F.3d 1282, 1282-84 (11th Cir. 2001) (Complaint that asserted a variety of constitutional claims relating to the conditions of plaintiff's confinement against fourteen federal officials, without distinction among the 14 geographically dispersed officials, while also incorporating the allegations of any count or counts that precede it, is a shotgun pleading).

in any other state. Routinely, courts defer "consideration of whether the plaintiffs have standing to pursue national class claims to the class certification stage when considering the trial plan's analysis of the elements of the common law claims in the relevant states." *In Re: Checking Acct. Overdraft Litig.*, Case No. 10-22190, 2016 U.S. Dist. LEXIS 195555, 2016 WL 5848730, at *2 (S.D. Fla. July 5, 2016); *see also Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1230 (S.D. Fla. 2015) ("it is appropriate to defer standing objections until after class certification"); *Fuller v. USAA Gen. Indem. Co.*, No. 20-cv-62237, 2021 U.S. Dist. LEXIS 255620, at *5 (S.D. Fla. Nov. 9, 2021).

Furthermore, in a November 7, 2022 opinion, the Eleventh Circuit rejected the argument that a plaintiff did not have standing to bring "claims on behalf of class members whose claims arise under the laws of states in which no named [CTPPCC plaintiff] reside[s] or purchased ranitidine products." *Zantaz (Ranitidine) Prods. Liab. Litig. Plumbers & Pipefitters Local Union 630 Welfare Fund. v. Glaxosmithkline LLC*, No. 21-10335, 2022 U.S. App. LEXIS 30823, at *12-13 (11th Cir. Nov. 7, 2022).

Other courts are in accord as to the applicable analysis in the context of a motion to dismiss when a *class action* pleading alleges claims brought under statutes of various states' consumer protection laws. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (analyzing claims brought under the statutes of Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, Missouri, New Jersey, and New York and collecting cases Courts in this District apply the states' consumer protection laws interchangeably

because, "while they differ in certain particulars, all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer.").[8] Accordingly, Walmart's Motion to dismiss Count III must be denied.

**D.**  **Count IV of the Complaint Properly Pleads a Claim for Unjust Enrichment**

Walmart's argument that Plaintiff cannot assert a claim for unjust enrichment fails for three reasons. *First*, in *Day v. Sarasota Doctors Hosp.*, No. 8:19-cv-1522, 2020 U.S. Dist. LEXIS 239220, at *17 (M.D. Fla. Feb. 7, 2020) (Covington, J.), cited by Walmart at 19, this Court held that: "In the case of unjust enrichment claims, however, '[i]t is only upon a showing that an express contract exists that the unjust enrichment . . . count fails." (citing *Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)). There is no express contract alleged or asserted by Walmart.

*Second*, district courts in Florida have taken opposing views on whether a claim for unjust enrichment may be premised on "wrongful" conduct, as discussed in the May 3, 2022 decision in *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. Larocca*, No. 8:21-cv-2536, 2022 U.S. Dist. LEXIS 84248, at *14-17 (M.D. Fla. May 3, 2022). Nevertheless, the court in *State Farm* aptly pointed out: (i) "Courts finding that unjust enrichment cannot be premised on wrongful conduct have done so by

---

[8] *Rawson v. Aldi*, No. 21-cv-2811, 2022 WL 1556395, at *5 (N.D. Ill. May 17, 2022) (denying motion to dismiss putative class claims brought under New York and 33 other state consumer protection statutes and holding that argument "goes to the propriety of class certification"); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D. Ill. 2021) (declining to dismiss multi-state class claims on standing grounds, noting that "[w]hat MAM is really challenging is whether Freeman (or, actually, any Illinois resident who bought pacifiers only in Illinois) can satisfy the Civil Rule 23 class-certification requirements as applied to a nationwide and multi-state class).

relying on *Guyana* and/or *Flint*, specifically, a footnote in each case in which the Eleventh Circuit, in dicta, quotes a law review article on unjust enrichment (which itself, does not mention Florida law)" and (ii) there is an absence of "any Florida legal authority for the proposition that an unjust enrichment claim under Florida law cannot be premised on wrongful conduct." *Id.* The court then rejected defendants' argument that plaintiff's unjust enrichment claim should be dismissed on the basis that it may be premised on "wrongful" conduct. *Id.*[9]

*Third*, Plaintiff's unjust enrichment claims should not be dismissed because, like in *State Farm,* "[v]iewing the allegations in the light most favorable to Plaintiffs, the unjust enrichment claim is adequately pled in the alternative ***in anticipation of Defendants claiming that they committed no wrong***." *Id.* (emphasis added) (citations omitted). In its Motion, Walmart has claimed (and will continue to claim) that it did no wrong. Accordingly, Walmart's motion to dismiss Count IV should be denied.

### E.  Walmart's Arguments That Plaintiff Released Claims Prior to August 26, 2020 are Without Merit and Premature

Walmart makes an erroneous characterization that "Plaintiff acknowledged in the Complaint" that his "previously asserted claims against Walmart…[were] based on the same alleged discrepancies he attempts to re-assert here" to then argue that the settlement release in the prior lawsuit is relevant here. Motion at 21. The Complaint,

---

[9] *See also Gov't Emps. Ins. Co. v. Kalin*, 2022 U.S. Dist. LEXIS 36982, 2022 WL 613808, at *4 (M.D. Fla. Mar. 2, 2022) ("Thus, even assuming that an unjust enrichment claim may not be predicated on wrongful conduct, dismissal is not warranted."); *AIM Recycling Fla., LLC v, Metals USA, Inc,* 2019 U.S. Dist. LEXIS 78027, 2019 WL 1991946, at *2 (S.D. Fla. Mar. 4, 2019) (declining to dismiss unjust enrichment claim in a medical fraud case where the claim was adequately but not artfully pled in the alternative to wrongful conduct).

however, does not allege what Walmart states it does. The Complaint alleges that the prior lawsuit was about "other false and misleading pricing practices." ¶¶107-108.

Critically (even *assuming arguendo* that the release did cover the claims asserted in this Action before August 26, 2020, which it does not), under no circumstance is the 2019 Action dispositive of any of Plaintiffs' claims asserted against Walmart in this Action. Walmart admits this, as the relief sought by its Motion is solely to limit the claims and damages to those that occurred after August 26, 2020. Motion at 21.

Therefore, what Walmart is prematurely asking this Court to do, under the guise of a motion to dismiss and based on an undeveloped factual record, is to issue a ruling setting the "class period" to begin as of August 26, 2020. Whether a release (or any other fact) impacts the start date of class period can only be determined after discovery, at the time Plaintiff moves for class certification, and must be based on a developed record that establishes the time period during which Walmart's misconduct occurred. *Budicak, Inc. v. Lansing Trade Grp., LLC*, 452 F. Supp. 3d 1029, 1057 (D. Kan. 2020) (rejecting defendant's argument on a motion to dismiss that the court should "confine the beginning of the proposed Class Period" on the grounds that the motion is premature and cannot be decided on the existing record).[10]

---

[10] *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 307 (S.D.N.Y. 2003) ("[A] class period should not be cut off if questions of fact remain as to whether the disclosures completely cured the market."). Analogously, courts reject similar arguments concerning *res judicata* and statute of limitation defenses raised at the motion to dismiss stage. *See C & J Glob. Invs., Inc. v. Knight*, No. 8:16-cv-1039, 2017 U.S. Dist. LEXIS 186644, at *4 (M.D. Fla. May 11, 2017) ("Defendants' res judicata defense necessarily entails an evaluation of matters outside the pleadings, i.e. the claims and defenses adjudicated in a related case, the Defendants' res judicata argument is premature. Like the statute of limitations defense, the Motion to Dismiss must be denied without prejudice to the Defendants' right to reassert their res judicata defense at the proper stage of the proceedings.").

There is an additional basis to reject Walmart's premature, non-dispositive argument. Walmart does not apply or meet the correct legal standard to support a finding that the time period for these claims should be shortened by the settlement release. Walmart erroneously argues and then bases its Motion on the assertion that "the allegations [in the two cases] need not be identical. Rather, courts look to whether 'the primary right and duty are the same.'" Motion at 22 (citing *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007)).

However, under applicable precedent, Walmart fails to demonstrate, as it must, that the cases are based on the "same factual predicate." By its very argument it concedes that it has not done so. *See* Motion at 21-24 (the claims "arise from the same fundamental theory"). Walmart ignores *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020). In *TVPX,* the Eleventh Circuit stated that a demonstration was required of both (1) the primary right and duty at issue in the current case were also at issue in the prior case; **and** (2) an identical factual predicate. *Id.* In *TVPX*, the Eleventh Circuit cites to *Adams v. S. Farm Bureau Life Ins. Co,* 493 F.3d 1276, 1289 (11th Cir. 2007)*,* which is heavily cited and relied on by Walmart (Motion at 22-25) and was also relied on by the lower court in *TVPX*. The Eleventh Circuit expressly found that while *Adams* applied, and, there, the two actions did concern the same "primary right and duty," that ***was not*** the end of the analysis as a finding that there was an "identical factual predicate" was required. *Id.*[11]

[11] Likewise, this Court's decision in *Kreger v. Medicredit, Inc.*, No. 8:16-cv-1481, 2016 U.S. Dist. LEXIS 93889 at *10-11 (M.D. Fla. July 19, 2016) (Covington, J.), cited by Walmart at fn. 18, merits no

In addition, the lower court's opinion, which the Eleventh Circuit addressed in *TVPX sub nom.*, *McBride v. Genworth Life & Annuity Ins. Co.*, No. 4:00-cv-217, 2019 U.S. Dist. LEXIS 202572, at *20, 27 (M.D. Ga. Mar. 15, 2019), correctly points out that: (1) "Although a class action settlement may define the scope of the release negotiated by the parties, the 'identical factual predicate' rule marks the 'outer limit' on the preclusive effect of a final judgment entered on a class action settlement," and (2) that an identical factual predicate cannot exist if there has been a "modification of significant facts creating new legal conditions" between the first and second suits. Walmart cannot rely on just the existence of what it deems a "broad" release; rather, the import of that release, if any, is limited by any demonstrated, not self-servingly contrived, "identical factual predicate" between this and the 2019 Action.

The court in the 2019 Action denied Walmart's motion to dismiss, in its entirety, describing the gravamen of the complaint as Walmart having "consistently reduced the price of Weighted Goods nearing expiration but continually stat[ing] incorrect unit prices on the labels of said Weighted Goods. 2020 U.S. Dist. LEXIS 265146, at *2. That "factual predicate" is not alleged here.[12] Neither is the "fundamental theory" espoused by Walmart (Mot. at 24) that "all the claims relate to

---

different conclusion, as this Court, based on the face of the complaint and the record there, specifically found that the case "arose from the same factual predicate."

[12] Only the claims with respect to "Walmart's Overcharging on Sold-by-Weight Clearance Products" (¶¶59-73) allege deceptive conduct with respect to the products nearing expiration, which are denoted with the "Yellow Sticker." Plaintiff does not allege, though, that the "Yellow Stickers" have an incorrect unit price or incorrect weight. Plaintiff alleges that Walmart's POS Systems wrongly calculate and deceptively charges a price that circumvents the lowest advertised unit price on the Yellow Sticker. *Id.*

alleged deception as a result of incorrectly advertised weight or unit price." Even if that is what the 2019 Action alleged, that is not at all what is alleged here. None of Plaintiff's allegations and the four categories of deceptive practices allege that Walmart *advertises* incorrect unit prices or weights.

At best, this non-dispositive argument, that solely seeks to shorten the class period, requires discovery before any finding on an "identical factual predicate" can be made; though, like in *TVPX*, that discovery will confirm that Walmart cannot meet its burden to have the release from the 2019 Action shorten the time period by which Walmart should be held accountable for its deceptive and unfair conduct. *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, No. 4:00-cv-217, 2022 U.S. Dist. LEXIS 53407, at *3 (M.D. Ga. Mar. 24, 2022) (on remand, the parties conducted discovery, defendant renewed its motion to enforce class settlement, and the court held that defendant did not meet its burden).[13]

## III.   <u>CONCLUSION</u>

Walmart's Motion to Dismiss should be denied in full.

---

[13] In its "Conclusion," without legal support, Walmart states that the Complaint should be dismissed with prejudice. Motion at 15. If the Court were to grant any part of Walmart's Motion, only dismissal without prejudice is warranted, so Plaintiff is appropriately given the opportunity to file or seek leave to file an amended complaint to cure any deficiencies identified by the Court. *See, e.g.*, *Munoz v. CitiMortgage, Inc.*, No. 8:20-cv-2311, 2021 U.S. Dist. LEXIS 26287, at *11-12 (M.D. Fla. Feb. 11, 2021) (Covington, J.) ("Although the Court previously dismissed the original complaint for this reason, the Court finds dismissal without prejudice appropriate.") (citing *Paschette v. Wells Fargo Bank, N.A.*, No. 6:11-cv-442, 2011 U.S. Dist. LEXIS 101677, 2011 WL 3962274, at *2 (M.D. Fla. Sept. 8, 2011) (providing the plaintiff with one last leave to amend although he had again failed to sufficiently allege the damages element of RESPA)).

Dated: February 3, 2023   Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**

*By: /s/Kimberly M. Donaldson-Smith*
Nicholas E. Chimicles
Kimberly M. Donaldson-Smith
Zachary P. Beatty
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
nec@chimicles.com
kds@chimicles.com
zpb@chimicles.com

*Counsel for Plaintiff and the proposed classes*

**<u>Certificate of Service</u>**

I hereby certify that on February 3, 2023, the foregoing document was served on Defendant's counsel by the Court's electronic filing system.

_/s/ Kimberly M. Donaldson-Smith_
Kimberly M. Donaldson-Smith