## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated,

      Plaintiff,

v.

WALMART INC.,

      Defendant.

Case No. 8:22-cv-02402-VMC-TGW

## [PROPOSED] STIPULATED AGREEMENT RE: PROTOCOL FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

    Plaintiff, Vassilios Kukorinis, and Defendant, Walmart Inc., (each, a "Party" and collectively, the "Parties"), by their respective counsel, hereby stipulate and agree to the following protocol ("Protocol") for the production of discoverable documents originating from hard copy sources and as electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and subject to the parties' Stipulated Confidentiality Agreement.

**General Provisions**

    1.    As used herein, "Electronically Stored Information" or "ESI" is coextensive with Fed. R. Civ. P. 34, and means all information, Documents, data or files of any kind recorded or stored electronically, regardless of the Media[1] or whether it is in the original format in which it was created. As used herein, "Document(s)" means, consistent with Fed. R. Civ. P. 34(a), any hard copy or electronically stored information.

---

[1] As used herein, "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, flash drive, server, cloud-based storage, virtual machine, or other device on which data is or was recorded or stored.

1

2.　　As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing documents in response to the request of requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

3.　　This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. This Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Fed. R. Civ. P. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

4.　　Nothing in this Protocol shall be deemed to prevent any Party from agreeing to terms different than or inconsistent with the terms of this Protocol. Such agreement and the modifications or revisions shall be made in writing.

5.　　Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

6.　　Consistent with Fed. R. Civ. P. 26(b)(1), the Parties will seek discovery regarding any non-privileged matter, including data, relevant to any Party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing contained in this Protocol shall operate or be construed to either limit or restrict a Party's discovery rights available to it pursuant to the

Federal Rules of Civil Procedure and relevant decisional authority.

**Preservation**

7.      Nothing in this Protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under Fed. R. Civ. 26(b)(1).

8.      Pursuant to Fed. R. Civ. P. 26(b)(1), the Parties have and will continue to take reasonable steps in good faith to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any Document or data the Party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P. 26(b)(1).

**Hard Copy Documents**

9.      The Parties will produce Documents that are physical, tangible, paper originals or copies, and hard copies or originals ("Hard Copy Documents") in a single-page Group IV Tagged Image File Format ("TIFF") format (black and white, 300 dpi) with corresponding searchable OCR text, along with the fielded data listed in Paragraph 14 when available. Each image should have a unique file name, which is the Bates number of the page.

10.      Unless not feasible, original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape) and the Bates number and confidentiality legend (if any) shall be outside of the margins of the imaged pages.

11.      In scanning Hard Copy Documents, such documents shall be scanned so that they can be produced as they are kept in the normal course of business and so as to preserve their organizational structure. At present, the Parties do not anticipate that either of them will need to produce a significant volume of Hard Copy Documents. If, however, a Party's investigation reveals custodians with responsive Hard Copy Documents in file folders, binders or other organizational formats, the Parties will meet and confer regarding a cost effective and efficient

manner to process and produce such documents so as to preserve their original organizational format.

12.     For Hard Copy Documents that are in color, the Producing Party will endeavor to produce the Documents in color, and will produce specific images of the Document in color if the color is necessary to understand the meaning or content of the Document. Any Documents produced in color shall be produced in JPG format.

13.     For Hard Copy Documents, the Parties will provide a standardized Database Load File with a Cross-Reference File as described in Exhibit A. The Database Load File (which shall be compatible with Concordance and other document review platforms), shall include a Bates number field to match text and fielded data with TIFF images. The total number of documents referenced in a production's Database Load File should match the total number of TIFF files in the production.

14.     With respect to Hard Copy Documents, data on the Database Load File will include:

   a.     Beginning Document Bates Number
   b.     Ending Document Bates Number
   c.     Beginning Family Bates Number (begins with 1st page of parent)
   d.     Ending Family Bates Number
   e.     Custodian or Source
   f.     Confidentiality Designation
   g.     Page Count
   h.     Redaction (Y/N)
   i.     Text File Path, including filename and extension (.txt)

**Electronically Stored Information and their Attachments**

Discovery of ESI shall proceed as follows:

15.     The Producing Party shall conduct a reasonable and good faith search for documents and ESI that are subject to production under the Federal Rules of Civil Procedure. To filter ESI for relevancy prior to review and production, a Producing Party may do one or more of

the following, so long as the process used meets the standard of care promulgated in Fed. R. Civ. P. 26(g): (i) use keyword search terms that it in good faith believes will capture responsive ESI and review search term hits for responsiveness, (ii) limit the collection and review of ESI to the custodians the Producing Party reasonably believes have unique documents responsive to the document requests (iii) limit the collection and review of ESI to a reasonable date range based on the claims asserted, and/or (iv) use technology assisted review techniques. The foregoing is not lieu of nor to the exclusion of the process and searches provided for in the following Paragraph 16.

16.    In addition, the Producing Party and Requesting Party shall meet and confer to identify, propose and discuss the identity of persons that have discoverable information, custodians, keyword search terms, and the search methodology to be used by the Producing Party. The Parties will work collaboratively in an attempt to agree on the identity of persons that have discoverable information, custodians and a set of keyword search terms to be used, including any additions or revisions to such terms, on the understanding that this may be an iterative process. The Producing Party may test any proposed keyword search terms so as to determine the reasonableness of any proposed term, including to identify search terms that may be objectionable because they pose an undue burden and to propose alternative search terms that reasonably limit the documents for review to a number proportional to the needs of the case. Documents that are hit by search terms but which are not responsive need not be produced. Nothing in this Protocol shall be deemed to be a waiver of any right or responsibility of the Producing Party to manage and control searches of its data files, including the right, upon notice to the Receiving Party, to make good-faith revisions to search terms, and to withhold search terms hits for privilege. Nothing in this Protocol shall be deemed to be a waiver of either party's right to seek relief from the Court

with respect to the identification of and production of documents from any custodian or person, using identified keywords or methodologies.

17.     The Parties will produce relevant spreadsheets (*e.g.*, Microsoft Excel), PowerPoint files, database files, oversized drawings, picture files, audio files, and video files not requiring redaction in Native format,[2] along with the extracted text and Metadata fields identified in Paragraph 20, or will ask the receiving party to meet and confer regarding a reasonable alternative form of production. The file name for the documents produced in Native format will consist of a Bates number and a confidentiality designation if available. The parties will provide a corresponding placeholder TIFF image (or PDF if production format dictates) for Native files included in a production bearing a sequential BATES number within the family BATES range and bear the legend "This document produced in Native file format only."

18.     The Parties will produce in black and white and shall meet and confer regarding the production of color images if the color is necessary to understand the meaning or content of the Document.

19.     Except as otherwise stated herein, the Parties will produce documents originating as ESI, or kept as such in the ordinary course, in TIFF format with extracted text (or searchable PDF if production format dictates), along with the Metadata fields listed in Paragraph 20 when available. The Parties will provide a standardized Database Load File with a Cross-Reference File as described in Exhibit A. The Database Load File (which shall be compatible with Concordance and other document review platforms), shall include a Bates number field on the Load File to

---

[2] "Native", means the format in which Documents were created. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, Native files should be collected, processed, and produced in a manner that does not alter the Metadata associated with those files. "Metadata" means embedded data that may not be readily apparent in any document.

match text and Metadata with TIFF images (Load File may be omitted with a PDF format production).

    20.    With respect to ESI, Metadata on the load file will include:

    a.  Beginning Document Bates Number
    b.  Ending Document Bates Number
    c.  Beginning Family Bates Number (begins with 1st page of parent)
    d.  Ending Family Bates Number
    e.  Custodian or Source
    f.  Duplicate Custodians
    g.  Author [any value populated in the Author field of the document properties]
    h.  Confidentiality Designation
    i.  Page Count
    j.  Redaction (Y/N)
    k.  Document Date (if available)
    l.  Create Date [Date and time the document was created- mm/dd/yyyy hh:mm AM/PM]
    m.  Last Modified date  [Date and time the document was last modified- mm/dd/yyyy hh:mm AM/PM]
    n.  File Name (including extension)
    o.  File Extension
    p.  File Size
    q.  Document Type
    r.  Email From
    s.  Email To
    t.  Email CC
    u.  Email BCC
    v.  Email Subject
    w.  Email Date Received
    x.  Email Time Received
    y.  Email Date Sent
    z.  Email Time Sent
    aa. Email Importance
    bb. Timezone (UTC) {consider **local time zone** option for "time" fields}
    cc. MD5 Hash Values
    dd. For emails only, File Path [path location where the  email was stored]; with respect to other documents, the Parties recognize that File Path information may reveal proprietary information and in such cases the Parties will meet and confer regarding whether the File Path may be produced or if an overlay may be provided.
    ee. Text Path [path to extracted text or OCR for the document, including filename and extension (.txt)]
    ff. Native File Path [the path to a native-format file for the document if one exists, including filename and extension]

21. **Redactions**:

    a.   The Parties may redact (1) information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) information subject to non-disclosure obligations imposed by governmental authorities, law or regulation (*e.g.*, protected personal information); and (3) sensitive, non-relevant information, including but not limited to personally identifiable information, trade secrets, or information regarding products, data, or people, within documents that contain relevant information.

    b.   If a spreadsheet (including Excel spreadsheets) requires redaction, it should be redacted natively and produced in Native format, along with the extracted text and relevant Metadata identified in Paragraph 20 for the entire spreadsheet. An unredacted copy of the spreadsheet will be preserved and the Producing Party will indicate whether redactions caused changes in any unredacted data fields (*e.g.*, formulas).

    c.   Slide shows requiring redaction will be produced as TIFF images with corresponding searchable OCR text (or in searchable PDF if production format dictates) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure, and making reasonable efforts to unhide hidden content and present text. The Producing Party shall retain an unredacted, original copy.

    d.   The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production format dictates) and the

associated Metadata for the document, ensuring the redacted content is fully protected from disclosure.

22. **Encrypted or Corrupt Files:**  The Producing Party will take reasonable steps, prior to production, to unencrypt or restore any discoverable ESI that is encrypted (*e.g.*, password-protected) or corrupt, and will produce relevant, non-privileged documents that can be reasonably unencrypted or restored.

23. **Dynamic Fields:** Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

24. **Embedded Objects:** Objects embedded in Microsoft Word or Excel, and RTF documents that have been embedded with the "Display as Icon" feature, shall be extracted and produced as standalone files along with corresponding attachment Metadata to the parent document.

25. **Compressed files:**  Compression file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files. The parent/child relationship of these files shall be preserved and reflected in the applicable attachment Metadata fields.

26. The Parties may withhold documents, or portions thereof, from production by designating the documents, or portions thereof, privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity ("Privileged Documents") in accordance with federal discovery rules and the Parties' ***Stipulated Confidentiality Agreement***. The Parties will not produce non-relevant attachments that are

attached to relevant emails, provided however that the Receiving Party reserves the right to seek production of any non-relevant attachments, and the Producing Party will meet and confer in good faith with the Receiving Party regarding such requests. When an attachment is withheld, the Producing Party shall produce a one-page TIFF image (or PDF if production format dictates) in place of the withheld attachment, correspondingly stating "Attachment Withheld-Privileged" or "Attachment Withheld-Nonresponsive", and bearing a sequential BATES number within the family BATES range.  If non-relevant attachments are withheld, the Producing Party will also identify the file name(s) of the non-relevant attachments being withheld, either on the face of the email to which it was attached and/or on the TIFF image or PDF slipsheet.

27.     Within 45 days of the conclusion of a document production or productions for a related group of custodians[3], the Producing Party will produce a privilege log in PDF format (or Microsoft Excel) indicating the Privileged Documents withheld from production, including (1) date; (2) author(s); (3) addressee(s); (4) a brief description of the subject matter and form of the document and attachments; and (5) statement of the basis upon which the privilege is claimed. If documents are voluminous, the Parties shall meet and confer regarding a category log for such documents. Inadvertent failure to log privileged documents will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

---

[3] The Parties recognize that productions may be done on a rolling basis and that it may not be feasible to complete a privilege log until production of documents from a related group of custodians have been completed.  In such case, the Parties shall meet and confer as to the timing for production of a privilege log.

28.     The Parties further agree that the following Privileged Documents, or redacted portions thereof, presumptively need not be included on a privilege log: (a) privileged communications relating to this Action between and among a Party and its counsel (including counsel at a Party's law firm of record in this Action as well as in-house counsel for the Party) occurring since the filing of the Action; and (b) Attorney Work product relating to this Action created by a Party's counsel (including counsel at a Party's law firm of record in this Action as well as in-house counsel for the Party), or by an agent of such law firm or in-house counsel other than the Party (including employees of a Party acting under the direction of law firm or in-house counsel), since the filing of the Action.

29.     **De-duplication:** The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and will produce only a single copy of identical ESI.

a.  As used herein, **"Duplicate ESI"** means files that are exact duplicates based on the files' MD5 or SHA-1 hash values ("Hash"). File contents together with associated metadata will be used for Hash calculation and will not include operating system data. Duplicate messaging files, including Message Threads[4], will be identified based upon Hash values for the message family, including parent object and attachments. All metadata fields will be used to create the unique Hash value for each message, Messaging Threads, and for all attachments, in attachment order. Duplicate messaging materials will be identified at a family level, including message and attachment(s). All files bearing an identical Hash value are a duplicate group.

---

[4] As used herein, **"Message Thread or Threading"** means a single message conversation that starts with an original message (the beginning of the conversation) and includes all of the subsequent replies and forwards pertaining to that original message.

11

The document reviewed for privilege, relevance, or confidentiality shall be deemed the primary duplicate document within the group.

b.  The Producing Party shall produce only a single copy of responsive Duplicate ESI. Entire document families may constitute Duplicate ESI. De-duplication shall not break up document families. The Producing Party will produce the most inclusive Message Thread and all prior or lesser included Message Threads that were collected and identified as responsive and not privileged.  A most inclusive Message Thread is one that contains all of the prior or lesser-included messages, including attachments, for that branch of the Message Thread.

c.  All custodians of a de-duplicated document must be identified in the "Duplicate Custodians" Metadata field specified in Paragraph 20. If the Producing Party de-duplicates ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians. An overlay data file shall be produced after every rolling production to account for updated duplicate custodian information in the Custodian field.

d.  The Parties shall not remove any of the Metadata fields from identified Duplicate ESI. If the Parties redact such fields, they may substitute and replace the subject and text fields in the other documents within the duplicate group with those reviewed by counsel in the primary Duplicate ESI document. The Parties shall only produce one document image or Native file for Duplicate ESI documents within the group.

c.  Except as otherwise allowed herein, the Parties shall preserve parent-child relationships (the association between an attachment and its parent document)

where possible. The parties will provide a Beginning Family Bates Number and

Ending Family Bates Number for each produced attachment in the Data Load file.

30.     The Parties shall assign a Bates number to individual pages of TIFF documents (or

PDF documents) and a Bates number to each document produced in Native format. Bates numbers

shall be unique across the entire document production and sequential within a given document.

The Parties will use the following Bates numbering convention:

      a.     Walmart: WM_VK0000001

      b.     Plaintiff: VK0000001

31.      The Parties understand that this protocol contemplates rolling productions of

documents, and they acknowledge that nothing in this Order waives, restricts or eliminates the

Parties' respective rolling production obligations, the Parties' respective supplementation

obligations, or the Parties' "claw-back" rights and obligations pursuant to the ***Stipulated***

***Confidentiality Agreement*** in this case.

32.     If the forms of production allowed by this Protocol present an undue burden or cost

for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative

form of production.  Nothing in this Protocol prohibits a Party from seeking relief from this

Protocol pursuant to the applicable federal discovery rules.

33.     When documents produced in accordance with this Protocol are used in any

proceeding herein, including depositions, hearings, or trial, the image copy of documents as

described herein (Paragraphs 6, 9, 17-20) shall be the copy used unless the image copy is so

illegible or unwieldy to make it infeasible to use as a deposition exhibit, in which case the Native

version may be used.  If the Native version is used as an exhibit, the record of the deposition must

identify the exhibit using its BATES number, and the BATES number shall also be written on any

paper or electronic copy of the exhibit.  The confidentiality designation of the document shall also be stated on the record of the deposition and shall be written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any document.  This paragraph does not apply to any summary exhibits or demonstratives.

34.     Each Party will bear the costs to process and review its own documents according to this Protocol. Notwithstanding this paragraph, nothing in this Protocol limits or prohibits a prevailing Party from seeking recovery of all allowable fees and costs, including attorney fees and costs, as may be permitted under applicable law.

35.     Nothing in this Protocol shall be construed to affect, modify or amend the Parties' *Stipulated Confidentiality Agreement.*

36.     Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable federal discovery rules.

**Production of Databases and Other Structured Data**

37.     Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

38.     The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form (PDF, Excel, csv).

14

39.      Nothing herein shall obligate a Producing Party to custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting.

**Other Data Sources**

40.      The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**Deficiency Procedure**

41.      If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts and to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional proportional production criteria to cure the deficiency.

42.      If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court.

**Clawback Provision**

43.      The production of privileged or work-product protected documents, ESI, or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.

44.      This Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502(d) and shall be enforceable and granted full faith and credit

in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

45.     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

46.     If the Receiving Party has reason to believe that a produced document or other information may reasonably be subject to a claim of privilege, then the Receiving Party shall immediately sequester the document or information, cease using the document or information and cease using any work product containing the information, and shall inform the Producing Party of the beginning BATES number of the document or, if no BATES number is available, shall otherwise inform the producing party of the information.

47.     A Producing Party must give written notice to any Receiving Party asserting a claim of privilege, work-product protection, or other ground for reclaiming documents or information (a "clawback request").  After a clawback request is received, the Receiving Party shall immediately sequester the document (if not already sequestered) and shall not review or use that document, or any work-product containing information taken from that document, for any purpose.  The Parties shall meet and confer regarding any clawback request.

**Final Disposition of ESI**

48.     Within thirty (30) days of final adjudication, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each Party or non-party to whom any materials were produced shall, without further request or direction from the Producing Party, promptly destroy all documents, items or data received including, but not limited to, copies or summaries thereof, in the possession or control of any expert or employee. The Requesting Party

16

shall provide written certification of destruction to the Producing Party no later than 60 days after the termination of this matter.

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated: _____

_____
Honorable Virginia M. Hernandez Covington

**Respectfully submitted by:**

Dated: March 23, 2023

*/s/ Kimberly Donaldson-Smith*
Kimberly M. Donaldson-Smith*
Kds@chimicles.com
Nicholas E. Chimicles*
Nec@chimicles.com
Zachary P. Beatty
Zpb@chimicles.com
**Chimicles Schwartz Kriner &
Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Attorneys for Plaintiff Vassilios
Kukorinis*

*/s/Raymond D. Jackson*
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Raymond D. Jackson (FBN 1028350)
jacksonra@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
Secondary email: farrark@gtlaw.com;
FLService@gtlaw.com

Naomi G. Beer*
beern@gtlaw.com
**GREENBERG TRAURIG, LLP**
1144 15th Street, Ste. 3300
Denver, Colorado 80202
Telephone: (303) 572-6500
Facsimile: (303) 572-6540

Robert J. Herrington*
robert.herrington@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East Suite 1900

Los Angeles CA 90067
Telephone: (310) 586-7700
Facsimile: (312) 586-7800

*Specially Admitted*

*Attorneys for Defendant Walmart Inc.*

**EXHIBIT A**
**FILE FORMATS**

**Standard Delimited Files - DAT Files, Metadata Files**

Specifications for the metadata DAT load files will be the following:

a. The metadata load file shall use the following delimiters:
   • Column Delimiter: Pipe - | (ASCII 124) or (ASCII 020)
   • Text Qualifier: Caret - ^ (ASCII 94) or þ (ASCII 254)
   • New line: Registered sign - ® (ASCII 174)
b. Data for documents shall be produced in only one data load file throughout the productions
c. The first record shall contain the field names in the order of the data set forth in the Metadata.
d. All date fields shall be produced in "mm/dd/yyyy hh:mm:ss:AM/PM" format.
e. A carriage-return line-feed shall be used to indicate the start of the next record.
f. The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat (i.e., ABC001.dat).
g. The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

**Image Load Files**

Image load files should conform to the following specifications:

a. The name of the image load file should mirror the name of the delivery volume and should have an extension appropriate to the specific format (i.e., ABC001.OPT).

b. The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.). There should be one row in the load file per TIFF image.

c. Every image in the delivery volume should be contained in the image load file.

d. The image key should be named the same as bates number of the page.

e. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

19