UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASSILIOS KUKORINIS,

    Plaintiff,

v.                       Case No. 8:22-cv-2402-VMC-TGW

WALMART, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Walmart, Inc.'s Motion to Dismiss the Class Action Complaint (Doc. # 25), filed on January 6, 2023. Plaintiff Vassilios Kukorinis responded on February 3, 2023. (Doc. # 37). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.  Background**

This case arises out of the allegedly deceptive pricing scheme used by Walmart, Inc. (Doc. # 1 at ¶ 2). Walmart advertises the price of its groceries using a price tag or sticker that is displayed on or near the product, usually affixed to the store shelf where the product is presented for sale. (Id. at ¶ 3). However, Walmart employs four business practices that result in customers being charged for and

1

paying more than a product's lowest advertised per pound/ounce price (the "unit price"). (Id. at ¶ 4).

First, for groceries that are sold and priced by weight ("sold-by-weight" products), Walmart falsely inflates the product weight. (Id. at ¶ 5). Walmart advertises the unit price of sold-by-weight products via a price sticker. (Id.). Walmart also offers sold-by-weight products at sale prices, or on "Rollback." (Id.). However, at the register, when a customer checks out, Walmart's Point of Sale system artificially increases the weight of the product at checkout, leading to the customer paying an inflated price. (Id.).

Second, Walmart mislabels the weight of bagged product. (Id. at ¶ 6). The price sticker affixed to bagged product represents and advertises a weight of the bagged produce that is materially more than the actual weight of the bagged produce being sold, leading to customers paying more per ounce than advertised. (Id.).

Third, for the sold-by-weight products on clearance, the total amount charged at the Point of Sale is greater than the advertised unit price multiplied by the weight of the product. (Id. at ¶ 7). When products are placed on clearance, a yellow sticker is affixed to the product detailing the advertised unit price of the product and the total price the consumer

2

will pay (denoted as the "You Pay!" price). (Id.). However, when the product's weight is multiplied by the advertised sale unit price, the price is lower than the You Pay! price. (Id.). At the register, Walmart charges the consumer the You Pay! price. (Id.).

Fourth, for sold-by-weight seafood products, Walmart advertises a unit price on the price sticker that is materially less than the unit price charged to consumers at the register. (Id. at ¶ 8). Like with the sold-by-weight clearance products, the total price of the product charged to customers exceeds the unit price advertised multiplied by the weight of the product. (Id. at ¶ 79).

Vassilios Kukorinis, who is a resident of Florida, has been the subject of Walmart's allegedly deceptive practices on numerous occasions. (Id. at ¶ 17). For example, on July 21, 2022, Mr. Kukorinis purchased a sold-by-weight meat product from a Walmart store in Tampa, Florida. (Id. at ¶ 45). The original unit price for the one-pound product was $8.98, which was reduced on clearance to $7.98. (Id.). However, at checkout, Walmart's Point of Sale system inflated the weight of the product to 1.13 pounds, and charged Mr. Kukorinis $8.98, instead of $7.98. (Id.).

3

On January 17, 2022, Mr. Kukorinis purchased bagged produce — tangerines — from a Walmart store in Tampa. (Id. at ¶ 56). The price sticker on the product offered and advertised that the bagged produce contained 3 pounds of tangerines and advertised that the tangerines were 9.1 cents per ounce. (Id.). However, the bagged produce contained only 2 pounds of tangerines. (Id.). Consequently, at checkout, Mr. Kukorinis was charged $4.34, which would be the price for 3 pounds of tangerines, instead of the proper amount of $2.91. (Id.).

On June 18, 2021, Mr. Kukorinis purchased a sold-by-weight meat product on clearance from a Walmart store in Tampa. (Id. at ¶ 66). Walmart advertised on its clearance price sticker that the product, which weighed 1.45 pounds, was $7.34 per pound. (Id.). However, the You Pay! price identified on the sticker was $13.17, which is higher than the advertised unit price multiplied by the weight of the product. (Id.).

On October 17, 2022, Mr. Kukorinis purchased a sold-by-weight seafood product from a Walmart store in Tampa. (Id. at ¶ 82). Walmart advertised on its price sticker that the product, which weighed 1.23 pounds, was $6.58 per pound. (Id.). However, at the register, Walmart and the Point of Sale system inflated the weight of the sold-by-weight product

4

from 1.23 pounds to 1.25 pounds, thus charging Mr. Kukorinis $8.22, instead of the correct price of $8.09 based on the advertised unit price. (Id.).

Mr. Kukorinis also details nineteen other times that he was the subject of Walmart's deceptive pricing, occurring from February 2020 to October 2022. (Id. at ¶¶ 46-51, 57-58, 67-73, 79-81, 83).

Walmart's allegedly misleading conduct occurred throughout the four years prior to the filing of the complaint. (Id. at ¶ 9). The information on the price stickers associated with the sold-by-weight products, bagged produce, and clearance products has allegedly induced Mr. Kukorinis and other customers to purchase the products. (Id. at ¶ 10). As a result of the misrepresentations on the price stickers, Mr. Kukorinis was overcharged for sold-by-weight products, bagged produce, and clearance products. (Id. at ¶ 13).

Mr. Kukorinis previously brought suit against Walmart in the Southern District of Florida for similar conduct relating to deceptive pricing schemes. (Id. at ¶ 107). Walmart asks that the Court take judicial notice of all docket entries from that case, which it will do. (Doc. # 25 at 21); see Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) (finding that the district court properly took judicial

notice of documents from a prior lawsuit "which were public records that were 'not subject to reasonable dispute[.]'" (quoting Fed. R. Evid. 201(b)); Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 54 (11th Cir.2006) (per curiam) (finding that the district court's consideration of a complaint filed in a separate case did not require converting the motion to dismiss into a motion for summary judgment). In Mr. Kukorinis' previous lawsuit, he pled a putative class action against Walmart on February 13, 2019. Complaint, Kukorinis v. Walmart, Inc., No. 1:19-cv-20592 (S.D. Fla.) ("Kukorinis I"). The second amended complaint, which was the operative complaint when that case settled, alleged that Walmart engaged in deceptive conduct via its pricing scheme for discounted weighted goods. (Complaint, Kukorinis I, Doc. # 32 at ¶ 1). Specifically, Mr. Kukorinis alleged that the pricing labels on discounted goods contained inconsistencies as to the unit price and the total price. (Id. at ¶ 23-24). That is, the total price label affixed to discounted goods reflected a price greater than the unit price multiplied by the net weight of the products. (Id. at ¶ 24).

The litigation in Kukorinis I resulted in a settlement agreement, which contained a release covering the time period from February 13, 2015, to August 26, 2020. (Doc. # 25-1 at

6

14; <u>Kukorinis I</u>, Doc. # 42). The release covers claims that were asserted or that could have been asserted related to the allegations brought in that litigation. (Doc. # 25-1 at 14). The district court approved the settlement agreement on September 20, 2021. (<u>Kukorinis I</u>, Doc. # 97).

Mr. Kukorinis filed this class action on October 19, 2022, asserting claims under the Florida Deceptive and Unfair Trade Practices Act (Counts I and II), State Consumer Protection Statutes (Count III), and for Unjust Enrichment (Count IV). (Doc. # 1). In his complaint, Mr. Kukorinis seeks class certification on behalf of similarly situated consumers nationwide. (<u>Id.</u> at ¶ 113). On January 6, 2023, Walmart moved to dismiss the complaint (Doc. # 25), and Mr. Kukorinis responded. (Doc. # 37). The Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

citations omitted). Courts are not "bound to accept as true

a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

consideration to well-pleaded factual allegations, documents

central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358

F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

### A.   **Effect of the Southern District of Florida Settlement**

As a threshold matter, Walmart contends that the

settlement between itself and Mr. Kukorinis resulting from

Mr. Kukorinis' lawsuit in the Southern District of Florida

bars "[a]ny claims that pre-date August 26, 2020[.]" (Doc. #

25 at 21). Specifically, because the claims asserted in

Kukorinis I "arise from the same fundamental theory" as the

claims here, the broad release contained in the settlement

8

agreement bars "any such claims based on alleged transactions before August 26, 2020 — the effective date of the release." (Id. at 25). Mr. Kukorinis argues that Walmart fails to demonstrate that the cases are based on the "same factual predicate" as required to give res judicata effect to the settlement agreement. (Doc. # 37 at 23).

To invoke res judicata, a party must establish four elements: that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1269 (11th Cir. 2002). Here, the parties dispute only the fourth element, which asks whether a case "arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action." Griswold v. County of Hillsborough, 598 F.3d 1289, 1293 (11th Cir. 2010) (quotation marks omitted). Res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact. Trustmark, 299 F.3d at 1270 n.3.

To determine whether two cases arise out of a common nucleus of fact, "the analysis centers on whether the primary

right and duty are the same." <u>Adams v. S. Farm Life Ins. Co.</u>, 493 F.3d 1276, 1289 (11th Cir. 2007) (quotations omitted). The Eleventh Circuit has clarified that the shared nucleus of fact standard requires "the same factual predicate." <u>TVPX ARS, Inc. v. Genworth Life and Annuity Ins. Co.</u>, 959 F.3d 1318, 1325 (11th Cir. 2020). When assessing the res judicata effect of a prior action, courts may "consider the parties' settlement documents to determine the claims at issue in a prior action." <u>Id.</u> at 1326.

Here, the settlement agreement in <u>Kukorinis I</u> bars Mr. Kukorinis' claims involving the unit price of sold-by-weight products – the third and fourth allegedly deceptive practices (Doc. # 1 at ¶¶ 7, 8) – based on transactions that occurred prior to August 26, 2020. However, the claims based on the inflation of product weight (<u>Id.</u> at ¶¶ 5, 6) are not barred.

The conduct at issue in the first action involved Walmart's price labels on discounted weighted goods not accurately reflecting the sale unit price of those goods. (Complaint, <u>Kukorinis I</u>, Doc. # 32 at ¶ 23–24). For those weighted goods, the price on the total price label, and the price that Walmart ultimately charged, exceeded the unit price multiplied by the weight of the product. (<u>Id.</u>). Indeed, the settlement document defines the settlement class as:

10

> all persons who purchased Weighted Goods from
> Walmart in the United States from February 13,
> 2015 to the date of publication of notice of
> settlement whose Weighted Goods' unit sale
> price was not accurately reflected in the
> final sale price.

(Doc. # 25-1 at 3). The deception at issue thus involved the miscalculation of the final sale price vis-à-vis the unit price. This deception shares a factual predicate with the third and fourth deceptive practices alleged in the present action: according to Mr. Kukorinis, for sold-by-weight products, the total price label reflected a price that exceeded the unit price multiplied by the weight of the product. (Doc. # 1 at ¶¶ 7, 8).

However, the deception involving the inflation of product weight does not share a factual predicate with the conduct alleged in the first action. In the present case, Walmart alleges that at the register, Walmart's Point of Sale system falsely inflated the weight of certain sold-by-weight products and bagged produce in order to charge the customer more. (Id. at ¶¶ 5, 6). No allegations regarding any manipulation of product weight were made in the first action: the allegedly deceptive practices were limited to pricing errors based on the unit price, rather than the weight.

Because the deceptive practices involving product weight do not share a factual predicate with the allegations brought in the first action, the settlement agreement does not bar claims based on this conduct.

In sum, the claims based on transactions occurring before August 26, 2020, where the deception concerned the total price of sold-by-weight products inaccurately calculating the unit price, are barred by the settlement in the first action. The complaint in the present case is thus dismissed to the extent that the claims rely on such transactions. However, the Court notes that for the third and fourth type of pricing deception alleged, Mr. Kukorinis has alleged he has engaged in transactions that occurred after August 26, 2020. Thus, at this stage in the proceedings, Mr. Kukorinis has alleged plausible factual allegations to support his claims.

**B.   <u>Count III – Violations of State Consumer Protection Statutes</u>**

Walmart contends that Mr. Kukorinis' claim for violations of other state consumer protection statutes should be dismissed as a shotgun pleading. (Doc. # 25 at 16). Mr. Kukorinis argues that the Court should not dismiss the claim because Walmart has adequate notice of the claims against it

and the grounds upon which each claim rests. (Doc. # 37 at 17-18).

Count III begins on paragraph 146, which "re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-145 as if fully set forth herein." (Doc. # 1 at ¶ 146). Paragraphs 1-145 include all of Mr. Kukorinis' factual allegations, as well as the entirety of Counts I and II.

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice

of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Here, Count III renders the complaint a shotgun pleading because it falls within the first category identified in Weiland. Specifically, Count III rolls all of the preceding allegations, including allegations contained in previous counts, into Count III. (Doc. # 1 at ¶ 146). This is impermissible. See Weiland, 792 F.3d at 1322 (identifying "a complaint containing multiple counts where each count adopts the allegations of all preceding counts" as a shotgun complaint).

Although Count III renders the entire complaint a shotgun pleading, the Court and Walmart were nevertheless still able to review the merits and the issues presented in the other counts in the complaint, as will be discussed in more detail below. Accordingly, while the Court would be entitled to dismiss the entire complaint, it will only dismiss Count III. However, the Court grants leave to amend. See Madak v. Nocco, No. 8:18-cv-2665-VMC-AEP, 2018 WL 6472337, at *3 (M.D. Fla. Dec. 10, 2018) ("Because the [complaint] is a shotgun complaint, repleader is necessary[.]").

### C.   Count I – FDUPTA – Damages

Walmart contends that Mr. Kukorinis' FDUPTA claim should be dismissed because he fails to allege facts plausibly showing (1) causation and damages; and (2) that Walmart engaged in any deceptive act or unfair practice. (Doc. # 25 at 7, 10). The Court will address each argument in turn.

### 1.   Causation and Damages

Walmart contends that Mr. Kukorinis cannot show causation or damages because Mr. Kukorinis was aware of the alleged price and weight discrepancies yet continued to purchase the products. (Id. at 8). Mr. Kukorinis argues that fact-based arguments on causation and damages should not be addressed on a motion to dismiss. (Doc. # 37 at 9).

To establish a cause of action under the FDUTPA, a plaintiff must sufficiently allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or

15

substantially injurious to consumers.'" <u>Bookworld Trade, Inc.</u>
<u>v. Daughters of St. Paul, Inc.</u>, 532 F. Supp. 2d 1350, 1364
(M.D. Fla. 2007) (quoting <u>Rollins, Inc. v. Butland</u>, 951 So.
2d 860, 869 (Fla. 2d DCA 2006)).

"To state a claim under the FDUPTA based on a deceptive
practice, a plaintiff need not allege actual deception[.]"
<u>Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United</u>
<u>Healthcare of Fla., Inc.</u>, 526 F. Supp. 3d 1282, 1301 (S.D.
Fla. 2021) (internal quotations omitted). This is because
"Florida courts apply an objective test in analyzing FDUPTA
claims and ask whether the alleged practice was likely to
deceive a consumer acting reasonably in the same
circumstances, rather than actual reliance on the
representation or omission at issue." <u>Id.</u>; <u>see</u> <u>Davis v.</u>
<u>Powertel, Inc.</u>, 776 So. 2d 971, 974 (Fla. 1st DCA 2000) ("[The
FDUPTA] standard does not require subjective evidence of
reliance, as would be the case with a common law action for
fraud.").

Here, Mr. Kukorinis has sufficiently alleged a FDUPTA
claim. Because the standard for evaluating causation is
objective, it is immaterial whether Mr. Kukorinis himself was
deceived by Walmart's pricing scheme. <u>See</u> <u>Davis</u>, 667 So. 2d
at 974 (explaining FDUPTA claims do not require a showing of

16

reliance). And fact-intensive inquiries such as causation or damages are best handled at a later stage in the proceedings. See James v. Yamaha Motor Corp., No. 15-23750-CIV, 2016 WL 3083378, at *12 (S.D. Fla. May 31, 2016) (rejecting a fact-based causation argument as inappropriate for a Rule 12(b)(6) analysis). Here, Mr. Kukorinis has alleged that Walmart's pricing scheme influences customers' decisions and induces them to purchase products, only to be charged a higher price at the register. (Doc. # 1 at ¶¶ 87–88, 91). The damages plaintiff and class members suffered are found in the difference between the total prices paid and item costs as advertised. (Id. at ¶ 132). At this juncture, these allegations are sufficient to support a claim under the FDUPTA.

## 2. **Unfair or Deceptive Practice**

Walmart next contends that Mr. Kukorinis has not pled an unfair or deceptive act under the FDUPTA because there exists sufficient information on the correct price of the products such that an objectively reasonable consumer would not be misled. (Doc. # 25 at 10). Specifically, according to Walmart, any customer would be apprised of the correct price through the total price value on product price stickers and at checkout, and that Walmart's return policy provides a further

17

opportunity to remedy any harm. (Id. at 10-13). Mr. Kukorinis contends that an objective customer would likely be deceived by Walmart's pricing scheme. (Doc. # 37 at 12).

Here, Mr. Kukorinis has sufficiently alleged an unfair or deceptive act under the FDUPTA in the form of Walmart's falsely inflating product weight (Doc. # 1 at ¶ 5); mislabeling the weight of bagged product (Id. at ¶ 6); and providing incorrect unit prices for sold-by-weight clearance and seafood products. (Id. at ¶ 7-8). The crux of Walmart's argument is that because the total price – which is the price that the customer is ultimately charged at the register – is displayed on the price stickers, a reasonable consumer would not perform the multi-step calculations required to realize the unit price was erroneous. (Doc. # 25 at 11). The Court is not persuaded. First, as to the bagged produce, Mr. Kukorinis has specifically alleged that Walmart's pricing system is deceptive because Walmart inflated the weight of products at checkout, inducing Mr. Kukorinis and others to believe they were getting a better deal for their money. See, e.g., (Doc. # 1 at ¶ 47). Second, as to the sold-by-weight products, Mr. Kukorinis specifically alleged that the total price stickers on the products are deceptive because, even if a consumer was aware of the total price sticker, a reasonable consumer would

18

believe that price was an accurate reflection of the unit price multiplied by the weight. (Id. at ¶ 63). Thus, Mr. Kukorinis has sufficiently alleged that Walmart has engaged in deceptive practices.

The cases that Walmart cites are distinguishable from the case at bar. Walmart cites Kurimski v. Shell Oil Co., No. 21-80727-CV, 2022 WL 2913742, at *10, *12 (S.D. Fla. June 30, 2022), and Kahn v. Walmart, Inc., 1:22-cv-04177, 2023 WL 2599858 (N.D. Ill. Mar. 21, 2023), for the proposition that erroneous prices are not deceptive where the correct price is disclosed at the register. (Doc. # 25 at 12). True, while "[t]he presence of true information or a disclaimer can rebut a claim of deception," Kurimski, 2022 WL 2913742, at *7, the disclosure of the correct total price at the register does not necessarily remedy the type of deception that Mr. Kukorinis alleges. As alleged by Mr. Kukorinis, part of Walmart's deception is the representation that Walmart has "done the math" correctly for the consumer with the You Pay! price. (Doc. # 1 at ¶ 64). For a consumer who believes that the You Pay! price is a correct multiplication of the unit price and the weight, simply seeing that price again at the register does little to dispel his or her misconception.

In sum, while Walmart's position that consumers look only to the total price sticker affixed to the products is a plausible inference, "another plausible inference is that the misrepresentations were so subtle that Plaintiff and other reasonable consumers failed to notice until a closer inspection was made." Kukorinis v. Walmart, Inc., No. 1:19-CV-20592, 2020 WL 13388297, at *5 (S.D. Fla. June 1, 2020). The Court thus finds that Mr. Kukorinis has sufficiently alleged an unfair or deceptive act under the FDUPTA.

The Court denies Walmart's Motion as to Count I.

### D.   **Count II – FDUPTA – Declaratory Judgment**

Walmart contends that Mr. Kukorinis' claim for declaratory judgment is duplicative of Count I because it does not raise any issues that could not be addressed by his claim for damages pursuant to the FDUPTA. (Doc. # 25 at 14-15). Walmart also contends that Mr. Kukorinis was not "aggrieved" by a FDUPTA violation. (Id. at 15). Mr. Kukorinis argues that he can pursue declaratory and injunctive relief under the FDUPTA, in addition to his claim for damages, because he has been aggrieved by Walmart's conduct. (Doc. # 37 at 15-17).

The FDUPTA provides:

> Without regard to any other remedy or relief
> to which a person is entitled, anyone
> aggrieved by a violation of this part may
> bring an action to obtain a declaratory
> judgment that an act or practice violates this
> part and to enjoin a person who has violated,
> is violating, or is otherwise likely to
> violate this part.

Fla. Stat. § 501.211(1). The Court finds that Mr. Kukorinis
has sufficiently pled a claim for declaratory or injunctive
relief under the FDUPTA.

First, Mr. Kukorinis may seek both damages and
declaratory relief under the FDUPTA. The statute explicitly
states that declaratory relief is available "[w]ithout regard
to any other remedy or relief to which a person is
entitled[.]" Id.; see Galstaldi v. Sunvest Communities USA,
LLC, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009) ("The statute
is clear on its face . . . declaratory relief is available
regardless of whether an adequate remedy at law also
exists."). While Walmart cites myriad cases in support of its
contention that declaratory relief is unavailable where a
damages claim can provide full relief, only one of those cases
addressed actions brought pursuant to the FDUPTA. See
Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem.
Ins. Co., No. 2:19-cv-81-SPC-UAM, 2019 WL 5084138, at *2 (M.D.
Fla. Mar. 18, 2019) (dismissing claim under the Declaratory

Judgment Act where it was duplicative of a breach of contract claim); Diaz Fritz Grp., Inc. v. Westfield Ins. Co., No. 8:20-cv-785-VMC-AAS, 2020 WL 2735332, at *2 (M.D. Fla. May 26, 2020) (same); Seigel v. Provident Life & Accident Ins. Co., No. 8:16-cv-00584-EAK-TGW, 2016 WL 4059248, at *2 (M.D. Fla. July 27, 2016) (same); Knights Armament Co. v. Optical Sys. Tech., Inc., 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) (dismissing claim for declaratory judgment where duplicative of trademark infringement claims); but see Marketran, LLC v. Brooklyn Water Enterprises, Inc., No. 16-CV-81019, 2017 WL 1292983, at *4 (S.D. Fla. Jan. 31, 2017) (dismissing a claim under FDUPTA). In Marketran, the only case cited by Walmart that involved FDUPTA claims, the court found the plaintiff had not properly sought declaratory or injunctive relief under the FDUPTA because it had "not alleged continuing harm or risk of harm" by the defendant, not because it otherwise had an adequate claim for damages. Id. Given that the statute expressly leaves open the possibility of an action for both damages and declaratory or injunctive relief, the Court will not dismiss Count II as duplicative.

Second, at this stage in the proceedings, Mr. Kukorinis has sufficiently alleged that he is "aggrieved" such that he may pursue his claim for declaratory relief. Florida courts

have construed the term "aggrieved" as more expansive than "damaged" or "suffered a loss." O'Keefe v. Pick Five Imports, Inc., No. 8:18-cv-1496-MSS-AEP, 2019 WL 13083614, at *10 (M.D. Fla. June 14, 2019) (citing Ahearn v. Mayo Clinic, 180 So. 3d 165, 172 (Fla. 1st DCA 2015)). And "regardless of whether an aggrieved party can recover 'actual damages' under [S]ection 211.211(2), it may obtain injunctive relief under [S]ection 501.211(1)." Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc., 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012). Because Mr. Kukorinis has sufficiently stated a claim for damages under the FDUPTA, as discussed above, and because he contends that he "will continue to shop at Walmart," he has necessarily stated a claim for declaratory or injunctive relief as well. (Doc. # 1 at ¶ 90).

The Court denies Walmart's Motion as to Count II.

**E.     Unjust Enrichment**

Walmart contends that Mr. Kukorinis' unjust enrichment claim should be dismissed (1) for the same reasons as his FDUPTA claims; (2) because Mr. Kukorinis' right to recover arises from the allegedly wrongful conduct of Walmart, which is addressed by a claim under the FDUPTA rather than for unjust enrichment; and (3) because an adequate legal remedy — in the form of the FDUPTA — exists. (Doc. # 25 at 18-20).

Mr. Kukorinis contends that his claim for unjust enrichment is a viable alternative claim to his claims under the FDUPTA. (Doc. # 37 at 21).

The essence of Walmart's argument is that Mr. Kukorinis cannot repackage his FDUPTA claims as a claim for unjust enrichment because Mr. Kukorinis is alleging that Walmart engaged in wrongful conduct, not that it would be inequitable for Walmart to retain the benefit of the transactions. The Court agrees.

To bring an unjust enrichment claim under Florida law, a plaintiff must allege that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the value of the benefit to the plaintiff. Johnson v. Catamaran Health Sols., LLC, 687 F. App'x 825, 830 (11th Cir. 2017) (citing Fito v. Att'ys' Title Ins. Fund, Inc., 83 So. 3d 755, 758 (Fla. 3d DCA 2011)).

"Liability in unjust enrichment has in principle nothing to do with fault." Tilton v. Playboy Entm't Grp., Inc., No. 8:05-cv-692-JSM-TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007). Instead, "a claim for unjust enrichment should be premised on circumstances under which it would be inequitable

for the defendant to retain the benefit without paying for
it." Id. In other words,

> The law of unjust enrichment is concerned
> solely with enrichments that are
> unjust independently of wrongs and contracts.
> When the plaintiff relies on a breach of
> contract to supply the "unjustness" of the
> defendant's holdings, the right on which he or
> she relies arises from the breach of contract,
> not from an unjust enrichment; analogously,
> when the plaintiff relies on a wrong to supply
> the "unjust factor," the causative event is a
> wrongful enrichment rather than an unjust
> enrichment.

Flint v. ABB, Inc., 337 F.3d 1326, 1330 n.2 (11th Cir. 2003).

As explained above, the allegedly unjust nature of
Walmart's acceptance and retention of payment for Mr.
Kukorinis' purchases stems directly from its pricing system,
which Mr. Kukorinis alleges violates the FDUPTA. Accordingly,
Mr. Kukorinis has failed to allege that Walmart was enriched
independently of its allegedly deceptive pricing system.

The Court thus determines that Mr. Kukorinis cannot
properly state a claim for unjust enrichment based on the
allegations set forth in the complaint. Therefore, under
these circumstances, the Court finds that amendment would be
futile. See Hall v. United Ins. Co. of Am., 367 F.3d 1255,
1262–63 (11th Cir. 2004) ("[A] district court may properly

deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."); <u>Tilton</u>, 2007 WL 80858, at *3 (dismissing unjust enrichment claim, which was based solely on the defendants' wrongful conduct, with prejudice). Accordingly, Count IV is dismissed without leave to amend.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Walmart, Inc.'s Motion to Dismiss the Class Action Complaint (Doc. # 25) is **GRANTED** in part and **DENIED** in part.

(2)  Count III is **DISMISSED** without prejudice.

(3)  Count IV is **DISMISSED** with prejudice.

(4)  Plaintiff Vassilios Kukorinis may file an amended complaint as to Count III within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of July, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE