## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VASSILIOS KUKORINIS, on behalf
of himself and any others similarly
situated,

      Plaintiff,

v.

WALMART INC.,

      Defendant.

Case No. 8:22-cv-02402-VMC-TGW

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS COUNT III OF THE AMENDED COMPLAINT

Plaintiff, Vassilios Kukorinis, by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Walmart, Inc.'s Motion to Dismiss Count III of the Amended Complaint, ECF No. 60 ("Motion").

Plaintiff's Amended Complaint alleges three categories of wrongdoing by Walmart:[1] (1) Walmart advertises prices for Sold-by-Weight groceries but employs software and programming in its POS System that circumvent the lowest advertised price by inflating the product's weight, thereby overcharging customers ("Falsely Inflating Product Weight"), ¶¶ 5, 38–61; (2) Walmart falsely advertises the weight of the Bagged Produce it sells to Customers ("Mislabeled Bagged Produce"), ¶¶ 6, 62–71; and (3) for Sold-by-Weight groceries nearing their expiration, Walmart's POS System

---

[1] All paragraph references herein are to the Amended Complaint, ECF No. 56. Unless otherwise noted, capitalized terms have the same meaning as in the Amended Complaint.

erroneously calculates the "You Pay" price ("Overcharging on Sold-by-Weight Clearance Products"), ¶¶ 7, 72–88. All three categories of Walmart's conduct are systemic, caused by defects in Walmart's POS System, and harm, in the same way, consumers in Walmart stores nationwide. *E.g.*, ¶ 10, 42–43, 98–106. Indeed, Walmart cannot, and did not, argue that the misconduct is geographically (or otherwise) isolated, and the Amended Complaint includes examples of the systemic, POS-system driven overcharges in states other than Florida, including Connecticut, New Jersey, and New York. *See, e.g.*, ¶¶ 54–56, 70.

The Court's Order on Walmart's first motion to dismiss held that Plaintiff stated claims for monetary and injunctive relief under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") in Counts I and II. ECF No. 52, at 15–23 [hereinafter, "Order"]. However, the Court held that Count III was a shotgun pleading because it incorporated by reference all preceding paragraphs that included the preceding counts but granted Plaintiff leave to amend Count III. *Id.* at 14. In the Amended Complaint, Plaintiff remedied that defect and pled Count III as five distinct claims,[2] each of which sufficiently states a claim under Rule 12(b)(6).

Notably, Walmart's Motion does not argue that Plaintiff has failed to allege facts sufficient to state claims under any state law identified in Counts III.A–E.[3]

---

[2] Because the Court dismissed Count IV, unjust enrichment, Plaintiff preserved its numbering for purposes of appeal and numbered the amended Counts in Count III as III.A–E.

[3] Counts III.A–E do not include any dismissed claims or dismissed "class allegations." Walmart's flip comment that they do (Motion at 2) makes no sense as the Order only dismissed Count III without prejudice and with leave to replead.

Instead, Walmart moves to dismiss Counts III.A–E based on botched standing analyses, premature class certification arguments, and arguments rejected by a recent Eleventh Circuit decision.

Walmart's standing arguments are directed to Counts III.B–E. In those Counts, which Plaintiff pled in the alternative to Count III.A in the event a Nationwide Class is not certified, Plaintiff asserts claims on behalf of classes of Customers pursuant to the laws of Florida, Connecticut, New Jersey, New York, and the states comprising the Multistate Class with substantially similar laws. ¶ 119. Walmart does not challenge the merits of Plaintiff's allegations or claims in Counts III.B–E, as these states' laws are substantially similar to the FDUTPA Counts that the Court has already held Plaintiff sufficiently alleged. Instead, Walmart makes misplaced standing arguments. *First*, contrary to Walmart's argument, Plaintiff did suffer an Article III injury in the form of an actual economic harm when Walmart overcharged for his Connecticut, New Jersey, and New York purchases. *Second*, based on Eleventh Circuit precedent, which Walmart fails to address despite Plaintiff having even cited the binding precedent in his prior opposition to Walmart's motion to dismiss, Plaintiff has standing to pursue class members' claims under statutes in states other than Florida, Connecticut, New Jersey, and New York.

Also, just with respect to Count III.E, Walmart wrongly asserts that it is a shotgun pleading. Count III.E alleges, against a single defendant, for the same misconduct, violations of 34 consumer protection statutes from 28 states plus the District of Columbia—all of "which are substantially similar to the FDUTPA,

CUTPA, NJCFA, and NYGBL." ¶ 223. Further, Count III.E. details each of the 34 statutory provisions that Walmart violated, ¶ 223.a–hh, followed by a marrying of the salient facts to the common elements that these substantially similar claims share, ¶¶ 224–237. Walmart is plainly aware of the claims asserted against it in the Amended Complaint, and, therefore, its argument that Count III.E is a shotgun pleading argument must be rejected.

Finally, Walmart prematurely seeks to essentially strike Count III.A. The Court already held that Plaintiff stated FDUTPA claims in Counts I and II. In Count III.A, Plaintiff pled his FDUTPA claim on behalf of a nationwide class. ¶¶ 118, 155. Whether Plaintiff may assert a FDUPTA claim on behalf of a Nationwide Class is an issue to be decided at class certification and is not, as Walmart suggests, an issue for a motion to dismiss.

Walmart's Motion should be denied.

## ARGUMENT

### I.    Plaintiff has Standing to Bring Counts III.B, III.C, III.D and III.E.

Plaintiff has standing to pursue his claims set forth in Counts III.B–E because Walmart overcharged him for goods purchased in Connecticut, New Jersey, and New York, and Article III standing is not an impediment to him pursuing claims on behalf of class members from 29 other states under their respective, similar laws.

Walmart's assertions to the contrary (Motion at 8–10 and 12–13) are

4

contradicted by the Amended Complaint's allegations and applicable case law.[4]

### A.   Plaintiff has sufficiently established an Article III injury in fact.

Plaintiff plainly establishes an Article III injury in fact as to Counts III.B, III.C, and III.D. Walmart's arguments to the contrary (Motion at 8–10) garble the Article III injury analysis.

To establish an injury in fact, the plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Concrete means that the injury "must actually exist" or be "real" and not "abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Economic injuries are concrete injuries. *E.g.*, *Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1338 (11th Cir. 2021). Particularized means that the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. "Actual or imminent" means that the injury must have already been sustained or is "certainly impending." *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citations omitted).

Due to Walmart's pervasive misconduct, effectuated through its POS System, Plaintiff sustained concrete, particularized, and actual injuries in Connecticut, New Jersey, and New York, just as the Court held with respect to Plaintiff's Florida purchases. *See* Order at 15–17 (rejecting Walmart's argument at this stage of the

---

[4] When a defendant, as Walmart does here, makes a facial attack "to a complaint for lack of standing, we take the allegations of the complaint as true." *Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1337 (11th Cir. 2021); *see* Order at 7–8.

proceedings that the Plaintiff cannot show damages because he "was aware of the price and weight discrepancies"; "[t]he damages plaintiff and class members suffered are found in the difference between the total prices paid and item costs as advertised."). In Count III.B, Plaintiff alleges violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), as Walmart overcharged him $6.35 for four purchases he made in Connecticut. ¶¶ 56–57, 68, 82. In Count III.C, Plaintiff alleges violations of the New Jersey Consumer Fraud Act ("NJCFA") because Walmart overcharged Plaintiff $1.66 for two purchases he made in a New Jersey Walmart. ¶¶ 54, 55. In Count III.D, Plaintiff alleges violations of the New York General Business Laws § 349 ("NYGBL") as Walmart overcharged him $5.01 for four purchases he made at a New York Walmart. ¶¶ 60, 70.

These economic injuries constitute injuries in fact. *See, e.g., Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (holding "monetary damages" constitute "an injury in fact under the law"); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC*, 2011 U.S. Dist. LEXIS 80723, at *10 (M.D. Fla. July 25, 2011) (same). That is the end of the injury-in-fact analysis.

Plaintiff suffered and alleges harm because of Company-wide, systemic, and continuous misconduct entrenched in Walmart's POS System. Nevertheless, Walmart contends that Plaintiff's injury is manufactured. Motion at 8–9. The law, however, is clear that Plaintiff's injury is not manufactured. A plaintiff is deemed to have manufactured an injury if *no actual* injury has been sustained but instead, for example, the plaintiff relies on costs expended to prevent an imminent, or "certainly

impending," injury. *See Lujan*, 504 U.S. at 564, ("Where there is no actual harm, however, its imminence (though not its precise extent) must be established."). The cases relied on by Walmart prove the point.

In *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (*see* Motion at 8), which concerned the Foreign Intelligence Surveillance Act, the respondents had not yet suffered an actual injury but, instead, based their theory of injury on their fear that in the future the Government would intercept their communications or on expenditures to prevent the government from intercepting their communications. The court rejected both theories because: (1) respondents had not pled that surveillance was "certainly impending" because it depended on a "speculative chain of possibilities"; and (2) respondents could not manufacture injuries by making expenditures to prevent the speculative impending injury. *Id.* at 410, 414, 416. In that context, the court explained: "In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of *hypothetical future harm that is not certainly impending*." *Id.* at 416 (emphasis added).

Similarly, in *Tsao* (*see* Motion at 8), the plaintiff alleged that he was a victim of a data breach, but he failed to allege that he or any other class member had suffered any fraudulent credit card charges or that any data had been misused. 986 F.3d at 1336. Like in *Clapper*, the plaintiff sought to establish an injury in fact based on a future injury, an "elevated risk of identity theft," or, alternatively, on "management-of-risk" expenditures. *Id.* at 1337, 1339. The Eleventh Circuit rejected these arguments because the risk of identity theft was not "certainly impending," and the mitigation costs he

voluntarily undertook were "inextricably tied to his perception of the actual risk of identity theft following the PDQ data breach." *Id.* at 1344–45; *see also id.* at 1339 ("[I]f the hypothetical harm alleged is not 'certainly impending,' . . . a plaintiff cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk.").

But here, Plaintiff's standing is not based on a risk of future harm, and he has not "manufactured" standing by spending money on prophylactic measures to prevent speculative, future harm. Rather, Walmart overcharged Plaintiff for goods he purchased, and, therefore, he sustained an actual Article III injury. Certainly at this stage, Plaintiff has pled an Article III injury in fact. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (noting standing must be evaluated "independent of the merits of a party's claims").

Walmart badly mischaracterizes *Wasser v. All Market Inc.*, 329 F.R.D. 464, 469 (S.D. Fla. 2018). *See* Motion at 8. Although Walmart portrays that decision as a motion to dismiss, it is not. Instead, in *Wasser*, the court, in considering plaintiff's motion for class certification and request to represent an injunctive-relief class, held that standing to pursue an injunction requires a showing of a risk of future injury. *See id.* at 470 ("To establish an injury to satisfy Article III, a Plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury, and past harm will not suffice."). It was "[u]nder that framework" that the court held that plaintiff's knowledge of defendant's deceptive labeling defeated his standing to pursue injunctive relief. *Id.* at 471. This case simply has no application here. Walmart also fails to inform the Court that at the motion to dismiss stage, the *Wasser* court specifically held that the

plaintiff had standing. *Wasser v. All Mkt., Inc.*, 2017 U.S. Dist. LEXIS 226594, at *8–9 (S.D. Fla. Nov. 13, 2017); *cf. Schojan v. Papa Johns Int'l, Inc.*, 2014 U.S. Dist. LEXIS 169400, at *6 (M.D. Fla. Dec. 8, 2014) (Covington, J.) (holding plaintiff alleged standing to bring an action and more "fact-intensive" arguments were better suited to the class certification stage).

Additionally, Walmart contends that Plaintiff does not have standing because he "received the benefit of his bargain." Motion at 9–10. This argument too mischaracterizes Plaintiff's injury, and the case on which Walmart relies is inapt. In *Ramirez v. Kraft Heinz Foods Co.*, 2023 U.S. Dist. LEXIS 130290, at *7 (S.D. Fla. July 27, 2023), *see* Motion at 9–10, the plaintiff alleged that if she had known that the purchased mac-and-cheese took longer than the box-advertised 3.5 minutes to microwave, then she would have paid less for it, i.e., would not have paid a premium price. *See id.* at *2. The court held that because plaintiff continued to purchase the mac-and-cheese after she knew it could not be microwaved in 3.5 minutes, she "was not deprived of the benefit of her bargain," and, therefore, her alleged injury was "too speculative" to confer standing. *Id.* at *8–9 (citation omitted). Here, by contrast, Plaintiff is not alleging that the products are *worth less* based on some misrepresentation, and his injury is not some unknown, speculative "price premium" for the goods he purchased. Plaintiff was injured when he was overcharged by a sum-certain because of Walmart's POS System that systemically and systematically inflates the weight of Sold-by-Weight Products (among other things) to charge Walmart Customers and Plaintiff more than the lowest advertised price. Plaintiff's alleged

knowledge of the overcharge, even if true, would not negate the Article III injury he sustained.

Plaintiff has Article III standing to pursue his Connecticut, New Jersey, and New York claims. Therefore, Walmart's motion should be denied as to Count III.B., III.C., and III.D.

### B.   *Plaintiff has standing to pursue the alternative multistate claims in Count III.E.*

Walmart's argument that Plaintiff does not have standing to pursue the same claims under the substantially similar consumer protection statues set forth in Count III.E "conflate[s] the issue of whether the named Plaintiff[ ] [has] standing to bring [his] individual claims with the secondary issue of whether [he] can meet the requirements to certify a class under Rule 23." *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009).

Indeed, the Eleventh Circuit squarely rejected the argument that Walmart advances here. The Eleventh Circuit reversed a district court for dismissing:

> claims on behalf of class members whose claims arise under the laws of states in which no named [plaintiff] resides or purchased ranitidine products. . . . [because Plaintiff's] ability to raise these claims for putative class members is one of representative capacity under Federal Rule of Civil Procedure 23—not one of constitutional significance under Article III.

*Zantaz (Ranitidine) Prods. Liab. Litig. Plumbers & Pipefitters Local Union 630 Welfare Fund. v. Glaxosmithkline LLC*, No. 21-10335, 2022 U.S. App. LEXIS 30823, at *12–13 (11th Cir. Nov. 7, 2022) [hereinafter *Plumbers*]. The court then explained that this was the consensus among the circuit courts and that its "precedents do not dictate otherwise."

*Id.* at \*17.[5] The court then clarified that its earlier decision in *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000), did not suggest "an Article III limitation on a class representative's ability to represent unnamed class members based on the laws of states where their similar injuries took place." *Plumbers*, 2022 U.S. App. LEXIS 30823, at \*16. The court also clarified that the "fact that the unnamed class members' injuries may have occurred in other states does not change things so long as the alleged injuries and interests are substantially the same." *Id.* at \*18. Thus, the court concluded: "[Plaintiff's] ability (or inability) to sue under the laws of states where it never reimbursed purchases of ranitidine by unnamed class members does not implicate Article III standing, and the district court's conclusion to the contrary was mistaken." *Id.* at \*22.

Accordingly, Plaintiff sufficiently alleges that consumers in 28 different states plus the District of Columbia were injured by Walmart Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, and Overcharging on Sold-by-Weight Clearance Products and, therefore, suffered injuries exactly like Plaintiff has in four different states, and his interests are identical to all class members. ¶ 223.

Although Plaintiff cited *Plumbers* in his prior motion to dismiss opposition,

---

[5] *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (cleaned up) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of adjudicatory competence under Article III . . . ."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021).

Walmart still ignores it. ECF No. 37, at 19. All the cases upon which Walmart relies pre-date *Plumbers* and are in conflict. *See* Motion at 12–13 (citing cases ranging from 2007 to 2021).[6] For example, Walmart relies on *Wave Length Hair Salons v. CBL & Associates. Properties*, 2017 U.S. Dist. LEXIS 223693, at *14 (M.D. Fla. Apr. 11, 2017), for the proposition that plaintiff does not have standing "unless one named plaintiff suffered the injury giving rise to the claim." Motion at 12. The Court in *Wave Length* cited *Prado* for that proposition, which Walmart fails to note in its Motion, but as stated above, the Eleventh Circuit clarified that nothing in *Prado* affects Plaintiff's "ability to represent unnamed class members based on the laws of states where their similar injuries took place." *Plumbers*, 2022 U.S. App. LEXIS 30823, at *16.

Walmart is wrong. Plaintiff has standing to pursue the alternative multistate class claims in Count III.E.

---

[6] Although Walmart does not make the argument, to the extent that Walmart is contesting statutory standing—that makes no difference. A Fourth Circuit case that the Eleventh Circuit approvingly cited in *Plumbers* clarified that statutory standing relates only to the Plaintiff's individual claims but does not require that the class's claim be stricken. *Mayor & City Council of Balt. v. Actelion Pharm. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021). Specifically, while a named plaintiff may not "seek relief under those States' statutes . . . . . the claims that the plaintiffs made on behalf of class members who purchased [the product] in States other than [plaintiffs' home states] need not be stricken or disregarded. Since those counts of the complaint define class members' claims, they may be considered in determining whether the plaintiffs' claims raise 'questions of law or fact common to the class' and whether these are 'typical of the claims or defenses of the class,' and also whether the common questions 'predominate,' . . . . If the Rule 23 requirements are met, the plaintiffs could then represent the class members who sustained damages under those laws." *Id.* (internal citations omitted).

## II.     Count III.E. is Not a Shotgun Pleading.

Consistent with *Plumbers*, Plaintiff's Count III.E asserts a multistate class under 34 statutes, from 28 states plus the District of Columbia, all of which are *substantially similar,* asserted against a single defendant, and based on the same misconduct. ¶ 223. In Count III.E., Plaintiff lists the specific provisions of each statute that Walmart violated by "Falsely Inflating Product Weight, selling Mislabeled Bagged Produce, and Overcharging on Sold-by-Weight Clearance Products," ¶ 223.a–hh, followed by the facts that support the specific, similar elements of the similar claims in paragraphs 224–237. To do otherwise would have required repeating similar statutory violations, similar elements, and the same corresponding facts 34 times, which would have added about 136 pages to an already 119-page complaint for a grand total of 258 pages.[7] In that case, Walmart certainly would have complained that the Amended Complaint violates Rule 8's requirements that pleadings contain of "short and plain statement" of claims for relief.

"The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). Here, Count III.E is not a shotgun pleading because all of the claims therein are substantially similar, the specific elements are grouped and alleged with specific facts, and, therefore, Walmart has notice of the claims against it.

---

[7] Plaintiff's FDUTPA Count I is 4 pages, so repeating 34 times would equate to about 136 additional pages.

Walmart relies on *Alvarez v. Lakeland Area Mass Transit District*, 2019 U.S. Dist. LEXIS 111018, at *4 (M.D. Fla. July 3, 2019), in which this Court held that the plaintiff had improperly lumped together different statutory claims in single counts. But the statutory claims there had different elements and, thus, different supporting facts. For example, the plaintiff's count III attempted to bring retaliation claims under Title VII, the Florida Civil Rights Act, and the ADEA, but those statutes have different standards, so lumping them together does not put defendant on notice of the grounds upon which each claims rest. *See id.* at *8. For example, while Title VII protects individuals from discrimination based on race, color, religion, sex, or national origin, the ADEA only applies to individuals that are 40 years of age and older. *See* 29 U.S.C. § 623(a)(2). So different facts supported those different claims.

Here, by contrast, all of Plaintiff's claims in Count III.E have substantially similar elements and standards, and, therefore, Walmart has adequate notice of the grounds upon which these similar claims rest. This is not the case where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Inform Inc. v. Google LLC*, No. 21-13289, 2022 U.S. App. LEXIS 24107, at *12 (11th Cir. Aug. 26, 2022) (quoting *Weiland*, 792 F.3d at 1325). The multistate claims are substantially similar and the facts that support them are the same.

The Court should not dismiss the alternative multistate claims and endorse form over substance.

### III.    Plaintiff Sufficiently Alleges a Nationwide Class in Count III.A.

In its Order, the Court held that Plaintiff adequately alleged claims under the FDUTPA in Counts I and II. Order at 19. The Amended Complaint, in Count III.A, pleads a Nationwide Class under the FDUTPA.

First, Walmart's motion with respect to Count III.A is premature as it improperly seeks to dismiss or strike Plaintiff's nationwide class allegations.[8] The question of what law will apply to the putative nationwide class and whether the Plaintiff can serve as a class representative are issues for class certification. *See, e.g.*, *Figy v. Lifeway Foods, Inc.*, 2016 U.S. Dist. LEXIS 108755, at *17 (N.D. Cal. Aug. 16, 2016) (denying motion to strike nationwide class allegations because "the Court cannot resolve any choice-of-law challenge at this stage in the litigation"); *cf. Plumbers*, 2022 U.S. App. LEXIS 30823, at *16 (quoting William B. Rubenstein, 1 Newberg on Class Actions § 2:6 (5th ed. & Dec. 2021 update)) ("[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class.").

Second, the law does not prevent Plaintiff from pursuing claims on behalf of non-residents under the FDUTPA. The FDUTPA broadly prohibits deceptive and

---

[8] "[C]ourts faced with motions to dismiss or strike class allegations prior to class certification have declined to rule . . . due to the prematurity of such motions." *Burke v. Credit One Bank, N.A.*, 2019 U.S. Dist. LEXIS 62770, at *6 (M.D. Fla. Feb. 5, 2019); *Sullivan v. Gov't Emples. Ins. Co.*, 2018 U.S. Dist. LEXIS 219631, at *25 (M.D. Fla. Apr. 6, 2018) (cleaned up) ("[T]he issue of whether claims deserve class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike.").

unfair conduct in any trade or commerce "wherever situated." Fla. Stat. § 501.203(8). And a Florida appellate court has held that "there are no geographical or residential restrictions contained in the express language of [FDUTPA]." *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000); *see also id.* at 1261 (noting broad language does not "confine the provisions of FDUTPA . . . to commercial transactions involving only Florida residents."). In *Millennium*, the court held that FDUTPA was even applicable to non-residents where the defendant's conduct "transpired" within Florida. *Id.* at 1262. That case does not foreclose that a *Florida-resident* plaintiff may pursue FDUTPA claims even where the injury occurs outside of Florida and on behalf of non-residents. *See id.* at 1262 (permitting Florida AG to pursue FDUTPA claims "even where those persons affected by the conduct reside outside of the state").

The cases upon which Walmart relies are inapposite. *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019), quotes directly from the other case Walmart relies on, *Carnival Corp. v. Rolls-Royce PLC*, 2009 U.S. Dist. LEXIS 107261 (S.D. Fla. Nov. 17, 2009), for the proposition that the FDUTPA only applies to actions that occur entirely within Florida. Motion at 5. *Carnival* in turn cites *Millenium* for that proposition. But, as noted above, that is not what *Millenium* held.[9] As the Southern District aptly explained: "[T]he Court finds nothing in *Millennium* suggests that the FDUTPA applies only when conduct occurs entirely within Florida. To the contrary,

---

[9] In *Dolan*, to boot, the plaintiff abandoned the argument, so there was no serious consideration of the issue. 385 F. Supp. 3d 1338, 1355.

*Millennium* highlighted the broad statutory language used in the FDUTPA." *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, 2012 U.S. Dist. LEXIS 61710, at *19–20 (S.D. Fla. May 2, 2012) (internal citations omitted); *see also 2P Commercial Agency S.R.O. v. Familant*, 2012 U.S. Dist. LEXIS 179628, at *12 (M.D. Fla. Dec. 19, 2012) (holding even foreign corporations can maintain FDUTPA claims).

Walmart also relies on *Stein v. Marquis Yachts, LLC*, but there, the court dismissed the plaintiff's individual FDUTPA claim because the plaintiff was a resident of Canada and none of the actions giving rise to his individual claim occurred in Florida. 2015 U.S. Dist. LEXIS 35088, at *17 (S.D. Fla. Mar. 20, 2015). Here, Plaintiff has already stated a claim under FDUTPA based on transactions in Florida. Order at 19. *Stein* says nothing about dismissing nationwide class allegations and is not applicable here.

The foregoing makes clear that Walmart is not entitled to dismissal of Count III.A. Plaintiff is not, as Walmart argues, "hid[ing] behind" the two cases Walmart cites and calls "inapposite." *See* Motion at 6 (citing *Karhu v. Vital Pharm., Inc.*, 2013 U.S. Dist. LEXIS 112613, at *26–27 (S.D. Fla. Aug. 9, 2013) (the court permitted the plaintiff—a New York resident—to pursue his claims under FDUTPA); *FTC v. Info Management Forum, Inc.*, 2013 U.S. Dist. LEXIS 91242, at *15, 17 (M.D. Fla. June 4, 2013) (the court permitted Florida's attorney general to pursue FDUTPA injunctive relief and claims even where affected persons were "consumers around the country")). Neither *Karhu* nor *FTC* speaks to whether Mr. Kukorinis, a Florida resident—who has already stated claims under the FDUTPA—can pursue non-resident class-members'

claims against Walmart. In *Karhu*, the court later addressed the propriety of the class allegations at the class certification stage. *See Karhu v. Vital Pharm., Inc.*, 2014 U.S. Dist. LEXIS 26756, at *26 (S.D. Fla. Mar. 3, 2014).

For the foregoing reasons, the Court should deny Walmart's attempt to prematurely address and dismiss Count III.A.

## CONCLUSION

Walmart's partial motion to dismiss does not argue that Plaintiff has failed to allege facts sufficient to state claims under any state law in Plaintiff's Amended Counts III.A–E. Rather Walmart relies on premature arguments, bad law, and placing form over substance. For the reason set forth above, Walmart's Motion should be denied.


Dated: August 31, 2023                       Respectfully submitted,

                                             **CHIMICLES SCHWARTZ KRINER &**
                                             **DONALDSON-SMITH LLP**

                                             *By: /s/ Kimberly M. Donaldson-Smith*
                                             Nicholas E. Chimicles
                                             Kimberly M. Donaldson-Smith
                                             Zachary P. Beatty
                                             361 West Lancaster Avenue
                                             Haverford, PA 19041
                                             Phone: 610-642-8500
                                             Fax: 610-649-3633
                                             nec@chimicles.com
                                             kds@chimicles.com
                                             zpb@chimicles.com

                                             ***Counsel for Plaintiff and the proposed classes***

**<u>Certificate of Service</u>**

I hereby certify that on August 31, 2023, the foregoing document was served on Defendant's counsel by the Court's electronic filing system.


<u>*/s/ Kimberly M. Donaldson-Smith*</u>

Kimberly M. Donaldson-Smith