## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 8:22-cv-02402-VMC-TGW |
| WALMART INC., | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Kimberly M. Donaldson-Smith
Nicholas E. Chimicles
Zachary P. Beatty
**Chimicles Schwartz Kriner & Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiff and the Putative Class*

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................. 1

II.    SUMMARY OF THE ACTION AND SETTLEMENT NEGOTIATIONS........... 3

III.   THE SETTLEMENT TERMS ............................................................ 6

       A.    The Settlement Class Definition ................................................. 7

       B.    Settlement Consideration, Settlement Class Release, The Plan of
             Allocation, and the Claim Form ................................................. 7

       C.    Notice to the Class ...................................................................10

       D.    Settlement Class Members' Ability to Opt-Out or Object............................11

       E.    Attorneys' Fees, Costs, and Expenses .......................................11

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
       SETTLEMENT...................................................................................12

       A.    Plaintiff and His Counsel Have Adequately Represented the Settlement Class
             ................................................................................................14

       B.    The Proposed Settlement is the Result of Arm's-length Negotiation.............15

       C.    The Relief Provided for the Class is More Than Adequate.........................15

             1.    The Settlement accounts for the costs, risks, and delay of
                   trial and appeals ...........................................................15

             2.    The Settlement provides for an effective method of processing
                   claims and distributing relief to the Settlement Class Members ........18

             3.    The terms of the proposed award of attorneys' fees are reasonable ....20

       D.    The Proposed Settlement Treats Class Members Equitably Relative
             to Each Other ..........................................................................20

V.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS ...............21

       A.    Plaintiff Has Standing ...............................................................21

       B.    The Settlement Class is Adequately Defined ................................22

C.      The Settlement Class Satisfies the Requirements of Rule 23(a) ...................23

      1.      The Settlement Class satisfies the requirements of Rule 23(a)............23

      2.      There are common questions of law and fact...................................23

      3.      Plaintiff's claims are typical of the Settlement Class.........................24

      4.      Plaintiff and Class Counsel have and will fairly and adequately protect the interests of the class .........................................................24

D.      The Settlement Class Meets the Requirements of Rule 23(b)(3) ..................25

VI.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ..........................................................................27

VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...................................30

VI.     CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997).................................................................................. 23, 26

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) .................................................................16

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984) ........................................................... *passim*

*Berman v. GM Ltd. Liab. Co.,*
    No. 2:18-CV-14371, 2019 U.S. Dist. LEXIS 200947 (S.D. Fla. Nov. 15,
    2019) ...........................................................................................................27

*Burrow v. Forjas Taurus S.A.,*
    No. 16-cv-21606, 2019 U.S. Dist. LEXIS 151734 (S.D. Fla. Sept. 6, 2019)..................27

*Burrow v. Forjas Taurus S.A.,*
    No. 16-cv-21606, 2019 U.S. Dist. LEXIS 63893 (S.D. Fla. Mar. 15, 2019)..................27

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ...................................................................20

*Carlotti v. Asus Comput. Int'l,*
    No. 18-cv-03369, 2020 U.S. Dist. LEXIS 108917 (N.D. Cal. June 22,
    2020) ...........................................................................................................17

*Carter v. Forjas Taurus S.A.,*
    No. 1:13-cv-24583, 2016 U.S. Dist. LEXIS 96054 (S.D. Fla. July 22,
    2016) ...........................................................................................................27

*Cherry v. Dometic Corp.,*
    986 F.3d 1296 (11th Cir. 2021) ........................................................... 22, 23

*Cotter v. Checkers Drive-In Rests., Inc.,*
    No. 8:19-cv-1386, 2021 U.S. Dist. LEXIS 160592 (M.D. Fla. Aug. 25,
    2021) ................................................................................... 14, 15, 21, 28

*In re Equifax Customer Data Sec. Breach Litig.,*
    No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar.
    17, 2020)......................................................................................................11

*Ferron v. Kraft Heinz Foods Co.,*
    No. 20-cv-62136, 2021 U.S. Dist. LEXIS 129955 (S.D. Fla. July 13, 2021) ............ *passim*

*Fox v. Ritz-Carlton Hotel Co., LLC,*
    977 F.3d 1039 (11th Cir. 2020) ........................................................................... 21, 22

*Gevaerts v. TD Bank,*
    No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov.
    5, 2015)...............................................................................................................16

*Harvey v. Hammel & Kaplan Co., LLC,*
    No. 3:19-cv-640, 2020 U.S. Dist. LEXIS 229017 (M.D. Fla. Dec. 7, 2020)....... 16, 18, 21

*In re Health Ins. Innovations Sec. Litig.,*
    No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051 (M.D. Fla. Mar. 23,
    2021) ....................................................................................................................16

*Holmes v. Wca Mgmt. Co., L.P.,*
    No. 6:20-cv-698, 2021 U.S. Dist. LEXIS 84518 (M.D. Fla. May 3, 2021) ...................20

*Horton v. Metro. Life Ins. Co.,*
    No. 93-cv-1849, 1994 U.S. Dist. LEXIS 21394 (M.D. Fla. Oct. 25, 1994) ...................11

*JWD Auto., Inc. v. DJM Advisory Grp. LLC,*
    No. 2:15-cv-793, 2017 U.S. Dist. LEXIS 187266 (M.D. Fla. Aug. 15,
    2017) ....................................................................................................................11

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004) ...........................................................................26

*Kukorinis v. Walmart, Inc.,*
    No. 19-cv-20592, 2021 U.S. Dist. LEXIS 259110 (S.D. Fla. Sept. 20,
    2021) ....................................................................................................................27

*Lee v. Ocwen Loan Servicing, LLC,*
    2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015)...........................................19

*Narvaez v. Law Offices of Antonio Duarte, III, P.A.,*
    No. 8:14-cv-1646, 2015 U.S. Dist. LEXIS 37744 (M.D. Fla. Mar. 25,
    2015) ......................................................................................................... 23, 24, 25

*Northrup v. Innovative Health Ins. Partners, LLC,*
    329 F.R.D. 443 (M.D. Fla. 2019)................................................................................24

*Poertner v. Gillette Co.,*
    618 Fed. App'x 624 (11th Cir. 2015) .................................................................. 17, 19

*Preman v. Pollo Operations, Inc.,*
    No. 6:16-cv-443, 2018 U.S. Dist. LEXIS 79065 (M.D. Fla. Apr. 12, 2018)...................22

iv

*Roth v. Geico Gen. Ins. Co.*,
   No. 16-cv-62942, 2021 U.S. Dist. LEXIS 23105 (S.D. Fla. Feb. 8, 2021) ....................19

*Sanchez-Knutson v. Ford Motor Co.*,
   No. 14-cv-61344, 2017 U.S. Dist. LEXIS 96560 (S.D. Fla. June 20, 2017) ..................27

*Schojan v. Papa John's Int'l*,
   303 F.R.D. 659 (M.D. Fla. 2014)................................................................................26

*Shuman v. SquareTrade Inc.*,
   No. 20-cv-02725, 2023 U.S. Dist. LEXIS 34302 (N.D. Cal. Mar. 1, 2023) ..................17

*In re United States Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ...................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2001)...................................................................................................23

*Williams v. New Penn Fin., LLC*,
   No. 3:17-cv-570, 2019 U.S. Dist. LEXIS 106268 (M.D. Fla. May 8, 2019)..................18

*Wilson v. EverBank*,
   No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3, 2016) ....................15

**Statutes**

28 U.S.C. § 1715(b) ...........................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

## I.   INTRODUCTION

The proposed Settlement creates a cash, non-reversionary common fund of *$45 million* for the benefit of the Settlement Class Members.[1] The Settlement is an excellent outcome of this Action for the Class. It achieves an estimated recovery of more than 11% of the estimated aggregate overcharges alleged in the Action for in-store purchases at Walmart Stores of Weighted Goods and Bagged Citrus.[2] The Settlement provides Settlement Class Members with the ability to receive cash payments of up to $25 without proof of purchase or up to $500 with documentation of their purchases of Weighted Goods and Bagged Citrus. The Settlement was reached after over six-months of intense negotiation by the parties, multiple mediation sessions conducted by the experienced and highly respected mediator Robert A. Meyer, Esq., briefing on two rounds of motions to dismiss, and the production by Walmart and analysis by Plaintiff and his expert of substantial data and information.

The proposed Settlement Agreement, which is set forth fully as Exhibit 1 to the Donaldson-Smith ("KDS") Declaration, is fair, reasonable, and adequate and warrants preliminary approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Accordingly, Plaintiff respectfully submits this unopposed motion and memorandum of law in support, seeking preliminary approval of the Settlement, and

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Stipulation and Agreement of Settlement ("Agreement" or "SA ¶ _").

[2] Walmart denies the allegations in the Complaint and Amended Complaint and denies that the claims alleged are amenable to class-wide treatment. Walmart, however, does not oppose conditional certification of the Settlement Class for settlement purposes, nor does Walmart oppose granting of preliminary approval for purposes of effectuating the parties' Settlement in accordance with the parties' Agreement. SA ¶¶ 3.9, 4.4, 16.4.

entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "PAO") (Exhibit A1 to the Agreement).[3]

As part of the Settlement and proposed plan to provide Settlement Class Members notice of the Settlement (the "Notice Plan"),[4] direct email notice will be sent to Walmart customers who are likely to have purchased Weighted Goods and Bagged Citrus.[5] Although a Court order setting dates for the final approval hearing, notice, and settlement-related deadlines (*see* PAO ¶¶ 5, 11–12, 17) needs to await Walmart's completion of the email collection (which is well underway), the Court may otherwise address Plaintiff's Motion in the interim (*see* PAO ¶¶ 1–4, 6–10, 13–16, 18–38). Due to the volume of the data being queried, it is a time-consuming process and Walmart expects to identify the emails, along with a count of the number of emails, within the next four to six weeks.

At that time, Plaintiff will provide the Court with: (1) the number of emails for direct notice (which Walmart currently expects to be tens of millions); (2) the start and

---

[3] The PAO seeks, *inter alia*: (1) preliminary approval of the proposed Settlement; (2) certification of the proposed Settlement Class for Settlement purposes only; (3) appointment of Class Counsel and Plaintiff to represent the Settlement Class; (4) appointment of Angeion Group as the Claims Administrator; (5) approval of the Notice Plan; (6) establishment of deadlines and procedures for Settlement Class Members to opt-out or to object; and (7) scheduling of the Final Approval Hearing.

[4] The Notice Plan is described in the contemporaneously filed Declaration of Steven Weisbrot, Esq. Re: Angeion Group Qualifications & The Proposed Notice Plan ("**Weisbrot Decl.**"). Plaintiff requests that the Court approve Angeion Group (who Plaintiff selected pursuant to a request for proposal process among several experienced administrators, KDS Decl. ¶ 28) as Claims Administrator, to perform the notice and claims administration functions in accordance with the Settlement Agreement. Angeion Group's extensive experience in designing and implementing class action notice plans, and handling class action settlement administration, *see* Weisbrot Decl. ¶¶ 3–11. *See* PAO ¶ 9.

[5] Requiring direct email notice (the first time in a Walmart consumer class action settlement of this magnitude) was a significant Settlement term negotiated and insisted upon by Plaintiff; its aim is to maximize Settlement Class Members' participation in the Settlement.

end dates for notice (which dates are dependent on receipt of and the volume of emails); and (3) if the Court has already entered an order preliminarily approving the proposed Settlement, a form of proposed scheduling order (or, if the Court has not yet ruled on Plaintiff's Motion, an updated form of PAO) identifying the proposed Settlement-related deadlines and timing for the Final Approval Hearing (which are dependent upon the end date for dissemination of the Notice to Settlement Class Members).

## II.    SUMMARY OF THE ACTION AND SETTLEMENT NEGOTIATIONS

This Action was initiated by the filing of a detailed, well-documented Class Action Complaint in October 2022 asserting nationwide claims against Walmart for alleged violations state consumer protection acts and unjust enrichment. ECF No. 1.

Specifically, Plaintiff alleged that the following conduct caused a Person who Purchased Weighted Goods or Bagged Citrus at a Walmart Store during the Settlement Class Period to pay more than the lowest in-store advertised price for those products: (1) With respect to Weighted Goods, Plaintiff alleged that when the per unit price (e.g., the per pound or per ounce price) appearing on a Shelf Tag and/or displayed at checkout was lower than what appeared on the price label on the product, Walmart's in-store point-of-sale ("POS") system would instead charge a Person at checkout the price on the label, even if that per unit price was higher (*see* Am. Compl. ¶¶ 5, 38–61)[6]; and (2) With respect to Bagged Citrus, Plaintiff alleged that the Shelf

---

[6] With respect to Weighted Goods that were nearing expiration, Plaintiff alleged that the yellow

Tags in Walmart Stores displayed a weight that was higher than the weight of the Bagged Citrus appearing on its label and that Persons were charged for more Bagged Citrus than purchased (*see id.* at ¶¶ 6, 62–71).

Class Counsel retained an expert to aid in the review and analyses of forthcoming transaction data and to conduct damages analyses and consulted with industry experts concerning grocery store operations and point of sale systems. KDS Decl. ¶¶ 6–7. On January 25, 2023, the Court entered the Scheduling Order. ECF No. 34. Two weeks later, Plaintiff served forty detailed requests for production on Walmart targeting documents and data critical to Plaintiff's claims. KDS Decl. ¶ 9. Plaintiff prepared and served detailed initial disclosures. *Id.* at ¶ 10. On February 28, 2023, the parties held an in-person meeting in Philadelphia to confer about the discovery requests, which was followed by further telephonic and written conferrals in early March 2023. *Id.* at ¶ 11. On March 20, 2023, Walmart served 64 pages of objections and narrative-form responses. *Id.* at ¶ 12.

Because of Plaintiff's allegations of systemic, POS-system-driven overcharges, Walmart most importantly produced, over several months, over 100 gigabytes of data related to Plaintiff's allegations concerning Weighted Goods and Bagged Citrus. *See* SA ¶ 3.6. As to Weighted Goods, Walmart produced about half a billion lines of transaction-level data from over 4,000 Walmart Stores in the United States and Puerto Rico. KDS Decl. ¶ 13.c. While the transaction-level data provided information such

---

sticker on the product that advertised the product's reduced price could state a lower per unit price than what the Person was charged for the product in the store. *See* Am. Compl. ¶¶ 7, 72–88.

as the price paid at checkout and the base retail amount for Weighted Goods purchased, the data did not provide personal identifying or contact information of the purchaser associated with each transaction. *Id.* Walmart also produced over four years' worth of aggregate sales and transaction data for each of the Bagged Citrus products. *Id.* ¶¶ 13.b., 13.e. Plaintiff's data and damages expert aided Class Counsel in the interpretation and analysis of the data and calculation of potential damages. *Id.* ¶ 14.

During this time, Plaintiff also responded to Walmart's motion to dismiss the Action in its entirety, which the Court granted in part and denied in part on July 6, 2023. *See id.* at ¶ 23. Plaintiff immediately began the preparation of the Amended Complaint, which he filed promptly on July 20, 2023. *Id.* The Amended Complaint re-alleged Plaintiff's FDUTPA claims on behalf of a nationwide class and re-alleged his multistate consumer protection claims on behalf of a multistate class. ECF No. 56. On August 10, 2023, Walmart filed its partial motion to dismiss the Amended Complaint, to which Plaintiff responded on August 31, 2023. ECF Nos. 60, 63.[7]

Contemporaneously with actively litigating this case, the parties began settlement discussions in late 2022 and proceeded with exchanging information about Plaintiff's claims in earnest in 2023. KDS Decl. ¶ 8. On February 28, 2023, the parties conducted an in-person settlement meeting in Philadelphia. *Id.* at ¶ 11. The parties retained the services of Robert Meyer, who is an experienced JAMS mediator. *Id.* at ¶

---

[7] On September 23, 2023, upon notification by the Parties that they had reached a settlement-in-principle, the Court denied without prejudice Walmart's partial motion to dismiss the Amended Complaint. ECF Nos. 64–65.

19. In advance of the mediation sessions, Plaintiff prepared detailed mediation statements for the mediator addressing various issues including liability and damages based on Plaintiff's work with his expert. *Id.* at ¶ 20. On May 24, 2023, the parties attended an all-day mediation at the office of Mr. Meyer in Los Angeles. *Id.* On June 16, 2023, the parties then conducted another full-day mediation session via Zoom. *Id.* Prior to and after these sessions, the parties held numerous conferrals and exchanged, verbally and in writing, information relevant to the parties' claims and defenses. *Id.* at ¶¶ 21–22. Many of these conferrals were facilitated by the mediator, during which Mr. Meyer communicated jointly and separately with the parties' counsel. *Id.*

The parties reached an agreement in principle the week of September 18, 2023, and promptly notified the Court. *Id.* at ¶ 24. Since then, Plaintiff has conducted additional discovery, including confirmatory discovery focused on affirming critical information relayed to Class Counsel during settlement negotiations. *Id.* at ¶ 26. Walmart provided written confirmatory discovery to Class Counsel. *Id.* The parties spent extensive time drafting, negotiating, and finalizing the Settlement Agreement and attachments and executed the Agreement on November 15, 2023. *Id.* at ¶ 27.

## III.   THE SETTLEMENT TERMS

To resolve all claims in the Action, Plaintiff and his counsel negotiated a $45 million settlement for the Settlement Class Members. The full terms of the proposed Settlement are set forth in the Settlement Agreement (Exhibit A to the KDS Decl.).

### A.    The Settlement Class Definition

The Settlement Class includes "all Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico (collectively 'Walmart Store') during the Settlement Class Period." SA ¶ 2.44.[8] "Purchased" is defined as purchases of Bagged Citrus and/or Weighted Goods, that were made in-person, not for re-sale, and not returned; and the Class Period is October 19, 2018 through and including the date the Court grants the Preliminary Approval Order. SA ¶¶ 2.37, 2.47.

"Weighted Goods" means "variable weight meat, poultry, pork and seafood products that are labeled with a price embedded bar code and designated by Walmart as part of its Department 93 products. At times, Weighted Goods that are nearing their expiration dates may have been labelled with a yellow sticker that provided a discounted "You Pay!" price. The Weighted Goods and their UPCs are listed on Addendum A." SA ¶ 2.58. "Bagged Citrus" means "the organic oranges, grapefruit, tangerines, and navel oranges sold in bulk in mesh or plastic bags and bearing UPC Codes listed on Addendum B." SA ¶ 2.5.[9]

### B.    Settlement Consideration, Settlement Class Release, the Plan of Allocation, and the Claim Form

Walmart will pay the Class Settlement Amount of $45 million into the Class

---

[8] Excluded from the Settlement Class are: (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart Inc.'s directors, officers, and executives; (3) Class Counsel; and (4) Settlement Class Members who submit a valid and timely Opt-Out Request approved by the Court.

[9] Settlement Addenda A & B are grouped by type of product, and searchable versions of the addenda will be available on the Settlement Website for use by the Settlement Class Members. To make a claim, however, a Settlement Class Member need *not* list UPCs on her Claim Form. *See* SA Ex. 1B.

Settlement Fund, which is an interest-bearing escrow account, within thirty days of the Court entering the PAO. *See* SA ¶¶ 2.11, 2.17, 5.1. Importantly, the Class Settlement Amount is non-reversionary, which means that upon the Effective Date of the Settlement, any and all remaining interest or right of Walmart in the Class Settlement Amount shall be absolutely and forever extinguished. SA ¶ 5.2.

In exchange, upon the Effective Date, Settlement Class Members shall have "fully and forever released, compromised, settled" against Walmart Released Parties (SA ¶ 2.56) each and every Settlement Class Member Released Claim "relating to or arising out of . . . allegations that they paid more than the lowest price advertised in the Walmart Store for Bagged Citrus and/or Weighted Goods during the Settlement Class Period." SA ¶¶ 2.45, 2.56, & 12.[10]

Under the Settlement, as set forth in ¶ 5.3, the Class Settlement Fund will be used to pay Notice and Administration Costs, Taxes and Tax Expenses of the Class Settlement Fund, an Award of Attorneys' Fees, Costs, and Expenses to Class Counsel approved by the Court, and after the Effective Date of the Settlement, the Net Class Settlement Fund (SA ¶ 2.25) will be allocated to Settlement Class Members as set forth in ¶ 5.4 of the Agreement (the "Plan of Allocation").

The Plan of Allocation is based on the number of Bagged Citrus and/or Weighted Goods that a Settlement Class Member attests to having purchased during

---

[10] In the Settlement Agreement, Plaintiff gives a broader release. SA ¶ 12.9. Plaintiff is not receiving any individual or additional compensation for this release. Neither the Settlement Class or Plaintiff are releasing any claims for personal injury or wrongful death. SA ¶¶ 12.3, 12.9.

the Settlement Class Period. SA ¶ 5.4. Without documentation, Settlement Class Members are eligible to submit a Claim Form attesting to having Purchased up to 50, 75, or 100, or more than 100 Weighted Goods and Bagged Citrus products, making them eligible for payments of $10, $15, $20, and $25, respectively. SA ¶¶ 5.4(a)(i)–(iv). Alternatively, if a Class Member has receipts documenting their Purchases of Weighted Goods and/or Bagged Citrus, such Class Member is eligible to submit a Claim Form to receive 2% of the total price of all of those documented purchases submitted up to $500. SA ¶ 5.4(a)(v). If the Approved Claimants' aggregate Claims are greater or less than the Net Settlement Fund, the payments will be decreased or increased, as applicable, on a pro rata basis. SA ¶ 5.4(b).[11]

Class Counsel, in consultation with and based on the liability and damages' analyses conducted on Walmart's data, derived the Plan of Allocation. KDS Decl. ¶ 16. It is based on Walmart's data that established: (1) there was not an overcharge on every Weighted Good and Bagged Citrus purchase during the Settlement Class Period; (2) the estimated, average cost of all Weighted Goods and Bagged Citrus was $10.30 per product; and (3) the alleged wrongdoing caused an approximate, on average, 2% overcharge on all Weighted Goods and Bagged Citrus purchases. *Id.*[12]

---

[11] The Settlement even provides for supplemental distributions; however, if they are no longer economically feasible, Class Counsel will apply to the Court for a *cy pres* distribution. SA ¶ 5.4(b).

[12] *To illustrate:* A Settlement Class Member who purchased an average of 1.5 Weighted Goods every month during the Settlement Class Period purchased 90 Weighted Goods. She is assumed to have spent approximately $927 (90 x $10.30) and overcharged 2% or $18.50. She may submit a Claim Form attesting to having purchased more than 75 Weighted Goods and be eligible for $20.00 (subject to proration) without submitting supporting documentation. *See* SA ¶ 5.4(a)(iii). Alternatively, if she spent more than $927 and has receipts documenting those purchases of Weighted Goods, she may

In order to receive their cash payments from the Net Settlement Fund,[13] Settlement Class Members need only fill out and timely submit a simple, straightforward Claim Form (SA Ex. 1B).[14] The Claim Form may be completed and submitted online via the Settlement Website or by emailing or mailing the completed and signed Claim Form to the Claims Administrator. SA ¶ 5.4(c). The Agreement also sets out a process for a Settlement Class Member to cure any deficiencies identified by the Claims Administrator. SA ¶ 5.4(f).

## C.   Notice to the Class

The proposed Settlement provides for a combination of direct (including by email), digital, and publication notice, which is the best practicable notice of this Settlement to the Settlement Class Members. SA ¶ 6. The Claims Administrator will effectuate the Notice in accordance with the proposed Notice Plan detailed in the Weisbrot Declaration and discussed in Section VI, *infra*.[15] The Settlement and Notice Plan also provide for the establishment of a Settlement Website, www.WalmartWeightedGroceriesSettlement.com, that will contain substantial

---

elect to submit such receipts and is eligible to receive 2% of the total cost of her documented eligible purchases of Weighted Goods and Bagged Citrus, capped at $500 (subject to proration). *See* KDS Decl. ¶ 16; SA ¶ 5.4(a)(v).

[13] Authorized Claimants will be able to receive their cash payment from the Net Settlement Fund by electronic means (such as Venmo, ACH, Zelle, or Virtual MasterCard), or, if requested, by mailed check. SA ¶ 5.4(d). There are no restrictions, limitations, or expiration dates attached to the Claimant's use of the electronic settlement payment. Weisbrot Decl. ¶ 55.

[14] One Claim Form covers all of the Settlement Class Member's Weighted Goods and Bagged Citrus purchases, and therefore, the Settlement Class Member can only submit one Claim Form. The Settlement provides, as a means to deter fraudulent claims, that the Claims Administrator will limit the number of payments made per household (at the same address) absent sufficient documentation of proof of separate purchases by individuals residing at the same address. SA ¶ 5.4(e).

[15] The Notice and Summary Notice to be provided to the Settlement Class Members are attached as Exhibits 1A and 1C to the Settlement Agreement.

information about the Settlement, the Settlement Agreement and all settlement-related Court filings, the Notice and Summary Notice, and a toll-free phone number to handle Class Members' inquiries. Weisbrot Decl. ¶¶ 55–60.[16]

### D.   Settlement Class Members' Ability to Opt-Out or Object

The Settlement also provides, and establishes the deadlines and procedures, for the right of Settlement Class Members to: (a) opt-out or exclude themselves from the Class and Settlement (SA ¶ 9); or (b) object to the Settlement or Class Counsel's application for Attorneys' Fees, Costs, and Expenses (SA ¶ 10). These procedures and deadlines are set forth in detail and summary form in the Notice and Summary Notice (Exs. 1A & 1C) and will also appear on the home page of the Settlement Website.[17] Notably, the Settlement Class Members will have the benefit of Plaintiff's motion in support of final approval of the Settlement and application for an award of Attorneys' Fees, Costs, and Expenses, both of which will be filed with the Court (and put on the Settlement Website) in advance of the opt-out and objection deadline. PAO ¶¶ 24, 32.

### E.   Attorneys' Fees, Costs, and Expenses

For their efforts in prosecuting the claims and obtaining the Settlement on

---

[16] In accordance with 28 U.S.C. § 1715(b), Walmart shall provide the CAFA notice to the appropriate governmental authorities not later than ten (10) days after this filing. SA ¶ 7.1.

[17] The opt-out and objection procedures set forth in the Agreement (¶¶ 9–10) and PAO (¶¶ 23–30), which require a timely and signed written submission of simple information, are consistent with the procedures commonly used in class settlements. *See, e.g., In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209, at *220 n.35 (N.D. Ga. Mar. 17, 2020) (collecting cases requiring objections to contain personal contact information and signed statements that the objector is a member of the class); *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 2:15-cv-793, 2017 U.S. Dist. LEXIS 187266, at *4–6 (M.D. Fla. Aug. 15, 2017) (ordering similar procedure for opt-outs and objections); *Horton v. Metro. Life Ins. Co.*, No. 93-cv-1849, 1994 U.S. Dist. LEXIS 21394, at *28 (M.D. Fla. Oct. 25, 1994) (holding that a "group or mass opt-out . . . is improper").

behalf of the Settlement Class, Class Counsel will apply to the Court for a fee up to 20% of the Class Settlement Amount plus reimbursement of costs and expenses (which costs and expenses will not exceed $200,000) incurred in connection with the Action, plus any interest on such fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid). SA ¶ 8.1 & Ex. 1A ¶ 16.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

The Eleventh Circuit "strongly favors the pretrial settlement of class action lawsuits," *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), "where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Ferron v. Kraft Heinz Foods Co.*, No. 20-cv-62136, 2021 U.S. Dist. LEXIS 129955, at *14 (S.D. Fla. July 13, 2021). Accordingly, in determining whether to approve a settlement, the Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Rule 23(e) governs the approval process for class settlements. Approval of a class settlement occurs in two steps: preliminary approval and final approval. After the court grants preliminary approval, notice of the proposed settlement and its terms are provided to class members who are then given an opportunity to object to the settlement or opt-out of the class and settlement. Final approval follows.

At the preliminary approval stage, the settling parties must provide the Court

12

with "information sufficient to enable it to determine whether to give notice" of the proposed settlement to the class. Fed. R. Civ. P. 23(e)(1). The Court must determine whether "giving notice is justified by the parties' showing that the court will *likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

Rule 23(e)(2), as amended in 2018, outlines several factors the Court must consider in determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3)[18]; and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The 2018 Advisory Committee Notes make clear that these factors should be addressed as the "core concerns" but do not displace other "lists of factors" courts have traditionally applied. Courts in the Eleventh Circuit have traditionally evaluated whether a settlement is fair, reasonable, and adequate using the applicable *Bennett* approval factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6)

---

[18] Here, there is no additional agreement required to be identified under Rule 23(e)(3). As noted in note 10, *supra,* the Settlement Agreement ¶ 12.9 provides for a release by Plaintiff that is broader than that of the Settlement Class Members. It is separate from and has no effect on the Settlement Class Members' claims or releases. Plaintiff is not receiving any additional compensation for this release.

the stage of proceedings at which the settlement was achieved.

737 F.2d at 986 (11th Cir. 1984).[19]

Accordingly, Plaintiff addresses all relevant Rule 23(e)(2) factors and notes the *Bennett* factors when applicable. Under all relevant factors, the Settlement here is fair, reasonable, and adequate and is in the best interests of the class.

## A.   Plaintiff and His Counsel Have Adequately Represented the Settlement Class.

Rule 23(e)(2)(A) focuses on "the actual performance of counsel acting on behalf of the class," including whether plaintiff and class counsel "had an adequate information base" before entering the settlement.[20] 2018 Adv. Comm. Notes. But "early settlements are favored such that vast formal discovery need not be taken." *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 U.S. Dist. LEXIS 160592, at *25–26 (M.D. Fla. Aug. 25, 2021) (cleaned up).

Here, Class Counsel vigorously prosecuted this case and had a deep understanding of the strengths and weaknesses of the Settlement Class's claims prior to settling. Class Counsel's understanding was developed by, e.g., extensive investigation of the claims prior to and after filing the initial complaint, briefing two rounds of motions to dismiss, substantial discovery, consultation with industry experts, expert data analysis, and confirmatory discovery. KDS Decl. ¶¶ 5–7, 13, 23–26. Class Counsel, who have extensive experience in prosecuting class actions, had

---

[19] The fifth *Bennett* factor, any opposition to the settlement, is premature as notice has not been sent out. It will be addressed in Plaintiff's motion for final approval.

[20] This factor overlaps with the sixth *Bennett* factor: "the stage of proceedings at which the settlement was achieved."

sufficient information to evaluate the merits of the case and the risks of continued litigation and negotiated outstanding relief for the Class. *See id.* at ¶ 30 & Ex. B (Firm Resume); *Cotter*, 2021 U.S. Dist. LEXIS 160592, at *25–26.

**B.    The Proposed Settlement is the Result of Arm's-length Negotiation.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." 2018 Adv. Comm. Notes. Here, the Settlement was reached after two all-day sessions with a highly respected independent mediator, Robert A. Meyer of JAMS, with extensive experience in class actions. KDS Decl. ¶¶ 19–23; s*ee, e.g.*, *See Wilson v. EverBank*, No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751, at *16 (S.D. Fla. Feb. 3, 2016) (concluding that settlement negotiations overseen by a "nationally renowned" mediator weighed in favor of final settlement approval); *Cotter*, 2021 U.S. Dist. LEXIS 160592, at *22.

**C.    The Relief Provided for the Class is More Than Adequate.**

The $45 million Settlement provides excellent monetary relief for the class, especially considering the risks of continued litigation. The claims process is fair and straightforward. The amount of attorneys' fees is below the benchmark award.

**1.    The Settlement accounts for the costs, risks, and delay of trial and appeals.**

"Whether under Rule 23(e)(2)(C) or the *Bennett* factors, it is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.'" *Harvey v. Hammel & Kaplan*

*Co., LLC*, No. 3:19-cv-640, 2020 U.S. Dist. LEXIS 229017, at *17 (M.D. Fla. Dec. 7, 2020) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 322 (3d Cir. 1998)). The monetary relief offered by the Settlement is more than adequate standing alone but especially when considering the risks of continued litigation.[21]

Based on expert data analysis, Class Counsel estimated that maximum recovery ranged between $331 million and $421 million for a *nationwide* class—which assumes that Plaintiff was successful on all claims alleged, defeated Walmart's pending motion to dismiss challenging Plaintiff's nationwide claims, obtained certification of a nationwide class, survived summary judgment, won at trial, and survived lengthy appeals. *See* KDS Decl. ¶ 17. Thus, $45 million represents between 11% and 14% recovery of the total maximum liability if Plaintiff would have been completely successful in trying this case. *Id.*; *see, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051, at *24 (M.D. Fla. Mar. 23, 2021) (approving a settlement fund of 10% of the estimated value); *Gevaerts v. TD Bank*, No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *19 (S.D. Fla. Nov. 5, 2015) (same); *Behrens v. Wometco Enters.*, *Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

For each Approved Claimant, based on Class Counsels' and Plaintiff's expert's

---

[21] This factor overlaps with the first through fourth *Bennett* factors: the likelihood of success at trial; the range of possible recovery; the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; and the complexity, expense and duration of litigation.

analyses of the data reflecting the average purchase price of Weighted Goods and Bagged Citrus was $10.30 and that the alleged wrongdoing caused a 2% overcharge on all Weighted Goods and Bagged Citrus, Settlement Class Members who submit Approved Claims are eligible to receive payments of $10 to $500 that represent substantial, if not full recoveries, on their actual damages. *See* KDS Decl. ¶ 16; *supra* note 12; SA ¶¶ 5.4(a)(i)–(v). And even if the claims rate here is relatively high, and there is a pro rata decrease, Approved Claimants should still receive a substantial recovery because the range of average damage was $1.22 to $1.78 for each Weighted Good and Bagged Citrus for which there *was* an overcharge. *See* KDS Decl. ¶ 16; Am. Compl. ¶¶ 45–57, 60, 66–67, 70, 80, 82; *see, e.g.*, *Carlotti v. Asus Comput. Int'l,* No. 18-cv-03369, 2020 U.S. Dist. LEXIS 108917, at *11 (N.D. Cal. June 22, 2020) (granting final approval in a case with a 4.02% claims rate where the notice program included "direct email notice, publication in People Magazine and Time, and ad impressions"); *Shuman v. SquareTrade Inc.,* No. 20-cv-02725, 2023 U.S. Dist. LEXIS 34302, at *9 (N.D. Cal. Mar. 1, 2023) (describing a 6% claims rate as "healthy" where notice included postcards to some class members and emails to others); *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 626 & n.1 (11th Cir. 2015) (approving settlement in consumer-retail case with claims rate of less than 1%).

Moreover, continuing litigation posed real risks here. For example, Walmart argued that: (a) most of the Class's claims were barred by a prior settlement and the Court's July Motion to Dismiss Order; (b) a litigation class is not certifiable; (c) Plaintiff could not overcome hurdles of proof of misrepresentations on the Shelf Tags

in over 4,000 Walmart Stores; and (d) it complied with all applicable laws. *See, e.g.*, *Harvey*, 2020 U.S. Dist. LEXIS 229017, at \*17–18 (noting that the "possibility that Defendant could prevail on the merits or defeat contested class certification" weighs in favor of approval). And the claims here are complex and would involve extensive expert battles about the data, liability, and damages. *See Williams v. New Penn Fin., LLC*, No. 3:17-cv-570, 2019 U.S. Dist. LEXIS 106268, at \*15 (M.D. Fla. May 8, 2019).

The Settlement, however, makes $45 million available, now, for the benefit of the Settlement Class. *Ferron*, 2021 U.S. Dist. LEXIS 129955, at \*34 ("[T]he immediate benefit provided by a settlement—compared to the time required to litigate class actions involving complex claims and defenses—weighs in favor of deeming a settlement fair, reasonable, and adequate.").

### 2.  The Settlement provides for an effective method of processing claims and distributing relief to the Settlement Class Members.

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." 2018 Adv. Comm. Notes.

To claim cash payments, Settlement Class Members need only fill out a simple Claim Form. SA Ex. 1B. The Claim Form may be submitted via the Settlement Website, email, or mail. SA ¶ 5.4(c). Requiring a Settlement Class Member to make a Claim in order to receive a payment under the Settlement is fair and reasonable here because not all Settlement Class Members can be identified in Walmart's records and, notably, given the small dollar amounts at issue for each individual overcharge, it

18

"maximize[s] the opportunity available to each class member," who is willing to "take the minimal step of returning the simple Claim Form[,] to receive [a] larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *57 (S.D. Fla. Sept. 14, 2015); *accord Roth v. Geico Gen. Ins. Co.*, No. 16-cv-62942, 2021 U.S. Dist. LEXIS 23105, at *25 (S.D. Fla. Feb. 8, 2021).

The Claim Form is not demanding but designed to facilitate legitimate claims by asking the Settlement Class Member to: (a) provide her contact information; (b) chose one of two options (either submit a documented or documented claim) and give examples of the products purchased; and (c) attest under penalty of perjury as to the accuracy of the information provided. *See* SA Ex. 1B. While a Settlement Class Member may elect to submit documentation to seek more than $25 and up to $500, no receipts or documentation are otherwise necessary to submit a Claim. SA ¶ 5.4(a)(i)–(iv). The claims process here is not demanding but is, instead, straightforward and designed to encourage claims. *See Poertner*, 618 F. App'x at 628 (affirming approval of settlement where $6 "could be claimed without proof of purchase" by the use of a "straightforward" claim form that asked for "class member's contact information, the number of packages purchased, the type and size of the batteries, the purchase location, and the devices in which the batteries were used").[22]

---

[22] Importantly, processes are being employed to identify and protect against fraudulent claims. A principal part of the Notice Plan is the use of emails for consumers who were identified as likely to be purchasers of the Weighted Goods and Bagged Citrus products. Weisbrot Decl. ¶¶ 23–32. Additionally, the Claims Administrator is implementing proprietary fraud detection systems to detect fraudulent claims and protect deserving claimants. *Id.* at ¶¶ 61–64. In addition, a Claimant will be given an opportunity to cure deficient or rejected Claims, but no discovery will be allowed in connection with processing any Claim Form. *See* SA ¶ 5.4(f)–(g); PAO ¶¶ 20–21.

3. **The terms of the proposed award of attorneys' fees are reasonable.**

The Settlement provides a $45 million non-reversionary common fund. SA ¶¶ 5.1–5.2. Class Counsel will seek up to, but not to exceed, 20% of the Class Settlement Amount plus reimbursement of costs and expenses (which costs and expenses will not exceed $200,000) plus interest at the same rate and for the same periods as earned by the Class Settlement Fund (until paid). SA ¶ 8.1 & Ex. 1A ¶ 16. At this preliminary stage the Court need not finally approve the fees or expenses. Rather, it need only determine that the proposal is reasonable for the purposes of providing notice to the Settlement Class Members. *See, e.g., Holmes v. Wca Mgmt. Co., L.P.*, No. 6:20-cv-698, 2021 U.S. Dist. LEXIS 84518, at *27 (M.D. Fla. May 3, 2021), R&R adopted at 2021 U.S. Dist. LEXIS 90692. A proposed request for attorneys' fees of up to 20% of the Class Settlement Amount is below the benchmark awarded in this Circuit. *See, e.g., Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (describing "25% as a 'bench mark' percentage fee award"). Further, Class Counsel will not receive any fees or expenses until after the Court grants final approval of the fee and expense application. SA ¶ 8.2.

D. **The Proposed Settlement Treats Class Members Equitably Relative to Each Other.**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. As discussed above, Settlement Class Members may make a claim in one of five different tiers for amounts that correspond to their average alleged overpayments, as estimated by Class Counsel's data analysis;

20

or, alternatively, a claimant with documented claims may be eligible for more than $25. SA ¶ 5.4. Both analyses are calculated based on the same estimates and assumptions about damages. *See* KDS Decl. ¶ 16. And all Approved Claimants are equally subject to a pro rata increase or decrease, and supplemental distributions, depending on the total amount of the Approved Claimants' claims relative to the Net Settlement Fund amount. SA ¶ 5.4(b). Thus, the Settlement treats Settlement Class Members equitably relative to each other. *See Harvey*, 2020 U.S. Dist. LEXIS 229017, at *18-19 (approving settlement where class members were to "receive a settlement payment commensurate with their respective amount paid over their discounted Hospital Bill amount"); *Cotter*, 2021 U.S. Dist. LEXIS 160592, at *23 (approving $5.00 vouchers for undocumented claims and up to $5,000 for documented claims).

## V.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS[23]

At this stage of the case, the Court need only preliminarily determine that class treatment is appropriate to conditionally certify a Settlement Class for the purpose of giving Notice pursuant to Fed. R. Civ. P. 23(e)(1)(B). *See* PAO ¶ 2.

### A.     Plaintiff Has Standing.

The Court must first find that plaintiff has individual and "class representative standing" to assert claims on behalf of the absent class members. *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1046 (11th Cir. 2020). Here, Plaintiff has both. Regarding individual, constitutional standing, Plaintiff alleged facts to show he was

---

[23] As noted above, Walmart does not object to conditionally certifying the Settlement Class for settlement purposes only. SA ¶¶ 3.9, 4.4, 16.4.

overcharged by Walmart, and injured by such overcharge, when he purchased Weighted Goods and Bagged Citrus. *See* Am. Compl. ¶¶ 45–61, 66-68, 70, 79–82. A favorable decision would redress those injuries by awarding Plaintiff damages against Walmart. *See Fox*, 977 F.3d at 1047. Plaintiff also has "class representative standing." The class standing "inquiry focuses on the relation between the class representative's injuries and those he alleges on behalf of the class." *Id.* at 1046. Plaintiff and the Settlement Class Members have suffered the same economic injury from Walmart's overcharging on Weighted Goods and Bagged Citrus. *See id.*

### B.     The Settlement Class is Adequately Defined.

"[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Class membership is capable of determination if it references objective criteria from which a potential class member may determine if she is in or out of the class. *See, e.g., Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443, 2018 U.S. Dist. LEXIS 79065, at *17 (M.D. Fla. Apr. 12, 2018). Here, the class is defined with objective criteria that permit class members to determine if they are in the Settlement Class, i.e., Purchasers of Weighted Goods or Bagged Citrus. *See, e.g., Ferron*, 2021 U.S. Dist. LEXIS 129955, at *51–52 ("The Court finds the Settlement Class is ascertainable because the criteria for class membership is objectively defined, making self-identification by Class Members possible and membership in the class is capable of

determination by others as well.").[24]

### C.    The Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1.    The Settlement Class Members are too numerous to be joined.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Classes of more than 40 members are sufficiently numerous. *See Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, No. 8:14-cv-1646, 2015 U.S. Dist. LEXIS 37744, at *4 (M.D. Fla. Mar. 25, 2015); *Ferron*, 2021 U.S. Dist. LEXIS 129955, at *48 (S.D. Fla. July 13, 2021) (noting that a plaintiff need not know "the exact number or identity" of class members). Here, the standard is easily met because there are millions of Settlement Class Members. *See* KDS Decl. ¶ 15.

#### 2.    There are common questions of law and fact.

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." This prerequisite does not require that all questions of law or fact be common, but rather, "a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2001). "The threshold for commonality is not high." *Narvaez*, 2015 U.S. Dist. LEXIS 37744, at *5 (quoting *Cheney v. Cyberguard*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)). Commonality is established where, as here, "there are allegations of common conduct or standardized conduct by the defendants directed towards members of the proposed class." *Id.* (quoting *Strube v. American Equity Investors Life Ins. Co.*, 226 F.R.D.

---

[24] Administrative feasibility is not a requirement for class certification. *Cherry*, 986 F. 3d at 1304. And to the extent that administrative feasibility is still relevant to class certification, it is only relevant as to the "manageability criterion" of Rule 23(b). *Id.* But manageability is not at issue for a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997), *infra* at pages 25–26.

688, 695 (M.D. Fla. 2005)). As discussed below in connection with the predominance requirement, there are multiple common questions.

### 3.    Plaintiff's claims are typical of the Settlement Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits." *Narvaez*, 2015 U.S. Dist. LEXIS 37744, at *6. Typicality is met "if the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443, 452 (M.D. Fla. 2019).

Here, Plaintiff and Settlement Class Members have the same claims arising from Walmart's alleged systemic practices of employing its POS system to overcharge for Weighted Goods and Bagged Citrus. Am. Compl. ¶¶ 5–7.

### 4.    Plaintiff and Class Counsel have and will fairly and adequately protect the interests of the class.

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class." The adequacy test is two-pronged. First, the inquiry tests the qualifications of counsel to represent the class. In making this determination, the court must consider proposed Class Counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the

applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Second, it unravels any conflicts between the Class Representative and the class he seeks to represent. *See Narvaez*, 2015 U.S. Dist. LEXIS 37744, at *7.

Class Counsel conducted extensive legal and factual investigations into the alleged claims prior to filing the initial complaint, as evidenced by its detailed allegations. KDS Decl. ¶ 5. Class Counsel have decades of experience in prosecuting complex class actions and a deep knowledge of applicable law. *Id.* at ¶ 30. Class Counsel have committed significant time and resources into prosecuting this case, including motion practice, discovery, expert discovery, and mediation. *E.g.*, *id.* at ¶¶ 23, 29. Plaintiff has, unquestionably, been a stalwart advocate for Walmart shoppers and specifically the proposed Settlement Class. *Id.* at ¶ 31. Plaintiff and Class Counsel do not have any conflicts of interest with the Settlement Class. Thus, the Court should certify Plaintiff as Class Representative and appoint Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty as Class Counsel. PAO ¶ 4.

### D.   The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to the Rule 23(a) requirements, a class must meet the predominance and superiority requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620.

First, common issues regarding Walmart's liability predominate. For example, whether (as Plaintiff alleges) Walmart's POS system falsely inflated the price of Weighted Goods, whether its POS system erroneously calculated "You Pay" prices, and whether Walmart falsely advertised the weight of Bagged Citrus are central to each Class Member's claims. *See, e.g.*, *Schojan v. Papa John's Int'l*, 303 F.R.D. 659, 669 (M.D. Fla. 2014) (predominance satisfied where "[p]laintiffs allege[d] that Papa John's course of conduct commonly, and adversely, affected the entire class.").

Second, the proposed Settlement Class also satisfies the superiority requirement, which is focused on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004); *see also* Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, given that, when there is an overcharge on the affected product it is on average well under $2.00, Settlement Class Members are unlikely to bring individual lawsuits against Walmart. *See* KDS Decl. ¶ 16; Am. Compl. ¶¶ 45–57. And because the Settlement Class Members number in the millions, class-wide resolution of their claims in a single action is far more efficient than individual actions.[25]

---

[25] That this case alleged nationwide FDUTPA claims, and claims under similar state consumer protection statutes, is not a barrier to certification of the Settlement Class. "[W]hile choice-of-law analyses may have presented manageability problems in resolving claims in contested class and litigation proceedings, it is not a factor in the nationwide settlement context that the Parties propose." *Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 U.S. Dist. LEXIS 63893, at *23 (S.D. Fla. Mar. 15, 2019) (*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d. Cir. 2011)); *accord Berman v. GM Ltd. Liab.*

## VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

Rule 23(c)(2) requires that, when a court certifies a class for settlement purposes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by . . . United States mail, electronic means, or other appropriate means." Especially in retail-consumer class action settlements, "[n]either due process nor Rule 23 requires that class members receive actual notice, and publication notice is appropriate where class members' names and addresses cannot be determined with reasonable efforts." *Carter v. Forjas Taurus S.A.*, No. 1:13-cv-24583, 2016 U.S. Dist. LEXIS 96054, at *21 (S.D. Fla. July 22, 2016) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)).[26]

Here, the Notices and Notice Plan do much more and amply satisfy Rule 23(c)(2). Indeed, the Notice Plan is like the one in *Cotter*, 2021 U.S. Dist. LEXIS 160592, at *19, in which this Court approved a notice program that consisted of

---

*Co.*, No. 2:18-cv-14371, 2019 U.S. Dist. LEXIS 200947, at *30 (S.D. Fla. Nov. 15, 2019). Indeed, courts within this circuit have certified nationwide settlement classes in cases asserting claims under the FDUTPA and similar state consumer protection statutes. *See, e.g.*, *Ferron* 2021 U.S. Dist. LEXIS 129955, at *9 (class action alleging claims under FDUTPA and similar state laws, granting final approval of a nationwide class); *accord Kukorinis v. Walmart, Inc.*, No. 19-cv-20592, 2021 U.S. Dist. LEXIS 259110, at *6 n.4 (S.D. Fla. Sept. 20, 2021); *Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 U.S. Dist. LEXIS 151734, at *5 (S.D. Fla. Sept. 6, 2019); *Sanchez-Knutson v. Ford Motor Co.*, No. 14-cv-61344, 2017 U.S. Dist. LEXIS 96560, at *4 (S.D. Fla. June 20, 2017) (granting final approval to nationwide settlement after having previously certified a Florida-only class asserting FDUTPA claim, at 2016 U.S. Dist. LEXIS 205138).

[26] For example, in a case alleging that defendant made certain misrepresentations when selling its ground coffee through retailers to consumers, the court approved a notice plan that only included a settlement website and a digital media campaign but *not* direct mail or email notice. *Ferron*, 2021 U.S. Dist. LEXIS 129955, at *16–19.

"targeted digital banner ads, Facebook ads, a printed publication in USA Today, and direct notice via email to the more than 700,000 members of Checkers' 'Flav-R-Hood' loyalty program." The Notice Plan is robust, and it is designed to notify all potential class members of their legal rights, direct them to the Settlement Website, and encourage them to make claims under the Settlement. *See* Weisbrot Decl. ¶¶ 17–60.

The Notice Plan has two core components. ***First***, the Claims Administrator will issue direct notice via email to potential class members that Walmart has identified in its records as having a likelihood of having purchased Weighted Goods or Bagged Citrus during the Settlement Class Period. *Id.* at ¶¶ 23–31. The email notice is straightforward and directs the recipient to the Settlement Website. Weisbrot Decl. Ex. B. The Claims Administrator will follow best practices to validate the email addresses, increase deliverability, and prevent the email from being relegated to the recipient's spam folder. *Id.* at ¶¶ 28–29. In addition, the Claims Administrator will then issue a *second email* to valid email addresses to remind Settlement Class Members to submit their Claim Forms. *Id.* at ¶ 32 & Ex. C.

***Second***, the Claims Administrator will issue a large-scale, state-of-the-art Media Notice campaign. *Id.* at ¶¶ 33–49. This includes a targeted digital media campaign that will deliver banner ads, social media ads, and paid search ads. *See id.* & Ex. D (banner ads samples), Ex. E (social media ads examples).

Combined, the direct and media notice campaigns are designed to deliver 394 million impressions to reach 80.15% of the target audience, which is based on objective

industry-standard marketing data, with an average frequency of 3.25 times. *Id.* at ¶¶ 21, 34, 65–66. In addition, but not counted within the reach, the Claims Administrator will issue a press release to garner earned media, such as local news outlets picking up the story, and a half-page ad in People magazine with a QR code that directs readers to the Settlement Website. *Id.* at ¶¶ 50, 52, 66 & Ex. F (People magazine notice). Notice and Administration costs will be paid out of the Settlement Fund. SA ¶ 5.3(a).

The Claims Administrator will establish a toll-free phone number and a user-friendly Settlement Website, which will make available important documentation, including the Notice and online claim form. Weisbrot Decl. ¶¶ 55–60. All forms of notice issued to the Class will direct them to the Settlement Website.

In addition, the forms of Notice comply with Rule 23(c)(2). The Summary Notice (which is Ex. 1C to the SA and part of the direct email notice (Ex. B to the Weisbrot Decl.)) and the long-form Notice (Ex. 1A to the SA) available on the Settlement Website collectively inform the Settlement Class Members of: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See* Fed. R. Civ. P. 23(c)(2). Further, the Notices both comply with Rule 23(h)(1)'s requirement of notifying class members of Class Counsel's intent to apply for and the amount of attorneys' fees of up 20% of the Settlement Amount plus reimbursement of costs and

29

expenses (which costs and expenses will not exceed $200,000), to be paid from the Class Settlement Fund, and that Class Counsel's motion will be available on the Settlement Website. SA ¶ 8.1, Ex. 1A ¶ 16, Ex. 1C.

## VII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

As explained on pages 2–3, *supra*, once Walmart has completed its search for potential Class Member emails, Plaintiff will make a supplemental filing that provides the Court with: (1) the number of emails for direct Notice (which Walmart currently expects to be tens of millions); (2) the start and end dates for Notice (which dates are dependent on receipt of and the volume of emails); and (3) if the Court has already entered an order preliminarily approving the proposed Settlement, a form of proposed scheduling order (or, if the Court has not yet ruled on Plaintiff's Motion, an updated form of PAO) identifying the proposed Settlement-related deadlines and timing for the Final Approval Hearing (which are dependent upon the end date for dissemination of the Notice to Settlement Class Members).

## VIII.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement; (2) certify the proposed Settlement Class for Settlement purposes only; (3) appoint Class Counsel and Plaintiff to represent the Settlement Class; (4) appoint Angeion Group as the Claims Administrator; (5) approve the Notice Plan; (6) establish procedures for Settlement Class Members to opt-out or to object; and, upon Plaintiff's supplemental submission discussed in Section VII, (7) set settlement-related deadlines and schedule the Final Approval Hearing.

Dated: November 16, 2023     Respectfully submitted,

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith
Kimdonaldsonsmith@chimicles.com
Nicholas E. Chimicles
Nick@chimicles.com
Zachary P. Beatty
Zacharypbeatty@chimicles.com
**Chimicles Schwartz Kriner &
Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Attorneys for Plaintiff and the Putative
Class*

31

## LOCAL RULE 3.01(g) CERTIFICATION

This certifies that Plaintiff's counsel conferred with Walmart's counsel regarding this Motion and Walmart's counsel does not oppose the relief requested herein.

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2023, the foregoing document was

served on Defendant's counsel by the Court's electronic filing system.

<u>/s/ *Kimberly M. Donaldson-Smith*</u>
Kimberly M. Donaldson-Smith