**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
Nicholas E. Chimicles, Pa. Id. No. 17928
Kimberly M. Donaldson-Smith, Pa. Id. No. 84116
Zachary P. Beatty, Pa. Id. No. 324106
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone (610) 642-8500
Fax (610) 649-3633

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 8:22-cv-02402-VMC-TGW |

**DECLARATION OF KIMBERLY M. DONALDSON-SMITH
IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE
<u>CLASS ACTION SETTLEMENT</u>**

I, Kimberly M. Donaldson-Smith, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am an attorney duly licensed to practice in the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to the United States District Court for the Middle District of Florida to appear in this matter.

1

2. I am a partner of the law firm of Chimicles Schwartz Kriner & Donaldson-Smith LLP (CSKD) and counsel of record for Plaintiff, Vassilios Kukorinis.

3. I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement, as set forth in the Stipulation and Agreement of Settlement, dated November 15, 2023 ("Agreement"). Unless otherwise defined, capitalized terms used herein have the same meaning as set forth in the Agreement.

4. True and correct copies of the following documents are attached hereto:

| Exhibit A | Stipulation and Agreement of Settlement, dated November 15, 2023, with the following exhibits thereto ("Agreement"):<br>    Exhibit 1        [Proposed] Preliminary Approval Order<br>    Exhibit 1A     Notice<br>    Exhibit 1B     Claim Form<br>    Exhibit 1C     Summary Notice<br>    Exhibit 2        [Proposed] Judgment and Order of Dismissal<br>    Addendum A   Weighted Goods<br>    Addendum B   Bagged Citrus |
|---|---|
| Exhibit B | Firm Resume of Chimicles Schwartz Kriner & Donaldson-Smith LLP |

5. Class Counsel conducted extensive investigation into Plaintiff's claims, both of factual and legal nature, prior to filing the initial complaint, ECF No. 1.

6. Anticipating that data would be critical to this case, Class Counsel engaged Plaintiff's data expert, Mr. Matthew E. Pohl, M.S., of Herculean Litigation Solutions, on December 29, 2022. Mr. Pohl has extensive experience in complex civil litigation and specializes in class action damages and data. Mr. Pohl's curriculum vitae is available here: CV of Matthew E. Pohl, M.S.

7. Class Counsel also consulted with industry experts concerning grocery store operations and point of sale systems.

8. Contemporaneously with actively litigating this case, the parties began settlement discussion in late 2022 and proceeded with exchanging information about Plaintiff's claims in earnest in 2023.

9. On February 8, 2023, Plaintiff served forty detailed requests for production on Walmart. These requests sought documents and data critical to Plaintiff's class allegations and damages.

10. On February 13, 2023, Plaintiff served detailed initial disclosures.

11. On February 28, 2023, the parties held an in-person meeting in Philadelphia to (a) confer about Plaintiff's requests for production, which was followed by further calls and written correspondence that continued into early March 2023, and (b) discuss settlement in anticipation of mediation.

12. On March 20, 2023, Walmart served 64 pages of objections and narrative-form responses, which described, for example, certain functions of and data included in Walmart's point-of-sale ("POS") system.

13. Walmart produced over 100 gigabytes of data in this Litigation. Descriptions of the various data productions are below in subparagraphs (a)–(e). Walmart initially produced this data pursuant to Federal Rule of Evidence 408, but as the litigation proceeded and at Class Counsel's request, on August 11, 2023, Walmart re-produced them without the Rule 408 designation (but designated as Highly Confidential under the parties' confidentiality agreement).

  a.  On April 19, 2023, Walmart produced an exemplar of transactions for Weighted Goods.

  b.  On May 12, 2023, Walmart produced sales data for Bagged Citrus, but excluding Navel Oranges, for Walmart Stores nationwide from October 13, 2018 to April 28, 2023. This data included, for example, the number of Bagged Citrus sold and its actual weight.

  c.  On May 14, 2023, Walmart produced transaction-level data for Weighted Goods from over 4,000 Walmart Stores nationwide covering the period from June to December 2022. This included 450 million lines of data. The transaction-level data provided information such as the price paid at checkout and the base retail amount, but the data did not provide personal identifying or contact information of the purchaser associated with each transaction.

  d.  On June 5, 2023, Walmart then produced additional Weighted Goods transaction data from Walmart Stores nationwide covering July 2019, 2020, and 2021 for Walmart Stores nationwide.

  e.  On June 15, 2023, Walmart produced sales data for Bagged Citrus, this time for navel oranges, for Walmart Stores nationwide from June to October 2019, 2020, 2021, and 2022. This data included, for example, the number of bags of navel oranges sold and their actual weight.

  14.  Plaintiff's data and damages expert aided Class Counsel in the interpretation and analysis of the data and calculation of potential damages.

15. From the data analysis, which reflected billions of transactions, Class Counsel estimates that there are millions of Class Members.

16. Class Counsel, in consultation with and based on the liability and damages' analyses conducted on Walmart's data, derived the plan of allocation, as set forth in the Agreement at paragraph 5.4(a)(i)–(v). The data analysis reflected that during the Settlement Class Period: (a) there was not an overcharge on every Weighted Good and Bagged Citrus purchase; (b) the average purchase price of Weighted Goods and Bagged Citrus was $10.30; (c) the range of average damage was $1.22 to $1.78 for each Weighted Good and Bagged Citrus for which there *was* an overcharge; and (d) the alleged wrongdoing caused a 2% overcharge on the total amount of Weighted Goods and Bagged Citrus sold by Walmart.

17. From the data, Class Counsel estimated that the maximum recovery, assuming Plaintiff was completely successful through trial and appeals in pursuing a certified nationwide class, ranged between $331 million and $421 million for a nationwide class. The Settlement Amount of $45 million represents between 11% and 14% recovery of the total maximum liability if Plaintiff would have been completely successful in trying this case on behalf of a nationwide class.

18. Walmart produced over 1,000 pages of documents, plus schedules providing detailed information, *inter alia,* about Walmart Stores and the affected Weighted Goods and Bagged Citrus.

19. In early 2023, the Parties engaged the services of Robert Meyer, Esquire, an experienced and nationally recognized mediator with JAMS. *See*

https://www.jamsadr.com/meyer/. In addition to extensive experience mediating settlements of complex litigation, Mr. Meyer has specifically mediated settlements in numerous class actions against retailers and manufacturers of consumer products, including claims of product defects, pricing misrepresentation, and unfair competition. *Id.*

20. The parties participated in an all-day in-person mediation with Mr. Meyer at his office in Los Angeles on May 23, 2023. The parties did not reach a settlement during the May mediation but agreed to continue discussions with Mr. Meyer's assistance and scheduled a second mediation to continue settlement negotiations. On June 16, 2023, the parties held a second mediation with Mr. Meyer by Zoom. In advance of the mediation sessions, Plaintiff prepared detailed mediation statements for the mediator addressing various issues including liability and damages based on Plaintiff's work with his expert.

21. The parties did not reach a settlement during the June mediation, but the parties continued to negotiate with the assistance of Mr. Meyer for the next three months, including numerous phone calls, zoom meetings, and written correspondence.

22. Prior to and after these two formal mediation sessions, the parties held numerous conferrals and exchanged, verbally and in writing, information relevant to the parties' claims and defenses. Many of these conferrals were facilitated by the mediator, during which Mr. Meyer communicated jointly and separately with the parties' counsel.

23. While settlement negotiations and the mediation process were ongoing, the parties continued to litigate on a dual-track basis, including briefing on two rounds of motions to dismiss and preparing of an amended complaint. For example, on February 3, 2023, Plaintiff filed his opposition to Walmart's motion to dismiss, which the Court granted in part and denied in part on July 6, 2023. ECF Nos. 25, 37, 52. Plaintiff immediately began the preparation of the Amended Complaint, which he filed promptly on July 20, 2023. ECF No. 56. As another example, on July 27, 2023, Plaintiff served a deposition notice under Rule 30(b)(6) of the Federal Rule of Civil Procedure, which included 17 detailed topics and many with numerous subtopics. The parties discussed potential witnesses and calendared dates for the depositions.

24. During the week of September 18, 2023, through Mr. Meyer, the parties reached an agreement in principle.

25. Accordingly, the Settlement resulted from extensive arm's-length negotiations between experienced counsel with an understanding of their respective positions in this litigation, assisted by Mr. Meyer, a highly experienced mediator.

26. Since reaching an agreement in principle, Plaintiff has conducted additional discovery. And on September 21, 2023, Plaintiff issued requests for confirmatory discovery focused on affirming critical information relayed to Class Counsel during settlement negotiations. Walmart provided written responses to Class Counsel.

27. Since reaching the agreement in principle, Class Counsel have spent extensive time drafting and negotiating the Settlement Agreement and attachments.

28. After consideration of competing proposals submitted by several claims administrators, Class Counsel selected and is proposing for Court approval the Angeion Group, as the Claims Administrator for the Settlement. Angeion has extensive experience in serving as the notice and claims administrator in complex class actions (among others). *See generally* Weisbrot Decl.

29. Class Counsel have committed significant time and resources into prosecuting this case, including, for example, pre-suit investigation, briefing motions to dismiss, researching legal issues, engaging in discovery, expert discovery, and engaging a private mediator.

30. CSKD has a significant depth of experience and has successfully litigated complex class actions for over 30 years and served as class counsel in actions that achieve substantial recoveries for classes of consumers and investors. *See* Exhibit B attached hereto (CSKD Firm Resume). The actions listed below are representative of Class Counsels' efforts in complex litigation:

    a. *Orrstown Financial Services, Inc., et al, Securities Litig.*, Case 12-cv-00793 (M.D. Pa) (litigating on behalf of shareholders for nearly ten years, including successful appeals to the Third Circuit, in a manner the court described as "relentless and effective," and recovering a $15 million settlement that received final judicial approval in May 2023).

    b. *Livingston v. Trane U.S. Inc.*, No. 2:17-cv-06480 (D.N.J.) (securing multimillion-dollar settlement providing repair reimbursements, extended warranty

coverage, and free service for hundreds of thousands of owners of defective air conditioners that received final judicial approval in August 2020).

  c. *Milliken v. American Realty Capital Hospitality Advisors, LLC et al.*, No. 18-cv-1757 (S.D.N.Y) (recovering a $15 million settlement that received final judicial approval in June 2020).

  d. *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072 (N.D. Cal.) (CSK&D served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial and received final judicial approval in December 2019)

  e. *Ferrer, et al. v. CareFirst, Inc., et al*, No. 1:16-cv-02162 (D.D.C.) (securing for CareFirst insureds payments on all denied (or partially denied) claims for breastfeeding and lactation support and counseling services, an ACA preventive service, and changes to CareFirst's coverage policy that received final judicial approval in April 2019).

  f. *Roth v. The Phoenix Companies, Inc. and U.S. Bank National Association, in its capacity as Indenture Trustee*, No. 650634/2016 (N.Y. Sup. Ct.) (CSKD secured material benefits for Bondholders, including, most significantly, ongoing access to material financial and corporate information which increased the value of the Bonds by $17.5 million and secured ongoing liquidity for the Bonds, and in approving the settlement, the Court stated that "I think the plaintiffs were successful in getting everything they could have gotten …. I think it's a great settlement." The settlement received final judicial approval in March 2017).

g. *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litigation,* No. 2:13-cv-2777 (W.D. Tenn.) (recovering a settlement valued at over $76 million for current and former W2007 Grace preferred stockholders that received final judicial approval in December 2015).

h. *In re Empire State Realty Trust, Inc. Investor Litigation*, No. 650607/2012 (N.Y. Sup. Ct.) (recovering a $55,000,000 cash settlement fund and $100 million tax savings for the Empire investors that received final judicial approval in May 2013).

i. *Lockabey v. American Honda Motor Co.*, No. 37-2010-87755 (Superior Ct., San Diego) (recovering a settlement, which received final judicial approval in March 2012, valued at over $170 million in a consumer action involving false advertising claims relating to the sale of Honda Civic Hybrid vehicles as well as claims relating to a software update to the integrated motor assist battery system of the HCH vehicles. As a lead counsel, Mr. Chimicles led a case that, in the court's view, was "difficult and risky" and provided "significant public value.").

j. *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc., et al.*, No. 07-cv-6174 (N.D. Ill.) (recovering a $90 million reduction in fees being paid to affiliates for the benefit of Inland shareholders that received final judicial approval in November 2010).

k. *CNL Hotels & Resorts Inc. Federal Securities Litig.*, No. 04-cv-1231 (M.D. Fla.) (recovering a $35,000,000 cash settlement fund and a $225 million savings for the CNL shareholders that received final judicial approval in August 2006). **The**

**Honorable Gregory A. Presnell, United States District Court for the Middle District of Florida**, stated that "Plaintiffs' counsel pursued this complex case diligently, completely and professionally" and "achieved a successful result." "[In settling the federal securities law claims], a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."

1. Mr. Chimicles and Ms. Donaldson-Smith, as Lead Trial Counsel, **achieved the first sustained plaintiff's <u>jury verdict</u> (of <u>$185 million</u>) in a securities fraud action and jury trial after the enactment of the Private Securities Litigation Reform Act (PSLRA).** *In Re Real Estate Associates Limited Partnership Litigation*, No. 98-cv-7035 (C.D. Cal.). After a six-week-long jury trial in federal court in Los Angeles, the jury returned its verdict of $185 million (half in compensatory damages; half in punitive damages), which was <u>ranked among the top 10 verdicts</u> in the nation in 2002. After the court reduced the punitive damages award because it exceeded California's statutory limits, the case settled for $83 million, representing <u>full recovery</u> for the losses of the investors. **The Honorable Dean D. Pregerson, United States District Court for the Central District of California**, granted final approval of the settlement in November 2003, after a Plaintiffs' verdict at trial, and remarked: "[The verdict and settlement qualified] as an exceptional result" in "a very difficult case … on a scale of 1 to 10, it would be a 9 or 10." "Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

11

31. Plaintiff has actively participated in gathering information to support his claims, investigated alleged overcharges at Walmart before and after the filing of the initial complaint, and advocated on behalf of the Settlement Class.

32. Based on Class Counsels' extensive experience in complex litigation and class actions, the Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 16, 2023.

*/s/ Kimberly M. Donaldson-Smith*
KIMBERLY M. DONALDSON-SMITH