UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 8:22-cv-02402-VMC-TGW |

**SUPPLEMENTAL DECLARATION OF STEVEN WEISBROT, ESQ.
RE: PROPOSED NOTICE PLAN**

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2. My credentials were provided in my prior declaration describing the proposed notice plan ("Notice Plan Declaration") (Dkt. No. 71-4).

3. The purpose of this declaration is to provide the Court with additional information regarding the class data, email notice, and proposed schedule for disseminating notice.

**SETTLEMENT CLASS MEMBER DATA**

4. On or about December 23, 2023, Angeion received from Walmart the list of persons who Walmart has identified as having likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart has an email address. The list contained first name, last name, email address and a unique customer ID number for each record.

5. Angeion analyzed the data, removing duplicative records and identified a total of 81,429,269 unique records (the "Unique Records") (which total number is consistent with the total Unique Records provided by Walmart). Each Unique Record will be assigned a Notice Identification number

that is unique to the individual for purposes of submitting their claim, and then for tracking their claim, as part of the proposed Settlement (the "Unique Notice ID").

6.     Angeion also identified a total of 134,141,376 unique email addresses associated with those 81,429,269 Unique Records ("Class Email List"), due to Walmart having identified in their records more than one email address associated with several customers.

## DISSEMINATION OF EMAIL NOTICE

7.     As described in my prior Notice Plan Declaration, Angeion will send direct email notice ("Email Notice") to persons who have valid email addresses included on the Class Email List, following best practices to both validate emails and increase deliverability. Specifically, prior to distributing the Email Notice, Angeion will subject the email addresses on the Class Email List to a cleansing and validation process.

8.     The email cleansing process removes extra spaces, fixes common typographical errors in domain names, and corrects insufficient domain suffixes (*i.e.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.).

9.     The email addresses will then be subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

10.    Angeion will subject all 134,141,376 unique email addresses to the cleansing and validation process described above, which Angeion estimates will take approximately three weeks to complete. If the process identifies an email that no longer exists, or an Email Notice that was sent is identified as not delivered, and there is an additional email address in the Class Email List for the Unique Record, Angeion will cause the Email Notice to be sent to that alternate Email Address. Angeion will repeat that process, as necessary, for those individuals who Walmart has multiple email

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

addresses. Angeion will then disseminate the Reminder Email Notices to the valid email addresses used for the Email Notice.

11. Angeion has significant experience disseminating emailed Notice to email recipients comparable in volume to what is involved in this Notice Plan.

12. Disseminating Email Notice in the manner described above and use of the Unique Notice ID have several pragmatic advantages, such as: (a) Reducing the number of duplicative claims submitted by a Settlement Class Member who may receive multiple notices; (b) Reducing administrative costs in sending duplicate Notices and in processing duplicate Claims from the same Settlement Class Member, which ultimately results in more money available to pay Settlement Class Members who submit timely and valid claim forms; and (c) Avoiding creating unnecessary confusion amongst Settlement Class Members.

## PROPOSED NOTICE SCHEDULE

13. After analyzing the Settlement Class Member data, Angeion consulted with the Parties to craft a strategic proposed notice schedule that allows for (a) the robust email cleaning and validation processes and (b) effective dissemination of approximately 80 million Email Notices. This was discussed in my prior Notice Plan Declaration (*see* ¶¶ 29-31). For example, Angeion strategically staggers the release of emails, starting with a smaller number of emails and gradually increasing the volume of emails sent to a given domain. In our experience, this form of "priming" or "warming up" minimizes the probability of ISPs blocking our emails. *Id.*

14. Further, the proposed notice schedule strategically accounts for the dissemination of the Reminder Email Notice and the comprehensive Media Notice, as described in the Notice Plan Declaration (*see* ¶¶ 33-53). Specifically, the Media Notice plan will commence and run concurrently with the dissemination of the Email Notice to maximize awareness of the Settlement.

15. The exclusion, objection and claim form deadlines in the proposed notice schedule are consistent with other comparable settlements that Angeion has administered.

## CONCLUSION

16. The Notice Plan includes direct notice via email to reasonably identifiable Settlement Class Members combined with a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign, search engine marketing, and print publication. Further, the Notice Plan provides for issuing a press release and social media monitoring. The Notice Plan also provides for the implementation of a dedicated Settlement Website and toll-free hotline to further inform Settlement Class Members of their rights and options in the Settlement.

17. In my professional opinion, the Notice Plan, disseminated in accordance with the proposed notice schedule, will provide full and proper notice to Settlement Class Members providing them with more than adequate time before, and to meet, the claims, opt-out, and objection deadlines. Moreover, it is my opinion that the Notice Plan is the best notice that is practicable under the circumstances, and fully comports with due process and Fed. R. Civ. P. 23. After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: January 9, 2024

STEVEN WEISBROT