# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated, | |
|      Plaintiff, | |
| v. | Case No. 8:22-cv-02402-VMC-TGW |
| WALMART INC., | |
|      Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION
## FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Kimberly M. Donaldson-Smith
Nicholas E. Chimicles
Zachary P. Beatty
**Chimicles Schwartz Kriner & Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiff and the Class*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT .......................2

      A.      Investigation, the Litigation, and Settlement Negotiations ...................2

      B.      Preliminary Settlement Approval and Implementation
            Of the Court-Approved Notice Plan ....................................................6

            Settlement Website ..........................................................6

            Toll-Fee Number ............................................................7

            Media Notice Campaign ....................................................7

            Email Notice ..................................................................7

            Reminder Emails .............................................................8

            Publication in People Magazine ..........................................9

            Press Release & Earned Media .........................................9

      C.      The Positive Response of the Class to Date .........................................9

III.    KEY TERMS OF THE SETTLEMENT ...................................................10

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT AS IT IS FAIR, REASONABLE, AND ADEQUATE ......12

      A.      Plaintiff and the Class Counsel Have Adequately Represented
            the Class ...................................................................................13

      B.      The Settlement is the Result of Arm's-Length Negotiations ...............14

      C.      The Relief Provided for the Class is More Than Adequate .................14

            1.   The Settlement accounts for the costs, risks, and delay
                of trial and appeals ....................................................14

i

2.  The Settlement provides for an effective method of processing Claims and distributing relief to the Settlement Class Members ..... 17

3.  The terms of the proposed award of attorneys' fees are reasonable ................................................................................... 19

D.  The Proposed Settlement Treats Class Members Equitably Relative to Each Other ...................................................................... 19

E.  The Substance and Amount of Opposition to the Settlement .............. 20

V.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............ 23

1.  The Settlement Class is Numerous and Ascertainable ................... 23

2.  There Are Common Questions of Law and Fact ........................... 24

3.  Plaintiff's Claims Are Typical of the Settlement Class ................... 24

4.  Plaintiff and Class Counsel Have Fairly and Adequately Protected the Interests of the Class ................................................ 25

5.  The Requirements of Rule 23(b)(3) Are Met ................................. 25

VI.  THE BEST PRACTICABLE NOTICE WAS PROVIDED TO THE SETTLEMENT CLASS ...................................................................... 27

VII.  THE COURT SHOULD MAKE FINAL ITS APPOINTMENT OF THE CLASS REPRESENTATIVE AND CLASS COUNSEL ............................ 30

VIII.  CONCLUSION ............................................................................................ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ..................................................................22

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ..................................................................16

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ..............................................................*passim*

*Braynen v. Nationstar Mortg., LLC*,
   No. 14-CV-20726, 2015 U.S. Dist. LEXIS 151744
   (S.D. Fla. Nov. 9, 2015) .............................................................................22

*Burrow v. Forjas Taurus S.A.*,
   No. 16-cv-21606, 2019 U.S. Dist. LEXIS 63893
   (S.D. Fla. Mar. 15, 2019) ...........................................................................26

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ....................................................................19

*Carter v. Forjas Taurus S.A.*,
   No. 1:13-cv-24583, 2016 U.S. Dist. LEXIS 96054
   (S.D. Fla. July 22, 2016) .............................................................................27

*Cherry v. Dometic Corp.*,
   986 F.3d 1296 (11th Cir. 2021)............................................................. 23, 24

*Cotter v. Checkers Drive-In Rests., Inc.*,
   No. 8:19-cv-1386, 2021 U.S. Dist. LEXIS 160592
   (M.D. Fla. Aug. 25, 2021) ................................................................13, 20, 28

*DeSouza v. Aerocare Holdings LLC*,
   No. 6:22-cv-1047, 2024 U.S. Dist. LEXIS 52076
   (M.D. Fla. Mar. 25, 2024) ...........................................................................14

*Desue v. 20/20 Eye Care Network, Inc.*,
   No. 21-cv-61275, 2023 U.S. Dist. LEXIS 117355
   (S.D. Fla. July 8, 2023)..........................................................................28, 29

iii

*Dorado v. Bank of Am., N.A.*,
   No. 1:16-cv-21147, 2017 U.S. Dist. LEXIS 219407
   (S.D. Fla. Mar. 23, 2017) ................................................................... 16

*In re Equifax Customer Data Sec. Breach Litig.*,
   MDL No. 2800, 2020 U.S. Dist. LEXIS 118209
   (N.D. Ga. Mar. 17, 2020) ................................................................... 17

*In re Equifax Equifax Customer Data Sec. Breach Litig.*,
   999 F.3d at 1277 (11th Cir. 2021) ............................................... 17, 20

*Ferron* v. *Kraft Heinz Foods Co.*,
   No. 20-cv-62136-RAR, 2021 U.S. Dist. LEXIS 129955
   (S.D. Fla. July 13, 2021) ............................................................. 20, 24

*Gevaerts v. TD Bank*,
   No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354
   (S.D. Fla. Nov. 5, 2015) ..................................................................... 16

*Grant v. Ocwen Loan Serv., LLC*,
   No. 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673
   (M.D. Fla. Jan. 29, 2019) ................................................................... 21

*Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*,
   No. 8:19-cv-00550, 2020 U.S. Dist. LEXIS 89175
   (M.D. Fla. Apr. 23, 2020) ................................................................... 23

*Harvey v. Hammel & Kaplan Co., LLC*,
   No. 3:19-cv-640, 2020 U.S. Dist. LEXIS 229017
   (M.D. Fla. Dec. 7, 2020) ............................................................. 15, 20

*In re Health Ins. Innovations Sec. Litig.*,
   No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051
   (M.D. Fla. Mar. 23, 2021) .......................................................... 16, 17

*Horton v. Metro. Life Ins. Co.*,
   No. 93-cv-1849, 1994 U.S. Dist. LEXIS 21394
   (M.D. Fla. Oct. 25, 1994) ................................................................... 21

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ........................................................ 26

*Lee v. Ocwen Loan Servicing, LLC*,
   No. O. 14-CV-60649, 2015 U.S. Dist. LEXIS 121998 (S.D. Fla.
   Sept. 14, 2015) ................................................................................. 18

*Marty v. Anheuser-Busch Cos., LLC*,
No. 13-cv-23656, 2015 U.S. Dist. LEXIS 144290
(S.D. Fla. Oct. 22, 2015) ............................................................. 29

*Narvaez v. Law Offices of Antonio Duarte, III, P.A.*,
No. No. 8:14-cv-1646, 2015 U.S. Dist. LEXIS 37744 (M.D. Fla.
Mar. 25, 2015) ...................................................................... 24, 25

*Northrup v. Innovative Health Ins. Partners, LLC*,
329 F.R.D. 443 (M.D. Fla. 2019) ................................................ 24

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................... 20, 29

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) ................................................. 22

*Schojan v. Papa John's Int'l*,
303 F.R.D. 659 (M.D. Fla. 2014) ................................................ 26

*In re United States Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ..................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2001) ................................................................... 24

*In re Wawa, Inc. Data Sec. Litig.*,
85 F.4th 712 (3d Cir. 2023) ........................................................ 29

*Wilson v. EverBank*,
No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751 (S.D. Fla. Feb. 3,
2016) ..................................................................... 14, 19, 22

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................. *passim*

## I.    INTRODUCTION

On January 19, 2024, the Court issued an Order granting Plaintiff's Motion for Preliminary Approval of this nationwide class action Settlement, which makes a non-reversionary common fund of *$45 million* available for the benefit of Settlement Class Members.[1] ECF No. 75 (Preliminary Approval Order, "PAO").[2]

Since entry of the PAO, Class Counsel and the Claims Administrator have implemented the Court-approved Notice Plan (PAO ¶¶ 11–16), which included issuing direct Email Notice to over *81 million* email addresses associated with likely Settlement Class Members (*see also* Dkt. 74) and an extensive digital media campaign. Weisbrot Final Approval Decl. ("Weisbrot FA Decl."), filed herewith, ¶¶ 15–16, 23–25. [3]

The response to the Settlement has been resoundingly positive from Settlement Class Members. The Claims Deadline is not until June 5, 2024, and the Reminder Email campaign is ongoing, nevertheless, as of May 7, the Claims Administrator has received over *3.3 million* claims. *Id.* ¶ 36.[4] One objection, the McHenry Objection, was

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Stipulation and Agreement of Settlement ("Agreement" or "SA ¶ _").

[2] In the PAO, the Court preliminarily found that the Settlement was reached after "extensive arm's length and non-collusive negotiations between experienced counsel following mediation under the direction of an experienced mediator" and was fair, reasonable, and adequate; certified the Settlement Class; appointed Plaintiff as the Settlement Class Representative; appointed Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty of Chimicles Schwartz Kriner & Donaldson-Smith as Class Counsel. PAO ¶¶ 3–7. The Court also appointed the Angeion Group as the Claims Administrator and directed that notice be issued to the Settlement Class consistent with the Notice Plan. *Id.* ¶¶ 11–16.

[3] The Settlement has also been widely reported upon by nationwide news outlets, including nationwide TV broadcasts—ABC World News Tonight and Good Morning America—and the New York Times. *See* Declaration of Kimberly Donaldson-Smith in support of Final Approval and Fee Request, filed herewith, ¶ 89 ("KDS FA Decl.").

[4] This is the gross number of claims submitted, which are subject to review and validation by the Claims Administrator. *See* Weisbrot FA Decl. ¶ 37.

received and addressed to the Court, and only 113 Opt-Outs were received. *Id.* ¶¶ 40–41.[5] Under the Settlement, Approved Claimants are eligible to receive, subject to pro ration, cash payments of up to $25 without proof of purchase or up to $500 with documentation of their purchases of Weighted Goods and Bagged Citrus. The Claims Administrator will process, validate, and issue payments for eligible Claims following the Final Approval Hearing, entry of the Judgment and Order of Dismissal ("Judgment") (*see* SA Ex. 2, ECF No. 71-2 at Page ID 735), and the passing of the Effective Date of the Settlement (SA ¶¶ 2.16, 2.21–2.22, 5.4(d)).

Plaintiff respectfully submits this unopposed motion seeking final approval of the Settlement and entry of the Judgment, which makes final the Court's preliminary findings in the PAO, overrules any objections, directs the Parties to implement the Settlement according to its terms, and discharges the Settlement Class Member Released Claims against Walmart Released Parties. Judgment ¶¶ 3–11.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Investigation, the Litigation, and Settlement Negotiations

The KDS FA Declaration, filed herewith, recounts the details of Plaintiff's and Class Counsel's investigation of the facts and claims, Class Counsel's efforts in litigating the action and conducting discovery, and work to achieve the proposed settlement, which is the result of over a year of litigation and hard-fought negotiations overseen by a nationally renowned mediator, Robert A. Meyer, Esq.

---

[5] The opt-out and objection deadline is May 22, 2024. Pursuant to the PAO ¶ 34, Class Counsel will file a brief on June 5, 2024, updating the Court on opt-outs and addressing any objections.

After a comprehensive investigation and analysis of the facts and legal claims by Class Counsel, in October 2022, Plaintiff filed a detailed Class Action Complaint.[6] KDS FA Decl. ¶¶ 7–11; ECF No. 1. The Action alleged that persons who Purchased Weighted Goods or Bagged Citrus at a Walmart Store during the Settlement Class Period paid more than the lowest in-store advertised price for those products, as follows: (1) With respect to Weighted Goods, Plaintiff alleged that when the per unit price (e.g., the per pound or per ounce price) appearing on a Shelf Tag and/or displayed at checkout was lower than what appeared on the price label on the product, Walmart's in-store point-of-sale ("POS") system would instead charge that Person at checkout the price on the label, even if that per unit price was higher (*see* Am. Compl., ECF No. 52, ¶¶ 5, 38–61)[7]; and (2) With respect to Bagged Citrus, Plaintiff alleged that the Shelf Tags in Walmart Stores displayed a weight that was higher than the weight of the Bagged Citrus appearing on its label and that Persons were charged for more Bagged Citrus than purchased (*see id.* ¶¶ 6, 62–71).

Anticipating that this Action—and any class-wide resolution—would be driven by POS system and consumer-transaction data, Class Counsel researched, identified, and consulted with POS industry experts and promptly retained a data and class

---

[6] Walmart denies the allegations in the Complaint and Amended Complaint and denies that the claims alleged are amenable to class-wide treatment. Walmart, however, does not oppose certification of the Settlement Class for settlement purposes, nor does Walmart oppose granting of final approval for purposes of effectuating the parties' Settlement in accordance with the parties' Agreement. SA ¶¶ 3.9, 4.4, 16.4.

[7] With respect to Weighted Goods that were nearing expiration, Plaintiff alleged that the yellow sticker on the product that advertised the product's reduced price could state a lower per unit price than what the Person was charged for the product in the store. *See* Am. Compl. ¶¶ 7, 72–88.

expert, Matthew E. Pohl, to assist in, among other things, developing requests for production and conducting damages analyses. KDS FA Decl. ¶¶ 13–16. Plaintiff promptly prepared and served Walmart with extensive requests for production targeting relevant data and documents. *Id.* ¶ 32. The parties then held an in-person meet and confer about the discovery requests, which was followed by remote telephonic conferrals through March 2023. *Id.* ¶ 35. On March 20, 2023, Walmart served 64 pages of objections and narrative-form responses. *Id.* ¶ 36. The parties filed their agreed-to ESI Protocol and Confidentiality Agreement thereafter. *Id.* ¶ 38–39.

Importantly, over several months Walmart produced over 100 gigabytes of data related to Plaintiff's allegations concerning Weighted Goods and Bagged Citrus. *Id.* ¶ 42. As to Weighted Goods, Walmart produced about half a billion lines of data from over 4,000 Walmart Stores in the United States and Puerto Rico, from which Plaintiff's expert was able to calculate damages. *Id.*[8] Walmart also produced over four years of aggregate sales and transaction data for each of the Bagged Citrus products. *Id.* Plaintiff's data and damages expert aided Class Counsel in the interpretation and analysis of the data and calculation of potential damages. *Id.* ¶ 44.

Plaintiff also researched and responded to Walmart's first motion to dismiss the Action in its entirety, which the Court granted in part and denied in part on July 6, 2023. *See id.* ¶ 23–27. Plaintiff immediately began the preparation of the Amended Complaint, re-alleging claims on behalf of a nationwide class, which was filed

---

[8] That data, however, did not contain personally identifiable information, such as contact information of the purchaser in each transaction. KDS FA Decl. ¶ 42.c.

promptly on July 20, 2023. *Id.* ¶ 28. Walmart filed its partial motion to dismiss, to which Plaintiff responded on August 31, 2023. *Id.* ¶¶ 29–30.

While actively litigating this case, the parties began exchanging information in late 2022 that would allow the parties to determine whether an early mediation might be fruitful (*id.* ¶ 19) and continued those exchanges and discussions in earnest in 2023. *Id.* ¶¶ 35, 48. On February 28, 2023, the parties conducted an in-person settlement meeting in Philadelphia. *Id.* ¶ 35. The parties retained the services of Robert Meyer, who is an experienced JAMS mediator. *Id.* ¶ 49. In advance of the mediation sessions, Plaintiff prepared detailed mediation papers and, working with Mr. Pohl, damages models and estimated damages. *Id.* ¶¶ 16, 50–51. On May 24, 2023, the parties attended an all-day mediation at the office of Mr. Meyer in Los Angeles. *Id.* ¶ 52. On June 16, 2023, the parties then conducted another full-day mediation session via Zoom. *Id.* ¶ 53. Prior to and after these sessions, the parties held numerous conferrals and exchanged, verbally and in writing, information relevant to the parties' claims and defenses. *Id.* ¶¶ 50–56. Many of these conferrals were facilitated by the mediator, in which Mr. Meyer communicated jointly and separately with the parties' counsel. *Id.*

The parties reached a settlement in principle the week of September 18, 2023, and promptly notified the Court. *Id.* ¶¶ 57–58. The parties continued to dual track litigation and settlement. *Id.* ¶¶ 59–61. Plaintiff conducted additional discovery, including confirmatory discovery focused on affirming critical information relayed to Class Counsel during settlement negotiations. *Id.* ¶ 64. Walmart provided written

confirmatory discovery to Class Counsel. *Id.* The parties spent extensive time drafting, negotiating, and finalizing the Settlement Agreement and attachments and executed the Agreement on November 15, 2023. *Id.* ¶¶ 62–67. On November 16, 2023, Plaintiff filed a motion for preliminary approval, and on January 9, 2024, Plaintiff filed a supplemental submission updating the Court on the volume of email addresses of likely class members that would receive the Email Notice and requesting scheduling of Settlement-related deadlines. *Id.* ¶¶ 78–81; ECF Nos. 71, 74.

**B.     Preliminary Settlement Approval and Implementation of the Court-Approved Notice Plan**

In the PAO, the Court conditionally certified the Settlement Class for settlement purposes;[9] preliminarily approved the settlement as fair, reasonable, and adequate; appointed the Class Representative, Class Counsel, and the Claims Administrator; held that the Notice Plan satisfied Rule 23 and Due Process; and, thus, ordered that notice to the class be issued consistent with the Notice Plan. PAO ¶¶ 4–7; 11–16.

Promptly after and consistent with the Court's Order, as detailed in the Weisbrot FA Declaration, Class Counsel and the Claims Administrator began implementing the Notice Plan including the following.

**Settlement Website**: After preparation and review by Class Counsel and the

---

[9] The Court preliminarily certified the following Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3): "all persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ('Walmart Store') during the Settlement Class Period." PAO ¶ 5. The Settlement Class Period was defined as: "October 19, 2018 through and including the date the Court grants preliminary approval," which was January 19, 2024. SA ¶ 2.47. Accordingly, Class Counsel and the Claims Administrator updated the various forms of notice to reflect the Settlement Class Period and definition. KDS FA Decl. ¶ 85.

Claims Administrator, on February 16, 2024, the Settlement Website went live. Weisbrot FA Decl. ¶¶ 27; KDS FA Decl. ¶ 86. It included an online claim submission process, a printable version of the Claim Form, a copy of the Notice in English and Spanish, searchable lists of Weighted Goods and Bagged Citrus, and other important documents and features, including a chatbot. *See* https://www.walmartweightedgroceriessettlement.com/; Weisbrot FA Decl. ¶¶ 27– 30. Evidencing the extensive public awareness of the Settlement, the Settlement Website has been visited over 17 million times by over 11 million unique users. *Id.* ¶ 31. The Final Approval and Fee motions will be promptly posted on the Settlement Website and readily available to Settlement Class Members. SA Ex. 1A, ¶ 16.

**Toll-Free Number**: On February 13, 2024, the Claims Administrator established a toll-free number and an interactive voice response ("IVR") system in both English and Spanish, which has fielded over 16,000 incoming calls, totaling over 66,000 minutes. Weisbrot FA Decl. ¶¶ 32–33. Potential Class members left over 1,609 voicemails on the IVR. *Id.* ¶ 33.

**Media Notice Campaign**: Beginning on February 20, 2024, the Claims Administrator implemented the digital Media Notice campaign, including banner ads, social media ads, and paid search ads, in accordance with the PAO. *Id.* ¶¶ 23–25; *see* KDS FA Decl. ¶ 87. The Media Notice campaign delivered approximately 256 million impressions to the target audience. Weisbrot FA Decl. ¶¶ 23–25.

**Email Notice**: Walmart sent the Claims Administrator a list of persons it

identified as having likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart had an email address. *Id.* ¶ 6. The data contained 134,131,376 distinct email addresses associated with about 81 million unique records ("Unique Records") that permitted the Claims Administrator to direct the Email Notice to individual likely Class Members and to track claims submitted by such Persons using the unique notice identification number accompanying the Email Notice. *Id.* ¶ 8. The Claims Administrator processed all 134 million distinct email addresses to cleanse and determine their validity. *Id.* ¶¶ 10–13.[10]

On February 20, 2024, the Claims Administrator began distributing the Email Notice to the Unique Records using best practices, e.g., to "prime" ISPs and prevent them from blocking or applying spam filters to the emails. *Id.* ¶ 14. If the Claims Administrator's validation process identified that an email address was invalid or if an Email Notice bounced back and there was another valid email address associated with the Unique Record, then the Claims Administrator sent an email notice to the other, valid email address. *Id.* ¶¶ 15–16. Ultimately, the Claims Administrator sent over 81 million Email Notices. *Id.* ¶ 14–16. The Email Notice campaign was completed on April 4, 2024. *Id.* ¶ 17; *see* KDS FA Decl. ¶ 88.

**Reminder Emails**: Beginning on April 8, 2024, the Claims Administrator began issuing the Reminder Emails to all the valid email addresses that were sent an Email

---

[10] To avoid Settlement Class Member confusion from receiving multiple emails and administrative burdens and expense, an Email Notice was sent to one email address per Unique Record. ECF No. 74-3 ¶ 12.

Notice, reminding recipients of relevant deadlines. Weisbrot FA Decl. ¶ 18 & Ex. B. As of April 30, the Claims Administrator has sent over 69 million Reminder Emails and will complete the Reminder Email campaign by May 12, 2024. *Id.* ¶ 18.

**Publication in People Magazine**: On March 18, 2024, the Claims Administrator published a half-page color notice in People Magazine. Weisbrot FA Decl. ¶ 22 & Ex. D.

**Press Release & Earned Media**: The Claims Administrator issued the Summary Notice press release on PR Newswire. *Id.* ¶ 20. The press release, along with other forms of notice, led to substantial earned media, i.e., many news outlets picking up and reporting on the Settlement, including articles and live news. KDS FA Decl. ¶ 89.

As of May 8, 2024, approximately $1.15 million has been spent on the Notice Plan and Claims Administration. *Id.* ¶ 95. Additional costs related to finalizing the Notice Plan, assisting Settlement Class Members with claim submissions and inquiries, and administering the claims received (which includes reviewing for validity, fraud and duplication, review of information and documentation submitted, conducting the deficiency process, and issuing payment to Approved Claimants), for more than 3 million claims, is estimated to range from $1.3 to $1.45 million. *See id.*

C.   <u>**The Positive Response of the Class to Date**</u>

The deadline to submit a Claim Form is not until June 5, 2024, and the Final Approval Hearing is set for June 12, 2024. PAO ¶¶ 8–9, 25–26. As of May 7, the

Claims Administrator has received over 3.3 million claims. Weisbrot FA Decl. ¶ 35.

Separately, the Opt-out and Objection Deadlines are May 22, 2024, and, to date, there has been one objection received and also addressed to the Court (KDS FA Decl. ¶ 98), and only 113 Settlement Class Members have opted out, *id.* ¶ 97.

## III.   KEY TERMS OF THE SETTLEMENT

On February 1, 2024, Walmart paid the Class Settlement Amount of $45 million into the Class Settlement Fund, which has been accruing interest to the benefit the Settlement Class. *Id.* ¶ 83; SA ¶¶ 2.11, 2.17, 5.1. The Settlement Amount is non-reversionary, which means that upon the Effective Date, none of the Settlement Amount will revert to Walmart. SA ¶ 5.2.

As set forth in ¶ 5.3, the Class Settlement Fund will be used to first pay Notice and Administration Costs, Taxes and Tax Expenses of the Class Settlement Fund, an Award of Attorneys' Fees, Costs, and Expenses to Class Counsel approved by the Court, and, after the Effective Date of the Settlement, the Net Class Settlement Fund (SA ¶ 2.25) will be allocated to Settlement Class Members as set forth in ¶ 5.4 of the Settlement Agreement (the "Plan of Allocation").[11]

The Plan of Allocation is based on the number of Bagged Citrus and/or Weighted Goods that a Settlement Class Member attests to having purchased during the Settlement Class Period. SA ¶ 5.4(a). Without documentation, Settlement Class

---

[11] The Settlement provides for supplemental distributions, if necessary, to eligible Class Members until such distributions are no longer economically feasible, at which time Class Counsel would apply to the Court for a *cy pres* distribution. SA ¶ 5.4(b).

Members are eligible to submit a Claim Form attesting to having Purchased up to 50, 75, or 100, or more than 100 Weighted Goods and Bagged Citrus products, making them eligible for payments of $10, $15, $20, and $25, respectively (subject to pro ration). SA ¶¶ 5.4(a)(i)–(iv). Alternatively, if a Class Member has receipts documenting their Purchases of Weighted Goods and/or Bagged Citrus, such Class Member is eligible to submit a Claim Form to receive 2% of the total price of all of those documented purchases submitted (up to $500). SA ¶ 5.4(a)(v). As discussed below in § IV.C.1, Class Counsel determined this Plan of Allocation in consultation with and based on the liability and damages' analyses conducted on Walmart's data. KDS FA Decl. ¶ 67–72.

Contemporaneously with this Motion, Class Counsel has applied for a fee of 20% of the Class Settlement Amount plus reimbursement of $114,870.41 in costs and expenses incurred in connection with the action, plus any interest on such fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid). SA ¶ 8.1 & Ex. 1A ¶ 16.[12]

After entry of the Judgment and upon the Effective Date, Releasing Settlement Class Members (SA ¶ 2.42) shall have "fully and forever released, compromised, settled" against Walmart Released Parties (SA ¶ 2.56) each and every Settlement Class Member Released Claim "relating to or arising out of . . . allegations that they paid more than the lowest price advertised in the Walmart Store for Bagged Citrus and/or

---

[12] The approval of the Settlement and the Effective Date are not contingent upon the Court's award of the Motion for Attorneys' Fees, Costs, and Expenses. SA ¶ 8.5.

Weighted Goods during the Settlement Class Period." SA ¶¶ 2.45, 2.56, & 12;

Judgment ¶ 11.[13]

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AS IT IS FAIR, REASONABLE, AND ADEQUATE

The Court should now make final its prior finding that the Settlement is fair,

reasonable, and adequate. PAO ¶ 4, 8. Under Rule 23(e), the Court may approve the

Settlement after a hearing and upon a finding that the Settlement "is fair, reasonable,

and adequate." Rule 23(e)(2), as amended in 2018, outlines several factors the Court

must consider in determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3)[14]; and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The 2018 Advisory Committee Notes make clear that these

factors should be addressed as the "core concerns" but do not displace other "lists of

factors" courts have traditionally applied. Courts in the Eleventh Circuit have

traditionally evaluated whether a settlement is fair, reasonable, and adequate using the

applicable *Bennett* approval factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair,

---

[13] In the Settlement Agreement, Plaintiff gives a broader release. SA ¶ 12.9. Plaintiff is not receiving any individual or additional compensation for this release. Neither the Settlement Class or Plaintiff are releasing any claims for personal injury or wrongful death. SA ¶¶ 12.3, 12.9.

[14] Here, there is no additional agreement required to be identified under Rule 23(e)(3). *See supra* n. 13.

> adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986 (11th Cir. 1984). Given that the Eleventh Circuit "strongly favors the pretrial settlement of class action lawsuits," *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), in determining whether to approve a settlement the Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement," *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Below, Plaintiff addresses all relevant Rule 23(e)(2) factors and notes the *Bennett* factors when applicable. Under all relevant factors, the Settlement is fair, reasonable, and adequate and is in the best interests of the class. *See* KDS FA Decl. ¶¶ 73–77.

## A.   Plaintiff and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) focuses on "the actual performance of counsel acting on behalf of the class," including whether plaintiff and class counsel "had an adequate information base" before entering the settlement.[15] 2018 Adv. Comm. Notes. But "early settlements are favored such that vast formal discovery need not be taken." *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 U.S. Dist. LEXIS 160592, at *25–26 (M.D. Fla. Aug. 25, 2021) (cleaned up).

As detailed in the KDS FA Decl., Class Counsel, who has extensive experience prosecuting complex class actions, developed a deep understanding of the legal and

---

[15] This factor overlaps with the sixth *Bennett* factor: "the stage of proceedings at which the settlement was achieved."

factual issues in this case through pre-suit investigation, briefing motions to dismiss, discovery, and consultation with industry and data experts and damages analyses. KDS FA Decl. ¶¶ 7–9, 24, 28–77.

**B.**    <u>The Settlement is the Result of Arm's-Length Negotiations</u>

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." 2018 Adv. Comm. Notes. Here, the Settlement was reached after two all-day sessions with a highly respected independent mediator, Robert A. Meyer of JAMS, with extensive experience in class actions. *Id.* ¶¶ 52–54; s*ee, e.g.*, *DeSouza v. Aerocare Holdings LLC*, No. 6:22-cv-1047, 2024 U.S. Dist. LEXIS 52076, at *9 (M.D. Fla. Mar. 25, 2024) ("[T]he proposal was negotiated at arm's length because there is no evidence of fraud or collusion and this is presumed because the agreement was reached assisted by a skilled mediator."); *Wilson v. EverBank*, No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751, at *16 (S.D. Fla. Feb. 3, 2016).

**C.**    <u>The Relief Provided for the Class is More Than Adequate</u>

The $45 million Settlement provides excellent monetary relief for the class, especially considering the risks of continued litigation.

**1.**    <u>The Settlement accounts for the costs, risks, and delay of trial and appeals</u>

"Whether under Rule 23(e)(2)(C) or the *Bennett* factors, it is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if successful,

appropriately discounted for the risk of not prevailing.'" *Harvey v. Hammel & Kaplan Co., LLC*, No. 3:19-cv-640, 2020 U.S. Dist. LEXIS 229017, at *17 (M.D. Fla. Dec. 7, 2020) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 322 (3d Cir. 1998)). The monetary relief offered by the nationwide Settlement is more than adequate standing alone but especially when considering the risks of continued litigation.[16]

The risks, expense, and delay of trial and appeals were substantial here. For example, to successfully obtain a judgment on a *nationwide* basis, Plaintiff would have needed to defeat Walmart's motion to dismiss challenging his nationwide claims, obtain certification of a nationwide class, survive summary judgment, win at trial, and survive lengthy appeals. And Walmart had had colorable arguments at every step, including that: (a) damages classes, and any nationwide class, are not certifiable; (b) claims were barred by a prior settlement and the Court's July Motion to Dismiss Order; (c) Plaintiff could not overcome hurdles of proof of misrepresentations on the Shelf Tags in over 4,000 Walmart Stores; and (d) Walmart complied with all applicable laws and regulations. *See, e.g.*, *id.* at *17–18 (noting that the "possibility that Defendant could prevail on the merits or defeat contested class certification" weighs in favor of approval); KDS FA Decl. ¶¶ 73–77.

Especially given the risks of continued litigation, the $45 million Settlement Amount is an excellent outcome for the Class. Based on Plaintiff's expert's data

---

[16] This factor overlaps with the first through fourth *Bennett* factors: the likelihood of success at trial; the range of possible recovery; the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; and the complexity, expense and duration of litigation.

analysis, the Settlement Amount represents between 11% and 14% of a complete nationwide recovery if Plaintiff would have been completely successful in clearing all the obstacles noted above.[17] KDS FA Decl. ¶ 76. This Settlement is well within the range of reasonableness. *See, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051, at *24 (M.D. Fla. Mar. 23, 2021) (approving a settlement fund of 10% of the estimated total possible recovery).[18]

The Settlement "offers the class a certain and substantial recovery that will be distributed promptly." *Dorado v. Bank of Am., N.A.*, No. 1:16-cv-21147, 2017 U.S. Dist. LEXIS 219407, at *12 (S.D. Fla. Mar. 23, 2017). Indeed, each Approved Claimant may be eligible to receive, based on the number of Weighted Goods and Bagged Cirtus purchased, $10, $15, $20, $25, and $500 (subject to proration). SA ¶ 5.4(a). These amounts were based on Class Counsels' and Plaintiff's experts analyses of the data reflecting that the average purchase price of Weighted Goods and Bagged Citrus was $10.30 and that the alleged wrongdoing caused a 2% overcharge on all Weighted Goods and Bagged Citrus. KDS FA Decl. ¶¶ 67–71.

For example, a Settlement Class Member who purchased an average of 1.5 Weighted Goods every month during the Settlement Class Period, purchased 90 Weighted Goods. She is assumed to have spent approximately $927 (90 x $10.30) and

---

[17] Walmart disputes the calculations and conclusions made by Plaintiff's expert as to the maximum potential nationwide recovery.

[18] *See also Gevaerts v. TD Bank*, No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *19 (S.D. Fla. Nov. 5, 2015) (same); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

overcharged 2% or **$18.50**, yet she may submit a Claim Form attesting to having purchased more than 75 Weighted Goods and be eligible for **$20.00** (subject to proration) without submitting supporting documentation. *See id.* ¶ 71; SA ¶ 5.4(a)(iii). Alternatively, if she purchased more or spent more and has receipts documenting those purchases of Weighted Goods, then she may elect to submit such receipts and is eligible to receive 2% of the total cost of her documented eligible purchases of Weighted Goods and Bagged Citrus, capped at a $500 payment (subject to proration).[19] *See* KDS FA Decl. ¶ 72; SA ¶ 5.4(a)(v).

Thus, even with the current number of claims, and even if there is a pro rata decrease,[20] Approved Claimants will still receive a substantial recovery of estimated damages. KDS FA Decl. ¶ 68, 71.b–c.; *see, e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 U.S. Dist. LEXIS 61051, at *24 (approving a settlement fund of 10% of the estimated total possible recovery).

### 2. <u>The Settlement provides for an effective method of processing claims and distributing relief to the Settlement Class Members</u>

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the

---

[19] A claimant need only submit documentation substantiating each Weighted Good and Bagged Citrus purchased in-store and the amount paid for each—she need not have retained or submitted the product's packaging. SA ¶ 5.4(v). And as the Notice informed Settlement Class Members, they may be able to look up receipts on Walmart's website. SA Ex. 1A at 8, ECF No. 71-2.

[20] *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *206 (N.D. Ga. Mar. 17, 2020) (N.D. Ga. Mar. 17, 2020), *aff'd in part and rev'd on other grounds*, 999 F.3d 1247 (overruling objections where initial notice informed class members that they may choose up to $125, but based on volume of claims, the actual, pro rata decreased amount was "substantially less"); 999 F.3d at 1259 n.6.

claims process is unduly demanding." 2018 Adv. Comm. Notes.

Here, the Claim Form and claims process approved by the Court and implemented by the parties is simple and straightforward. To claim cash payments, Settlement Class Members need only fill out a simple Claim Form. SA Ex. 1B. The Claim Form may be submitted via the Settlement Website, email, or mail. SA ¶ 5.4(c). And here a claim requirement makes sense because not all Settlement Class Members can be identified in Walmart's records, and notably, given the small dollar amounts at issue for each individual overcharge, it "maximize[s] the opportunity available to each class member" who is willing to "take the minimal step of returning the simple Claim Form to receive [a] larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *57 (S.D. Fla. Sept. 14, 2015).

While a Settlement Class Member may elect to submit documentation to seek more than $25 and up to $500, no receipts or documentation are otherwise necessary to submit a Claim. SA ¶ 5.4(a)(i)–(iv).[21] The claims process here is not demanding but is, instead, straightforward and designed to encourage claims. *See Poertner*, 618 F. App'x at 628 (affirming approval of settlement where $6 "could be claimed without proof of purchase" with a "straightforward" claim form that asked for "class member's

---

[21] Approved Claimants will be able to receive their cash payment from the Net Settlement Fund by electronic means (such as Venmo, ACH, Zelle, or Virtual MasterCard), or, if requested, by mailed check. SA ¶ 5.4(d). There are no restrictions, limitations, or expiration dates attached to the Claimant's use of the electronic settlement payment. ECF No. 71-4 ¶ 55.

contact information, the number of packages purchased, the type and size of the batteries, the purchase location, and the devices in which the batteries were used").[22]

Although a "settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims," *Wilson*, 2016 U.S. Dist. LEXIS 15751, at *53-55, to date, the Claims Administrator has received over 3.3 million claims, which represents about 4% of those email addresses issued an Email Notice, which as noted below is within the approvable range. Weisbrot FA Decl. ¶¶ 14–16, 35.

### 3. The terms of the proposed award of attorneys' fees are reasonable

As discussed in Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses, Plaintiff's request of 20% of the $45 million Class Settlement Amount is within the range of reasonableness in the Eleventh Circuit. *See, e.g.*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). The Notice and Email Notice also informed class members that Class Counsel may seek up to 20%, and Settlement Class Members have 14 more days following this filing to object to the request. PAO ¶ 26, 34. Under the Settlement, Final Approval is not contingent on the Court's decision on Plaintiff's Motion for Attorneys' Fees and Expenses. SA ¶ 8.5.

### D. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

As discussed above, Settlement Class Members may submit a Claim in one of five different tiers that correspond to the number of Weighted Goods and Bagged

---

[22] In addition, the Claims Administrator is employing mechanisms to detect fraudulent claims. Weisbrot FA Decl. ¶ 38. Any deficient claim will be given an opportunity to cure. SA ¶ 5.4(f)–(g).

Citrus purchased throughout the Class Period, and the tier amounts were derived from Class Counsel and Plaintiff's expert's data and damages analyses. KDS FA Decl. ¶¶ 67–72. The Settlement satisfies Rule 23(e)(2)(D)'s requirement that class members be treated equitably relative to each other. *See Harvey*, 2020 U.S. Dist. LEXIS 229017, at *18-19 (approving settlement where class members were to "receive a settlement payment commensurate with their respective amount paid over their discounted Hospital Bill amount"); *Ferron* v. *Kraft Heinz Foods Co.*, No. 20-cv-62136-RAR, 2021 U.S. Dist. LEXIS 129955, at *31-32 (S.D. Fla. July 13, 2021) (noting "the two-tier approach adopted in the Settlement Agreement provides a valuable benefit to the Class, because individuals who did not have proof of purchase were still able to benefit under the Settlement); *Cotter*, 2021 U.S. Dist. LEXIS 160592, at *23 (approving $5.00 vouchers for undocumented claims and up to $5,000 for documented claims). And even if there is a prorated decrease to Approved Claimants, all will still be eligible for proportionate payments. *Cf. In re Equifax*, 999 F.3d at 1277 (11th Cir. 2021) (overruling objection because "there is no risk that any members of the class will have their ability to get settlement benefits reduced to zero because some other members got more relief from the settlement").

### E.   The Substance and Amount of Opposition to the Settlement

The fifth *Bennett* factor requires evaluation of the opposition to the Settlement. 737 F.2d at 986. Here, the miniscule number of opt-outs and objections weighs in favor of approval. *See, e.g.*, *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007)

(finding that a "miniscule figure" of "100 out of 10.3 million, or 0.001%," of class members filed objections weighed in favor of approval).

As of April 30, the Claims Administrator has received 113 Opt-Out Requests, which represent about 1/10,000th of 1% of the email addresses that were issued an Email Notice. Weisbrot FA Decl. ¶¶ 14–16, 40; *Grant v. Ocwen Loan Serv., LLC*, No. 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *22 (M.D. Fla. Jan. 29, 2019) (finding that the low opt-out rate of 0.1% and three objections weighed in favor of approval). The Claims Administrator will provide Class Counsel with a final list of Opt-Outs on May 29, and Class Counsel will file the list with the Court on June 5, 2024, so that the Court may exclude them. PAO ¶ 25; Judgment ¶ 11.

In the only objection received to date, Ms. McHenry objects because the Settlement does *not* include purchases she made through online platforms. Weisbrot FA Decl. Ex. H. True, the Settlement does not include such online purchases, nor does it *release* claims related to such online purchases.[23] SA ¶¶ 2.44, 2.46, 12. One who makes such online purchases, such as Ms. McHenry, therefore, is not a Settlement Class Member and does not have standing to object on that basis. *See, e.g.*, *Horton v. Metro. Life Ins. Co.*, No. 93-cv-1849, 1994 U.S. Dist. LEXIS 21394, at *34 (M.D. Fla. Oct. 25, 1994) ("[Objectors] lack standing to raise these objections because they are

---

[23] The Settlement covers in-store purchases and does not include or otherwise affect online purchases of the Weighted Goods and Bagged Citrus. *See* SA ¶ 2.37, 2.44. Online purchases were excluded because, among other things, the misconduct alleged occurred inside the Walmart store, including that persons were exposed to and relied on the in-store pricing information (including at the register), and because the online terms and conditions include an arbitration agreement and class action waiver. That is why the action, discovery, and Settlement exclude online purchases. KDS FA Decl. ¶ 98.

not members of the settlement class and do not assert claims covered by the Settlement."); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 (S.D. Fla. 2002) ("Under Fed. R. Civ. P. 23(e), non-class members are not permitted to assert objections to a class action settlement."). Respectfully, the McHenry Objection should be overruled.[24]

As a general matter, objections that demand more money are usually overruled because compromise is the essence of a settlement and opting out is an option. *See, e.g.*, *Braynen v. Nationstar Mortg.*, *LLC*, 2015 U.S. Dist. LEXIS 151744, at *37 (S.D. Fla. Nov. 9, 2015) ("A generic desire to receive 'more' money or a 'better' result is not a proper objection.").[25] And as noted above, the categories of payments were based on a realistic assessment of damages, which Class Counsel derived from their expert's analysis of transaction data Walmart produced. *See supra* § IV.C.1.[26] In any event, on June 5, 2024, Class Counsel will reply to any objections that may be filed by the

---

[24] Hours before this Motion was filed, a purported Class Member, Dana Albrecht filed a "Motion to Appear *Pro Se,* Be Granted Access to CM/ECF Electronic Filing, and For Miscellaneous Relief", to which Plaintiff will respond promptly. But by way of preview, Plaintiff notes the following: The Albrecht filing is not an objection. In addition, the two principal items of "relief" it seeks are patently unnecessary: first, the Settlement Website, provided all Class members (and, indeed, the public) ready and free access to the Amended Complaint, the Settlement Agreement and exhibits thereto, the full-length Notice, the Court's preliminary approval Order, and subsequently filed settlement-related papers, including the instant Motion, and further provided instructions on how to retrieve any other docketed filing in this case (none of which were filed under seal); second, the request for an "extension" is based on an apparent speculative notion that Albrecht "*might* desire to file any additional pleadings in this matter…" ECF No. 99 ¶ 9 (italics in original).

[25] *See also Morgan*, 301 F. Supp. at 1260  (cleaned up) (collecting cases that "denied various objectors' objections because it appears that most of the objectors have simply misread and/or misunderstood the Settlement documents and/or desired to have a better deal"); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (overruling 16 objections, including objections to the a claim-form requirement, the content of the claim form, and the instructions).

[26] *Cf. Wilson*, 2016 U.S. Dist. LEXIS 15751, at *53–54 (overruling objection to a claim requirement because a claim requirement enabled "near-complete relief [that] very likely exceeds what Settlement Class members could have recovered at trial, which is extraordinary for any settlement").

Objection Deadline, which is May 22. PAO ¶ 34.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court preliminarily certified the Settlement Class for settlement purposes pursuant to Rules 23(a) and (b)(3). PAO ¶ 5. Now, the Court should order final class certification for purposes of the Settlement. *See* Judgment ¶¶ 3–4.

Class certification under Rule 23 has two primary components. First, the party seeking class certification must establish the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). Certification under Rule 23(b)(3) is appropriate where, as here, common issues predominate and a class settlement is superior to other methods of adjudication.

### 1.    The Settlement Class is Numerous and Ascertainable

The Settlement Class of millions of Purchasers of Weighted Goods and Bagged Citrus easily meets 23(a)(1)'s requirement that the class be "so numerous that joinder of all members is impracticable." *See* KDS FA Decl. ¶ 45; *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-cv-00550, 2020 U.S. Dist. LEXIS 89175, at *3 (M.D. Fla. Apr. 23, 2020) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)) ("Numerosity is generally satisfied when there are more than forty putative class members."). "[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d

1296, 1304 (11th Cir. 2021).[27] Here, the class is defined with objective criteria that permit class members to determine if they are in the Settlement Class, i.e., Purchasers of Weighted Goods or Bagged Citrus. *See, e.g.*, *Ferron*, *supra*, at *51–52.

### 2. There Are Common Questions of Law and Fact

The Settlement Class also satisfies Rule 23(a)(2)'s requirement that there are "questions of law or fact common to the class." "The threshold for commonality is not high," *Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, 2015 U.S. Dist. LEXIS 37744, at *5 (M.D. Fla. Mar. 25, 2015), and "a single common question will do," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2001). Commonality is established where, as here, "there are allegations of . . . standardized conduct by the defendants directed towards members of the proposed class." *Narvaez*, 2015 U.S. Dist. LEXIS 37744, at *5 (citation omitted). As discussed below in connection with the predominance requirement, there are many common questions.

### 3. Plaintiff's Claims Are Typical of the Settlement Class

Plaintiff's claims are also typical of the Settlement Class in satisfaction of Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is met "if the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Northrup v. Innovative Health Ins. Partners,*

---

[27] While "ascertainability" is not an explicit requirement of Rule 23(a), the Eleventh Circuit has held that "[a]scertainability is an implied prerequisite of Rule 23." *Cherry*, 986 F.3d at 1302. Administrative feasibility, however, is not a requirement for class certification. *Id.* at 1304.

*LLC*, 329 F.R.D. 443, 452 (M.D. Fla. 2019). Plaintiff and Class Members have the same claims arising from Walmart's alleged systemic practices of employing its POS system to overcharge for Weighted Goods and Bagged Citrus. Am. Compl. ¶¶ 5–7.

### 4. Plaintiff and Class Counsel Have Fairly and Adequately Protected the Interests of the Class

In addition, "the representative parties [have and] will fairly and adequately protect the interest of the class," as required by Rule 23(a)(4). "To assess adequacy of representation, the Court must determine 'whether plaintiff[] ha[s] interests antagonistic to those of the rest of the class' and 'whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation.'" *Narvaez*, 2015 U.S. Dist. LEXIS 37744, at *7 (citation omitted).

Plaintiff has actively participated in this case and personally investigated the claims on behalf of the Settlement Class. KDS FA Decl. ¶ 6. Plaintiff has no interests antagonistic to those of the Settlement Class, and there is no question that he has been an advocate for the Settlement Class. Class Counsel have decades of experience prosecuting complex class actions, have deep knowledge of the applicable law, and have committed significant time and resources to prosecuting this case. *Id.* ¶ 77. The $45 million Settlement Fund recovered on behalf of the Settlement Class speaks to the quality and tenacity of Class Counsel. Adequacy is satisfied.

### 5. The Requirements of Rule 23(b)(3) Are Met

Certification is also warranted under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only

individual members" and because "a class action is superior to other available methods for fairly and efficiently" settling the controversy.

First, common issues abound and predominate here. For example, whether (as Plaintiff alleges) Walmart's POS system falsely inflated the price of Weighted Goods, whether its POS system erroneously calculated "You Pay" prices, and whether Walmart falsely advertised the weight of Bagged Citrus are central to each Class Member's claims. *See, e.g.*, *Schojan v. Papa John's Int'l*, 303 F.R.D. 659, 669 (M.D. Fla. 2014) (predominance satisfied where "[p]laintiffs allege[d] that Papa John's course of conduct commonly, and adversely, affected the entire class.").

Second, a class action is superior to other methods of resolving this controversy. This requirement focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)*; see also* Fed. R. Civ. P. 23(b)(3)(A)–(D).[28] Here, given that when there is an overcharge on the affected product it is on average well under \$2.00, Settlement Class Members do not have a strong interest in individually controlling separate actions are unlikely to bring individual lawsuits against Walmart. *See* KDS FA Decl. ¶ 68.c.; Fed. R. Civ. P. 23(b)(3)(A). To Class Counsel's knowledge, no other Class Members have any pending cases

---

[28] The fourth superiority factor, manageability (Rule 23(b)(3)(D)), is not relevant when a court is asked to certify a settlement-only class because the difficulties in managing the trial are extinguished by the settlement. *See, e.g.*, *Amchem Prods.*, 521 U.S. at 620; *Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 U.S. Dist. LEXIS 63893, at \*23 (S.D. Fla. Mar. 15, 2019) (*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d. Cir. 2011)) ("[W]hile choice-of-law analyses may have presented manageability problems in resolving claims in contested class and litigation proceedings, it is not a factor in the nationwide settlement context that the Parties propose.").

concerning the controversy. *See* Fed. R. Civ. P. 23(b)(3)(B). Because there are millions of class members, concentrating the claims in one forum avoids inconsistent ruling and burden on the courts. *See* Fed. R. Civ. P. 23(b)(3)(C).

## VI.  THE BEST PRACTICABLE NOTICE WAS PROVIDED TO THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court found that the Notice Plan satisfied all requirements of the Federal Rules of Civil Procedure and the United States Constitution and constituted the best practicable notice under the circumstances. PAO ¶ 12. Because notice has been and will be effectuated according to the Notice Plan, the Court should make final its determination that the best practicable notice was provided to the Settlement Class here. Judgment ¶ 6.

Although "[n]either due process nor Rule 23 requires that class members receive actual notice, and publication notice is appropriate where class members' names and addresses cannot be determined with reasonable efforts," *Carter v. Forjas Taurus S.A.*, No. 1:13-cv-24583, 2016 U.S. Dist. LEXIS 96054, at *21 (S.D. Fla. July 22, 2016), the Email Notice here was a significant Settlement term negotiated and insisted upon by Plaintiff and Class Counsel to identify and send direct notice to likely class members— the first time in a Walmart consumer class action settlement of this magnitude. Indeed, the Email Notice campaign delivered over 81 million emails directly to likely class members. Weisbrot FA Decl. ¶¶ 14–16. Plus, a *second email*, the Reminder Email, has or will be sent to the same email addresses to encourage Settlement Class Members to submit Claims. *Id.* ¶¶ 18–19.

27

Supplementing the Email Notice, the Claims Administrator also deployed a state-of-the-art digital media campaign, including banner ads, social media ads, and paid search ads, that used industry-standard metrics to target likely class members (i.e., the target audience), which delivered over 256 million impressions. *Id.* ¶¶ 23–25.

Together, the Email Notice and Media Notice campaign are on track to deliver approximately 394 million impressions and reach over 80.15% of the target audience. *Id.* ¶ 26; *see, e.g.*, *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2023 U.S. Dist. LEXIS 117355, at *26 (S.D. Fla. July 8, 2023) ("Courts recognize that notice reaching between 70% and 95% of a class is reasonable, and the median is 87% reach on approved notice plans.").

In addition to those two critical components, the Summary Notice was published in People Magazine, the press release garnered significant earned media, and the Settlement Website, chatbot, toll-free number, IVR system, and the Claim's Administrator's dedicated email address for this Settlement remain available to Class Members. *See generally* Weisbrot FA Decl. All forms of notice issued to the Class directed them to the Settlement Website. *See Cotter*, supra, at *19 (granting final approval of a notice program that consisted of "targeted digital banner ads, Facebook ads, a printed publication in USA Today, and direct notice via email to the more than 700,000 members of Checkers' 'Flav-R-Hood' loyalty program").

Although the June 5 Claim Deadline has not yet passed, the Claims Administrator has already received over 3.3 million claims representing 4% of the those issued Email Notice. *See* Weisbrot FA Decl. ¶ 14–16, 35. The current claims rate

here is within the range of approval. *See, e.g.*, *Poertner*, 618 Fed. App'x at 626 & n.1 (approving settlement in consumer-retail case with claims rate of less than 1%); *Desue*, 2023 U.S. Dist. LEXIS 117355, at *27 (S.D. Fla. July 8, 2023) (claims rate of 0.66% was "within an acceptable range"); *Perez*, 501 F. Supp. 2d at 1377 (approving settlement where 1.1% of class members returned claims forms).[29]

But of course, this is not a claims-made settlement,[30] and upon the Effective Date, the Net Settlement Fund will be distributed pursuant to the Settlement, and *no* funds will revert to Walmart upon the Effective Date. SA ¶¶ 5.2, 5.4; *cf. In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 723 (3d Cir. 2023) ("In cases where defendants keep any unclaimed funds . . . courts must place greater weight on the claims rate.").

Moreover, as the Court already held, the forms of Notice complied with Rule 23(c)(2), and apprised Settlement Class Members of all required information. *See* SA Exs. 1A, 1C. The Notices also complied with Rule 23(h)(1) and notified Settlement Class Members that Class Counsel intended to apply to an award of attorneys' fees up to 20% plus reimbursement of costs and expenses not to exceed $200,000 and that Class Counsel's motion will be available on the Settlement Website. SA ¶ 8.1, Ex. 1A ¶ 16, Ex. 1C. Thus, the Notice Plan provided the best notice practicable under the circumstances and includes all content required by Rule 23 and comports with Due Process. *See also* Weisbrot FA Decl. ¶¶ 43–44.

---

[29] *Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656, 2015 U.S. Dist. LEXIS 144290, at *11 (S.D. Fla. Oct. 22, 2015) (noting that courts often grant final approval of settlements before the final amount of claims are even known).
[30] *See Poertner*, 618 F. App'x at 628 n.2.

## VII.   THE COURT SHOULD MAKE FINAL ITS APPOINTMENT OF THE CLASS REPRESENTATIVE AND CLASS COUNSEL

In granting Preliminary Approval, the Court appointed Plaintiff as Class Representative and appointed Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty as Class Counsel. PAO ¶ 7. The Court should make final its appointments. Judgment ¶ 5.

Class Counsel have and will continue to satisfy all the Rule 23(g)(1)(A) criteria. As further detailed in the Motion for Attorneys' Fees, Costs, and Expenses, Class Counsel conducted extensive legal and factual investigations into the alleged claims prior to filing the initial complaint, as evidenced by its detailed allegations. *See* Fed. R. Civ. P. 23(g)(1)(A)(i); KDS FA Decl. ¶¶ 7–8. Class Counsel have decades of experience in prosecuting complex class actions and a deep knowledge of applicable law. KDS FA Decl. ¶ 77. Class Counsel have committed significant time and resources into prosecuting this case, including motion practice, discovery, expert discovery, mediation, negotiating the settlement, and executing the settlement and the Notice Plan. *See generally* KDS FA Decl. And, as noted above, neither Plaintiff nor Class Counsel have any conflicts of interest with the Settlement Class. Thus, the Court should reaffirm its appointment of Plaintiff as Class Representative and Class Counsel.

## VIII.   CONCLUSION

Plaintiff respectfully requests that the Court make final its decision approving the Settlement as fair, reasonable, and adequate, certifying the Settlement Class, and enter the Judgment.

Dated: May 8, 2024                    Respectfully submitted,

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith
Kimdonaldsonsmith@chimicles.com
Nicholas E. Chimicles
Nick@chimicles.com
Zachary P. Beatty
zpb@chimicles.com
**Chimicles Schwartz Kriner &
Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Attorneys for Plaintiff and the Settlement
Class*

31

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

This certifies that Plaintiff's counsel conferred with Walmart's counsel regarding this Motion, and Walmart's counsel does not oppose the relief requested herein.

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2024, the foregoing document was served on

Defendant's counsel by the Court's electronic filing system.

<u>/s/ *Kimberly M. Donaldson-Smith*</u>
Kimberly M. Donaldson-Smith

1