**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
Nicholas E. Chimicles, Pa. Id. No. 17928
Kimberly M. Donaldson-Smith, Pa. Id. No. 84116
Zachary P. Beatty, Pa. Id. No. 324106
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone (610) 642-8500
Fax (610) 649-3633

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 8:22-cv-02402-VMC-TGW |
| WALMART INC., | |
| Defendant. | |

## DECLARATION OF KIMBERLY M. DONALDSON-SMITH
## IN SUPPORT OF PLAINTIFF'S MOTION FOR
## FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND
## MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

I, Kimberly M. Donaldson-Smith, declare under penalty of perjury, pursuant to

28 U.S.C. § 1746:

1.      I am an attorney duly licensed to practice in the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to the United States District Court for the Middle District of Florida to appear in this matter.

2.      I am a partner of the law firm of Chimicles Schwartz Kriner & Donaldson-Smith LLP ("CSKD" or the "Firm"), counsel of record for Plaintiff Vassilios Kukorinis, and was appointed as Class Counsel pursuant to the Court's January 19, 2024 order preliminarily approving the proposed Settlement (ECF. No. 75, "Preliminary Approval Order" or "PAO"). PAO ¶¶ 3–7.

3.      I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement and Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses.

4.      Unless otherwise defined, capitalized terms used herein have the same meaning as set forth in the as set forth in the Stipulation and Agreement of Settlement, dated November 15, 2023 ("Settlement Agreement"), which was filed on November 16, 2023, at ECF No. 71-2.

5.      From the investigation stage and through negotiating and entering into the proposed Settlement, Plaintiff and Class Counsel vigorously, efficiently, and effectively investigated and pursued the claims on behalf of purchasers of Weighted Goods and Bagged Citrus in Walmart stores.

6.      Plaintiff has actively participated in this case and personally investigated the claims on behalf of the Settlement Class.

*Investigation Performed by Plaintiff and Class Counsel*

7.     In early September 2022, Class Counsel began their investigation of the facts and law pertinent to the information provided by Plaintiff concerning differences between the in-store advertised per unit price (e.g., the per pound or per ounce price) appearing on a Shelf Tag or Yellow Sticker and the price he was charged at the register for Weighted Goods, as well as differences between the weight printed on the Shelf Tag and the weight on the label for Bagged Citrus.

8.     Among other things, Plaintiff and Class Counsel's rigorous and comprehensive investigation included:

a.     Reviewing Plaintiff's documents, photos, videos and receipts, consisting of numerous instances of discrepancies between the in-store advertised per unit price and/or the price displayed at checkout, and the price a Person was charged at the register, for Weighted Goods, and the wrong weight being stated on the Shelf Tag for the Bagged Citrus.

b.     Separately and independently, directly, and through agents, observing at various Walmart locations instances of discrepancies between the in-store advertised per unit price and/or the price displayed at checkout, and the price a Person was charged at the register, for Weighted Goods, and the wrong weight being stated on the Shelf Tag for the Bagged Citrus.

c.     Identifying, reviewing, and analyzing news stories, press releases, articles, industry reports, and Walmart's corporate filings with the Securities and Exchange Commission (SEC) to identify information relevant to at least

the following subjects: Walmart's point-of-sale-systems ("POS Systems"); Walmart's grocery unit sales and share of the grocery market; number of Walmart grocery customers; Walmart store specific information including locations; Walmart's processes, policies and procedures for pricing; and, relevant public statements and advertising about Walmart's pricing, including "Rollback" pricing. Some of Class Counsel's research in this regard is reflected in the Complaint (ECF No. 1) ¶¶ 33-37.

d.   Extensive investigation into publicly available information about Walmart's POS System, and POS systems and related technology generally, including to identify Walmart's use of a legacy POS and next-gen Cloud Powered Checkout services. Some of Class Counsel's research in this regard was reflected in the Complaint ¶¶ 93-95.

e.   Extensive investigation into the differences observed (and alleged in the Complaint) between, (a) on the one hand, the lower-advertised prices on the Shelf Tag and in Walmart's POS Systems and the weight on the label of the product, and (b) on the other, the per unit price, total price and/or weight of the Weighted Goods and Bagged Citrus, were charged at the register in Walmart stores, and how and why those differences occurred.

f.   Investigation into the type of customer and transaction data that Walmart could have in its possession, including Walmart information databases called "Teradata" and the "Walmart Pay" application. Some of Class Counsel's research in this regard was reflected in the Complaint ¶¶ 96-98.

4

g.      Investigation into any prior-filed lawsuits involving Walmart that could be relevant or informative as to the Plaintiff's and Class's claims and factual allegations. This included reviewing all pleadings, filings, declarations, court decisions/orders and dockets of such lawsuits that were publicly available. Some of Class Counsel's research in this regard was reflected in the Complaint ¶¶ 98-99.

h.      Investigation into governmental actions involving Walmart and the conduct at issue in this Action that could be relevant or informative as to the Plaintiff's claims and factual allegations. This investigation included reviewing news stories, press releases, federal and state governmental agency websites, and all related documents of such investigations and actions that were publicly available. Some of Class Counsel's research in this regard was reflected in the Complaint ¶ 106.

i.      Review of the publicly available information on the docket in the lawsuit Plaintiff filed in 2019 against Walmart in the United States District Court for the Southern District of Florida, captioned *Vassilios Kukorinis, et al. v. Walmart, Inc.,* Case No. 1:19-cv-20592-JEM ("*Kukorinis I*"). Class Counsel was not involved in and did not represent Plaintiff in *Kukorinis I*.

j.      Investigating and reviewing consumer complaint boards, websites, blogs, and similar social media outlets to identify similar or the same experiences and complaints by Walmart shoppers and Walmart former employees.

k.     Investigation into Walmart's online Terms and Conditions.

l.     Investigation into Walmart's policies regarding pricing and returns.

m.     Investigation, including by researching, identifying, and reviewing technology and grocery industry resources into: (i) the underlying technological and operational causes of a POS system charging a Person at checkout the price on the label, and not a lower advertised price or per unit price in the system, by inflating the weight of the product being scanned; and (ii) relevant grocery store processes and operations, among other things.

n.     Investigation, through publicly available information on websites and through Freedom of Information Act (FOIA) or equivalent requests made by Class Counsel, into the inspections conducted by state, county, or city weights and measures departments (as applicable), nationwide, at Walmart stores.

o.     Legal research into the scope and applicability, in the context of the facts, of Florida's Deceptive and Unfair Trade Practices Act Florida Statute, Section 501.201, *et seq.* ("FDUTPA") and various states' consumer protection laws (*see, e.g.*, Complaint fn. 13, ¶¶ 123-140, 146-163), the availability of a declaratory judgment under the FDUTPA, and various common law claims including unjust enrichment.

9.     Throughout the litigation, Plaintiff and Class Counsel conducted an ongoing investigation (in addition to conducting discovery, as discussed *infra*) into the

6

facts and claims in a similar manner and scope as described in the foregoing paragraphs.

***Drafting and Filing the Initial Complaint, and Service on Walmart***

10.     Utilizing the foregoing information, work, and research, Plaintiff and Class Counsel drafted a detailed 84-page, 176-paragraph Complaint, that contained particularized and detailed documentation, explanations, and proof to support the factual allegations and claims asserted.

11.     On October 19, 2022, Plaintiff and Class Counsel filed the Complaint. ECF No. 1. The Complaint asserted claims under the FDUTPA, various states' consumer protection laws, and for unjust enrichment. The Complaint alleged that the following conduct caused a Person who Purchased Weighted Goods or Bagged Citrus at a Walmart Store during the Settlement Class Period to pay more than the lowest in-store advertised price for those products:

> a.     With respect to Weighted Goods, Plaintiff alleged that when the per unit price (e.g., the per pound or per ounce price) appearing on a Shelf Tag and/or displayed at checkout was lower than what appeared on the price label on the product, Walmart's in-store POS System would instead charge a Person at checkout the price on the label often by inflating the product's net weight and multiplying that by the advertised per unit price as displayed on the receipt[1]; and

---

[1] With respect to Weighted Goods that were nearing expiration, Plaintiff alleged that the Yellow Sticker on the product that advertised the product's reduced price could state a lower

b.    With respect to Bagged Citrus, Plaintiff alleged that the Shelf Tags in Walmart Stores displayed a weight that was higher than the weight of the Bagged Citrus appearing on its label and that Persons were charged for more Bagged Citrus than purchased.

12.    On October 21, 2022, Plaintiff served Walmart with the Complaint.

*Industry Experts*

13.    Plaintiff and Class Counsel, promptly after filing the Complaint, began research to identify, and conduct outreach with, industry experts and consultants concerning the factual allegations in the Complaint. Among other things, Class Counsel focused their outreach on industry experts and consultants who had specific knowledge of grocery or retail POS systems and operations.

14.    On December 29, 2022, Plaintiff and Class Counsel engaged Mr. Matthew E. Pohl, M.S., of Herculean Litigation Solutions to serve as Plaintiff's data and class expert. Mr. Pohl has extensive experience in complex civil litigation and specializes in class action damages and data. Mr. Pohl's curriculum vitae is available here:

https://static1.squarespace.com/static/5c0dbe4cb105986c323afa92/t/606760a0275 ef479f52d5fd3/1617387681631/M+Pohl+-+HLS+CV.pdf

---

per unit price than what the Person was charged for the product in the store.

8

15.     Particularly pertinent to this action, and to the benefit of the Settlement Class, Plaintiff and Class Counsel specifically identified that Mr. Pohl served as an expert in three other matters involving Walmart (*id.*):

     a.     *Brandewie v. Wal-Mart Stores Class Action Litigation:* A class of customers filed a lawsuit against a retail store alleging that its refund policy and other state laws were violated when consumers returned an item to a store with lower sales tax rates than the store where the item was purchased. Mr. Pohl was retained as plaintiff's damage expert. Mr. Pohl **developed a methodology using the retail store's data** to determine the amount of under refund. The parties reached settlement in the case a month after Mr. Pohl's report was issued.

     b.     *Pearlstone v. Walmart Stores*: Mr. Pohl was retained to estimate alleged class damages related to the under-refund of sales tax on multi-receipt transactions.

     c.     *Farneth v. Walmart Stores*: Mr. Pohl was retained to identify defendant's computer systems to identify data sources with class-relevant data and interact with defendant's IT staff to facilitate the production of relevant data.

16.     As also described below, among other things, Mr. Pohl conducted extensive analyses on the data produced by Walmart to aid in the parties' settlement negotiations. Mr. Pohl prepared relevant charts and presentations for Class Counsel's use during the mediation sessions on, among other things, information contained in the data produced by Walmart, damages models, and estimated damages with respect

to both the Weighted Goods and Bagged Citrus transactions. In addition, Mr. Pohl participated in the mediation sessions with Class Counsel.

### *Litigation Ensues*

17.     On October 25, 2022, the Court entered an Order requiring the Parties to meet and confer, and to submit a Case Management Report by November 25, 2022 (ECF No. 12), which deadline was extended to January 13, 2023 (ECF No. 24).

18.     On November 10, 2022, the Court granted Walmart's Unopposed Motion for extension of the deadline to respond to the Complaint, which allowed Walmart until December 14, 2022, to answer or otherwise respond to the Complaint. ECF No. 18.

19.     As the parties reported to the Court, subsequent to the filing of the Complaint, the parties began a conferral process about the claims and allegations asserted in the Complaint and were exchanging, and continued to exchange, information to further those discussions and allow the Parties to determine whether an early mediation might be fruitful. ECF No. 23.

20.     In addition, the parties also meet and conferred about, prepared, and filed a proposed Case Management Report on January 13, 2023. ECF No. 33.  On January 25, 2023, the Court entered a Case Management and Scheduling Order that did not adopt the parties' proposed schedule but instead provided for key events, including all fact and expert discovery, the motion for class certification, motions for summary judgment, judgment on the pleadings, and *Daubert* and *Markman* Motions to be filed by December 29, 2023. ECF No. 34.

*Walmart's Motions to Dismiss, Arguments, and Defenses*

21.     From the outset, Walmart has raised several arguments and defenses as to why the action should be dismissed in its entirety and could not proceed as a class action pursuant to Rule 23.

22.     Walmart asserted that claims in this Action were precluded and released in the settlement in *Kukorinis I*. Walmart made this argument as early as November 9, 2022, in its request for an extension of its deadline to respond to Plaintiff's Complaint (ECF No. 17), and promptly reiterated it in a November 17, 2022 filing seeking to extend the deadline for the parties to submit the case management report (ECF No. 21).

23.      On January 6, 2023, Walmart filed its first Motion to Dismiss the Complaint in its entirety. ECF No. 25. Among other arguments and defenses, Walmart asserted the following:

    a.     There is no consumer deception because "Even if there is an error on a product's label or on the shelf tag, consumers are given multiple opportunities to ensure that the total prices charged match their expectations, including at checkout."

    b.     A reasonable consumer would not "ignore the 'total price' featured on shelf tags and product labels, and instead rely exclusively on weight details, perform math—including a conversion of price-per-pound to price-per-ounce— and blindly expect to pay that amount even though the total price shows that the customer will be charged a different amount."

11

c.    Many of the claims were released as part of the Settlement in *Kukorinis I.*

24.    Class Counsel researched the various legal and factual issues raised in Walmart's Motion to Dismiss, and on February 3, 2023, filed their opposition detailing why, in all respects, legally and factually, Walmart had not stated bases on which the Complaint should be dismissed in its entirety. ECF No. 37. The Court denied Walmart's motion for leave to file a reply brief in support of its Motion to Dismiss. ECF Nos. 42, 43.

25.    On April 5, 2023, Walmart filed a Notice of Supplemental Authority (ECF No. 47), to which Plaintiff and Class Counsel, promptly, on that same day, drafted and filed their response (ECF No. 48).

26.    While settlement negotiations and the mediation process were ongoing (discussed *infra*), the parties continued to litigate on a dual-track basis.

27.    On July 6, 2023, the Court granted in part and denied in part Walmart's motion to dismiss the Complaint. ECF No. 52. The Court's Motion to Dismiss Order did not dismiss the FDUTPA claim, however, and the Court ordered that:

a.    Claims were barred by the settlement in *Kukorinis I,* specifically, claims "that were based on transactions occurring before August 26, 2020, where the deception concerned the total price of sold-by-weight products inaccurately calculating the unit price, are barred by the settlement in the first action." *Id.* at 12.

b.      Count III of the Complaint, which asserted violations of various states' consumer protection statutes, was dismissed without prejudice. *Id.* at 14.

c.      Plaintiff's claim for unjust enrichment was dismissed. *Id.* at 25-26.

d.      The Court's Motion to Dismiss Order granted Plaintiff leave to file an Amended Complaint as to Count III. *Id.* at 26.

28.    Upon reviewing the Court's Motion to Dismiss Order, Plaintiff and Class Counsel immediately began the preparation of the Amended Complaint. The detailed 118-page, 250-paragraph Amended Complaint was filed on July 20, 2023, and asserted claims on behalf of a nationwide class and under certain states' consumer protection statutes. ECF No. 56.

29.    The parties promptly conducted written and telephonic conferrals (including a Local Rule 3.01(g) conferral on August 1, 2023) with respect to Walmart's anticipated bases for its forthcoming motion to dismiss the Amended Complaint. Among other things, Walmart asserted that: (i) certain allegations and claims referenced in the Amended Complaint included purchases barred pursuant to the Court's Motion to Dismiss Order, and (ii) as a matter of law, Plaintiff cannot assert claims on behalf of a nationwide class under the FDUTPA because the FDUTPA only applies to purchases that occurred in Florida, not nationwide. On August 10, 2023, Walmart moved to dismiss Count III of the Amended Complaint. ECF No. 60.

30.    Plaintiff and Class Counsel promptly reviewed, researched, and drafted the brief in opposition to Walmart's motion to dismiss and filed it on August 31, 2023. ECF No. 63. Upon notification that the parties had reached a settlement-in-principle,

13

the Court denied, without prejudice, Walmart's motion and did not reach the merits of the motion. ECF No. 65.

### First Round of Discovery Requests

31.    Class Counsel began discovery in earnest and contemporaneous with addressing Walmart's first Motion to Dismiss.

32.    Informed by Class Counsel's investigation, Class Counsel prepared and on February 8, 2023, served on Walmart forty detailed requests for production. These requests sought, among other things, documents and data relevant to liability, damages, and class certification. For example, Class Counsel sought documents and information concerning: (i) the transactions, products, labels, and receipts detailed in the Complaint; (ii) Walmart's POS Systems; and (iii) Walmart's policies and procedures for labeling and pricing the affected products.

### Initial Disclosures

33.    On February 13, 2023, Plaintiff served detailed initial disclosures, which were prepared based on Class Counsel's research using publicly available information about Walmart, Walmart's POS Systems, and Walmart current and former employees with possible relevant information.

34.    On the same day, Walmart also served its initial disclosures. Plaintiff and Class Counsel reviewed the initial disclosures, and thereafter sent written correspondence to, and held telephonic conferrals with, Walmart concerning the completeness of its initial disclosures.

### Dual Tracking Fact and Expert Discovery with Settlement Discussions

35.     On February 28, 2023, the parties held an in-person, all day meeting in Philadelphia during which Class Counsel and Walmart: (a) conducted a detailed conferral concerning each of the Plaintiff's 40 requests for production and Walmart's objections and/or questions as to each; and (b) discussed settlement and exchanged information in anticipation of mediation.

36.     Subsequently, Class Counsel drafted and sent several letters and emails concerning discovery generally and Plaintiff's requests for production. On March 20, 2023, Walmart served 64 pages of objections to Class Counsel's requests for production, along with narrative responses, which described, for example, certain functions of and data included in POS System.

37.     Contemporaneously, Class Counsel drafted and sent letters and emails concerning the settlement-related information Walmart provided during the February 28, 2024 in-person meeting, including to outline an initial proposed framework, action-items, and subjects to be addressed as part of the parties' settlement discussions.

38.     In addition to conducting written and telephonic conferrals with Walmart concerning the documents and information requested, during this time Class Counsel prepared: (i) Confidentiality Agreement; (ii) ESI Protocol; and (iii) drafts of additional discovery requests, interrogatories, and a form of a Rule 30(b)(6) deposition notice.

39.     On March 23, 2023, the parties filed their Joint Motion seeking entry of the ESI Protocol by the Court and provided the Court with a copy of the executed Confidentiality Agreement. ECF No. 44.

40.     The parties continued to dual track litigation and mediation, for example, on July 27, 2023, Plaintiff served Walmart with a Rule 30(b)(6) deposition notice, which included 17 detailed topics and many with numerous subtopics. Subsequently, the parties conducted written and telephonic conferrals concerning the Rule 30(b)(6) Notice, including to identify potential witnesses and calendar dates for the depositions.

41.     In addition, Class Counsel was working on expert discovery, including working with Mr. Pohl with respect to his class and damages expert report. Plaintiff's experts' reports were to be served on Walmart on November 30, 2023 pursuant to the Court's Amended Case Management and Scheduling Order. *See* ECF No. 59.

### *Data Production*

42.     After significant conferral between the Parties, Walmart produced over 100 gigabytes of data in this Litigation. Descriptions of the various data productions are below in subparagraphs (a)–(e). Walmart initially produced this data pursuant to Federal Rule of Evidence 408, but as the litigation proceeded and at Class Counsel's request, on August 11, 2023, Walmart re-produced them without the Rule 408 designation (but designated as Highly Confidential under the parties' confidentiality agreement).

a.     On April 19, 2023, Walmart produced an exemplar of transactions for Weighted Goods.

b.     On May 12, 2023, Walmart produced sales data for Bagged Citrus, but excluding Navel Oranges, for Walmart Stores nationwide from October 13,

16

2018 to April 28, 2023. This data included, for example, the number of Bagged Citrus sold and its actual weight.

      c.      On May 14, 2023, Walmart produced data for Weighted Goods transaction from over 4,000 Walmart Stores nationwide covering the period from June to December 2022. This included 450 million lines of data. The data did not provide personally identifying or contact information of the purchaser associated with each transaction.

      d.      On June 5, 2023, Walmart then produced additional data for Weighted Goods transaction from Walmart Stores nationwide covering July 2019, 2020, and 2021 for Walmart Stores nationwide.

      e.      On June 15, 2023, Walmart produced sales data for Bagged Citrus, this time for navel oranges, for Walmart Stores nationwide from June to October 2019, 2020, 2021, and 2022. This data included, for example, the number of bags of navel oranges sold and their actual weight.

43.     Walmart produced over 1,000 pages of documents, plus schedules providing detailed information, *inter alia,* about Walmart Stores and the affected Weighted Goods and Bagged Citrus.

### *Estimated Range of Damages*

44.     Plaintiff's data and damages expert, Mr. Pohl, aided Class Counsel in the interpretation and analysis of the data and calculation of potential damages.

45.     From the data analysis, which reflected billions of transactions, Class Counsel estimates that there are millions of Class Members.

46.   The data analysis reflected that during the Settlement Class Period:

a.   there was not an overcharge on every Weighted Good and Bagged Citrus purchase;

b.   the average purchase price of Weighted Goods and Bagged Citrus was $10.30;

c.   the range of average damage was $1.22 to $1.78 for each Weighted Good and Bagged Citrus for which there *was* an overcharge; and

d.   the alleged wrongdoing caused a 2% overcharge on the total amount of Weighted Goods and Bagged Citrus sold by Walmart.

47.   From the data, Class Counsel estimated that the maximum recovery, assuming Plaintiff was completely successful through trial and appeals in pursuing a certified nationwide class, ranged between $331 million and $421 million for a nationwide class. The $331 million assumes that the settlement in *Kukorinis I* barred certain of the Settlement Class' claims, and the $421 million estimate assumes none were barred. *See supra* ¶¶ 22, 23, 27.a., 29.

*Mediation*

48.   Contemporaneously with actively litigating this case, the parties began settlement discussion in late 2022 and proceeded with exchanging information about Plaintiff's claims in earnest in 2023.

49.   The Parties engaged the services of Robert Meyer, Esquire, an experienced and nationally recognized mediator with JAMS, who is based in Southern California. *See* https://www.jamsadr.com/meyer/. In addition to extensive

experience mediating settlements of complex litigation, Mr. Meyer has specifically mediated settlements in numerous class actions against retailers and manufacturers of consumer products, including claims of product defects, pricing misrepresentation, and unfair competition. *Id.*

50.     In advance of the first mediation session, held in Los Angeles on May 23, 2023, Plaintiff and Class Counsel prepared a detailed mediation statement for the mediator addressing various issues including liability and damages based on work done with Mr. Pohl.

51.     The parties did not reach a settlement during the May 23 mediation but agreed to continue discussions with Mr. Meyer's assistance, exchange additional information, and scheduled a second mediation to continue settlement negotiations.

52.     On June 16, 2023, the parties held a second mediation with Mr. Meyer by Zoom.

53.     In advance of the June 16, 2023 mediation sessions, Plaintiff and Class Counsel prepared a detailed supplemental mediation statement for the mediator addressing various issues including the additional information produced and updates to the liability and damages based on work done with Mr. Pohl.

54.     The parties did not reach a settlement during the June 16 mediation, but the parties continued to dual track litigation (as discussed herein) and negotiate terms of a proposed settlement with the assistance of Mr. Meyer for the next three months.

55.     Also, after each of the two formal mediation sessions, the parties held numerous conferrals and exchanged, verbally, by Zoom, and in writing, additional

information relevant to the parties' claims and defenses. The negotiations were contentious at times. Many of the conferrals were facilitated by the mediator, during which Mr. Meyer communicated jointly and separately with the parties' counsel.

56. The parties kept the Court apprised of the status of the ongoing mediation and settlement discussions. *See, e.g.*, ECF Nos. 49, 51, 54, 57.

57. During the week of September 18, 2023, through Mr. Meyer, the parties reached an agreement-in-principle to settle all claims asserted in the Action for the non-reversionary payment of $45 million by Walmart.

58. On September 22, 2023, the parties notified the Court that they reached a settlement-in-principle that would resolve all claims asserted in the Action against Walmart by Plaintiff and on behalf of the Settlement Class. ECF No. 64.

59. In their notification to the Court, the parties also advised the Court that they would promptly work on preparing a formal settlement agreement, and all attendant documentation, and that they intended to file such settlement documentation less than 30-days later, by November 16, 2023. *Id.*

60. The filing also requested that the Court suspend current litigation deadlines set forth in the August 7, 2023 Case Management and Scheduling Order. *Id.* However, the Court denied that request. ECF No. 66.

61. Accordingly, the parties continued to dual-track litigation (discussed *supra)* and documenting the settlement.

***Documenting the Settlement, Confirmatory Discovery, and the Claims Administrator Selection***

20

62.     Plaintiff and Class Counsel promptly drafted a Settlement Agreement that detailed all key terms of the proposed settlement, and all attendant documents, including the Long Form Notice, Summary Notice, Claim Form, Preliminary Approval Order, and Final Approval Order.

63.     The parties negotiated, edited, and ultimately finalized the details and terms of the Settlement, as memorialized in the Settlement Agreement and attendant documents, by November 15, 2023.

64.     In addition, during this time, Plaintiff prepared and served Walmart with requests for confirmatory discovery focused on affirming critical information relayed to Class Counsel during settlement negotiations. Walmart provided written responses to Class Counsel.

65.     Also during this time, Plaintiff and Class Counsel sought, received, and reviewed proposals and bids from several claims administrators with respect to preparing and executing a comprehensive notice plan and conducting all claim administration services for the Settlement and Settlement Class Members.

66.     After consideration of competing proposals, Class Counsel selected and proposed the Angeion Group as the Claims Administrator, which the Court approved in the PAO ¶ 11. Angeion, in consultation with Class Counsel, prepared the Notice Plan, which was described in the Declaration of Steven Weisbrot, Esq. Re: Angeion Group Qualifications & The Proposed Notice Plan ("Notice Plan/Weisbrot Decl."). ECF No. 71-4. As stated in the Notice Plan/Weisbrot Declaration (*id.*), Angeion has

extensive experience in serving as the notice and claims administrator in complex class actions.

### *Plan of Allocation*

67.    Class Counsel, in consultation with Mr. Pohl and based on the liability and damages' analyses conducted on Walmart's data, derived the plan of allocation, as set forth in the Settlement Agreement at paragraph 5.4(a)(i)–(v).

68.    The data analysis reflected that during the Settlement Class Period:

a.    there was not an overcharge on every Weighted Good and Bagged Citrus purchase;

b.    the average purchase price of Weighted Goods and Bagged Citrus was $10.30;

c.    the range of average damage was $1.22 to $1.78 for each Weighted Good and Bagged Citrus *for which there was* an overcharge; and

d.    the alleged wrongdoing caused a *2% overcharge on the total amount* of Weighted Goods and Bagged Citrus sold by Walmart.

69.    The Plan of Allocation is based on the foregoing data analyses and the number of Bagged Citrus and/or Weighted Goods that a Settlement Class Member attests to having purchased during the Settlement Class Period or can document. SA ¶ 5.4.

70.     The Settlement payments that eligible claimants may receive (as shown on the Claim Form and in the SA ¶ 5.4) fall into two categories: Option 1 – receipts not required; and Option 2 – receipted option.[2]

71.     With respect to Option 1 (receipts not required), the claim options are based on reasonable assumptions about the number of Weighted Goods and/or Bagged Citrus products purchased over the Class Period and that Settlement Class Members paid on average $10.30 for each Weighted Good and Bagged Citrus product. *See supra* ¶ 68.

a.     Without documentation, under Option 1, Settlement Class Members are eligible to submit a Claim Form attesting to having Purchased up to 50, 75, or 100, or more than 100 Weighted Goods and/or Bagged Citrus products, making them eligible for payments of $10, $15, $20, and $25, respectively (subject to proration). SA ¶¶ 5.4(a)(i)–(iv).

b.     So, for example, if someone attests that they purchased 76-100 Weighted Goods and/or Bagged Citrus, the proposed settlement payment is $20. The assumptions are applied as follows: 100 products x $10.30 = $1,030 x 2% = $20 (subject to the disclosed pro rata reduction/increase).

c.     Based on the data-derived assumptions, the $20 is an estimate of the claimants' damage, without requiring receipts to document the actual purchases and prices paid.

---

[2] The Notice informed Settlement Class Members that they may be able to look up their receipts on Walmart's website. SA Ex. 1A at 8, ECF No. 71-2.

      d.      Option 1, therefore, in the context of a proposed compromise and settlement, was structured in a way to give Settlement Class Members a reasoned and fair alternative to otherwise requiring that they submit proof of purchases and the prices paid for all Weighted Goods and/or Bagged Citrus products, in order to submit a claim.

72.     Alternatively, Option 2 (the receipt option), is based on the data-driven assumption that the alleged wrongdoing caused a 2% overcharge on the total amount of Weighted Goods and Bagged Citrus sold by Walmart. *See supra* ¶ 68.

      a.      If a Settlement Class Member has receipts documenting purchases of Weighted Goods and/or Bagged Citrus and the amounts paid, such Settlement Class Member is able to submit a Claim Form with such information to receive 2% of the total price of all of those documented purchases submitted, up to $500 (subject to pro rata increase or decrease). SA ¶ 5.4(a)(v).

      b.      Therefore, for example, if someone has receipts showing proof of paying $2,000 in total for the Weighted Goods and/or Bagged Citrus, then under Option 2, the claim submitted would be for 2% of $2,000, or $40 (subject to pro rata increase or decrease).

***The Settlement is Fair, Reasonable, Adequate and in the Best Interests of the Settlement Class***

73.     The Settlement was reached after Plaintiff and Class Counsel considered, broadly: the substantial benefits provided under the proposed Settlement; the uncertain outcome and the risk of any litigation, especially in complex consumer actions,

including the difficulties and delays inherent in such litigation; and Walmart's defenses and arguments, discussed above, and including with respect to whether a nationwide class, or any class, could be certified in this Action.

74.     Further, the Settlement was reached after Class Counsel's extensive investigation into the facts and law underlying the claims, as described herein.

75.     Moreover, as described herein, the Settlement resulted from extensive arm's-length negotiations between experienced counsel with an understanding of their respective positions in this litigation, assisted by Mr. Meyer, a highly experienced mediator.

76.     The Class Settlement Amount of $45 million is a substantial and outstanding result. From the data, Class Counsel estimated that the maximum recovery, assuming Plaintiff was completely successful through trial and appeals for a certified nationwide class, ranged between $331 million and $421 million. The $331 million assumes that the settlement in *Kukorinis I* barred certain of the Settlement Class' claims, and the $421 million estimate assumes none were barred. *See supra* ¶¶ 22, 23, 27.a., 29. The Settlement Amount of $45 million, therefore, represents a recovery of between 11% and 14% of estimated damages.

77.     CSKD has a significant depth of experience and has successfully litigated complex class actions for over 30 years and served as class counsel in actions that achieved substantial recoveries for classes of consumers and investors. *See* https://chimicles.com/kimberly-donaldson-smith/                              ; https://chimicles.com/nicholas-e-chimicles/   ;   https://chimicles.com/zachary-p-

[beatty/](beatty/). The actions listed here are representative of Class Counsels' efforts in complex litigation:

     a.   *Orrstown Financial Services, Inc., et al, Securities Litig.*, Case 12-cv-00793 (M.D. Pa) (litigating on behalf of shareholders for nearly ten years, including successful appeals to the Third Circuit, in a manner the court described as "relentless and effective," and recovering a $15 million settlement that received final judicial approval in May 2023).

     b.   *Livingston v. Trane U.S. Inc.*, No. 2:17-cv-06480 (D.N.J.) (securing multimillion-dollar settlement providing repair reimbursements, extended warranty coverage, and free service for hundreds of thousands of owners of defective air conditioners that received final judicial approval in August 2020).

     c.   *Milliken v. American Realty Capital Hospitality Advisors, LLC et al.*, No. 18-cv-1757 (S.D.N.Y) (recovering a $15 million settlement that received final judicial approval in June 2020).

     d.   *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072 (N.D. Cal.) (CSK&D served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial and received final judicial approval in December 2019)

     e.   *Ferrer, et al. v. CareFirst, Inc., et al*, No. 1:16-cv-02162 (D.D.C.) (securing for CareFirst insureds payments on all denied (or partially denied) claims for breastfeeding and lactation support and counseling services, an ACA

26

preventive service, and changes to CareFirst's coverage policy that received final judicial approval in April 2019).

f.     *Roth v. The Phoenix Companies, Inc. and U.S. Bank National Association, in its capacity as Indenture Trustee*, No. 650634/2016 (N.Y. Sup. Ct.) (CSKD secured material benefits for Bondholders, including, most significantly, ongoing access to material financial and corporate information which increased the value of the Bonds by $17.5 million and secured ongoing liquidity for the Bonds, and in approving the settlement, the Court stated that "I think the plaintiffs were successful in getting everything they could have gotten …. I think it's a great settlement." The settlement received final judicial approval in March 2017).

g.     *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litigation,* No. 2:13-cv-2777 (W.D. Tenn.) (recovering a settlement valued at over $76 million for current and former W2007 Grace preferred stockholders that received final judicial approval in December 2015).

h.     *In re Empire State Realty Trust, Inc. Investor Litigation*, No. 650607/2012 (N.Y. Sup. Ct.) (recovering a $55,000,000 cash settlement fund and $100 million tax savings for the Empire investors that received final judicial approval in May 2013).

i.     *Lockabey v. American Honda Motor Co.*, No. 37-2010-87755 (Superior Ct., San Diego) (recovering a settlement, which received final judicial approval in March 2012, valued at over $170 million in a consumer action

27

involving false advertising claims relating to the sale of Honda Civic Hybrid vehicles as well as claims relating to a software update to the integrated motor assist battery system of the HCH vehicles. As a lead counsel, Mr. Chimicles led a case that, in the court's view, was "difficult and risky" and provided "significant public value.").

j.     *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc., et al.*, No. 07-cv-6174 (N.D. Ill.) (recovering a $90 million reduction in fees being paid to affiliates for the benefit of Inland shareholders that received final judicial approval in November 2010).

k.     *CNL Hotels & Resorts Inc. Federal Securities Litig.*, No. 04-cv-1231 (M.D. Fla.) (recovering a $35,000,000 cash settlement fund and a $225 million savings for the CNL shareholders that received final judicial approval in August 2006). **The Honorable Gregory A. Presnell, United States District Court for the Middle District of Florida**, stated that "Plaintiffs' counsel pursued this complex case diligently, completely and professionally" and "achieved a successful result." "[In settling the federal securities law claims], a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."

l.     Mr. Chimicles as Lead Trial Counsel assisted by Ms. Donaldson-Smith, , achieved the first and remains the largest sustained jury verdict (of $185 million) in a securities fraud action and jury trial after the enactment of the Private Securities Litigation Reform Act (PSLRA). *In Re Real Estate Associates*

28

*Limited Partnership Litigation*, No. 98-cv-7035 (C.D. Cal.). After a six-week-long jury trial in federal court in Los Angeles, the jury returned its verdict of $185 million (half in compensatory damages; half in punitive damages), which was ranked among the top 10 verdicts in the nation in 2002. After the court reduced the punitive damages award because it exceeded California's statutory limits, the case settled for $83 million, representing full recovery for the losses of the investors. The Honorable Dean D. Pregerson, United States District Court for the Central District of California, granted final approval of the settlement in November 2003, after a Plaintiffs' verdict at trial, and remarked: "[The verdict and settlement qualified] as an exceptional result" in "a very difficult case … on a scale of 1 to 10, it would be a 9 or 10." "Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

### *Motion for Preliminary Approval and Supplemental Filing regarding Notice*

78.    On November 16, 2023, Plaintiff and Class Counsel filed the Settlement Agreement (ECF Nos. 71-2) with their Motion for Preliminary Approval of the Class Action Settlement (ECF No. 71).

79.    As also noted in Plaintiff's Motion for Preliminary Approval, requiring direct Email Notice be sent to Walmart customers who are likely to have purchased Weighted Goods and Bagged Citrus, was a significant Settlement term negotiated and insisted upon by Plaintiff. Its aim, as noted, was and is to maximize Settlement Class Members' participation in the Settlement.

80.     On January 9, 2024, Plaintiff filed a Supplemental Submission regarding the Emailed Notice, including Walmart's identification of approximately 81.4 million unique records with emails. *See* ECF No. 74 at 1-2.

81.     Plaintiff and Class Counsel also prepared and provided the Court with an updated Preliminary Approval Order that included proposed deadlines and dates for (a) the Claims Administrator to conduct emails cleansing and validation, to begin sending direct Email Notices, to commence the comprehensive Media Notice and launch the Settlement Website, to send Reminder Email Notices, and to publish the Summary Notice over PRNewswire; (b) the submission of Claim Forms; and (c) the Final Approval Hearing. ECF No. 74 at 5-6.

### *Entry of the Preliminary Approval Order*

82.     On January 19, 2024, the Court entered the Order Preliminarily Approving the proposed Settlement. ECF No. 75.

### *Payment of the Class Settlement Amount*

83.     On February 1, 2024, Walmart paid the Class Settlement Amount of $45 million into the Class Settlement Fund, which has been accruing interest to the benefit the Settlement Class. *See* SA ¶¶ 2.11, 2.17, 5.1.

### *Notice Plan, Settlement Website, and Responding to and Assisting Settlement Class Member Inquiries*

84.     Since the Court entered the Preliminary Approval Order, Class Counsel has undertaken to oversee and effectuate (as applicable) its provisions.

85.     The entry of the PAO set the end date for the Class Period, as well as set the dates for key Settlement-related deadlines, such as the deadline to file Claim Forms and the date of the Final Approval Hearing. Accordingly, Class Counsel and the Claims Administrator reviewed and updated the various forms of notice to reflect the Settlement Class Period and the dates for key deadlines and events.

86.     Class Counsel reviewed the Settlement Website, which the Claims Administrator posted live by February 20, 2024. *See also* Weisbrot Final Approval Decl. ("Weisbrot FA Decl."), filed herewith, ¶¶ 27-31.

87.     Class Counsel reviewed the banner ads, social media ads, and paid search ads that were part of the state-of-the-art digital Media Notice campaign conducted by the Claims Administrator, beginning on February 20, 2024, in accordance with the PAO. *See also id.* ¶¶ 23-25.

88.     Class Counsel also worked with the Claims Administrator to ensure that the Email Notice timely began on February 20, 2024, and to the Reminder Email Notice, thereafter, in accordance with the PAO. *See also id.* ¶¶ 6-17.

89.     It is also notable that separate from, and in addition to the Notice Plan, the Settlement has been widely reported upon by nationwide news outlets, including nationwide TV broadcasts—ABC World News Tonight and Good Morning America—and the New York Times.[3]

---

[3]*See, e.g.*, USA Today, https://www.usatoday.com/story/money/2024/02/28/walmart-settlement-weighted-groceries-class-action-lawsuit/72770499007/; Des Moines Register, https://www.desmoinesregister.com/story/news/crime-and-courts/2024/03/07/walmart-weighted-goods-bagged-citrus-class-action-lawsuit-how-to-file-claim/72878073007/;    ABC

90.     Class Counsel also communicates regularly with and receives weekly reports from the Claims Administrator concerning, among other things, the number of Claim Forms submitted, the number of visits to and unique users of the Settlement Website, and the number of incoming calls to the Claims Administrator.

91.     In addition, as the Court is aware, potential Settlement Class Members have also provided Claim Forms to the Court. I provided the Claims Administrator with the Court's March 28, 2024 Order regarding the Claim Forms sent to the Court. Class Counsel consulted with the Claims Administrator on this issue and reviewed all instructions on or associated with the Claim Form to confirm that there was no instruction being given that the Claim Form should be mailed to the Court.

92.     Also, as may be expected from a Settlement that has such an extensive Notice Plan and has received media coverage, Class Counsel has had numerous email and telephonic communications with persons identifying as potential Settlement Class Members, responding to their inquiries about the Settlement, the Action, and submitting Claim Forms.

93.     Class Counsel will continue to expend substantial time in working with the Claims Administrator throughout the remainder of the Notice period, and in

---

27,     https://www.abc27.com/news/consumer/walmart-agrees-to-45-million-settlement-over-weighted-groceries-will-you-qualify/?nxsparam=9;    10   Tampa   Bay   News, https://www.youtube.com/watch?v=8NB69srnEeE;       WKYC      Channel       3, https://www.youtube.com/watch?v=Jg8bon1iPl0;   Daytona   Beach   News   Journal, https://www.news-journalonline.com/story/news/2024/02/29/walmart-weighted-groceries-settlement-eligible-claim-florida/72786628007/;    Fox   29   Philadelphia, https://www.fox29.com/news/walmart-settlement-could-you-be-eligible-45-million.

connection with the Claims Administrator's processing, review, and validation of the Claim Forms, and thereafter, in connection with the distribution of the Net Class Settlement Fund.

94.    Class Counsel also expects to continue to receive and respond to email and telephonic communications from Settlement Class Members concerning the Settlement, the Claim Form, and the status of the claims review and validation process.

95.    As of May 8, 2024, pursuant to PAO ¶ 16, the Claims Administrator has been paid $1,146,624.90 from the Class Settlement Fund for its efforts to date in effectuating the Notice Plan and Claims Administration to date. Assuming a total of 3.5 million to 4.5 million total claims submitted, Class Counsel estimates that the additional cost of claims administration may range between approximately $1.1 million and $1.45 million, respectively.

### *Opt-Outs and Objections*

96.    The Opt-out and Objection Deadlines are May 22, 2024.

97.    To date, only 113 Settlement Class Members have opted out. *See* Weisbrot FA Declaration ¶ 40.

98.    To date, there has been only one objection sent to Class Counsel, which also was addressed to the Court (but has not yet been docketed in the Action). *See* Weisbrot FA Decl. Ex. H. The Settlement covers in-store purchases and does not include or otherwise affect online purchases of the Weighted Goods and Bagged Citrus (*see* SA ¶ 2.37, 2.44), because, among other things, (i) the misconduct alleged occurred

inside the Walmart store, including that persons were exposed to and relied on the in-store pricing information (including at the register), and (ii) Walmart's online terms and conditions include an arbitration agreement and class action waiver. That is why the action, discovery, and Settlement exclude Walmart online purchases.

99.    Pursuant to the PAO ¶ 34, Class Counsel will file a brief on June 5, 2024, updating the Court on opt-outs and addressing objections.

### Class Counsel's Expenses and Time Incurred

100.    This Declaration has summarized the work undertaken by Plaintiff and Class Counsel and in connection with the initiation, investigation, prosecution and settlement of this case, which supports the proposed fee award.

101.    Class Counsel worked vigorously, efficiently, and under tight deadlines and committed significant time and resources of the Firm (including two of the Firm's Senior Partners, myself and Mr. Chimicles) to successfully prosecute this case from pre-suit investigation through settlement. These efforts, as described included researching and drafting the initial and amended complaints, briefing oppositions to motions to dismiss, conducting fact and expert discovery, identifying, engaging and working with Mr. Pohl, engaging a private mediator, conducting settlement negotiations and participating in several mediation sessions, and preparing detailed settlement documentation. Class Counsel also, as expected in a Class Action Settlement of this size, has continued to expend efforts in effectuating the PAO and aiding and addressing questions from Settlement Class Members.

102.    Class Counsel has at all times assumed the responsibility of litigating the action on a contingent-fee basis, such that any fee would be paid, and the expenses incurred reimbursed, only upon achieving a recovery for the benefit of the Plaintiff and Settlement Class Members by settlement or judgment. Expense items are billed separately, and such charges are not duplicated in Class Counsel's billing rates.

103.    CSKD has incurred a total of $114,870.41 in litigation expenses through April 30, 2024 (inclusive of travel and lodging already booked and charged to the Firm for the June 12, 2024 Hearing):

| Category | Amount |
|---|---|
| Expert Fees – Pohl/ Herculean Litigation Solutions LLC | $78,145.00 |
| JAMS Mediation Fees – Robert A. Meyer, Esq. | $20,640.70 |
| Travel/Lodging/Meals | $7,290.67 |
| Computer Research – LEXIS & PACER Fees | $5,487.36 |
| Internal Reproduction/Photocopies | $1,729.50 |
| Filing & Special Admission Fees | $852.00 |
| Clerical Overtime | $225.34 |
| Subpoena Service | $188.20 |
| Postage/Express Delivery/Messenger | $187.91 |
| Evidence Purchased by Class Counsels' Agents | $123.73 |
| **Total:** | $114,870.41 |

104.    The expenses incurred by CSKD in this action are reflected on the books and records of my Firm which are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses CSKD incurred.

105.    Of CSKD's expenses, the majority of the expenses are associated with (i) expenses incurred for the mediation and (ii) expert fees of Mr. Pohl, which included his extensive review and analysis of the data produced, as discussed *supra*.[4] Likewise, virtually all of the Travel/Lodging/Meal expenses relate to: (i) the February 2023 in person meeting with defense counsel in Philadelphia; (ii) the in -person mediation session in Los Angeles (both discussed *supra*); and (iii) the June 12, 2024 hearing. The expenses do not include any currently unbilled future expenses. The category titled "Evidence Purchased by Class Counsels' Agents" refers to certain expenses incurred by the individuals referenced in paragraph 8.b., *supra*.

106.    CSKD's expenses incurred and reported are reasonable and were necessary for the successful prosecution of the Action and in achieving the Settlement.

107.    The total number of hours expended on this litigation by CSKD as of April 30, 2024, is 3,526.40 hours, consisting of attorneys' time and other professional staff time, for a lodestar of $3,418,859.00:

| NAME | STATUS | HOURLY RATE | HOURS | LODESTAR |
|---|---|---|---|---|
| Nicholas E. Chimicles | Partner | $1,350.00 | 975.50 | $1,316,925.00 |
| Kimberly M. Donaldson-Smith | Partner | $1,100.00 | 1,231.60 | $1,354,760.00 |
| Stephanie E. Saunders | Former Associate | $750.00 | 100.1 | $75,075.00 |
| Zachary P. Beatty | Associate | $700.00 | 852.40 | $596,680.00 |

---

[4] *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2021 WL 10428229, at *2 (S.D. Fla. Oct. 9, 2021) (recognizing that "discovery in complex class actions has the potential to consume vast resources.").

| | | | | |
|---|---|---|---|---|
| Samantha Barrett | Law Clerk | $210.00 | 36.00 | $7,560.00 |
| Davon P. Gaskins | Paralegal | $325.00 | 69.50 | $22,587.50 |
| Nathan L. Thomas | Former Legal Assistant | $60.00 | 181.40 | $10,884.00 |
| Attorneys and Professional Staff with Less Than 30 Hours Each, Aggregated | | | 79.90 | $34,387.50 |
| **TOTALS** | | | **3,526.40** | **$3,418,859.00** |

108.    The foregoing schedule was prepared from contemporaneous, daily time records recorded in tenths of an hour and regularly prepared and maintained by CSKD, which are available at the request of the Court. CSKD's lodestar figures are based upon the firm's current hourly billing rates, set forth above, which rates do not include charges for expense items. For personnel who are no longer employed by CSKD, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by CSKD.

109.    The hourly rates for CSKD's attorneys and professional legal staff are the same as the regular current rates charged for their services in non-contingent matters and/or consistent with rates submitted in other fee applications for complex litigations, including those listed in Paragraph 77, *supra,* and in the following matters: *In re Philips Recalled CPAP, Bi-Level PAP, & Mechanical Ventilator Prods. Litig.*, MDL No. 3014, ECF Nos. 2421-2 & 2735 (W.D. Pa. Apr. 25, 2024) (CSKD's current rates submitted in connection with fee petition, which was awarded); *Alessandro Demarco v. Avalon Bay Communities, Inc.*, No. 2:15-628 (D.N.J. July 11, 2017) ("The court, after

careful review of the time entries and rates requested by Class Counsel (including CSKD), and after applying the appropriate standards required by relevant case law, hereby grants Class Counsel's application for attorneys' fees …"); *Chambers v. Whirlpool Corp., et al.*, 11-1773-FMO (C.D. Cal. (October 11, 2016) (reviewing the hourly rates of CSKD counsel and holding, over Defendants' objections, that "the hourly rates sought by counsel are reasonable."); *In re Freeport-McMoran Copper & Gold Inc.*, No. 8145-VN (Delaware Chancery 2015); *Henderson v. Volvo Cars of N. Am., LLC,* 2013 U.S. Dist. LEXIS 46291 *4-47 (D.N.J. Mar. 22, 2013) (CSKD rates "are entirely consistent with hourly rates routinely approved by this Court in complex class action litigation."); *City of St. Clair Shores General Employees Ret. Sys. v. Inland Western Retail Real Estate Trust, Inc., et al.*, Case 07 C 6174 (N.D. Ill. 2011); *In re Freeport-McMoran Sulphur, Inc. Shareholder Litig.,* No. 16729, (Delaware Chancery 2006); *In re CNL Hotels & Resorts, Inc. Sec. Litig.,* Case No. 6:04-cv-1231-Orl-31KRS (M.D. Fla. 2006); *I.G. Holdings Inc., et. al. v. Hallwood Realty, LLC, et. al.,* No. 20283, (Delaware Chancery 2004); *In re Real Estate Associates Limited P'ship Litig.*, No. CV 98-7035-DDP, (C.D. Cal. 2003).

110.   Finally, CSKD's lodestar does not include time incurred after April 30, 2024, and expected to be incurred in connection with preparing for and appearing at the final approval hearing, as well as continued oversight and involvement in the claims and settlement administration process, discussed above, which is expected to involve substantial time by Class Counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 8, 2024.

/s/ *Kimberly M. Donaldson-Smith*
KIMBERLY M. DONALDSON-SMITH