## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VASSILIOS KUKORINIS, on behalf
of himself and any others similarly
situated,

     Plaintiff,

v.                                              Case No. 8:22-cv-02402-VMC-TGW

WALMART INC.,

     Defendant.

---

## PLAINTIFF'S MOTION
## FOR AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

Kimberly M. Donaldson-Smith
Nicholas E. Chimicles
Zachary P. Beatty
**Chimicles Schwartz Kriner & Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiff and the Class*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

    A.  The Settlement Provides Excellent Relief to the
        Settlement Class Members ........................................................ 3

    B.  Summary of Class Counsel's Efforts in Achieving
        the Settlement ......................................................................... 5

II.   THE COURT SHOULD APPROVE THE REQUESTED FEE
    OF 20% OF THE COMMON FUND ........................................... 9

    A.     Class Counsel is Entitled to an Award of Attorneys'
            Fees from the Common Fund ............................................... 9

    B.     The *Camden I* Factors Support the Fee Request ................... 11

          1.  The 20% request is below the benchmark award and
              at the bottom of the standard range of fee awards .......... 11

          2.  Class Counsel achieved an excellent result in
              recovering $45 million for the benefit of the Class .......... 13

          3.  Class Counsel exemplified their skill and experience by
              efficiently obtaining the outstanding result here ............. 15

          4.  The time and labor required to litigate and reach a
              settlement, on a fast-track schedule, was significant ....... 17

          5.  Class Counsel pursued this case on a contingent basis .................. 21

          6.  The 20% request here is significantly lower than the
              the customary fee arrangement of 33–40% ..................... 23

          7.  No substantial objections to the settlement or the fee
              request have been filed ................................................... 24

          8.  The claims at issue and the Settlement presented complex
              legal and factual issues driven by voluminous data ........ 25

          9.  This Settlement is unique because of the direct Email Notice
              insisted upon and negotiated by Class Counsel ............. 27

i

III.    CONCLUSION ...........................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU of Fla., Inc. v. Dixie Cty., Fla.*,
    No. 1:07-cv-00018, 2012 U.S.
    Dist. LEXIS 22486 (N.D. Fla. Feb. 6, 2012) .....................................................20

*Ali v. Laser Spine Inst., LLC*,
    No. 8:19-cv-535, 2023 U.S. Dist. LEXIS 105175
    (M.D. Fla. June 16, 2023) ...................................................................................13

*Allapattah Servs. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...............................................................17

*Arkin v. Pressman*,
    38 F.4th 1001 (11th Cir. 2022) ..........................................................................11

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ....................................................................*passim*

*In re Checking Account*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011).................................................14, 22, 23

*Cooper v. Nelnet, Inc.*,
    No. 6:14-cv-314, 2015 U.S. Dist. LEXIS 100350
    (M.D. Fla. July 31, 2015)............................................................................ 12, 16

*Cotter v. Checkers Drive-In Rests., Inc.*,
    No. 8:19-cv-1386-VMC, 2021 U.S. Dist. LEXIS 160592
    (M.D. Fla. Aug. 25, 2021) .................................................................................11

*Cty. of Monmouth v. Fla. Cancer Specialists*,
    No. 2:18-cv-201, 2020 U.S. Dist. LEXIS 259394
    (M.D. Fla. Feb. 21, 2020) ..................................................................................26

*Denning v. Mankin Law Grp., P.A.*,
    No. 8:21-cv-2822, 2023 U.S. Dist. LEXIS 50371
    (M.D. Fla. Feb. 15, 2023) ..................................................................................29

*Dorado v. Bank of Am., N.A.*,
    No. 1:16-cv-21147, 2017 U.S. Dist. LEXIS 219407
    (S.D. Fla. Mar. 23, 2017).....................................................................................14

*Dukes v. Air Canada*,
    No. 8:18-cv-2176, 2020 U.S. Dist. LEXIS 16097
    (M.D. Fla. Jan. 27, 2020) ............................................................................ 15, 18

*In re Equifax Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ........................................................................ 10

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    MDL Docket No. 2800,
    2020 U.S. Dist. LEXIS 7841 (N.D. Ga. Jan. 13, 2020) ...................................... 23

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ........................................................................ 12

*Flores v. Acorn Stairlifts*,
    No. 6:19-cv-844, 2020 U.S. Dist. LEXIS 253965
    (M.D. Fla. June 22, 2020) ................................................................................ 19

*Francisco v. Numismatic Guar. Corp.*,
    No. 06-cv-61677, 2008 U.S. Dist. LEXIS 125370
    (S.D. Fla. Jan. 30, 2008) ................................................................................. 25

*Fruitstone v. Spartan Race, Inc.*,
    No. 20-cv-20836, 2021 U.S. Dist. LEXIS 95860
    (S.D. Fla. May 20, 2021) ................................................................................. 26

*George v. Acad. Mortg. Corp.*,
    369 F. Supp. 3d 1356 (N.D. Ga. 2019) ............................................................ 16

*Gevaerts v. TD Bank, N.A.*,
    No. 11:14-cv-20744, 2015 U.S. Dist. LEXIS 150354
    (S.D. Fla. Nov. 5, 2015) ........................................................................ 12, 20, 29

*Grasso v. Electrolux Home Prods.*,
    No. 8:16-cv-00911, 2018 U.S. Dist. LEXIS 244425
    (M.D. Fla. Apr. 23, 2018) ................................................................................ 30

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ............................................................................ 19

*Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*,
    No. 8:19-cv-00550, 2020 U.S. Dist. LEXIS 89175
    (M.D. Fla. Apr. 23, 2020) .......................................................................... 28, 29

*In re Health Ins. Innovations Sec. Litig.*,
  No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051
  (M.D. Fla. Mar. 23, 2021) ........................................................................ 15, 29

*Henderson v. Emory Univ.*,
  No. 16-2920, 2020 U.S. Dist. LEXIS 218676
  (N.D. Ga. Nov. 4, 2020) ...................................................................................20

*In re Home Depot, Inc.*,
  931 F.3d 1065 (11th Cir. 2019)................................................................... 10, 19

*Jairam v. Colourpop Cosmetics, LLC*,
  No. 19-cv-62438, 2020 U.S. Dist. LEXIS 181656
  (S.D. Fla. Oct. 1, 2020) ....................................................................................12

*Junior v. Infinity Ins. Co.*,
  No. 6:18-cv-1598, 2021 U.S. Dist. LEXIS 58354
  (M.D. Fla. Mar. 25, 2021) ................................................................................21

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................................23

*Kukorinis v. Walmart Inc.*,
  No. 1:19-cv-20592-JEM (S.D. Fla.)............................................................. 7, 12

*Lewis v. Delta Air Lines, Inc.*,
  No. 18-16911, 2021 U.S. App. LEXIS 2364
  (9th Cir. Jan. 27, 2021) ....................................................................................20

*Lunsford v. Woodforest Nat'l Bank*,
  No. 1:12-cv-103, 2014 U.S. Dist. LEXIS 200716
  (N.D. Ga. May 19, 2014)...................................................................................26

*Martin v. Glob. Mktg. Research Servs.*,
  No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770
  (M.D. Fla. Nov. 30, 2016) ................................................................................20

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016)........................................................ *passim*

*Norman v. Hous. Auth. of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988)........................................................................16

*In re Pearlman*,
  No. 6:07-BK-00761, 2014 Bankr. LEXIS 1084

v

(Bankr. M.D. Fla. Mar. 20, 2014) ..................................................................... 23

*Pinto v. Princess Cruise Lines Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................................ 24

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ...................................................................... 27

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ........................................................................ 19

*Rosado v. Barry Univ.*,
   No. 20-cv-21813, 2021 U.S. Dist. LEXIS 169196
   (S.D. Fla. Sep. 7, 2021) ....................................................................................... 22

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (2001) ......................................................................... 19, 22

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   No. 1:14-cv-20880, 2016 U.S. Dist. LEXIS 144133
   (S.D. Fla. Oct. 14, 2016) ............................................................................... 19, 21

*Walco Invs. v. Thenen*,
   975 F. Supp. 1468 (S.D. Fla. 1997) .................................................................... 16

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) .................................................................... 19, 28

*William S. v. Progressive Select Ins. Co.*,
   No. 19-cv-21760, 2023 U.S. Dist. LEXIS 47560
   (S.D. Fla. Mar. 20, 2023) .................................................................................... 12

*Wilson v. EverBank*,
   No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751
   (S.D. Fla. Feb. 3, 2016) ....................................................................................... 13

*Wolff v. Cash 4 Titles*,
   2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sep. 26, 2012) .................................... 14

*Womack v. Dolgencorp, Inc.*,
   No. 2:06-cv-465, 2012 U.S. Dist. LEXIS 202303
   (N.D. Ala. Oct. 24, 2012) .................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 23(h)................................................................................28

## I.     INTRODUCTION

After litigating and negotiating on a dual-track basis for nearly a year and a half, Class Counsel achieved preliminary approval of the Settlement that provides a *non-reversionary $45 million cash common fund* for the benefit of the Settlement Class Members.[1] Plaintiff now moves for an award of Attorneys' Fees, Costs, and Expenses from the common fund.[2] Specifically, Class Counsel requests the Court award attorneys' fees of 20% of the Class Settlement Amount, totaling $9 million, and reimbursement of litigation expenses incurred, totaling $114,870.41, plus the proportionate amount of interest that has accrued on the awarded amounts from the inception of the Class Settlement Fund through the date of payment from the Class Settlement Fund (the "applicable interest").

Class Counsel's request of 20% of the common fund is below the presumptively reasonable 25% benchmark award in the Eleventh Circuit, at the bottom of the typical range of common fund awards (between 20–33%), and is well-supported by the substantial and outstanding cash result achieved here, which is attributable to Class Counsels' skill, experience, and efficiency in litigating and settling this case on favorable terms for the Settlement Class Members.

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Stipulation and Agreement of Settlement ("Agreement" or "SA ¶ _"), ECF No. 71-2.

[2] Walmart denies the allegations in the Complaint and Amended Complaint and denies that the claims alleged are amenable to class-wide treatment. Walmart, however, does not oppose certification of the Settlement Class for settlement purposes, nor does Walmart oppose granting of final approval for purposes of effectuating the parties' Settlement in accordance with the parties' Agreement. SA ¶¶ 3.9, 4.4, 16.4. Walmart also takes no position on Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Expenses.

Indeed, under the Settlement, Approved Claimants are eligible to receive cash payments of up to $25 without proof of purchase or up to $500 with documentation of their purchases of Weighted Goods and Bagged Citrus. Class Counsel also insisted on direct Email Notice to over *81 million* email addresses of likely Settlement Class Members that Walmart could discern from its records—a first in a settlement of this kind and magnitude—to ensure maximum Settlement Class Member participation in this Settlement. There is no doubt that Class Counsel exercised their skill and experience in litigating and negotiating this Settlement on a dual- and fast-track basis for nearly a year and a half.

Class Counsel has also invested significant time and resources into this case on behalf of the Settlement Class. Class Counsel devoted over 3,500 hours, spent investigating claims, engaging in motion practice, undertaking in discovery and massive data discovery, consulting and working with experts, and all the while, also negotiating and mediating a nationwide settlement at arms' length with the assistance of an experienced mediator, with a lodestar value of $3,418,859. Donaldson-Smith Final Approval Decl. ¶ 107 ("KDS FA Decl."). Class Counsel also incurred $114,870.41 in litigation expenses, most of which were expert and mediation costs. *Id.* ¶ 103. All of these resources were invested on behalf of the class on a contingent basis with no guarantee of recuperation. *Id.* ¶ 102.

Plaintiff respectfully requests that the Court enter an Order Granting Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses granting Class Counsel's request.

### A.   <u>The Settlement Provides Excellent Relief to the Settlement Class Members</u>

On February 1, 2024, Walmart paid $45 million into the Class Settlement Fund. *Id.* ¶ 83. As discussed in Plaintiff's motions for Preliminary and Final Approval, should the Court grant final approval, the Class Settlement Fund will be used to pay Notice and Administration Costs, Taxes and Tax Expenses of the Class Settlement Fund, and Award of Attorneys' Fees, Costs, and Expenses to Class Counsel approved by the Court, and after the Effective Date of the Settlement, the Net Class Settlement Fund (SA ¶ 2.25) will be allocated to Settlement Class Members as set forth in ¶ 5.4 of the Agreement. SA ¶ 5.3.

Upon submission of a simple Claim Form, Settlement Class Members are eligible to receive cash payments from the Class Settlement Fund. SA ¶ 5.4. Specifically, subject to proration, Approved Claimants are eligible to receive payments from $10, $15, $20, and $25—without the need for documentation—for attesting to having Purchased up to 50, 75, 100, or more than 100 Weighted Goods and Bagged Citrus products, respectively. SA ¶¶ 5.4(a)(i)–(iv). Alternatively, if a Class Member has receipts documenting their Purchases of Weighted Goods and/or Bagged Citrus, such Class Member is eligible to submit a Claim Form to receive 2% of the total price of all those documented purchases submitted up to $500. SA ¶ 5.4(a)(v).

Class Counsel determined this plan of allocation in consultation with and based on the liability and damages' analyses conducted on Walmart's data. KDS FA Decl. ¶ 67. That analysis, conducted on millions of lines of transaction-level data, reflected

that the average purchase price of Weighted Goods and Bagged Citrus was $10.30 and that the alleged wrongdoing caused a 2% overcharge on all Weighted Goods and Bagged Citrus. *Id.* ¶ 68. In addition, further data analysis revealed that the Settlement Amount represents between 11% and 14% of a complete nationwide recovery. *Id.* ¶ 76.

As described in more detail in Plaintiff's motion for Final Approval, the Notice Plan here was robust and designed to directly reach as many likely Settlement Class Members as possible. Final Approval Br. § II.B. Most notably, Class Counsel negotiated and insisted on direct Email Notice to over 81 million email addresses of likely Settlement Class Members that could be identified in Walmart's records, and each was supplied with a unique notice identification number for purposes of submitting her Claim Form. Weisbrot Final Approval Decl., filed herewith, ¶¶ 6–16 ("Weisbrot FA Decl.").

Finally, the Settlement also provided that Class Counsel would petition the Court for "an award of Attorneys' Fees, Costs, and Expenses . . . up to, but not to exceed, 20% of the Class Settlement Amount" plus reimbursement of costs and expenses and applicable interest. SA ¶ 8.1. Consistent with the Settlement, the various forms of notice informed Class Members that Class Counsel would seek:

> fees up to, but not to exceed, 20% of the Class Settlement Amount, plus reimbursement of costs and expenses (which costs and expenses will not exceed $200,000) incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid).

SA Ex. 1A at 11 (Notice); SA Ex. 1C (Summary Notice); Weisbrot FA Decl. Exs. A (Email Notice) & D (People Magazine notice). The objection deadline is not until May 22, 2024. Preliminary Approval Order ("PAO"), ECF No. 75, ¶ 34. To date, however, one objection to the Settlement has been received, and addressed to the Court, but none as to the fee provision. Weisbrot FA Decl. ¶ 41; KDS FA Decl. ¶ 98.

### B.    Summary of Class Counsel's Efforts in Achieving the Settlement

Prior to filing the initial complaint, ECF No. 1, Class Counsel conducted extensive investigation into Plaintiff's claims. KDS FA Decl. ¶ 7–9. Those efforts resulted in an 84-page, 176-paragraph, detailed complaint, filed on October 19, 2022, which described the alleged systemic overcharges by Walmart on Weighted Goods and Bagged Citrus. ECF No. 1. The initial Class Action Complaint alleged claims for violations of the FDUTPA, similar state consumer protection acts, and unjust enrichment. ECF No. 1. On January 6, 2023, Walmart filed its motion to dismiss, and Plaintiff filed his response. ECF Nos. 25, 37.

Anticipating that this action—and any class-wide resolution—would be driven by Walmart's point-of-sale ("POS") system and consumer-transaction data, Class Counsel began investigating and researching POS systems and data they collect. KDS FA Decl. ¶ 8. Class Counsel, at a very early stage, consulted with POS industry experts and also promptly identified a data expert with prior Walmart case experience. KDS FA Decl. ¶¶ 14–15. Plaintiff's data expert then assisted in developing requests for production and conducting damages analyses. KDS FA Decl. ¶¶ 16, 32, 44–46.

While the first motion to dismiss was pending, the parties began litigating and simultaneously engaged in settlement negotiations and mediation. On January 25, 2023, the Court entered the Scheduling Order and discovery commenced. ECF No. 34. Plaintiff promptly served forty detailed requests for production on Walmart targeting documents and data critical to Plaintiff's claims. KDS FA Decl. ¶ 32. On February 28, 2023, the parties then held an in-person meet and confer about the discovery requests, which was followed by remote conferrals through March 2023. *Id.* ¶ 35. Walmart served 64 pages of objections and narrative-form responses. *Id.* ¶ 36.

In addition to Walmart producing and Class Counsel reviewing over 1,000 pages of responsive documents, Walmart most importantly produced over 100 gigabytes of data related to Plaintiff's allegations concerning Weighted Goods and Bagged Citrus. *Id.* ¶¶ 42–43. Plaintiff's data and damages expert aided Class Counsel in the interpretation and analysis of the massive amount of data and calculation of potential damages. *Id.* ¶¶ 44–46.

At the same time, Class Counsel began settlement discussions with Walmart in late 2022 and proceeded with exchanging information about Plaintiff's claims in earnest in early 2023. *Id.* ¶ 48. The parties retained the services of Robert Meyer, who is an experienced JAMS mediator. *Id.* ¶ 35. During the February 28, 2023 conferral, the parties had preliminary discussions about settlement. *Id.* In advance of the mediation sessions, Plaintiff prepared detailed mediation statements for the mediator addressing various issues including liability and damages based on Plaintiff's work with his expert. *Id.* ¶¶ 50–53. On May 24, 2023, the parties attended an all-day

mediation at the office of Mr. Meyer in Los Angeles. *Id.* ¶ 50. On June 16, 2023, the parties then conducted another full-day mediation session via Zoom. *Id.* ¶ 52. Prior to and after these sessions, the parties held numerous conferrals and exchanged, verbally and in writing, information relevant to the parties' claims and defenses. *Id.* ¶¶ 50–55. Many of these conferrals were facilitated by the mediator, during which Mr. Meyer communicated jointly and separately with the parties' counsel. *Id.*

On July 6, 2023, the Court issued its order granting Walmart's first motion to dismiss in part and denying in part. *Id.* ¶ 27; ECF No. 52. The Court held that a prior class settlement[3] barred certain claims prior to August 26, 2020, dismissed Plaintiff's unjust enrichment claim with prejudice, upheld Plaintiff's claims under the FDUTPA, and dismissed Plaintiff's multistate consumer protection claims with leave to amend. *Id.*

On July 20, 2023, Plaintiff filed his Amended Complaint, which re-alleged his FDUTPA claims behalf of a nationwide class and re-alleged his multistate consumer protection claims on behalf of a multistate class. KDS FA Decl. ¶ 28; ECF No. 56. After conferrals between the parties, on August 10, 2023, Walmart filed its partial motion to dismiss the Amended Complaint and argued that Plaintiff could not pursue his nationwide allegations or his multistate claims. ECF No. 60. On August 31, 2023, Plaintiff filed his response. ECF No. 63; *see* KDS FA Decl. ¶¶ 29–30.

---

[3] The prior settlement was reached in *Kukorinis v. Walmart Inc.*, No. 1:19-cv-20592-JEM (S.D. Fla.) ("*Kukorinis I*"), which was brought by the same Plaintiff, but he was represented by different counsel than here.

While the second motion to dismiss was pending, the parties reached an agreement in principle the week of September 18, 2023, and promptly notified the Court. KDS FA Decl. ¶ 58. Class Counsel then conducted additional discovery, including confirmatory discovery focused on affirming critical information relayed to Class Counsel during settlement negotiations. *Id.* ¶ 64. Class Counsel spent extensive time drafting, negotiating, and finalizing the Settlement Agreement and attachments, and the parties executed the Agreement on November 15, 2023. *Id.* ¶¶ 62–72. During this time, Class Counsel also spent significant time working with the Claims Administrator to develop the best practicable Notice Plan. *Id.* ¶¶ 65–66.

On November 16, 2023, Plaintiff filed the Agreement and his motion for preliminary approval, which was followed by a supplemental filing regarding the size and timing of the Email Notice program. ECF Nos. 71, 74. The Court granted preliminary approval of the Settlement on January 19, 2024. ECF No. 75. Since then, Class Counsel has worked with the Claims Administrator to ensure execution of the Notice Plan and has spent considerable time responding to direct inquiries from potential Settlement Class Members. KDS FA Decl. ¶¶ 84–94.

As the Court is aware, this case was prosecuted on an expedited schedule, and therefore, once filed, Class Counsel worked on most of the foregoing aspects of this case in tandem, including discovery, meet and confers, motion to dismiss briefing, preparing expert reports and data analysis, settlement discussions, and work with the mediator. *See, e.g.*, *id.* ¶¶ 35–41, 58–61. Efficiency was, therefore, paramount, and at every step, Class Counsel used their experience, and leveraged others' experience, for

the benefit of the class. *Id.* ¶ 5. As of the end of April 2024, Class Counsel and the law firm of Chimicles Schwartz Kriner & Donaldson-Smith ("CSKD") invested over 3,500 hours of attorney and professional staff time representing a lodestar of $3,418,859.00. *Id.* ¶ 107. Additionally, Class Counsel has incurred over $114,870.41 in out-of-pocket costs, which were predominately for expert expenses and mediation fees. *Id.* ¶ 103; *infra* § IV (categorizing costs and expenses). Class Counsel has worked assiduously for over a year and a half to recover $45 million on behalf of the Class and have done so efficiently and without unnecessarily drawing on judicial resources.

## II.   THE COURT SHOULD APPROVE THE REQUESTED FEE OF 20% OF THE COMMON FUND

Under Eleventh Circuit precedent, Class Counsel is entitled to an award of attorneys' fees from the Settlement Amount recovered on behalf of the Settlement Class Members. Class Counsel's request of 20%, plus applicable interest, is below the presumptively reasonable benchmark and well supported by the relevant factors.

### A.   Class Counsel is Entitled to an Award of Attorneys' Fees from the Common Fund

Although under the American Rule parties generally bear their own costs of litigation, there is an exception where class counsel and plaintiff negotiate a common fund for the benefit of the class. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770-71 (11th Cir. 1991). "The common fund exception 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" *Id.* (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Thus, the Eleventh Circuit has held that "attorneys' fees

awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* at 774; *see In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1279 (11th Cir. 2021) (noting that *Camden I* remains "good law" in common fund cases).[4]

The standard fee award ranges between 20% and 33% of the common fund. *See Camden I*, 946 F.2 at 775; *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) ("33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit."). And an award of 25% is the "benchmark" fee, "which may be adjusted in accordance with the individual circumstances of each case." *Camden I*, 946 F.2d at 775. In determining the appropriate percentage, the Eleventh Circuit has identified a non-exhaustive list of factors or "guidelines" that may be considered according to the circumstances of each case (the "*Camden I* factors"):

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases; (13) the time required to reach a settlement; (14) whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel; (15) any non-monetary benefits conferred upon the class by the settlement; (16) the economics involved in prosecuting a class action; and (17) any additional factors unique to the particular case.

*Morgan*, 301 F. Supp. 3d at 1252 (citing *Camden I*, 946 F.2d at 772 n.3, 775).

---

[4] Under Eleventh Circuit precedent, a common fund includes all cash amounts, attorneys' fees, and valuable injunctive relief made available to the class. *In re Home Depot, Inc.*, 931 F.3d 1065, 1092 (11th Cir. 2019).

Because "awards of up to 25% of the common fund are presumptively reasonable in this circuit, district courts must apply the [*Camden I*] factors before approving a *greater award* to class counsel." *Arkin v. Pressman*, 38 F.4th 1001, 1005 n.3 (11th Cir. 2022) (emphasis added). But even where, as here, counsel is requesting a lesser, presumptively reasonable percentage, the Court must still support its fee award with reference to the *Camden I* factors. *See Camden I*, 946 F.2d at 775.

**B.    The *Camden I* Factors Support the Fee Request**

Here, the relevant *Camden I* factors weigh heavily in support of granting the requested fee of 20% of the Settlement Amount, or $9 million, plus applicable interest.[5]

**1.    The 20% request is below the benchmark award and at the bottom of the standard range of fee awards.**

Class Counsel's 20% request is below the awards in similar cases. As noted above, fee awards usually range between 20 to 30% of the common fund. *E.g.*, *Camden I*, 946 F.2 at 775. And in class actions, awards of 33% are typical in this circuit and nationwide. *Morgan*, 301 F. Supp. 3d at 1257–58 (collecting cases); *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC, 2021 U.S. Dist. LEXIS 160592, at *33 (M.D. Fla. Aug. 25, 2021) (cleaned up; citation omitted) (noting "an award of one-third of the common fund is consistent with the trend in this Circuit"). While "well-settled . . . that 25% is generally recognized as a reasonable fee award in common fund

---

[5] The relevant *Camden I* factors discussed herein include the first, second, fifth, sixth, eighth, ninth, twelfth, thirteenth, fourteenth, sixteenth, and seventeenth. The fourth, seventh, tenth, eleventh, and fifteenth are not addressed because they are not relevant here and, therefore, are neutral.

cases," *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011), here, Class Counsel only requests 20% of the common fund.

Not only is this below the benchmark and at the bottom of the typical range, but other courts have approved 20%, and higher, fee requests in similar cases. *See, e.g.*, *William S. v. Progressive Select Ins. Co.*, No. 19-cv-21760, 2023 U.S. Dist. LEXIS 47560, at *8-9 (S.D. Fla. Mar. 20, 2023) (awarding $10 million in fees, which was 20.6% of the "total benefit to the class," which was comprised of $35 million potential, claims-made fund and the $10 million in fees); *Cooper v. Nelnet, Inc.*, No. 6:14-cv-314, 2015 U.S. Dist. LEXIS 100350, at *4 (M.D. Fla. July 31, 2015) (awarding 27.78% of the fund when litigated for only seven months and no depositions were taken); *Jairam v. Colourpop Cosmetics, LLC*, No. 19-cv-62438, 2020 U.S. Dist. LEXIS 181656, at *22 (S.D. Fla. Oct. 1, 2020) (approving a fee of 24.8% of the common fund in a settlement that achieved preliminary approval in approximately eight months); *Morgan*, 301 F. Supp. 3d at 1254 (approving 33% request after "nearly two years [of] providing the best possible representation to the Class and prosecuting and settling the claims"); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 U.S. Dist. LEXIS 150354, at *38 (S.D. Fla. Nov. 5, 2015) (collecting cases and noting "[n]umerous recent decisions within this Circuit have awarded attorneys' fees up to and in excess of thirty percent."); *Kukorinis I*, 2021 U.S. Dist. LEXIS 259120, at *7 (awarding fees after achieving preliminary approval after a year and a half in the amount of 20% of a $4.5

million claims-made settlement "floor").[6] Class Counsel's 20% request here, where preliminary approval was achieved over a year after the case was filed, is below the standard award.

The fee request of 20% is below the presumptively reasonable percentage, is in line with this circuit's precedent, and should be awarded here.

### 2.   Class Counsel achieved an excellent result in recovering $45 million for the benefit of the Class.

"[T]he amount involved, and results obtained is the 'most important factor' in determining an award of attorneys' fees." *Ali v. Laser Spine Inst., LLC*, No. 8:19-cv-535, 2023 U.S. Dist. LEXIS 105175, at *21 (M.D. Fla. June 16, 2023) (citation omitted). The result obtained here—a $45 million non-reversionary common fund—speaks for itself and weighs heavily in favor of a 20% fee award. The Settlement, which provided direct Email Notice to be issued to over 81 million email addresses of likely Settlement Class Members, will provide immediate and substantial cash relief to likely millions of Approved Claimants. *See* Weisbrot FA Decl. ¶¶ 14–16.

"It is especially significant that Class Counsel achieved a cash common fund, which is 'a substantial, tangible, and real benefit for the Class.'" *Morgan*, 301 F. Supp. 3d at 1255 (quoting *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, at *10 (S.D. Fla. Sep. 26, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 153498,

---

[6] Even in "mega-fund" cases, which this is not, and which presents a potential for a percentage to overcompensate counsel, courts have "routinely awarded class counsel fees in excess of the 25 percent benchmark, even in so-called mega-fund cases." *See, e.g.*, *Wilson v. EverBank*, No. 14-cv-22264, 2016 U.S. Dist. LEXIS 15751, at *59 (S.D. Fla. Feb. 3, 2016).

at *3 (S.D. Fla. Oct. 25, 2012)).[7] Here, there is no doubt that the $45 million cash Settlement Amount is an outstanding result that provides meaningful relief to the class now and avoids the risks and expenses of continued, protracted litigation.

Moreover, based on Plaintiff's expert's data analysis, the Settlement Amount represents between 11% and 14% of a complete nationwide recovery if Plaintiff would have been completely successful in, *inter alia*, defeating Walmart's motion to dismiss the nationwide claims, certifying a nationwide class, winning a judgment at trial, and surviving lengthy appeals.[8] KDS FA Decl. ¶ 76; *see also* Final Approval Br. § IV.C.1. (discussing risks of continued litigation).

Courts have found that similar percentages of recovery weigh in favor of granting *even greater* fee percentages than requested here. *See, e.g.*, *Morgan*, 301 F. Supp. 3d at 1256 (finding that a settlement recovering a cash fund representing 20% of the actual damages available at trial was an "excellent result" that weighed in favor of a 33% award); *In re Checking Account*, 830 F. Supp. 2d 1330, 1346, 1358 (S.D. Fla. 2011) (awarding 30% fee of a $410 million fund where settlement recovery was 9% of maximum potential liability); *Dorado v. Bank of Am., N.A.*, No. 1:16-cv-21147, 2017 U.S. Dist. LEXIS 219407, at *20 (S.D. Fla. Mar. 23, 2017) (collecting cases and awarding 28% of fund where settlement recovery for one tier of class members was

---

[7] *See also Wolff*, 2012 U.S. Dist. LEXIS 153786, at *10 ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons', Class Counsel here created a wholly cash common fund.").

[8] Walmart disputes the calculations and conclusions made by Plaintiff's expert as to the maximum potential nationwide recovery.

14% of potential damages); *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051, at *24, 43 (M.D. Fla. Mar. 23, 2021) (granting award of 33% where the common fund represented 10% of the expert's estimated damages). Thus, here, given the comparable 11–14% recovery, Class Counsel's lesser request of 20% of the Settlement Amount is reasonable and appropriate.

The excellent result obtained by Class Counsel here weighs heavily in favor of granting the requested award.

### 3. Class Counsel exemplified their skill and experience by efficiently obtaining the outstanding result here.

The third and ninth *Camden I* factors examine the skill required to perform the legal services properly and the experience, reputation, and ability of Class Counsel. 946 F.2d at 772 n.3. The excellent result achieved here is attributable to the skill and experience exemplified by Class Counsel. *See Dukes v. Air Canada*, No. 8:18-cv-2176, 2020 U.S. Dist. LEXIS 16097, at *21 (M.D. Fla. Jan. 27, 2020) ("The result achieved . . . supports the conclusion that Class Counsel is skilled and well qualified.").

Collectively, Class Counsel have decades of experience prosecuting complex, high-stakes class actions and have recovered billions of dollars on behalf of their clients. *See* KDS FA Decl. ¶ 77. Class Counsels' skill and experience were required and harnessed here to thoroughly investigate the facts and legal claims, defeat Walmart's motion to dismiss, consult with the appropriate experts, and doggedly negotiate favorable terms for the Settlement Class. *See Dukes*, 2020 U.S. Dist. LEXIS 16097, at *20 (holding that the demonstration of "skill in the prosecution and

settlement" weighs in favor of 33% fee award). Walmart too was represented by a prominent nationwide defense firm, Greenberg Traurig. *See, e.g.*, *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

Moreover, Class Counsel exercised their experience and skill to resolve this case efficiently. *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) ("Throughout, and particularly if litigation is begun, the word 'skill' incorporates the notions of organization and efficiency . . . . Efficiency means doing well just what ought to be done and doing it in a minimum of time."). For example, Class Counsel identified an appropriate expert with relevant Walmart experience, effectively zeroed-in on the necessary discovery and data that would drive resolution of the claims or a settlement in this case, avoided lengthy discovery battles in obtaining that information, and, most importantly, delivered results. *See, e.g.*, KDS FA Decl. ¶¶ 15–16, 35–36; *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1383 (N.D. Ga. 2019) ("That Class Counsel was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation further supports the 33% fee in this case under the *Camden I* analysis."); *Cooper*, 2015 U.S. Dist. LEXIS 100350, at *5 ("The skill and experience of the lawyers involved, particularly Class Counsel, is likely responsible, at least in part, for the early and efficient resolution of the claim."). Class Counsel's experience and skill exemplified here weighs in favor of granting the award.

####    4.    The time and labor required to litigate and reach a settlement, on a fast-track schedule, was significant.

Despite the risks and costs of pursuing this action, Class Counsel expended considerable time and effort over a year and a half in providing representation to the class and prosecuting and settling the claims. Class Counsel will also continue to expend time on this case including by responding to Settlement Class Member inquiries, monitoring the Settlement process, responding to any objections and Class Member inquiries, attending the Final Approval Hearing, and ensuring that the Settlement is executed according to its terms. KDS FA Decl. ¶¶ 90–94. This factor weighs in favor of approval.

The "time and labor" factor "requires the court to weigh the hours claimed against [its] own knowledge, experience, and expertise of the time required to complete similar activities. The key consideration simply is whether Class Counsel's claimed hours are reasonable given the circumstances of the case and the results achieved." *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006).

Class Counsel have invested 3,526.40 hours of attorney and professional staff time into this case. KDS FA Decl. ¶ 107.[9] These hours were necessarily expended to obtain the outstanding result in this case, including, as discussed above, extensive pre-suit investigation and research, drafting a detailed complaint, briefing the first motion

---

[9] Given the percentage-of-the-fund method is required here, the Court need not review the detailed time records of Class Counsel. *Allapattah*, 454 F. Supp. 2d at 1213 ("For purposes of establishing a percentage, I do not find it necessary to review in detail the time records of the law firms involved as Class Counsel."). But should the Court desire to review Class Counsel's detailed time records, recorded in tenths of an hour, beyond the information and chart provided in the KDS FA Decl., at the Court's request, Class Counsel will submit them for *in camera* review.

to dismiss, preparing an amended complaint, briefing second motion to dismiss, engaging in protracted mediation and settlement negotiations, engaging and working with data and industry experts, propounding discovery requests, reviewing documents produced, analyzing voluminous data concerning liability and potential damages, negotiating and drafting the details of the $45 million Settlement Agreement, and creating the best practicable Notice Plan, including direct Email Notice to over 81 million email addresses of likely Settlement Class Members. *See, e.g.*, KDS FA Decl. ¶¶ 7–10, 13–16, 23–26, 28, 32, 35–41; Weisbrot FA Decl. ¶ 14–16. Class Counsel will also continue to invest time into this case to bring it to a close. *Dukes*, 2020 U.S. Dist. LEXIS 16097, at *19 (quoting *Cabot E. Broward 2 LLC v. Cabot*, No. 16-cv-61218, 2018 U.S. Dist. LEXIS 192706, at *7 (S.D. Fla. Nov. 9, 2018)) ("Several courts have noted that 'such an additional undertaking as an important factor in determining an award of attorneys' fees.'"). The time and labor expended by Class Counsel here weighs in favor of granting the 20% award.

Similarly, the fifteenth *Camden I* factor inquires about the time required to reach a settlement. 946 F.2d at 775. Here, Class Counsel simultaneously litigated and engaged in settlement discussions. *E.g.*, KDS FA Decl. ¶¶ 26, 35–41, 54. The parties began settlement discussions in late 2022. *Id.* ¶ 48. After many settlement mediations and direct negotiations, the parties alerted the Court to a settlement in principle on September 18, 2023, and then negotiated and drafted the Settlement, and its exhibits, which was executed on November 15, 2023. *Id.* ¶¶ 48–61. That counsel spent over eight months negotiating the settlement with the assistance of an experienced mediator

"reflect[s] the care and deliberation with which plaintiff's counsel approached the entire settlement process." *Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992); *see also Flores v. Acorn Stairlifts*, No. 6:19-cv-844, 2020 U.S. Dist. LEXIS 253965, at *11 (M.D. Fla. June 22, 2020) (finding that a five-month negotiation overseen by a mediator weighed in favor of granting a 33% award). The time required to reach a settlement weighs in favor of granting the requested award.

Additionally, courts within this circuit may, *but are not required to*, refer to the lodestar figure "to ensure that the fee produced by the [common-fund] method is in the ballpark of an appropriate fee." *In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019); *see Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). But the Court must be "mindful of the fact that this cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (2001); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (cleaned up) ("[O]ne purpose of the percentage method of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—is to encourage early settlements by not penalizing efficient counsel."). And to account for the contingent risks inherent in large and complicated class actions, lodestar multiples are applied and range from 2.26 to 4.5 with three appearing as the average. *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880, 2016 U.S. Dist. LEXIS 144133, at *21 (S.D. Fla. Oct. 14, 2016) (citing *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla.

19

2007)); *Martin v. Glob. Mktg. Research Servs.*, No. 6:14-cv-1290, 2016 U.S. Dist. LEXIS 164770, at *5 (M.D. Fla. Nov. 30, 2016) ("A multiplier of 2-3 times lodestar to compensate for contingency risk is typical in common fund cases.").

To the end of April 2024, Class Counsel spent 3,526.40 hours totaling $3,418,859.00 in fees, which represents a blended rate of about $970 per hour. KDS FA Decl. ¶ 107.[10] Class Counsels' rates are consistent with hourly rates approved in complex class action litigation involving nationwide claims, and the blended rate is not unreasonable. *See Henderson v. Emory Univ.*, No. 16-2920, 2020 U.S. Dist. LEXIS 218676, at *6 (N.D. Ga. Nov. 4, 2020) ("[The] Court approves the following hourly rates ... : for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15-24 years of experience, $900 per hour; for attorneys with 5-14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour."); *Womack v. Dolgencorp, Inc.*, No. 2:06-cv-465, 2012 U.S. Dist. LEXIS 202303, at *26-27 (N.D. Ala. Oct. 24, 2012)

---

[10] Because of the importance, magnitude, and fast-paced schedule of this case, two senior partners, Mr. Chimicles and Ms. Donaldson-Smith, necessarily committed significant time to this case once filed. *See, e.g.*, KDS FA Decl. ¶¶ 20, 24, 40–41, 54, 60. It is because of their experience, ability to synthesize and utilize the discovery and data produced, and skill in negotiating a potential settlement that Class Counsel achieved the excellent result here. *See Lewis v. Delta Air Lines, Inc.*, No. 18-16911, 2021 U.S. App. LEXIS 2364, at *4–5 (9th Cir. Jan. 27, 2021) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008)) ("The court may not set the fee based on speculation about how the case should have been staffed, but must limit its inquiry to whether the fees requested by this legal team are justified."); *ACLU of Fla., Inc. v. Dixie Cty., Fla.*, No. 1:07-cv-00018, 2012 U.S. Dist. LEXIS 22486, at *6-7 (N.D. Fla. Feb. 6, 2012) (quoting *Moreno*, 534 F.3d at 1114–15) (noting the court should "not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests"); *see also Gevaerts*, 2015 U.S. Dist. LEXIS 150354, at *34 ("In the private marketplace, counsel of exceptional skill commands a significant premium. So too should it here.").

(noting that blended hourly rates, in 2012, were approved at over $940 and "[w]hat would otherwise be a large hourly rate is counsels' reward for taking on the risk and expense of class action contingency fee litigation"); *see also* KDS FA Decl. ¶ 109 (listing cases in which CSKD's attorney rates were submitted in other fee applications in complex litigations).

The 20% fee request, thus, represents a 2.63 multiple, which is within the range of reasonableness. *See, e.g.*, *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *21 (holding a 3.58 multiple was not excessive); *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598, 2021 U.S. Dist. LEXIS 58354, at *11 (M.D. Fla. Mar. 25, 2021) (approving rates up to $850 per hour and a multiple above 3.77); *Wave Lengths*, 2019 U.S. Dist. LEXIS 239523, at *51 (awarding 30% of the fund and noting "the requested fee results in a multiplier just under 3, which the Court finds is appropriate and well within the average multiplier"). The lodestar cross-check also weighs in favor of granting the requested award.

Thus, the time and labor that Class Counsel invested here on a contingent basis weighs in favor of granting the requested fee award of 20% of the common fund.

### 5. Class Counsel pursued this case on a contingent basis.

Class Counsel pursued this case on a contingent basis with no guarantee of payment for their services, which they provided to the exclusion of other work, or recuperating the over $114,000 in out-of-pocket expenses incurred in prosecuting this case. KDS FA Decl. ¶¶ 102–103. The risks inherent in the contingency arrangement weigh in favor of granting the 20% award here.

Typically, a contingency fee arrangement justifies an *upward departure* from the 25% benchmark because counsel assumes significant risk by investing much with the serious chance of recovering nothing and because it encourages adequate representation to persons whose claims are individually small. *See In re Sunbeam*, 176 F. Supp. 2d at 1335; *In re Checking Account*, 830 F. Supp. 2d at 1364 ("A contingency fee arrangement often justifies an increase in the award of attorney's fees."). Indeed, "courts consistently award one-third of a settlement fund in attorneys' fees when Class Counsel litigates on a purely contingency-fee basis and obtains a common-fund settlement." *Rosado v. Barry Univ.*, No. 20-cv-21813, 2021 U.S. Dist. LEXIS 169196, at *23 (S.D. Fla. Sep. 7, 2021) (collecting cases). This is particularly true where "the time devoted to the class action precludes other employment." *Morgan*, 301 F. Supp. 3d at 1253.

Despite the serious risks presented by this case, including, for example, Walmart's arguments that: (i) most of the Class's claims were barred by a prior settlement and the Court's July Motion to Dismiss Order, (ii) a litigation class is not certifiable, (iii) Plaintiff could not overcome hurdles of proof of misrepresentations on the Shelf Tags in over 4,000 Walmart Stores, and (iv) it complied with all applicable laws, Class Counsel took this case on a purely contingent basis and is requesting 20% of the fund—5% *below* the benchmark amount. *See* KDS FA Decl. ¶¶ 23, 27, 29. In addition, because of the expedited schedule in this case, Class Counsel devoted over 3,500 hours to its prosecution on an intensive basis and to the exclusion of working on

other potential cases. *Id.* ¶ 107. Therefore, this factor weighs heavily in favor of awarding the requested amount.

### 6. The 20% request here is significantly lower than the customary fee arrangement of 33–40%.

The 20% requested fee award is reasonable when considering what the customary fee would be for similar services in the market, which typically exceeds 33%.

"Class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Morgan*, 301 F. Supp. 3d at 1255 (cleaned up; quoting *Wolff*, 2012 U.S. Dist. LEXIS 153786, at *12). "A fee of 33% is at the market rate of what the Class could have negotiated with counsel in this as a traditional contingency fee arrangement at the outset of the case." *Id.* (collecting cases). Courts, including within this circuit, have recognized that the customary fee is often as high as 40%. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. MDL Docket No. 2800, 2020 U.S. Dist. LEXIS 7841, at *246 (N.D. Ga. Jan. 13, 2020) (noting the "lawyers who handle complex civil litigation on a contingent fee basis . . . customarily range from 33.3% to 40% of the recovery"); *Kirchoff v. Flynn,* 786 F.2d 320, 323 (7th Cir. 1986) (noting "40 percent is the customary fee in tort litigation"); *In re Pearlman*, 6:07-BK-00761, 2014 Bankr. LEXIS 1084, at *11 (Bankr. M.D. Fla. Mar. 20, 2014) ("[T]he Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates."); *In*

*re Checking Account,* 830 F. Supp. 2d at 1366 n.35 (noting that contingency fees of up to 40% are customary in the private marketplace).

The 20% fee request here is well below, perhaps even half, of the customary fee arrangement and, therefore, comports with attorneys' fees earned in the private marketplace. This factor weighs heavily in favor of granting the requested award.

### 7.    No substantial objections to the settlement or the fee request have been filed.

The Notice, Summary Notice, Email Notice—which was sent directly to over 81 million email addresses likely Settlement Class Members—and People Magazine notice informed Settlement Class Members that Class Counsel would request "fees up to, but not to exceed, 20% of the Class Settlement Amount" plus reimbursement of costs and expenses and applicable interest. SA Ex. 1A at 11; SA Ex. 1C; Weisbrot FA Decl. Exs. A & D. This Motion will be promptly published on the Settlement Website, and the objection deadline is on May 22, 2024.

Notwithstanding the robust Notice Plan and great media attention,[11] to date, there has been one objection as to the Settlement received by Class Counsel and addressed to the Court, which is addressed in the Final Approval Motion, but no objections as to the fee request. *See, e.g.*, *Morgan*, 301 F. Supp. 3d at 1257 (noting that only one objection to the fee request weighed in favor of granting a 33% award); *Pinto*, 513 F. Supp 2d at 1354 (citing *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)) (noting this factor weighs in favor of granting award even where a

---

[11] *See, e.g.*, KDS Decl. ¶ 89; Weisbrot Decl. ¶ 21.

percentage, such as 10%, of the class objects to the settlement or fee request). This factor, therefore, weighs in favor of granting the requested fee award.

> **8.    The claims at issue and the Settlement presented complex legal and factual issues driven by voluminous data.**

The second *Camden I* factor inquires whether the case presented any novel, complex, or difficult issues. 946 F. 2d at 772 n.3. Here, this case presented complex legal issues arising under the laws of 29 jurisdictions, involved a nationwide class including tens of millions of class members, and was driven by complex POS systems and an awesome amount of data.

Large, complicated class actions inherently raise complex and complicated issues, and this case was no exception. Complex and difficult legal issues here arose under 38 consumer protection statutes from 28 states plus the District of Columbia and allegations of FDUTPA violations on behalf of a nationwide class. *See* Am. Compl. Count III.A–E (claims under the laws of Florida, Connecticut, New Jersey, New York, and 34 other state consumer protection statutes); *Stoll*, 2022 U.S. Dist. LEXIS 133514, at *7 ("[C]lass actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome."); *Francisco v. Numismatic Guar. Corp.*, No. 06-cv-61677, 2008 U.S. Dist. LEXIS 125370, at *35 (S.D. Fla. Jan. 30, 2008) (noting the "applicability of the FDUTPA to a national class" was a difficult issue that weighed in favor of granting fee request). Moreover, Class Counsel faced difficult issues with respect to Walmart's arguments that a prior settlement barred all claims at issue here prior to August 26, 2020 and that Walmart's alleged

misrepresentations were not uniform on Shelf Tags in over 4,000 Walmart Stores nationwide. *See Fruitstone v. Spartan Race, Inc.*, 2021 U.S. Dist. LEXIS 95860, at *33–34 (S.D. Fla. May 20, 2021) (noting that difficult issues related to defendant's "defenses regarding differences in representations . . . . the different state laws at issue, and its various affirmative defenses" weighed in favor of a granting fee request). This large, nationwide class action involved difficult and complex questions of law and fact.

Most notably, however, the legal claims and factual issues were driven by massive and complex data acquisition and analysis. Pursuant to Class Counsel's detailed, targeted requests and numerous meet and confers, including one in-person meet and confer, Walmart produced over 100 gigabytes of data related to Plaintiff's allegations concerning Weighted Goods and Bagged Citrus, which Class Counsel and their expert analyzed. KDS FA Decl. ¶¶ 42–47; *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 U.S. Dist. LEXIS 200716, at *38 (N.D. Ga. May 19, 2014) (noting the case required "acquisition and analysis of large amounts of bank data—and the efforts of a highly skilled expert."); *Cty. of Monmouth v. Fla. Cancer Specialists*, No. 2:18-cv-201, 2020 U.S. Dist. LEXIS 259394, at *39 (M.D. Fla. Feb. 21, 2020), *report and recommendation adopted* ECF No. 125 (finding complexity and novelty weighed in favor of awarding 30% fee when counsel "was responsible for analyzing pricing and collection data for purposes of complex data analysis"). Class Counsel's ability to acquire, understand, and analyze this voluminous data was critical to litigating and, ultimately, settling this case. The complexity and novelty here weighs in favor of granting the fee request.

26

**9.    This Settlement is unique because of the direct Email Notice insisted upon and negotiated by Class Counsel.**

*Camden I* advises that the court may evaluate any additional factors unique to the particular case. 946 F.2d at 775. Class Counsel here negotiated and insisted upon direct Email Notice to likely Settlement Class Members that Walmart could identify in its records. To Class Counsel's knowledge, this is a first in a major Walmart consumer class action, and it required a time-consuming process undertaken by Walmart due to the volume of data being queried. Generally, beyond Walmart, direct notice is unique in retail-consumer cases. *See, e.g.*, *Ferron*, 2021 U.S. Dist. LEXIS 129955, at *16–19 (court approved a notice plan that only included a settlement website and a digital media campaign but not direct mail or email notice in a case regarding retail sales of ground coffee); *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (affirming approval in a case concerning retail sales of batteries where "class notice was provided by publication through national periodicals and popular internet outlets"). Throughout negotiations, Class Counsel insisted upon the direct Email Notice to deliver the best practicable notice, and therefore relief, to the greatest number of Settlement Class Members. The inclusion of the unique direct Email Notice provision weighs in favor of approval.

Thus, the applicable *Camden I* factors weigh in favor of granting Class Counsel's presumptively reasonable request of 20% of the common fund here. And, respectfully, the Court should grant the request.

27

## III.   CLASS COUNSEL'S REQUESTED EXPENSES ARE REASONABLE AND WERE REASONABLY NECESSARY TO ACHIEVE THE SETTLEMENT

The Court may also award reasonable litigation expenses. Fed. R. Civ. P. 23(h). In the Eleventh Circuit, Class Counsel is "entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). "Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-cv-00550, 2020 U.S. Dist. LEXIS 89175, at *17 (M.D. Fla. Apr. 23, 2020).

Here, as documented in Class Counsel's books and records, litigation expenses reasonably incurred in this case total $114,870.41. KDS FA Decl. ¶ 103. The notice informed Settlement class Members that Class Counsel would seek reimbursement of expenses not to exceed $200,000. *See* SA Ex. 1A at 11; SA Ex. 1C; Weisbrot FA Decl. Exs. A & D. These expenses, which were incurred and necessary for the investigation, prosecution, mediation, and settlement of this case, included expert fees, mediation fees, travel expenses for the in-person mediation, legal research costs, court filings, photocopying costs, clerical overtime, costs incurred in gathering evidence at Walmart stores, and postage. KDS FA Decl. ¶¶ 103–106.

Of the total expenses incurred, the largest were for Plaintiff's expert. Class Counsel incurred $78,145.00 in costs for the extensive and necessary work performed by their data and class expert, who, among other things, assisted Class Counsel in understanding and analyzing the voluminous data Walmart produced in this case and

conducting estimated damages analysis. *See* KDS FA Decl. ¶¶ 14–16, 41, 44–47, 50–51, 67, 101, 105–106.

The second largest expense incurred, $20,640.70, was for the mediation services of Mr. Robert Meyer, who is a nationally renowned JAMS mediator. *Id.* ¶¶ 49, 52-57, 102–103, 105–106.

The remaining $16,084.71 in incurred costs included, as detailed in the KDS FA Decl., travel and lodging expenses for settlement meetings and mediations, LEXIS and PACER online legal research charges, photocopying expenses, filing and service fees, clerical overtime costs, postage expenses, and reimbursements to Class Counsel's agents for evidence relevant to this action purchased at Walmart stores. *Id.* ¶ 103–106.

Courts routinely allow reimbursement of similar expenses. *See, e.g.*, *Gevaerts*, 2015 U.S. Dist. LEXIS 150354, at *40 (approving over $300,000 in costs from a $20 million fund for "among others, fees for experts, photocopies, travel, online research, translation services, and mediator fees"); *In re Health Ins. Innovations Sec. Litig.*, 2021 U.S. Dist. LEXIS 61051, at *40–41 (approving reimbursement for over $245,000 where the "bulk of the expenses incurred were for professional services rendered by experts, consultants, and mediators"); *Denning v. Mankin Law Grp., P.A.*, No. 8:21-cv-2822, 2023 U.S. Dist. LEXIS 50371, at *21 (M.D. Fla. Feb. 15, 2023) (collecting cases; noting that filing fees, travel and dining expenses, and mediation fees are routinely charged and reimbursed); *see also Hanley*, 2020 U.S. Dist. LEXIS 89175, at *18 (noting

that expenses at or below 2% of the common fund are typical);[12] *Wave Lengths,* 2019 U.S. Dist. LEXIS 239523, at *52 (approving $1 million in expenses from a $90 million fund); *Grasso v. Electrolux Home Prods.*, No. 8:16-cv-00911, 2018 U.S. Dist. LEXIS 244425, at *7 (M.D. Fla. Apr. 23, 2018) (approving $400,000 in expenses).

Class Counsel respectfully requests the Court grant the request for reimbursement of $114,870.41 in expenses plus applicable interest.

## IV.  CONCLUSION

Class Counsel respectfully requests that the Court enter an Order Granting Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses and, thereby, awarding Class Counsel (i) fees of 20% of the Class Settlement Amount, which is $9 million, and (ii) reimbursement of their litigation expenses in the amount of $114,870.41, plus the proportionate amount of interest that has accrued on the awarded amounts from the inception of the Class Settlement Fund through the date of payment from the Class Settlement Fund.

Dated: May 8, 2024                    Respectfully submitted,

                                      */s/ Kimberly M. Donaldson-Smith*
                                      Kimberly M. Donaldson-Smith
                                      Kimdonaldsonsmith@chimicles.com
                                      Nicholas E. Chimicles
                                      Nick@chimicles.com
                                      Zachary P. Beatty
                                      zpb@chimicles.com
                                      **Chimicles Schwartz Kriner &**
                                      **Donaldson-Smith LLP**
                                      361 W. Lancaster Avenue

---

[12] Here, the $114,870 in expenses represents about 0.25% of the Settlement Amount.

Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Attorneys for Plaintiff and the Settlement Class*

31

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

This certifies that Plaintiff's counsel conferred with Walmart's counsel regarding this Motion, and Walmart's counsel takes no position with respect to the relief requested herein.

<u>*/s/ Kimberly M. Donaldson-Smith*</u>
Kimberly M. Donaldson-Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2024, the foregoing document was served on

Defendant's counsel by the Court's electronic filing system.

<u>*/s/ Kimberly M. Donaldson-Smith*</u>
Kimberly M. Donaldson-Smith