# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., <br><br> Defendant. | Case No. 8:22-cv-02402-VMC-TGW |

# SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF
# FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
# AND FEE AND EXPENSE AWARD

Kimberly M. Donaldson-Smith
Nicholas E. Chimicles
Zachary P. Beatty
**Chimicles Schwartz Kriner & Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Counsel for Plaintiff and the Settlement Class*

I. **INTRODUCTION**

Pursuant to paragraphs 15 and 34 of the Preliminary Approval Order ("PAO") (ECF No. 75), Plaintiff and Class Counsel (as applicable) hereby submit this brief in further support of the Motions for Final Approval of the Class Action Settlement ("FA Motion", ECF No. 100) and for an Award of Attorneys' Fees, Costs and Expenses ("Fee Motion", ECF No. 101),[1] specifically to: provide an update on the Notice Plan, claims filed, and exclusion requests; and respond to the six objectors (only five of whom filed their objections with the Court) and two notice of intent to appear.[2]

As discussed herein, the Notice Plan has been completed and the opt-out and objection deadlines have passed. In the wake of disseminating over 150 million Settlement-related emails, consisting of over 81 million Email Notices and 75 million Reminder Email Notices, completing an extensive digital media campaign about the Settlement, and receiving wide-spread media coverage on the Settlement, the response from Settlement Class Members has been resoundingly positive. As of June 3, 2024, 3.9 million claims have been submitted (which remain subject to validation), only five objections were filed with the Court, and only 152 Class Members opted out of the Settlement Class. In addition, Class Counsel received two notice of intent to appear, indicating an intent to speak about the Settlement at the June 12, 2024 Final Approval Hearing. Such reaction and participation from the Settlement Class weigh heavily in

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the FA Motion, Fee Motion, and Settlement Agreement ("SA ¶ _").
[2] Pursuant to the Court's May 31, 2024 Order (ECF No. 121) Class Counsel will separately file the response in opposition to Joan Johnson's motion to join the Action (ECF No. 118).

1

favor of granting final approval of the Settlement pursuant to Fed. R. Civ. P. 23 and *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). *See also* FA Mot. § IV.

Class Counsel respectfully request entry of the Judgment,[3] which, *inter alia,* grants final certification of the Settlement Class, overrules the objections, directs the Parties to implement the Settlement according to the terms of the Settlement Agreement, and grants Final Approval of the Settlement. *See* Judgment ¶¶ 3–11.

## II. UPDATE ON THE NOTICE PLAN AND CLAIM SUBMISSIONS

Subsequent to Class Counsel's filing of the FA Motion, the Claims Administrator concluded the last step of the Notice Plan, which was dissemination of over 75 million Reminder Emails. Weisbrot Supplemental Decl. ¶¶ 6 ("Weisbrot Suppl. Decl."), filed herewith; and, Weisbrot FA Decl., ECF No. 100-2 ¶ 18. Accordingly, the Notice Plan has been completed in accordance with its terms as approved by the PAO. *Id.* at ¶¶ 5-16, 28-30; Weisbrot FA Decl., at ¶¶ 15–16, 23–25.

The deadline for Settlement Class Members to submit a Claim Form is today, June 5, 2024. The Claims Administrator reports that, as of June 3, 2024, the Claims Administrator has received approximately 3.9 million claims. Weisbrot Suppl. Decl. ¶ 18. This is the gross number of claims submitted, which are subject to review, fraud detection measures, and validation by the Claims Administrator. *See id.* ¶ 19; Weisbrot FA Decl., ECF No. 100-2 ¶ 37.

---

[3] The Judgment is filed again herewith with the list of the exclusion requests appended. The form of Judgment was Exhibit 2 to the Settlement Agreement, filed at ECF No. 71-2 at Page ID 735.

## III. THE NUMBER OF OPT-OUTS WAS MINIMAL

The Claims Administrator received 152 timely[4] Opt-Out Requests (counted as individual opt-outs, even for individuals who reside in the same household), which represent about 1/10,000th of 1% of the email addresses that were sent an Email Notice. Weisbrot Suppl. Decl. ¶ 22, and Ex. D, thereto. The low opt-out rate weighs in favor of granting final approval of the Settlement. *Grant v. Ocwen Loan Serv., LLC*, No. 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *22 (M.D. Fla. Jan. 29, 2019) (finding that the low opt-out rate of 0.1% weighed in favor of approval).

The list of persons who have opted-out of the Settlement is filed as an Exhibit to the Weisbrot Suppl. Decl. as Exhibit D. It is also included with the form of the Judgment, filed herewith. Upon entry of the Judgment and the Settlement becoming Final, the listed individuals will be excluded from the Settlement Class.[5]

## IV. RESPONSE TO THE OBJECTIONS

The Notice Plan was implemented, the CAFA notice informing governmental authorities about the proposed Settlement was disseminated in accordance with 28

---

[4] Exhibit E to the KDS Suppl FA Decl. is a letter received just by Walmart, after the May 22 deadline, referencing an opt-out, however, the Claims Administrator has no record of an opt-out from a Francis Coker; therefore, it is an untimely, non-compliant opt-out. *See* Weisbrot Suppl. Decl. ¶24; PAO ¶ 25.

[5] Class Counsel received communications from Julia Kapinos ("Kapinos") regarding, among other things, exclusion requests. *See* Exhibit D to the Supplemental Declaration of Kimberly Donaldson-Smith in support of FA Motion and Fee Motion ("KDS Suppl. FA Decl."), filed herewith. The communications contain highly impertinent and unfounded statements about Counsel and the Claims Administrator. As to the exclusion-related inquiries, Kapinos acknowledges that Class Counsel confirmed to her that she was excluded from the Settlement Class. *See id.* at pg. 1, 3. The Kapinos are on the Exclusion list at Nos. 133, 148, and 152. Weisbrot Suppl. Decl. ¶ 23, Ex. D. Also, as to Kapinos' claim about the signature on her certified letter to the Claims Administrator (*id.* at pg. 1), *see* Weisbrot Suppl. Decl. at fn. 5.

3

U.S.C. § 1715(b), and the opt-out and objection deadline of May 22, 2024, has passed. As an initial matter, the miniscule number of objections, none of which are from a regulator or attorney general, support final approval of the Settlement. *Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (Covington, J.) (noting that where objections from settlement class members equated to less than 1/10th of a percentage of the class, and no attorney general or regulator submitted an objection, "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness") (quotation omitted); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007) (finding that a "miniscule figure" of "100 out of 10.3 million, or 0.001%," of class members filed objections weighed in favor of approval).[6]

The fifth *Bennett* factor requires evaluation of the opposition to the Settlement. *Bennett,* 737 F.2d at 986; *Demler v. Inch*, 2020 U.S. Dist. LEXIS 247694, at *3 (N.D. Fla. Dec. 10, 2020) ("Each objection has been read and considered. For purposes of this order, efficiency, and judicial economy, objections are addressed by category with samples identified."). Five objections were filed with the Court:[7]

> (1) Shena McHenry ("McHenry," ECF No. 106), filed on May 6, 2024, objecting because the Settlement does not include purchases made online on

---

[6] *See also, In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (affirming district court's conclusion that reaction of class was favorable when 300 out of 8 million class members objected and 19,000 opted out).

[7] Dana Albrecht ("Albrecht") filed two motions (ECF Nos. 99 and 109), neither of which stated an objection to the Settlement, and to which Plaintiff responded promptly, *see* ECF Nos. 103 and 105. On May 16, 2024, Magistrate Judge Wilson entered an order striking Albrecht's Motion to Compel. ECF No. 109. And, on May 23, 2024, the Court granted Albrecht's request to be added to the CM/ECF for the Action, but otherwise denied his request to extend the May 22, 2024 deadline and to intervene. ECF No. 115. No objection was filed by Albrecht.

4

Walmart.com.[8]

(2) Lerandle Pace ("Pace," ECF No. 110), filed on May 16, 2024, objecting because the Settlement does not provide "full financial reimbursement" due to the "2% clause limit" and "$500 cap limit" and identifying his concerns with his claim submission experience and communications with the Claims Administrator.[9]

(3) Wayne Anderson ("Anderson," ECF No. 119), filed on May 31, 2024, objecting because the Settlement does not require Walmart to change its business practices, the compensation to Settlement Class Members is too low, and the attorneys' fees sought are too high.

(4) Joan Johnson ("Johnson," ECF No. 112), filed on May 31, 2024, objecting because of her inability to access receipts, the settlement amount is too low, and attorneys' fees sought are too high.

(5) Angela Taylor Sweet ("Sweet", ECF No. 123), filed on June 5, 2024, generally objecting to the Settlement amount and fee award sought, and that the Settlement does not include an admission of wrongdoing by Walmart.

In addition, Counsel received an email from Queen Akhenaten II Montgomery Bey ("Bey"), on or before May 22, 2024, referencing an objection, but it does not appear to have been sent to the Court. Exhibit A to KDS Suppl. FA Decl.

> (6) Bey asserts that the Settlement does not provide her with full reimbursement, appears to assert some other claims against Walmart (*id.,* Ex. A, at 1-2, 6), and appears to object because she was not given the Settlement amount at a local Walmart store. *Id.* at 2, 4-5.[10]

---

[8] The FA Motion at pg. 21, and fn. 23, addressed the McHenry objection, explaining that: the Settlement covers in-store purchases and does not include or otherwise affect, nor release, online purchases of Weighted Goods and Bagged Citrus (*see* SA ¶ 2.37, 2.44, 2.46, 12); and online purchases were excluded because, among other things, the misconduct alleged occurred inside Walmart stores, including that persons were exposed to and relied on the in-store pricing (including at the register), and because the online terms and conditions include an arbitration agreement and class action waiver. *See* KDS FA Decl. ¶ 98.

[9] As confirmed by the objection, Pace successfully submitted a claim via the Settlement Website (ECF No. 110, at 11, 20), but objects to the Settlement based on his experience submitting the claim, as well as communicating with the Claims Administrator and Walmart. *Id.* at 4, 24-25. Upon receipt of the Pace objection, Class Counsel asked the Claims Administrator to investigate, and their response is provided in the Weisbrot Suppl. Decl. ¶ 26.

[10] The Claims Administrator sent Bey instructions on how to file a claim, how to object, and how to

All objections should be overruled on the following grounds.[11]

### A.   Objections That The Settlement is Not Enough or There Should Be A Better Result Should be Overruled

The objectors assert that Walmart should be required to: pay more and make them whole (*e.g.* Pace, Anderson,[12] Johnson, Sweet, and Bey); change its business practices (Anderson); and, admit wrongdoing (Sweet), but they do not identify any legal, equitable, factual, or procedural deficiencies in the Settlement.

Courts routinely overrule "it's just not enough" objections because compromise is the essence of a settlement and opting out is an option. Objections that the Settlement should have secured more money or a better result are not proper. *Braynen v. Nationstar Mortg.*, *LLC*, 2015 U.S. Dist. LEXIS 151744, at *37 (S.D. Fla. Nov. 9, 2015) ("A generic desire to receive 'more' money or a 'better' result is not a proper objection."); *In re Winn-Dixie Stores, Inc. ERISA Litig.*, 2008 WL 815724, at *5 (M.D. Fla. Mar. 20, 2008) (Covington, J.) (finding no basis for rejecting settlement where objector stated, "I object to the settlement, not enough money").[13]

---

opt-out. Weisbrot Suppl. Decl. ¶ 21.

[11] The Court identified that the McHenry objection (ECF No. 107) did not comply with the PAO ¶ 27 because it did not provide documentation of membership in the Settlement Class, which is also absent from the Johnson, Sweet and Bey objections. The Bey objection was not filed with the Court. *See* PAO ¶¶ 26, 28, 29, 31. In any event, the substance of each objection is addressed herein and should be overruled on the bases set forth herein.

[12] Yet, Anderson appears to also suggest that any Settlement, even of a higher amount, would be objectionable as "the costs of the settlement will ultimately be borne by Walmart's customers, including the class members" (ECF No. 119), which is speculative but also can be argued about most consumer class action settlements.

[13] *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1260 (S.D. Fla. 2016) (cleaned up) (collecting cases that "denied various objectors' objections because it appears that most of the objectors … desired to have a better deal"); *Spinelli v. Capital One Bank*, 2010 WL 11475255, at *5 (M.D. Fla. Nov. 23, 2010) (Covington, J.) (objection that "the amount that the class members will receive [was] inadequate" did not "constitute a basis for denying the motion to approve class settlement"); *see also In re Warfarin*

Likewise, without merit and misplaced is the objection that the Settlement does not, but must, include injunctive relief. The Settlement Class Members are free to bring, and have not released, claims against Walmart if continuation of the alleged misconduct occurs after the last day of the Settlement Class Period, i.e. January 19, 2024.[14] The threat of future litigation by the millions of Settlement Class Members should deter against future misconduct. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337-38 (N.D. Ga. 1993) (overruling objection that settlement should not be approved because of a "lack of injunctive relief" and holding: "The absence of injunctive relief … does not render the settlement unfair.").[15]

As demonstrated in the FA Motion, the $45 million Settlement provides an immensely reasonable, immediate, monetary recovery for the Settlement Class, that secures between 11% and 14% of Plaintiff's expert-calculated estimate of nationwide class damages of between $331 million and $421 million.[16] FA Motion 14–17;[17] KDS

---

*Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [a defendant] could afford to pay more does not mean that it is obligated to pay more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached.").

[14] Settlement Class Member Released Claims pertain only to having "paid more than the lowest price advertised in the Walmart Store for Bagged Citrus and/or Weighted Goods ***during the Settlement Class Period***." Judgment ¶ 11; SA ¶¶ 2.45, 2.56, & 12 (emphasis added).

[15] *See Vasco v. Power Home Remodeling Grp. LLC*, 2016 U.S. Dist. LEXIS 141044, at *29 (E.D. Pa. Oct. 12, 2016) (cleaned up) ("The Class Members retain the right to sue for future violations. We find the best assurance against future violations is the persistent threat of litigation by any class member."); *Rodriguez v. W. Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74849, at *63 (C.D. Cal. Aug. 10, 2007) (citation omitted) ("Courts are reluctant to sustain such objections, finding that the best assurance against future antitrust violations by defendants is the persistent threat of litigation by any class member."); *Pigford v. Glickman*, 185 F.R.D. 82, 110-11 (D.D.C. 1999) (approving class settlement and rejecting class member objection that "the absence of any such prospective injunctive relief renders the settlement as a whole unfair"), *aff'd*, 206 F.3d 1212, 340 U.S. App. D.C. 420 (D.C. Cir. 2000).

[16] The $331 million assumes that the settlement in *Kukorinis I* barred certain of the Settlement Class' claims, and the $421 million estimate assumes none were barred. KDS FA Decl. ¶ 47.

[17] Walmart disputes the calculations and conclusions made by Plaintiff's expert as to the maximum potential nationwide recovery.

FA Decl. ¶¶ 42, 44, 73–77. Assuming Plaintiff would have been completely successful through trial and appeals, the Settlement Amount is well within the range of reasonableness. *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186, 2021 U.S. Dist. LEXIS 61051, at *24 (M.D. Fla. Mar. 23, 2021) (approving a settlement fund of 10% of the estimated total possible recovery); *see also* FA Motion at 15–17.[18]

The objectors, in contrast, raise hypothetical and unfounded challenges to the Settlement amount that, therefore, must be overruled. *Ponzio v. Pinon*, 87 F.4th 487, 504 (11th Cir. 2023) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("The [district] court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.").

### B.  *Objections Based on a Misunderstanding of the Settlement Must Be Overruled*

The objections reflect a misunderstanding of key aspects of the Settlement, including estimated damages, the import of the receipt and non-receipt options, and the plan of allocation. *Morgan*, 301 F. Supp. at 1260 (cleaned up) (collecting cases that "denied various objectors' objections because it appears that most of the objectors have simply misread and/or misunderstood the Settlement documents").

*First*, the Pace, Johnson, and Bey objections appear grounded on an unfounded

---

[18] *See also Gevaerts v. TD Bank*, No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *19 (S.D. Fla. Nov. 5, 2015) (same); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

belief about the magnitude of the overcharge and the scope of the affected products. For example, the Pace objection points to a receipt showing "$668.50 worth" of "qualifying goods" and "$364.44 In, Eligible Reimbursement Goods;" however, the receipts and charges include items that are not Weighted Goods or Bagged Citrus such as mouthwash, parchment, Ajax, blender, etc. (ECF No. 110 at pgs. 6-7/25).[19] The Johnson objection claims "$22-42 Billion Dollars" or "$250-500 Billion minimal" in damages for all SNAP/EBT purchases in the 50 states. *See* ECF. No. 112 at 2; *id.* at 5 (reflecting a calculation based on SNAP/EBT[20] dollars issued and references all of her grocery purchases at Walmart totaled $20,000). Bey asserts she is "not" "subject to a dollar amount" when shopping. KDS Suppl. FA Decl., Ex. A at 2.[21]

In contrast to the objectors' contentions about damages and overcharges, the data analysis and discovery identified that during the Settlement Class Period: (a) there was not an overcharge on every Weighted Good and Bagged Citrus purchased; and (b) the estimated range of average damage was $1.22 to $1.78 for each Weighted Good

---

[19] On the Settlement Website, FAQ No. 2 ("What is this Litigation About") provided the definitions and examples of Weighted Goods and Bagged Citrus and a searchable list of product descriptions and UPC Codes for the Weighted Goods and Bagged Citrus.

[20] *See* https://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program Supplemental Nutrition Assistance Program (SNAP) "provides food benefits to low-income families to supplement their grocery budget so they can afford the nutritious food essential to health and well-being," and https://www.fns.usda.gov/snap/ebt, "Electronic Benefits Transfer (EBT) is an electronic system that allows a [SNAP] participant to pay for food using SNAP benefits…EBT is in use in all 50 states..."

[21] Objections that seemingly focus on individualized requests for compensation (like those asserted by McHenry, Johnson and Bey regarding Walmart.com online purchases, recouping all EBT/SNAP payments, and under the Texas Regulatory Consistency Act, respectively) ignore that a litigated class action outcome for the claims in this Action —even if favorable—would not have addressed such situations. *See, e.g., Pallas v. Pacific Bell*, 1999 WL 1209495, at *9 (N.D. Cal. Jul. 13, 1999) (overruling objectors challenging settlement on grounds that their individual award should have been greater due to their own unique circumstances). It would be improper to deny millions of Class Members excellent value for their claims to serve the agenda of a handful of objectors.

and Bagged Citrus *for which there was* an overcharge. *See* KDS FA Decl. ¶¶ 42, 44, 46, 76; FA Motion at 15–17. The analysis also showed an alleged 2% overcharge on the total amount of Weighted Goods and Bagged Citrus sold by Walmart and that the average purchase price of Weighted Goods and Bagged Citrus was $10.30. *Id.*

Thus, while there were millions of purchases of Weighted Goods and Bagged Citrus during the Settlement Class Period, there were not overcharges incurred on each purchase; nor, when there was an alleged overcharge, did the overcharge equate to the full purchase price of any product. *See also, e.g.*, Am. Compl., ECF No. 52 ¶¶ 45–61, 66. Accordingly, based on the foregoing figures, damages for the wrongdoing alleged in the Action that occurred during the Settlement Class Period were reasonably estimated to be in the range of $331 million and $421 million with respect to purchases of Weighted Goods and Bagged Citrus. KDS FA Decl. ¶ 47.

***Second***, relatedly, Pace's objection that the 2% and $500 limits applied to the claims, and the Pace (pg. 2), Johnson (pg. 2) and Bey objections that the potential unavailability of receipts, render the Settlement unfair and objectionable are misplaced. Respectfully, the objections reflect a deep misunderstanding of the claim options and the plan of allocation. As explained in the FA Motion at 10-11, 16-17, each Approved Claimant may be eligible to receive *without receipts* up to $10, $15, $20, or $25 (subject to proration) based on the number of Weighted Goods and Bagged Citrus purchased. Those amounts were based on Class Counsel's and Plaintiff's expert's analyses of the data, *discussed supra*. *See* KDS FA Decl. ¶¶ 67–71.

For example, a Settlement Class Member who estimates that she likely

10

purchased from Walmart an average of three Weighted Goods each month for 30 months during the Settlement Class Period, or a total of 90 Weighted Goods, is assumed to have <u>spent</u> approximately $927 (90 x $10.30 per product) and overcharged **2% or $18.50**. She may submit a Claim Form attesting to having purchased more than 75 and up to 100 Weighted Goods and be eligible for **$20.00** (subject to proration) without submitting receipts. *See id.* ¶ 71; SA ¶ 5.4(a)(iii). The 2% is the data-derived estimate of the percentage overcharged. *See supra.* It is not prejudicial or biased. *Cf.* Pace Obj., at 1. Rather, based on the data and analysis discussed *supra,* a payment of $20 would be in the range of a full recovery of estimated damages, ascribed to the claimants based solely on an attestation and no receipts or other documentation required.[22]

Alternatively, if a claimant believes that they purchased more or spent more, and has receipts documenting such purchases of Weighted Goods and Bagged Citrus, then they may elect to submit such receipts to be eligible to receive 2% of the total cost of the documented eligible purchases of Weighted Goods and Bagged Citrus, capped at a $500 *payment* (subject to proration).[23] *See* KDS FA Decl. ¶ 72; SA ¶ 5.4(a)(v).

---

[22] Thus, even with the current number of claims (which, as noted, are still subject to quantification and validation by the Claims Administrator), and even if there is a pro rata decrease, Approved Claimants will still receive a substantial recovery of estimated damages. KDS FA Decl. ¶ 68, 71.b–c.; *see, e.g., In re Health Ins. Innovations Sec. Litig.*, 2021 U.S. Dist. LEXIS 61051, at *24 (approving a settlement fund of 10% of the estimated total possible recovery); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *206 (N.D. Ga. Mar. 17, 2020) (N.D. Ga. Mar. 17, 2020), *aff'd in part and rev'd on other grounds*, 999 F.3d 1247 (overruling objections where initial notice informed class members that they may choose up to $125, but based on volume of claims, the actual, pro rata decreased amount was "substantially less"); *Id.* at 1277 (overruling objection because "there is no risk that any members of the class will have their ability to get settlement benefits reduced to zero…").

[23] A claimant need only submit documentation substantiating each Weighted Good and Bagged

Accordingly, contrary to what it appears the Pace objection asserts, the $500 is not a cap on the total charges for Weighted Goods and Bagged Citrus a Settlement Class Member can submit. It is a cap on the amount to be recovered from the Settlement.

Furthermore, contrary to the objectors' claims, $500 is not an unfair or prejudicial limit on a Settlement payment: it represents 2% of purchases over the Settlement Class Period that total $25,000 worth of Weighted Goods and Bagged Citrus (which is a substantial number of products purchased). It too, like the non-receipt options, also estimates a full recovery of damages and substantial payment but with no proof of actual overcharge, based on the estimated damages analyses conducted. Settlement Class Members who purchased Weighted Goods and Bagged Citrus in excess of that amount had the option to opt-out to pursue their own claims.

Irrespective of the availability of receipts to them either from their own records or through Walmart.com, the objectors' complaints ignore the fact that the transactions for in-store purchases of Weighted Goods and Bagged Citrus were captured in the data analyzed by Plaintiff's expert and factored into the calculation of damages and the formulation of the plan of allocation, discussed *supra.* Also, no objector has asserted over $1,250 worth of specifically Weighted Goods and Bagged Citrus purchases (which is all that is at issue), which is the amount of purchases covered by the $25 no receipt claim option ($1,250 x 2% = $25). The claim process,

---

Citrus purchased in-store and the amount paid for each—she need not have retained or submitted the product's packaging. SA ¶ 5.4(v). And as the Notice informed Settlement Class Members, they may be able to look up receipts on Walmart's website. SA Ex. 1A at 8, ECF No. 71-2.

and the structure of the non-receipt and receipt claim options, coupled with the plan of allocation, are reasonable, thoughtful, and aim to maximize the opportunity available to each Settlement Class Member to participate in the Settlement. The Pace, Johnson, and Bey objections are based on a misunderstanding of the Settlement and should be overruled.

### C.     *The Fee Request Objections are Generalized and Legally Unsupported*

Objectors Anderson, Sweet, and Johnson oppose the requested fee award,[24] but none explains or demonstrates why a fee award of 20% of the $45 million Class Settlement Amount (a non-reversionary, cash, common fund) is not warranted nor within the range of reasonableness in the Eleventh Circuit. *Cf.* Fee Motion at 11–13.[25] On that basis alone, the objections should be overruled. *Ponzio,* 87 F.4th at 499–500 (objectors to a proposed class action settlement must state their objections "with specificity" and provide detailed, non-conclusory grounds to "enable the parties to respond to them and the court to evaluate them").

In fact, the requested fee award is less than the benchmark fee award for common funds in this Court. *Cotter*, 2021 WL 3773414, at *12 ("Although '[t]here is

---

[24] As set forth in the Fee Motion, Class Counsel applied for a fee of 20% of the Class Settlement Amount plus reimbursement of $114,870.41 in costs and expenses incurred in connection with the action, plus any interest on such fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid). Fee Motion at 4-5, 28-30; SA ¶ 8.1 & Ex. 1A ¶ 16.

[25] After the FA and Fee Motions were filed the Eleventh Circuit issued *Drazen v. Pinto*, No. 21-10199, 2024 U.S. App. LEXIS 11590, at *9, 67-68, 80, 103, n.9 (11th Cir. May 13, 2024). The settlement in *Drazen,* unlike here: involved a reversionary coupon settlement (not a cash common fund settlement); required opt-outs to be submitted under penalty of perjury; did not give class members the opportunity to object to the fee request of $10.5 million before a $7 million fee was awarded; the fee awarded exceeded by multiples the just $2.3 million worth of settlement claims submitted and to be paid out in coupons and cash; and, was held to be, by the Court of Appeals, a product of collusion.

13

no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee,' an award of one-third of the common fund is 'consistent with the trend in this Circuit.'") (quoting *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-cv-00550, 2020 U.S. Dist. LEXIS 89175, at *16 (M.D. Fla. Apr. 23, 2020)); *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1280-81 n. 28 (11th Cir. 2021) (noting fee awards between 20% and 25% are within acceptable ranges for common fund cases, with 25% being the benchmark). Objections challenging the requested fee award must be, as must all objections, be overruled.

## V.   NOTICES OF INTENT TO APPEAR

Class Counsel received two communications, one from Kimberlee Curtis Parker ("Parker") and the other from the named Plaintiff Vassilios Kukorinis, both expressing their intent to appear and speak at the Final Approval Hearing.[26]

The communication from Parker, which is Ex. B to the KDS Suppl. FA Decl., expresses concern with the use of purportedly "disappearing ink" on Walmart's receipts and suggests it as an issue to be tackled by another lawsuit. But otherwise, Parker confirms that she submitted a claim and expresses appreciation to Class Counsel and the Plaintiff for pursuing the lawsuit. *Id.*

At Plaintiff's request, Class Counsel filed a notice for Plaintiff to appear at the Final Approval Hearing on May 22, 2024. ECF No. 113. Plaintiff's request was communicated by email to Counsel in this Action the evening of May 21, 2024.

---

[26] Neither communication was denominated as an "objection" to the Settlement, nor uses the word objection.

14

Plaintiff's email is Ex. C to KDS Suppl. FA Decl. The May 21 email expresses Plaintiff's regret with his executing an individual release as part of this Settlement.[27]

Having sued Walmart twice within three years, Walmart's position throughout the mediation in May-August 2023 and in preparation of the settlement documentation was that the individual release from Plaintiff was a material term of the Settlement. The terms of the Settlement and the individual release were discussed frequently by Class Counsel with Plaintiff.[28] As Plaintiff's email states, Plaintiff agreed to the release and signed the Settlement Agreement. *Id.*[29] It was, as the May 21 email also reflects (referencing the "greater good"), a provision that he understood was material to reaching an excellent class-wide settlement. Plaintiff was, thus, conducting himself like a Lead Plaintiff and proposed Class Representative.[30]

---

[27] As stated in the Preliminary Approval Brief at 8 n.10 & 13 n.18, and the FA Motion at 12 n.13 & 14, the Settlement Agreement includes a broader release from the Plaintiff than the Settlement Class Release (SA ¶ 12.9), and that Plaintiff is not receiving any individual or additional compensation for this release. Neither the Settlement Class nor Plaintiff releases claims for personal injury or wrongful death. SA ¶¶ 12.3, 12.9.

[28] Class Counsel's records show that, in addition to numerous email communications, they communicated by Zoom videoconferences or telephonic calls with Plaintiff about the mediation and the Action on at least eight dates in the period May-September 2023: May 8, June 5, 15 & 20, July 25, August 11 & 31, and September 12. KDS Suppl. FA Decl. ¶ 5. In addition, Class Counsel sent drafts of the Stipulation of Settlement to Plaintiff on November 6 & 15 and held Zoom conferences or calls with Plaintiff about the Stipulation and drafts of the Stipulation on November 7, 14 & 15, 2023. *Id.* Class Counsel also corresponded with the Plaintiff on several occasions after November 15, 2023 about the Settlement and Action. *Id.*

[29] Plaintiff poses to the Court a hypothetical question at the end of his email (Exhibit C, pg. 2) about his posting on social media. In the six months since he signed the release, he has not raised with Class Counsel this or any other question about the scope of the release, and how it would be applied in particular circumstances. Had he raised it with Counsel, instead of waiting until now and doing so in the manner he chose, Counsel could have undertaken to address such questions with Walmart's Counsel and provide Plaintiff with answers. Class Counsel note that there is not a non-disparagement clause in the Settlement Agreement.

[30] It is not atypical that a named plaintiff enters into a release that is broader or different than the settlement class' release. *See e.g. Roubert v. Capital One Fin. Corp.*, No. 8:21-cv-2852, 2023 U.S. Dist. LEXIS 119301, at *6-7 (M.D. Fla. July 10, 2023) (the named plaintiff agreed to a general release, and

Once that release was signed in mid-November 2023, Plaintiff did not seek to retract or back off the release terms or enforceability. In reliance on the fully executed Settlement Agreement, Class Counsel filed the Motion for Preliminary Approval of the Settlement (ECF No. 71) and detailed Notice Plan (ECF No. 71-4). The Motion also noted that Walmart was gathering email information for purposes effectuating the Notice Plan, and Plaintiff would submit a supplemental filing informing the Court of the number of direct Emailed Notices to be disseminated, and proposed dates for the Notice and settlement approval process. The supplemental submission was timely filed on January 9, 2024, identifying that over 80 million Email Notices would be disseminated, and the extensive digital media campaign commence, within 30 days after the Court entered the PAO. During the more than two months between the filing and entry of the PAO on January 19, 2024, Plaintiff made no effort or indicated any intention to abrogate his executed individual release.

In accordance with the PAO, the extensive Notice Plan was implemented at significant cost (*see* KDS FA Decl. ¶ 95), including through the dissemination of over 81 million emails and an extensive media campaign and coverage (*id.* at ¶¶ 88–89), with millions of people now informed of the factual and legal claims Plaintiff asserted against Walmart. More than 3.9 million settlement claims have been submitted over the almost five months since the PAO was entered. The Settlement, judged from the

---

for which the named plaintiff would not be permitted to receive a "general release payment"), R&R adopted by, *Roubert v. Capital One Fin. Corp.*, 2023 U.S. Dist. LEXIS 145517 (M.D. Fla. Aug. 18, 2023); *Blessinger v. Wells Fargo & Co.*, No. 8:22-cv-1029-TPB-SPF, 2023 U.S. Dist. LEXIS 215726, at *1-2 (M.D. Fla. Dec. 5, 2023)(same).

16

implementation of the Notice Plan, and reactions and responses of Settlement Class Members, has achieved the very objectives that Plaintiff sought from the outset.[31]

Accordingly, it is most appropriate for the Lead Plaintiff to receive commendation for his efforts and commitment that provided the foundation for the excellent result achieved on behalf of the Settlement Class Members. But that in no manner should alter the Court's rejection of any effort by Lead Plaintiff to disrupt the enforcement and implementation of the Settlement.[32]

Dated: June 5, 2024                  Respectfully submitted,

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith
Kimdonaldsonsmith@chimicles.com
Nicholas E. Chimicles
Nick@chimicles.com
Zachary P. Beatty
zpb@chimicles.com
**Chimicles Schwartz Kriner &
    Donaldson-Smith LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

*Attorneys for Plaintiff and Settlement Class Counsel*

---

[31] Plaintiff's May 21 Email references ABA Model Rules of Professional Conduct 3.4(f) and 5.6(b), which are inapposite. Rule 3.4(f), governing "Fairness to Opposing Party & Counsel," addresses a lawyer's request to a "person other than a client" to refrain from voluntarily giving relevant information. Rule 5.6(b) prohibits the lawyer from making an agreement in which a restriction on the lawyer's right to practice is part of the settlement; Class Counsel have no such agreement.

[32] Class counsel have an ethical responsibility to the Class as a whole. *See, e.g., Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 991 (11th Cir. 2020) ("One cardinal rule defines the scope of counsel's ethical obligations in class actions: class counsel owes a duty to the class as a whole and not to any individual member of the class. Applying this rule, courts … have rejected attempts by class members to derail settlements beneficial to the class. But, an important corollary stems from this principle: class counsel does not owe a particular duty to any group comprised of class members, such as class representatives, distinct from the duty owed to the class.").

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2024 the foregoing document was served on Defendant's counsel by the Court's electronic filing system.

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith
