UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASSILIOS KUKORINIS,
on behalf of himself and any
others similarly situated,

     Plaintiff,

v.                    Case No. 8:22-cv-2402-VMC-TGW

WALMART, INC.,

     Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement and Motion for Award of Attorneys' Fees, Costs, and Expenses, both filed on May 8, 2024. (Doc. ## 100, 101). The Court held a hearing on the Motions on June 12, 2024. For the reasons set forth below, the Motions are granted.

**I.**   **Background**

    **A.**   **Procedural History**

Plaintiff Vassilios Kukorinis initiated this putative class action against Defendant Walmart on October 19, 2022, asserting "nationwide claims against Walmart for alleged violations [of] state consumer protection acts and unjust

1

enrichment." (Doc. # 1; Doc. # 71 at 3). More specifically, Plaintiff alleged that people who bought weighted goods or bagged citrus at Walmart stores paid more than the lowest in-store advertised price for the products. (Doc. # 71 at 3-4, 7; Doc. # 56 at ¶¶ 37-88).

After the Court granted in part Walmart's motion to dismiss (Doc. # 52), Plaintiff filed an amended complaint on July 20, 2023, asserting claims for (1) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts I, III.A), (2) declaratory relief pursuant to FDUTPA (Count II), (3) violations of other state consumer protection statutes, brought in the alternative to Count III.A, including the Connecticut Unfair Trade Practices Act (Count III.B), the New Jersey Consumer Fraud Act (Count III.C), and the New York General Business Law § 349 (Count III.D), among others (Count III.E), and (4) unjust enrichment (Count IV). (Doc. # 56). Walmart filed a motion to dismiss Count III of the amended complaint on August 10, 2023 (Doc. # 60), which Plaintiff opposed. (Doc. # 63).

Shortly thereafter, on September 22, 2023, the parties filed a joint status report and motion to stay the case, notifying the Court that they had reached a settlement in principle. (Doc. # 64). Plaintiff filed an unopposed motion

for preliminary approval of the class action settlement on November 16, 2023, and supplemental information on January 9, 2024. (Doc. ## 71, 74). The Court granted the motion on January 19, 2024. (Doc. # 75).

**B.   Preliminary Approval of Class Action Settlement**

In the order preliminarily approving the class action settlement, the Court defined the class for settlement as:

> [A]ll Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ("Walmart Store") during the Settlement Class Period. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart Inc.'s directors, officers, and executives; (3) Class Counsel; and (4) Settlement Class Members who submit a valid and timely Opt-Out Request approved by the Court.

(Id. at ¶ 5). The Court defined the settlement class period as October 19, 2018, through and including January 19, 2024. (Id.; Doc. # 71-2 at ¶ 2.47).

"Weighted goods" were defined as "variable weight meat, poultry, pork and seafood products that are labeled with a price embedded bar code and designated by Walmart as part of its Department 93 products," as listed on Addendum A, with Addendum A subject to updates through the date of the Court's order granting preliminary approval. (Doc. # 71-2 at ¶ 2.58). "At times, Weighted Goods that [were] nearing their

3

expiration dates may have been labelled with a yellow sticker that provided a discounted 'You Pay!' price." (Id.). "Bagged citrus" was defined as "the organic oranges, grapefruit, tangerines, and navel oranges sold in bulk in mesh or plastic bags and bearing UPC Codes listed on Addendum B" to the Settlement Agreement, with Addendum B subject to updates through the date of the Court's order granting preliminary approval. (Id. at ¶ 2.5).

Pursuant to the preliminarily approved settlement, Walmart was directed to pay $45,000,000 into an escrow account for distribution to class members. (Id. at ¶ 5.1). This settlement fund is non-reversionary. (Id. at ¶ 2.12).

To recover under the settlement, class members were required to submit claim forms for reimbursements by June 5, 2024. (Id. at ¶ 5.4(a)); see (Doc. # 75 at ¶ 19) (stating that "all Claim Forms must be postmarked or submitted electronically no later than seven (7) Days prior to the Final Approval Hearing"). If an approved class member did not have receipts, proof of purchase, or other documentation, they could attest to purchasing the following levels of Weighted Goods and/or Bagged Citrus to receive the corresponding reimbursement: (1) up to 50 Weighted Goods and/or Bagged Citrus for $10.00, (2) 51-75 Weighted Goods and/or Bagged

4

Citrus for $15.00, (3) 76-100 Weighted Goods and/or Bagged Citrus for $20.00, or (4) 101 or more Weighted Goods and/or Bagged Citrus for $25.00. (Doc. # 71-2 at ¶ 5.4(a)(i)-(iv)). If an approved class member did have receipts, proof of purchase, or other documentation substantiating their purchases of Weighted Goods and/or Bagged Citrus from Walmart and the price paid for those goods, the class member was entitled to receive 2% of the total costs of the substantiated goods, capped at $500.00. (Id. at ¶ 5.4(a)(v)).

These reimbursements are subject to a potential pro rata increase or decrease. (Id. at ¶ 5.4(a)). If additional monies remain in the settlement fund after full payment of the claims, the Claims Administrator will make supplemental distributions on a pro rata basis to approved claimants until additional distributions are no longer economically feasible. (Id. at ¶ 5.4(b)). "In the event that supplemental distributions are no longer economically feasible, Class Counsel [will], after consultation with Walmart regarding the appropriate non-profit organizations, apply to the Court for approval of the payment of such residual to one or more non-profit organizations." (Id.).

The preliminarily approved settlement also outlined procedures for potential class members to file objections to

the settlement or to exclude themselves from the settlement by May 22, 2024. (Doc. # 75 at ¶¶ 25-32).

In the Order, the Court preliminarily appointed Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty as class counsel, and Vassilios Kukorinis as class representative. (Id. at ¶ 7).

The Court also appointed Angeion Group as Claims Administrator. (Id. at ¶ 11). The Claims Administrator was responsible for implementing the Notice Plan, including sending direct email notice to potential class members, creating the Settlement Website, and publishing notice of the settlement in various publications. (Id. at ¶¶ 13-14). According to the settlement agreement, the Claims Administrator is paid "promptly and on a non-recourse basis from the Class Settlement Fund upon Class Counsel's receipt of invoices from the Claims Administrator." (Doc. # 71-2 at ¶ 5.3(a)). Through April 30, 2024, the Claims Administrator had incurred $1,425,365.70 in costs to provide notice and administration services. (Doc. # 124-7 at ¶ 27). Class counsel anticipated that the Claims Administrator would be paid a total of $2,450,000 - $2,600,000. (Doc. # 100 at 9).

The Court also scheduled the Final Approval Hearing for June 12, 2024, at 10:00 AM. (Doc. # 71-2 at ¶ 8).

### C.   Motion for Final Approval of Class Action Settlement

Plaintiff filed the instant Unopposed Motion for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses on May 8, 2024. (Doc. ## 100, 101). Counsel supplemented these Motions on June 5, 2024, providing an update on the Notice Plan and the number of opt-outs, and responding to the objections filed. (Doc. # 124). In response to Mr. Kukorinis's notice of intent to appear at the Final Approval Hearing and raise concerns about his individual release, Walmart also filed a memorandum in support of the Motion for Settlement. (Doc. # 126). Plaintiff filed a supplemental declaration from the Claims Administrator regarding opt-outs on June 10, 2024. (Doc. ## 127, 127-1).

### D.   Class Member Filings

In total, as of June 2, 2024, the Claims Administrator had received 3,905,158 claim forms. (Doc. # 124-7 at ¶ 20). These claim forms represent a 4.87% claims rate. However, of the claim forms filed, 1,240,998 have been preliminarily identified as suspected fraud. (Id.). The Claims

Administrator also received 160 timely opt-out requests as of June 10, 2024. (Doc. # 127-1 at ¶ 7).

The Court and counsel received six objections, from Shena McHenry, Lerandle Pace, Wayne Anderson, Joan Johnson, Angela Taylor Sweet, and Queen Akhenaten II Montgomery Bey. (Doc. ## 106, 110, 119, 120, 123, 124-2). The Court also received a brief in opposition to the settlement from Dana Albrecht. (Doc. # 130).

In the weeks before the Final Approval Hearing, two potential class members, Dana Albrecht and Joan Johnson, also filed motions that included requests to be joined as co-plaintiffs or to intervene. (Doc. ## 99, 118). The Court denied both requests. (Doc. ## 115, 128). The Court also denied Mr. Albrecht's request to extend the deadline for class members to object to comment on or exclude themselves from the settlement. (Doc. # 115). However, the Court granted his request to file future pleadings and receive notice of additional filings through CM/ECF. (Id.).

The Court also received Notices of Intent to Appear at the Final Approval Hearing from class representative, Vassilios Kukorinis, and potential class member Kimberlee Curtis Parker. (Doc. ## 113, 124-3). Only Mr. Kukorinis appeared at the hearing. (Doc. # 131).

8

## II.  Motion for Final Approval of the Class Action Settlement

### A.  Fairness

A class action may be settled only with court approval. Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A)  the class representative and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats the class members equitably relative to each other.

Id. In addition, courts in the Eleventh Circuit must also consider the following factors, known as the Bennett factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4)

9

the complexity, expense and duration of litigation;
(5) the substance and amount of opposition to the
settlement; and (6) the stage of proceedings at
which the settlement was achieved.

In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d
1247, 1273 (11th Cir. 2021), cert. denied sub nom. Huang v.
Spector, 142 S. Ct. 431 (2021), and cert. denied sub nom.
Watkins v. Spector, 142 S. Ct. 765 (2022) (citing factors
originally enunciated in Bennett v. Behring Corp., 737 F.2d
982 (11th Cir. 1984)) (internal quotation marks omitted).

"The Rule 23(e) analysis should be 'informed by the
strong judicial policy favoring settlements as well as the
realization that compromise is the essence of settlement.'"
Jairam v. Colourpop Cosmetics, LLC, No. 19-cv-62438-RAR, 2020
WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) (citing In re
Chicken Antitrust Litig. Am. Poultry, 669 F.2d 228, 238 (5th
Cir. Unit B 1982)). The policy favoring settlement is
especially relevant in class actions and other complex
matters, where the inherent costs, delays, and risks of
continued litigation might otherwise overwhelm any potential
benefit the class could hope to obtain. See Ass'n for Disabled
Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D.
Fla. 2002) ("There is an overriding public interest in favor
of settlement, particularly in class actions that have the

well-deserved reputation as being most complex." (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977))).

"In evaluating a proposed class action settlement, 'the district court may rely upon the judgment of experienced counsel for the parties.'" Colourpop Cosmetics, 2020 WL 5848620, at *3 (quoting Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 434 (11th Cir. 2012)). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." Id. (citations and internal quotation marks omitted).

Having considered the factors set forth in Rule 23(e)(2) and Bennett, the Court determines that the settlement is fair, reasonable, and adequate. There is no indication of fraud or collusion behind this settlement. See Leverso v. SouthTrust Bank of Ala., N.A., 18 F.3d 1527, 1530 & 1530 n.6 (11th Cir. 1994) (citing evidence of fraud or collusion as a factor that courts should consider); see also Warren v. City of Tampa, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed parties conducted discovery and negotiated the terms of settlement for an extended period of time).

Furthermore, the class representative and class counsel have adequately represented the class. Mr. Kukorinis retained

counsel with extensive experience in large class-action lawsuits who have vigorously represented the class during this matter. (Doc. # 100 at 30; Doc. # 100-1 at ¶ 77; Doc. # 101 at 15-16). The settlement agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case, with the assistance of a neutral and experienced JAMS mediator, Robert Meyer. See Wilson v. EverBank, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (concluding that settlement negotiations overseen by a "nationally renowned" mediator weighed in favor of final settlement approval); Poertner v. Gillette Co., 618 F. App'x 624, 630 (11th Cir. 2015) (stating that "self-dealing contention" was "belied" by involvement of experienced mediator). Counsel for the parties were therefore well-positioned to evaluate the benefits of the agreement, considering the risk, expense, and uncertainty of protracted litigation.

The relief provided for the class is adequate. Again, the parties have agreed on the following relief: the establishment of a common fund of $45,000,000. (Doc. # 71-2 at ¶ 5.1). This settlement value represents between 11% and 14% of a complete nationwide recovery, had Plaintiff fully

prevailed in the litigation.[1] (Doc. # 100 at 16). This percentage of recovery is in line with settlements approved within the Eleventh Circuit. <u>See</u>, <u>e.g.</u>, <u>In re Health Ins. Innovations Secs. Litig.</u>, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051, at *24 (M.D. Fla. Mar. 23, 2021) (recommending approval of a settlement that established a settlement fund for approximately 10% of the estimated value of potential recovery), <u>report and recommendation adopted</u>, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 60100 (M.D. Fla. Mar. 30, 2021); <u>Behrens v. Wometco Enters., Inc.</u>, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the recovery of $3.50 a share is not indicative of an inadequate compromise. A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorney's fees, the relief provided for

---

[1] Walmart disputes the calculations and conclusions made by Plaintiff's expert regarding the maximum potential recovery. (Doc. # 100 at 16 n.17).

13

the class is adequate. The settlement treats all class members equitably relative to one another. While it distinguishes between the recovery available to class members who can provide receipts to support their claims and those who cannot, this approach has been approved in other class action settlements. E.g., Cotter v. Checkers Drive-In Rests., Inc., No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *23 (M.D. Fla. Aug. 25, 2021). Thus, the factors laid out in Rule 23(e)(2) are satisfied here.

Turning to the Bennett factors, the class members' likelihood of success at trial is far from certain. Class counsel note that Walmart's remaining arguments included that "(a) damages classes, and any nationwide class, are not certifiable; (b) claims were barred by a prior settlement and the Court's July Motion to Dismiss Order; (c) Plaintiff could not overcome hurdles of proof of misrepresentations on the Shelf Tags in over 4,000 Walmart Stores; and (d) Walmart complied with all applicable laws and regulations." (Doc. # 100 at 15). The uncertainty of recovery suggests that the Settlement Agreement is a better result for the class than continued litigation. As for the range of possible recovery, the settlement here is within the range of reasonableness. See Behrens, 118 F.R.D. at 541 ("The second and third

14

considerations of the <u>Bennett</u> test are easily combined. A court first determines the range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie.").

As for the complexity, expense, and duration of litigation, the issues raised in this case were complex, including the potential to apply FDUTPA to a nationwide class. (Doc. # 101 at 25). The parties also represent that the settlement negotiations were extended, lasting approximately eight months, and were conducted through the use of an experienced JAMS mediator. (<u>Id.</u> at 6, 18; Doc. # 100 at 14). This factor weighs in favor of approving the Settlement Agreement.

The reaction of the class to the settlement is also an important factor. <u>Saccoccio v. JP Morgan Chase Bank, N.A.,</u> 297 F.R.D. 683, 694 (S.D. Fla. 2014). "[A] low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." <u>Id.</u>

Here, six objections were filed to the settlement and 160 people have timely opted out. (Doc. # 124 at 1; Doc. # 127-1 at ¶ 7). As discussed further below, the Court overrules

15

all objections because they do not provide sufficient reason to modify the settlement or deny approval. The number of people who have opted out of the settlement is about 1/10,000th of 1% of the email addresses sent an Email Notice. (Doc. # 124 at 3). "This lack of opposition and [s]ettlement [c]lass [m]ember support weigh strongly in favor of Court approval of the Settlement Agreement." Hanley v. Tampa Bay Sports & Ent. LLC, No. 8:19-cv-550-CEH-CPT, 2020 WL 2517766, at *4 (M.D. Fla. Apr. 23, 2020).

"The stage of the proceedings at which settlement is achieved is [also] 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" Saccoccio, 297 F.R.D. at 694 (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." Id. (citations omitted). The parties here reached a settlement before Plaintiff filed a motion for class certification. Even so, the parties had experienced counsel who had sufficient information to evaluate the merits of the case and who engaged in significant discovery. The parties also reached the class settlement after mediation before an

16

experienced mediator. This factor also weighs in favor of settlement.

The opinions of class counsel and the absent class members further favor approval of the settlement. Class counsel are very experienced and only six potential class members have filed objections, in contrast to the almost four million who have submitted claims forms. See Hall v. Bank of America, N.A., No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting that where objections from settlement class members equated to less than 1/10th of a percentage of the class and no attorney general or regulator submitted an objection, "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"). While Mr. Kukorinis, the class representative, did raise concerns about the settlement both in an email to counsel and at the Final Approval Hearing (Doc. # 124-4), as discussed further below, these concerns do not suggest that the settlement should not be approved.

## B.   Objections

The Court received five objections to the preliminarily approved settlement. (Doc. ## 106, 110, 119, 120, 123). Class counsel received one additional objection, which they provided to the Court (Doc. # 124-2), making a total of six

objections. Counsel filed a brief on June 5, 2024, addressing the objections received. (Doc. # 124). Additionally, the Court received a brief in opposition to the settlement on June 11, 2024. (Doc. # 130).

While several of the objections did not comply with the requirements for filing objections that were outlined in the order preliminarily approving the settlement, see (Doc. # 75 at ¶¶ 26-32), even on the merits, the objections do not suggest that the settlement is deficient or otherwise should not be approved.

First, this Court received an objection from Shena McHenry. (Doc. # 106). Ms. McHenry objected to the class action settlement because it does not allow people to submit receipts for online shopping at Walmart. (Id.). However, Ms. McHenry's online purchases do not fall within the scope of the settlement class because the settlement covers only in-store purchases. (Doc. # 100 at 21 n.23). Online purchases were excluded because the misconduct occurred at Walmart stores and because the terms and conditions for online purchases from Walmart include an arbitration agreement and class action waiver. (Id.). Therefore, Ms. McHenry's objection is overruled. The settlement is appropriately limited to in-store purchases and would not prevent Ms.

McHenry from pursuing claims against Walmart for any overcharges she experienced while online shopping.

Second, the Court received an objection from Lerandle Pace. (Doc. # 110). The settlement provides that, if an approved claimant has receipts or other documentation of their purchases, including which goods were purchased and the money spent, they will be entitled to receive 2% of the total cost of the substantiated goods purchased, capped at $500. (Doc. # 71-2 at ¶ 5.4(a)(v)). Mr. Pace objected to the 2% reimbursement and the $500 limit, as he believes that these values are too low. (Doc. # 110 at 1-2). Instead, he argued, every class member should be made completely whole. (Id.). Relatedly, he also raised concerns about the amount of documentation needed to file a claim form. (Id. at 1).

Mr. Pace also expressed concerns about the online system for submitting claim forms. (Id. at 4, 24-25). While he submitted a claim form online, he did not receive a confirmation email and did not receive timely security codes when he sought to later modify his claim form. (Id.). He also had difficulties with the phone line and asserted that both the website and phone line often fail simultaneously, frustrating claim members seeking to file claims. (Id.). He

noted that he has reported his concerns to several Walmart employees. (Id.).

Mr. Pace's objection is also overruled. Importantly, the 2% limit is appropriate, given that class members were, on average, overcharged by 2%. See (Doc. # 100 at 16). The $500 limit also does not unreasonably constrain reimbursements. Further, while the settlement agreement did impose several requirements for filing a claim form, including to sign the claim form and include supporting documentation, when applicable, see (Doc. # 75 at ¶ 21), these requirements were not unduly burdensome and the information provided is useful to the Court and counsel. Additionally, the Claims Administrator spoke with Mr. Pace about his concerns and confirmed receipt of his claim form. (Doc. # 124-7 at ¶ 26). Mr. Weisbrot attested that "Angeion did not identify any technical issues with the Settlement Website or the toll-free telephone system." (Id.). At the Final Approval Hearing, class counsel also stated that the phone and website issues described did not appear to be recurring.

Third, this Court received an objection from Wayne Anderson. (Doc. # 119). Mr. Anderson objected to the settlement because it does not require Walmart to change its practices and because the settlement value is most likely to

20

benefit Plaintiff's attorneys, given the comparatively small payout for each class member. (Id.). Mr. Anderson urged the Court to reject the settlement or, if the Court approves the settlement, award Plaintiff's attorneys very low compensation. (Id.). At the hearing, class counsel highlighted that they did not seek injunctive relief as part of the settlement because counsel are not in the best position to monitor Walmart's compliance with injunctive relief. Instead, several other entities are already working with Walmart to address overcharging practices. The Court agrees with this explanation of why the settlement was limited to monetary relief. Accordingly, Mr. Anderson's objection is overruled.

Fourth, the Court received an objection from Joan Johnson. (Doc. # 120). Ms. Johnson's objection raised concerns about the settlement's requirement that class members submit receipts to receive reimbursements over a certain value. (Id.). She highlighted that people using SNAP or EBT cards to purchase food cannot view a history of their grocery purchases nor itemized receipts beyond the last three months. (Id. at 1). Further, she noted that many people using these forms of payment do not have bank accounts and, thus, cannot receive the reimbursement. (Id. at 3). Ms. Johnson

also requests that the settlement value be increased to billions of dollars and that the attorney's fees be capped at $200,000 – 500,000. (Id. at 2-3).

As class counsel discussed in their response to this objection, class members may be reimbursed for up to $25 under the settlement without submitting receipts, which should cover most of the class members' purchases during the class period. (Doc. # 124 at 10-11). Additionally, the settlement recovers 11% to 14% of the total potential recovery nationwide. (Doc. # 100 at 16). This percent recovery is within the acceptable range. See Behrens, Inc., 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."). Therefore, Ms. Johnson's concerns about the total value of the settlement and the ability of SNAP or EBT card users to recover under it do not provide sufficient justification to deny approval of the settlement. Because the settlement value is appropriate, this value does not indicate that the Court should decline to grant the requested attorney's fees. Ms. Johnson's objection is overruled.

Fifth, the Court received an objection from Angela Taylor Sweet. (Doc. # 123). Ms. Sweet objected to the

settlement value, Walmart's failure to admit wrongdoing, and the requested attorney's fees and expenses. (Id.). She asserts that the value of the settlement is too low to motivate Walmart to use better practices in the future, particularly regarding its product quality inspections. (Id.). The Court also overrules Ms. Sweet's objection. As discussed above, the settlement value is acceptable, as are the other conditions of the settlement. Additionally, Ms. Sweet does not present any specific objections to the requested attorney's fees or expenses.

Sixth, class counsel received an objection from Queen Akhenaten II Montgomery Bey, which they shared with the Court. (Doc. # 124-2). In the objection, Ms. Bey objects because she was not provided with a full reimbursement or groceries up to a value of $500 when requested at a Walmart store. (Id. at 10, 15). In doing so, she appears to object to the settlement value. She also appears to assert other claims against Walmart. (Id. at 1-2, 6). As discussed above, the settlement value is within an acceptable range. Accordingly, this objection is also overruled.

Mr. Albrecht also filed an additional brief in opposition to the settlement on June 11, 2024. (Doc. # 130). The brief questions how vigorously Class Counsel prosecuted

the lawsuit. (Id. at 4-5). Additionally, Mr. Albrecht asserts that Class Counsel and the Claims Administrator violated provisions of the CAN-SPAM Act that govern commercial emails when sending the email notices by (1) improperly identifying the sender of the email notices, (2) failing to disclose an advertisement, (3) failing to provide a valid physical postal address for the Claims Administrator, (4) not including a working opt-out hyperlink, and (5) providing an invalid reply-to email address. (Id. at 6-7).

However, the provisions discussed in Mr. Albrecht's motion do not appear to apply to the email notices sent by the Claims Administrator, as these notices were legal in nature. See 15 U.S.C. § 7704(a)(1) (applying to transmissions of commercial electronic mail messages and transactional or relationship messages); Id. § 7704(a)(5)(A) (applying to transmissions of commercial electronic mail messages); Id. § 7704(a)(3) (applying to transmissions of commercial electronic mail messages). Accordingly, Mr. Albrecht's concerns do not weigh against approval of the settlement. To the extent that Mr. Albrecht intended his brief to qualify as an objection to the settlement, the objection is overruled.

In sum, all objections to the settlement are overruled.

24

### C.    Concerns Raised by the Class Representative

On May 21, 2024, both class counsel and Walmart's counsel received an email from Vassilios Kukorinis, the preliminarily approved class representative, expressing concern about a provision applicable only to him that includes both an individual release of claims and a covenant not to sue. (Doc. # 124-4). In this email, Mr. Kukorinis expressed that he intended to attend the Final Approval Hearing to "ask the court[] to review and rule for the legality of the provisions/demands stated at STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT, paragraph 12.9 'Plaintiff's Individual Release.'" (Id. at 1). Mr. Kukorinis believes that this release is overly broad, stating that he will not recover any money for over six years of work exposing Walmart's practices. (Id.). He asserts that the attorneys agreed, through the provision, that Walmart could fully control his future and those of people close to or related to him. (Id.).

Mr. Kukorinis also raised concerns that Paragraph 12.9 did not comply with Rules 3.4(f) and 5.6(b) of the American Bar Association's Model Rules for Professional Conduct. (Id.). He also raises concerns about confidentiality, non-disparagement, and non-participation clauses in settlement agreements, and asks whether the provision interferes with

his First Amendment rights. (Id.). Finally, he notes that he recently challenged an instance of overcharging at a Walmart store. (Id. at 1-2). He asks whether he is permitted to upload shopping experiences like this to social media or whether he risks facing a defamation lawsuit from Walmart. (Id. at 2).

At the hearing, Mr. Kukorinis raised these objections. He was also concerned that he would not be able to help family and friends in Walmart stores if they were being overcharged, would not be able to shop at Walmart, and that Walmart would continue to overcharge customers. He also raised concerns about the low claims rate and the settlement provision that prevents class members from suing as to these overcharges, even if they have not filed a claim form or received actual notice of the settlement.

As part of the settlement agreement, Mr. Kukorinis is providing a broader release than that applicable to other class members and signing a covenant not to sue. (Doc. # 100 at 12 n.13). The provision states:

> i. Subject to the Court's final approval of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, and in addition to the Settlement Class Member Released Claims, the Plaintiff on behalf of himself and any and all spouses, representatives, heirs, successors, assigns, devisees, and executors (excluding the Releasing Settlement Class Members he seeks to

26

represent), releases, acquits, and forever discharges the Walmart Released Parties from any and all allegations, claims, causes of action, demands, obligations, or liability, of whatever kind or nature, whether for injunctive relief, damages, penalties, or any other form of recovery, in this Court or in any other court or forum, whether known or unknown, suspected or unsuspected, that he may now have, has ever had, or hereafter may have, and whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local, relating to items of any kind he purchased or attempts to purchase at Walmart or at or from any Walmart affiliated entity, up through the date on which the Judgment becomes Final;

ii. Plaintiff covenants that he will not in the future, directly or indirectly, initiate, assign, maintain or prosecute, or in any way aid or assist in the initiation, maintenance, or prosecution of individual or class claims related to overcharges related to the purchase of items of any kind at Walmart or at or from any Walmart affiliated entity; and,

iii. Plaintiff represents and warrants that he has knowledge and an understanding of the price and weight discrepancies alleged in the Complaint and Amended Complaint; provided, however, that (a) nothing in this ¶12.9 and Plaintiff's Individual Release shall preclude Plaintiff from being an Approved Claimant in this Litigation or being an absent class member in a class action and submitting a claim as an absent class member in other class action settlements involving Walmart that are not covered by the Release in this Litigation; and (b) Plaintiff is not releasing any claims for personal injury or wrongful death.

iv. Plaintiff's execution of this Agreement signifies that he has read and understood this ¶12.9.

(Doc. # 71-2 at ¶ 12.9).

Mr. Kukorinis is not receiving any individual or additional compensation in exchange for this relief. (Doc. # 100 at 12 n.13). He also admits that he signed the settlement agreement, despite having concerns and considering opting out from the case. (Doc. # 124-4 at 1).

Named plaintiffs often enter into broader or general releases as part of class action settlements. E.g., Blessinger v. Wells Fargo & Co., No. 8:22-cv-1029-TPB-SPF, 2023 U.S. Dist. LEXIS 215726, at *2 (M.D. Fla. Dec. 5, 2023) (preliminarily approving a class action settlement that included a general release for the named plaintiff, but directing that all references to a general release payment be stricken). Further, "the assent of named plaintiffs is not a prerequisite to the approval of a settlement." Pettway v. Am. Cast Iron Pipe Co., 576 F.2d 1157, 1216 (5th Cir. 1978). Therefore, the Court can approve the settlement despite Mr. Kukorinis's concerns.

Importantly, Mr. Kukorinis appears to have understood the provision at the time he signed the settlement agreement. Class counsel state that they discussed the terms of the settlement and the individual release with Mr. Kukorinis frequently, including through emails, Zoom videoconferences,

and telephone calls. (Doc. # 124 at 15 & n.28). Both parties note that the individual release provision was considered a material term of the settlement because Mr. Kukorinis has sued Walmart twice in three years. (Id. at 15; Doc. # 126 at 3). At the Final Approval Hearing, class counsel confirmed that they had discussed the version of the individual release included in the final settlement agreement with Mr. Kukorinis and that he expressed that he understood and agreed to the provision.

Class counsel and Walmart's counsel also stated that the provision does not limit Mr. Kukorinis in several of the ways that Mr. Kukorinis believes it might. Both class counsel and Walmart's counsel emphasized that the settlement provision does not include a non-disparagement clause. (Doc. # 124 at 15 n.29; Doc. # 126 at 3). Class counsel also stated that Mr. Kukorinis may choose to continue to shop at Walmart if he wishes. Walmart's counsel further stated that the provision does not prevent Mr. Kukorinis from helping relatives address issues they have at Walmart stores, though it does limit his ability to help them bring future lawsuits.

Class counsel have also repeatedly emphasized Mr. Kukorinis's efforts in support of the settlement and his

prioritization of the common good. E.g., (Doc. # 124 at 15, 17).

### D.  Opt-Outs

Any member of the class who did not wish to be bound by the settlement agreement was required to opt out of the settlement by mailing the opt-out notice to the Settlement Administrator by May 22, 2024. (Doc. # 75 at ¶ 25(a)). Steven Weisbrot, President and CEO of the class's Claims Administrator, Angeion Group, LLC ("Angeion"), reported that, as of June 10, 2024, the Claims Administrator had received 160 timely Opt-Out Requests. (Doc. # 127-1 at ¶ 7). The names of the individuals who have timely opted out of the settlement are listed in Exhibit A.

The Claims Administrator also received two opt-outs with late postmarks from Da Hee An and Ryan Neel B. Laforteza. (Id. at ¶ 5). Because these opt-outs were sent after the deadline, these names have been omitted from the opt-out list.

### III. <u>Motion for Award of Attorney's Fees, Costs, and Expenses</u>

In class counsel's Motion for Award of Attorneys' Fees, Costs, and Expenses, counsel seeks an award of $9,000,000 in attorney's fees, "plus any interest on such fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid)." (Doc. # 124 at 13

n.24; Doc. # 101 at 11). Counsel also seek $114,870.41 in litigation expenses. (Doc. # 101 at 28).

### A.   Attorney's Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, an attorney's fee award "shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991). In evaluating attorney's fees requests in common fund cases, the Court may, but is not required to, verify the results through the lodestar method. In re Equifax, 999 F.3d at 1280 n.26.

The percentage method requires a district court to consider a number of relevant factors called the Johnson factors to determine if the requested percentage is reasonable. See Camden I, 946 F.2d at 772 & n.3, 775 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the

31

attorney as a result of her/his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) fee awards in similar cases. Id. at 772 n.3.

"The percentage applies to the total fund created, even where the actual payout following the claims process is lower." Pinto v. Princess Cruise Lines, Ltd., 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citing Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1295-96 (11th Cir. 1999)); see also Montoya v. PNC Bank, N.A., No. 14-20474, 2016 WL 1529902, at *23 (S.D. Fla. Apr. 13, 2016) ("[T]he valuation of counsel's fee should be based on the opportunity created for the Settlement Class . . . . [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement.").

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," an award of one-third of the common fund

is "consistent with the trend in this Circuit." Hanley, 2020 WL 2517766, at *6 (quoting In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)); see also Camden I, 946 F.2d at 775 ("[D]istrict courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case . . . ."). In the Eleventh Circuit, this percentage remains consistent even in "megafund" cases, cases larger than this case where parties agreed to settlements totaling over $100 million in value. See William B. Rubenstein, Newberg on Class Actions § 15:81 (6th ed. 2024) ("Most courts define mega-funds as those in excess of $100 million . . . ."); In re Equifax, 999 F.3d at 1278 (affirming the district court's award of "20.36% of the $380.5 million common settlement fund"); In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) ("[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements.").

As applied to this action, the Johnson factors demonstrate that the requested fee is reasonable and justified.

The record demonstrates that the prosecution and settlement of these claims required substantial time and labor – including time spent investigating the case, significant discovery including analysis of over 100 gigabytes of data provided by Walmart, briefing in opposition to two motions to dismiss, and extensive mediation and settlement negotiations that continued for eight months. (Doc. # 100 at 4-5; Doc. # 101 at 18). The issues involved here were difficult and required the skill of experienced, capable attorneys, given the scope of the lawsuit and, among other issues, the challenge of applying a FDUTPA claim to a nationwide class. (Doc. # 101 at 25). Class counsel have extensive experience in large class-action lawsuits. (Id. at 15-16; Doc. # 100 at 30; Doc. # 100-1 at ¶ 77). Class counsel also state that they pursued this case to the preclusion of other employment. (Doc. # 101 at 22-23). Class counsel thereafter achieved a successful result, negotiating a settlement agreement with Defendant that provided monetary relief. (Doc. # 71-2 at ¶ 5.1). Further, at the Final Approval Hearing, class counsel estimated that class members who have submitted claim forms would receive 60-65% of the value of their claims.

Continued litigation of the class's claims would have presented serious risks. In a related vein, class counsel took on considerable risk by agreeing to pursue this action on a purely contingent basis. See Fruitstone v. Spartan Race, Inc., No. 20-cv-20836, 2021 WL 2012362, at *12 (S.D. Fla. May 20, 2021) (noting that "the risks of failure and nonpayment in a class action are extremely high" and that counsel undertook "significant risk" in undertaking the litigation "and would not have recovered any fee or their expenses had the Court declined to certify a class or had they lost at trial").

Finally, as to the value of the attorney's fees, the requested fee comports with fees awarded in other common fund class settlements, including settlements of larger values. See Hanley, 2020 WL 2517766, at *6 (noting that an award of one-third of the common fund is "consistent with the trend in this Circuit" (quoting In re Sunbeam Sec. Litig., 176 F. Supp. 2d at 1333); In re Equifax, 999 F.3d at 1278 (affirming the district court's award of "20.36% of the $380.5 million common settlement fund"); Camden I Condo. Ass'n, 946 F.2d at 775 ("[D]istrict courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual

circumstances of each cases . . . ."). Additionally, it is appropriate to include interest in the attorney's fee award. See In re Health Insurance Innovations Secs. Litig., No. 8:17-cv-2186-TPB-SPF, 2021 WL 1186838, at *1 (M.D. Fla. Mar. 30, 2021) (awarding 33% of the settlement fund as attorney's fees, consisting of $245,631.85, plus interest); In re Sunbeam Secs. Litig., 176 F. Supp. 2d at 1337 (awarding attorney's fees of 25% of the common fund plus interest).

In short, the Court approves the award of $9,000,000 in attorney's fees to counsel, plus any interest on such fees at the same rate and for the same periods as earned by the Class Settlement Fund (until paid).

### B.   Litigation Expenses

Class counsel requested $114,870.41 in costs, plus interest. (Doc. # 101 at 28; Doc. # 124 at 13 n.24). These litigation costs include "expert fees, mediation fees, travel expenses for the in-person mediation, legal research costs, court filings, photocopying costs, clerical overtime, costs incurred in gathering evidence at Walmart stores, and postage." (Doc. # 101 at 28). These costs appear to have been necessary to build the case on the class's behalf, particularly in light of the data-driven approach to determining the overcharges paid by Walmart's customers.

36

Class counsel indicate that $78,145 of these expenses were for expert fees incurred for work performed by the data and class expert. (Id.). This expert helped class counsel to understand and analyze the voluminous data that Walmart produced in response to discovery requests. (Id.). The expert also analyzed estimated damages. (Id. at 29). The next highest category of expenses is $20,640.70 incurred for mediation with Mr. Robert Meyer, a nationally renowned JAMS mediator. (Id.). The remaining costs included "travel and lodging expenses for settlement meetings and mediations, LEXIS and PACER online legal research charges, photocopying expenses, filing and service fees, clerical overtime costs, postage expenses, and reimbursements to Class Counsel's agents for evidence relevant to this action purchased at Walmart stores." (Id.).

The expenses represent 0.26% of the settlement value and appear reasonable. See In re Equifax Inc. Customer Data Security Breach Litig., 1:17-md-2800-TWT, 2020 WL 256132, at *2, *40 (N.D. Ga. Mar. 17, 2020) (approving a settlement that authorized reimbursement of up to $3 million in expenses by class counsel out of a common fund valuing $380,500,000), aff'd in part, rev'd in part on other grounds, 999 F.3d 1247 (11th Cir. 2021); Hanley, 2020 WL 2517766, at *18 (approving

class counsel's request to recover "costs and expenses [that] equated to approximately 1.2% of the settlement fund" and noting that this value "is considered in line with normal expenditure amounts as a percentage of the total recovery amount"). Additionally, the fees requested are often approved as part of class settlements. See, e.g., Gevaerts v. TD Bank, N.A., No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *40 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of $300,666.95 in expenses, including, "among others, fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"); Denning v. Mankin Law Grp., P.A., No. 8:21-cv-2822-MSS-MRM, 2023 U.S. Dist. LEXIS 50371, at *20-21 (M.D. Fla. Feb. 15, 2023) (approving expenses including travel and dining expenses, mediation fees, and filing fees); In re Belmac Corp. Sec. Litig., No. 8:92-1814-SDM, 1994 U.S. Dist. LEXIS 21584, at *192 (M.D. Fla. Apr. 6, 1994) (approving a class action settlement where expenses submitted by class counsel included clerical overtime).

Thus, the Court awards the requested costs and expenses to counsel.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement (Doc. # 100) is **GRANTED**.

(2)   Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Expenses (Doc. # 101) is **GRANTED**.

(3)   This Final Judgment and Order of Dismissal ("Judgment") incorporates by reference: (a) the Settlement; and (b) the Notice, Summary Notice, and Declaration of the Claims Administrator with respect to Notice, all filed with this Court.

(4)   This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

(5)   Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court affirms its determinations in the Order and finally certifies, for purposes of settlement only, a Settlement Class defined as: all Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ("Walmart Store") during the Settlement Class Period. Excluded from the Settlement Class are:

a.   (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart

39

Inc.'s directors, officers, and executives; (3) Class Counsel; and

b.   Settlement Class Members who timely and validly requested exclusion from the Class who are listed on Exhibit A hereto as having submitted an exclusion request allowed by the Court.

(6)   The Court hereby affirms its determination in the Order and finds, for the purposes of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the Class is so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Class; (c) Plaintiff's claims are typical of those of the Class; (d) Plaintiff and Class Counsel have fairly and adequately represented the Class's interests and will continue to do so; (e) questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(7)   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only,

the Court hereby affirms its determinations in the Order and finally appoints Plaintiff as Class Representative and Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty of Chimicles Schwartz Kriner & Donaldson-Smith LLP as Class Counsel.

(8) The Notice of Pendency and Proposed Settlement of Class Action ("Notice") given to the Class was the best notice practicable under the circumstances, including the individual notice to all Class Members who could be identified through reasonable effort. The Notice provided the best notice practicable to Class Members under the circumstances of those proceedings and of the matters set forth in the Notice, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure (including Rules 23(c)-(e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and other applicable laws. No Settlement Class Member is relieved from the terms of the Settlement, including the Releases provided for therein, based upon the contention or proof that such

Settlement Class Member failed to receive actual or adequate notice.

(9)  A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the Final Approval Hearing. There have been six objections to the Settlement each of which was addressed by the Court at the Final Approval Hearing.

(10) Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determinations in the Order, fully and finally approves the Settlement set forth in the Settlement Agreement in all respects and finds that:

   a.  the Settlement is, in all respects, fair, reasonable, adequate and in the best interest of the Settlement Class;

   b.  the Settlement was the result of informed, serious, extensive arm's-length negotiations among experienced counsel following mediation under the direction of an experienced mediator;

   c.  there was not collusion in connection with the Settlement; and,

   d.  the record is sufficiently developed and complete to have enabled Plaintiff and Walmart to have

adequately   evaluated   and   considered   their positions.

(11) Accordingly,   the   Court   authorizes   and   directs implementation and performance of all the terms and provisions of the Settlement Agreement, as well as the terms and provisions hereof. Except as to any individual claim of those Persons (identified in Exhibit A attached hereto) who have validly and timely requested exclusion from the Settlement Class (for whom Walmart can and expressly does retain any defenses to such excluded claims), the Court hereby dismisses the Action and all Released Claims with prejudice as provided in the Settlement Agreement.

(12) The Parties are to bear their own costs, except as and to the extent provided in the Settlement Agreement and herein.

(13) Pursuant to Federal Rule of Civil Procedure 23(h), the Court hereby awards Class Counsel Attorney's Fees in the amount of $9,000,000, plus litigation costs totaling $114,870.41, payable pursuant to the terms of the Settlement Agreement.

(14) The Releases set forth in Section 12 of the Settlement Agreement, together with the definitions contained in

43

the Settlement Agreement relating thereto in Section 12, are expressly incorporated herein by reference. Accordingly, this Court orders that:

a.   Upon the Effective Date of the Settlement, by operation of this Judgment, Settlement Class Member Releasing Parties shall have fully and forever released, compromised, settled, resolved, relinquished, waived and discharged each and every Settlement Class Member Released Claim against Walmart Released Parties.

b.   Upon the Effective Date, and by operation of the Judgment, Walmart Releasing Parties shall have fully and forever released, compromised, settled, resolved, relinquished, waived and discharged each and every Walmart Released Claim against Settlement Class Member Released Parties. Nothing in this Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of the Stipulation or the Judgment.

c.   Notwithstanding any provision in the Judgment and Settlement Agreement, Plaintiff and Settlement Class Members are not releasing any claims for personal injury or wrongful death. Further, this

44

agreement does not affect claims by any governmental authority.

(15) Any order entered concerning the allocation of the Net Settlement Fund to Authorized Claimants, shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

(16) The Settlement, the Settlement Agreement (whether or not consummated) and the Exhibits thereto, including the contents thereof, the negotiations leading to the execution of the Settlement Agreement, any proceedings taken pursuant to or in connection with the Settlement, and/or approval of the Settlement (including any arguments proffered in connection therewith), and any communication relating thereto, are not evidence, nor an admission or concession by any Party or its counsel, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Litigation, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding.

(17) Neither the Settlement, the Settlement Agreement, the negotiations leading to the execution of the Settlement Agreement, nor any proceedings taken pursuant to or in

connection with the Settlement and Settlement Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith), nor any communication relating thereto, shall be:

a.   offered or received against any Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Party of the truth of any allegations by Plaintiff, or the validity of any claim or defense that has been or could have been asserted in the Litigation, or the validity or deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Claims, or that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than the Settlement; or,

b.   offered or received against any Party as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission, the absence of any fault, misrepresentation, or omission, with respect to any statement or written document

46

approved or made by Walmart, or against Plaintiff or any Member of the Settlement Class as evidence of any infirmity in the claims of Plaintiff and the Settlement Class.

(18) However, the Parties may reference or file the Settlement Agreement and/or Judgment from this Litigation in any other action that may be brought against them in order to (a) effectuate the Releases granted them hereunder; and (b) support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

(19) Walmart has denied and continues to deny liability and maintain that it has meritorious defenses and have represented that it entered into the Settlement solely in order to avoid the cost and burden of litigation.

(20) Without affecting the finality of this Judgment in any way, this Court hereby retains jurisdiction up to and including December 31, 2024.

(21) If the Settlement does not become effective in accordance with the terms of the Settlement Agreement,

or the Effective Date does not occur, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement, and the Class Settlement Fund shall be returned in accordance with the terms of the Settlement Agreement.

(22) Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

(23) The Clerk is directed to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of June, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE