Tampa FL Dec 27th 2024          Page 1 of 8

To: **UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION**

Court Clerk,

Att: Judge, The Honorable Virginia M. Hernandez Covington.

801 North Florida Avenue Tampa, Florida 33602

From: **VASSILIOS KUKORINIS, Plaintiff v. WALMART, INC**., Defendant. NO. 8:22-CV-02402 Individually and on behalf of all others similarly situated,

**Re: Concerns Regarding the Distribution of the Net Settlement Fund in the Class Action Lawsuit**

Your Honor,

My name is Vassilios Kukorinis, and I am the Plaintiff/Class representative for the case: VASSILIOS KUKORINIS v. WALMART, INC., NO. 8:22-CV-02402.

This letter seeks to inform the Court about significant discrepancies, ethical concerns, and procedural errors in the administration and distribution of the Net Settlement Fund from this class action lawsuit. As the class representative, I have a duty to ensure that these matters are addressed transparently and fairly.

There are numerous complaints from approved class members who are receiving excuses for the delays of payments, due to ongoing appeals, etc. **"We are hoping to send out payments by the end of this year (2024) or the beginning of next year."** Besides that, many Walmart customers never received the Notice, while many others complain that the claims administrator, ANGEION GROUP, used their email from a different settlement.

Here is an example from the Better Business Bureau (BBB):

Review from George N. (01/18/2024):

"I have battled Angeion Group since 2014. They have so far added me to four different settlements that involve defendants that I have never done business with. I called the defendants each time and verified that I had no accounts with them. In fact, I was living in Singapore during the period covered on three of the four cases. I do not believe for a moment that they obtained my name, address, or email from any of the defendants. I firmly believe that they fabricate the class member lists using some mailing list derived from past magazine subscriptions or possibly purchased on the dark web et. etc. I have also demanded multiple times over the years that they put a persistent block on my name. They make ludicrous claims that they have an obligation to the court to add my name to the list. I have told them over and over again that no civil court owns my details, and I do not recognize its alleged authority. Wake up, Angeion Group".

Similar complaints/protests are found on the legal site **www.topclassactions.com**.

According to ANGEION Group's declaration, the process undertaken by Walmart provided the Claims Administrator with a data file containing <u>81,429,269 unique records, with each record containing a customer's first name, last name, at least one email address, and a unique customer ID.</u>

Under Rule 23, "a court that certifies a class must appoint class counsel who must fairly and adequately represent the interests of the class." Also, the Settlement is not the product of fraud or collusion, and the scope of the release is neither vague nor overly broad.

On September 16, 2024, I requested an update by email from class attorneys **Nicholas E. Chimicles** and **Kimberly Donaldson Smith** regarding the distribution progress and the current status of the payments. Specifically, I asked for the final number of Walmart victims that will receive the $10, $15, $20, $25, and $500 payments, and if the amounts changed (subject to proration due to numerosity of participants) increased or decreased, what the new figures are. They responded that **"the claims administrator would review** (again!) **the approximately four million submitted claims for completeness, fraud, and any deficiencies. That process is ongoing. If you are represented by counsel, please ask them to reach out to us."**

Mr. Nicholas Chimicles and Ms. Kimberly Donaldson Smith, informed me months ago that "the claims administrator has identified about 1.2 to 1.3 million of those claims (out of the 3.9 million) as suspected fraudulent claims." Also, after the approval of the settlement, I was informed that **"the claims administrator is going to cost about $1.5 million more or less. So, you're looking at about $35 million for class members, and half a million in interest, and by the time we're done, it's going to be $1 million in interest."** At the Final Hearing, Class attorneys announced (and had already approved) an increase in the cost by another $1 million for ANGEION GROUP, balloon totaling to **$2.5M**!!!

Mr. Chimicles initially informed me that **"We are going to hire a mystery shopper company. We want to hire trained people to send them across the country and gather pricing information from as many states as possible."** Of course, that never happened, as the Plaintiff's attorneys instead, selected evidence and proof I gathered over more than 6 years in different states, at a personal cost of more than $100,000 plus time, aggravation, harassment, and all the dangers associated with going after a Giant Corporation.

Before the settlement, Mr. Chimicles informed me that **"Walmart is not going to stop the game they play and we are watching, and if they continue, we will file another case**."

Mr. Chimicles notified me after the settlement that **"We have agreed not to sue again and not to make any disparaging remarks about Walmart**."

Mr. Chimicles was aware that I have more than 1800 receipts with overcharges, and I suggested including examples of all different fruits and vegetables Walmart defrauded (and still does) customers with the false (inflated weight). He insisted on ONLY CITRUS because: "We selected the cheating of the oranges' weight as an example. We like it for its simplicity and specificity, and of course, we can add to that." Of course, that never happened.

Your Honor, respectfully I am asking that you take into consideration the following issues, troubling facts, and evidence that has come to my attention after reviewing the records. One of the critical concerns is

the peculiar relationship (business and family) between the Lead Plaintiff's attorney, Mr. Nicholas Chimicles, and the claims administrator, Angeion Group.

As I mentioned during the Final Fairness Hearing, due to personal significant health challenges stemming from a work-related injury, I developed an excruciating 24/7 pain syndrome, and the use of cocktail medications for treatment seriously damaged my vision, hearing, liver, etc., with the worst side effect being problematic/erratic memory. Without my laptop's *(which I found out at the last moment was not permitted in court)* zoom capability, I had difficulty expressing my thoughts clearly in Court.

As a result of my medical condition and Mr. Chimicles manipulation and lies during the negotiation period, I was coerced into settling for less than what the class members were entitled to. Mr. Chimicles and Ms. Donaldson used tactics ("carrot and stick" with threats and promises) of deceit to pressure me into agreeing to terms that were less favorable for the class as a whole, and to accept provisions specifically targeted against myself, my friends, and my family, in order to neutralize me now and forever from exposing Walmart's deceptive practices. We hear every day from law enforcement agencies**: "See something, say something."** NOT "Keep Schtum," the slang term that means to be silent or dumb. Systematically overcharging customers can be considered fraud, which is typically classified as a felony. Knowledge of the felony and failure to notify the authorities could result in me being charged with **"Misprision of a felony".**

Your Honor, in my opinion, the actions of Mr. Chimicles and Ms. Donaldson were unprofessional, dishonest, and failed to meet the standard of care expected of attorneys. They misled the Court and the class members, prioritizing their personal gain over the interests of the class. They engaged in unethical conduct, including failing to adequately represent the class, misrepresenting settlement terms, failing to adequately investigate claims, and not pursuing all available legal avenues to maximize potential recovery for the class.

I understand that such issues have to be reported and investigated by the respective State Bar Associations of the attorneys involved. I intend to do that and also file a legal malpractice lawsuit against the plaintiff's attorneys. As the class representative, I am obligated to point out to this Court the discrepancies or intentional errors I discovered before the settlement distribution process is closed.

One example of their misrepresentation appeared many times in the settlement documents, as well during the Final Fairness Hearing, when the all attorneys stated emphatically that only 152 timely opt-out requests had been received, which represented approximately **1/10,000th of 1%** of the 80 million email notices sent. This figure is mathematically incorrect. The accurate percentage of opt-outs should **be 1/5263 of 1%**, not 1/10,000th of 1%. Since the low opt-out rate weighs in favor of granting final approval of the Settlement, this discrepancy raises questions about the accuracy and integrity of the data presented to the Court.

On June 17, 2024, to reporter John O'Brien of the FLORIDA RECORD legal site, in a article, Plaintiff's attorney insulted every current and future USA objector by saying: "Anyone claiming there should have been a better outcome is wrong." (https://flarecord.com)

Furthermore, during the Final Fairness Hearing, Ms. Kimberly Donaldson claimed that the $45 million *(gross)* settlement amount was within the "range of reasonableness," based on the expert estimation of damages in the range of $331 million to $421 million. She declared that "the $45 million settlement provides an immensely reasonable, immediate monetary recovery for the Settlement Class, that secures between **11% and 14%** (later she increased it to 11-15%) of Plaintiff's expert-calculated estimate of nationwide class damages (16 FA Motion 14–17; 17 KDS)." In fine print, it added, **"Walmart disputes the calculations and conclusions made by Plaintiff's expert as to the maximum potential nationwide recovery."**

However, if the maximum damages were estimated to be $421 million, 14% then the gross settlement should be closer to $59 million, not $45 million (which is 10.7%). The attorneys' presentation of false numbers has led to significant losses for the class members, as many have been deprived of their legal rights as a result of these misrepresentations.

Your Honor, I was not made aware of the full extent of the damages or other material aspects of the settlement, including the expert's estimation of damages discussed at the mediation, plus I was not allowed to be present. However, 2 weeks after the mediation meeting in California, Mr. Chimicles informed me as follows:

"We received hundreds of millions (later called it billions) of transaction data from Walmart. And from that data, we came up with a very solid estimate of damages for this case. The expert had analyzed over 4 million transactions and found that 13% of all transactions were overpriced. The customer paid too much."

He also informed me **that "Walmart had conducted its own analysis, which showed similar findings. They computed that, the 13 percent of all transactions were overpriced. They actually analyzed ALL the transactions."**

Given the fact that Walmart's annual sales are more than $600 BILLION, over 5+ years (of the class period), even 2% of the estimated overpriced transactions should be a lot more than $45 million, rather BILLIONS.  These discrepancies in the numbers and the handling of the case have left me, and tens of millions of customers - with reviews and comments on social media - questioning the fairness of the settlement *process (minus the 152 persons that opted out),* not to mention the 68 million customers who did not participate and lost their legal rights to sue for justice, just because they never opened the suspicious-looking **"SUMMARY NOTICE" sent as SPAM**. Even the Summary Notice sent to me at my Microsoft OUTLOOK email account *(which I have used for years for online orders to Walmart)* was characterized as SPAM and went straight to the TRASH BIN, where automatically deleted after 6 days.

Mr. Chimicles assured me before the settlement, **"We are going to insist that the claims process is easy, very consumer-friendly, and requires minimal effort to get the money. And if you are a business and have the proof, you can get thousands of dollars back, and if there is residual (leftover money), it will go to food banks."**

The SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT, dated January 19, 2024, stated**: "No supporting documentation is required to be eligible to receive a payment. You may submit a claim even if you no longer have receipts**…" However, after approval, in order to theoretically receive the

maximum $500 (which is 2% of $25,000 worth of overcharged purchases with the corresponding UPC barcodes), you have to spend minimum a month with an accountant to achieve it. So let see how many succeeded to obtain.

Ms. Kim Donalson Smith attested: **"We provided him** *(class representative Kukorinis)* **with a draft of the release at the beginning of November 6th, and the exact same form of release, with no changes, is what he signed on the 15th and what was filed with the Court."**

Let's examine that. The November 6th draft I received, mentioned the following two terms:

**(v)** If the Approved Claimant has receipts, proof of purchase, or other documentation that substantiates (a) each Weighted Good and Bagged Citrus purchased in-person in a Walmart Store during the Settlement Class Period, and (b) the amount paid for each Weighted Good and Bagged Citrus purchased, but (c) lacks proof to substantiate the actual amount overcharged for those purchases, then that Approved Claimant will be entitled to receive 2% of the total cost of the substantiated purchases, capped at forty-five dollars ($45.00); or

**(vi)** If the Approved Claimant has receipts, proof of purchase, and other documentation that substantiates (a) each Weighted Good and Bagged Citrus purchased in-person in a Walmart Store during the Settlement Class Period, and (b) the amount paid for each Weighted Good and Bagged Citrus purchased, and (c) also has the packaging to demonstrate the actual amount overcharged for each Weighted Good and Bagged Citrus purchased**, then that Approved Claimant will be entitled to recover the actual amounts overpaid, without any cap.**

However, these two terms (**V & VI)** changed entirely without prior mention discuss or notify me and by the time I received the Final PDF Document for signing on November 15[th,] was like this.

**(v)** If the Approved Claimant has receipts, proof of purchase, or other documentation that substantiates (a) each Weighted Good and/or Bagged Citrus purchased in-person in a Walmart Store during the Settlement Class Period, and (b) the amount paid for each Weighted Good and/or Bagged Citrus purchased, then that Approved **Claimant will be entitled to receive 2% of the total cost of the substantiated Weighted Goods and/or Bagged Citrus purchased, capped at five hundred dollars ($500.00).**

Carrot & Stick. I will reveal the threats in a following Legal Malpractice suit, but here is a taste of the "Carrot" I was indulged with by Mr. Chimicles in order to sign the settlement at a time I was in 24/7 unbearable pain, fighting for my life.

**"Walmart is seriously talking about arranging an employment or consultant arrangement, and also bringing you in as a consultant for other cases. Because what you do is not easy, and they can't find people to do it. Look, you don't have to go far. Go to the stores you visited and they don't have people with the intelligence. They really don't. They can't explain what's going on. It's scary. But that's the state of intelligence. And that's why they want a person like you to guide and educate them. Like an employee, you get health insurance…"**

Your Honor, the amount of up to $421 million was never mentioned to me, the Class representative, nor many other significant terms which are now being called **"a material part of the settlement"** that Mr. Chimicles and Ms. Donaldson falsely claimed I was aware of (*and I can prove it).*

So, when the plaintiff's attorney Ms. Kimberly Donaldson responded at the Final hearing to the Judge's question about why the $45 million recovery is significant, she replied, "Your Honor, the recovery of $45 million represents an 11 to 14 percent recovery of the estimated damages, and that's significant." She was intentionally lying through her teeth. At the Final hearing, she testified: "We start at the 11 to 15 percent number because we're looking holistically at the entire class." She added, "The net settlement fund, when allocated to the potential legitimate claimants, will result in a 60 to 65 percent recovery of their damages."

So, what is the Net Settlement that 3.9 million class members are going to share with the help of the Class administrator, **ANGEION Group**, whose President & CEO, Steven Weisbrot, presents himself as an internationally recognized class action notice expert and one of the premier thought leaders in the class action administration industry? The ANGEION Group was selected by the Plaintiff's attorney Nicholas E. Chimicles, who is also the founder and senior partner of **CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP** in Haverford, PA, just 10 miles down the road from the administrator's location.

There is one more coincidence that someone might consider a conflict of interest. Until 2020, the ANGEION Group Class Administrator Founder & CEO, was **Christofer Chimicles**, the late son of Plaintiff's attorney Mr. **Nicholas Chimicles**. This was a matter he "forgot" to mention to me, the Class representative, because I would object as unethical the handling of $45 million and the interests of 3.9 million class members being overseen by a family business.

Another "coincidence" is that after the Final Hearing, the Class Administrator Angeion Group announced the appointment of a young lawyer named **Stephanie (Chimicles) Saunders** as their Vice President of Class Action & Mass Tort Services. According to her bio, Stephanie Chimicles began her legal career at Chimicles Schwartz Kriner & Donaldson-Smith LLP 9 years ago, where (until recently) she represented consumers and investors in complex litigation in federal courts throughout the country. Some of Stephanie's most notable matters include: Products Litigation; Kukorinis v. Walmart, Inc!!!

Another close family member, whom I never met, spoke to, or had any contact with, moved from the plaintiff's "team" to "help" the settlement distribution administrator Angeion Group, where the current CEO, Steven Weisbrot, who presents himself as an internationally recognized class action notice expert and one of the premier thought leaders in the class action administration industry, was just 3 years ago an assistant to the ANGEION GROUP then-owner and CEO Christofer Chimicles.

An establishment with countless complaints at the BBB and negative reviews on related class action sites for mismanagement, errors, delays, etc., in distributing class action funds.

ANGEION Group claimed that they received 130 million emails from Walmart in order to send the SUMMARY NOTICE OF PROPOSED CLASS ACTION SETTLEMENT. Requiring direct email notice was the first time (experimental) in a Walmart consumer class action settlement of this magnitude. Later on, according to ANGEION GROUP, after filtering as suspicious and fraudulent, the number was reduced to 80 million as legit.

A declaration (before final hearing) from its CEO states: **"The process undertaken by Walmart provided the Claims Administrator with a data file containing 81,429,269 unique records (initially claimed 130 M), with each record containing a customer's first name, last name, at least one email address, and a unique customer ID."**

The question is, did Walmart or Angeion actually provide and sort the tens of millions of emails, and <u>why was the customer's first name and last name not included in the Summary Notice, instead of a serial number, in order not to be perceived from Internet providers as Spam?</u>

This raises questions about the legitimacy of the email list and the fairness of the notification process. Additionally, many legitimate customers, including military personnel Latino (could not read English) customers, and Canadian who spend a significant amount of time in the U.S., may have been unfairly excluded from receiving settlement notices, just because their IP address was not in the US.

Considering Walmart's Terms of Use for online orders *(which nobody reads),* data should be accurate. Please read some of them: "We collect information from you in a variety of ways when you interact with our stores, websites, and mobile services. You authorize your wireless operator (AT&T, Sprint, T-Mobile, US Cellular, Verizon, or any other branded wireless operator) to disclose to Walmart and its third-party service providers your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI), and other subscriber status and device details, if available, solely to verify your identity and prevent fraud for the duration of the business relationship (*recently removed)"*

Reminding that Class Counsel negotiated and insisted upon direct Email Notice, so the question remains. If was not Walmart (since they have such a collection of accurate data), who provided ANGEION GROUP with the additional "wrong" emails? Maybe the Review from George N. 01/18/2024 at the Better Business Bureau (one of many) mentioned on the first page, explains the wonder.

Regarding Plaintiff's email, it is Ex. C to KDS Suppl. FA Decl., Ms. Kim Donaldson Smith purposely misinformed the Court about my May 21st email to appear and comment at the Final Hearing. **Was not ONLY about to express regret with executing an individual release as part of this Settlement**. She never mentioned (*as described in my letter*) the reasons I was doing that and purposely did not include it or attach my letter and photo evidence and proofs of Walmart's ongoing practices of overcharging customers up to 500%. Instead, she attached/hinted it 10 days later, in the unrelated motion (to discredit the objectors' letters), within a multi-page <u>PDF after reducing the font size and scanning resolution in order to make it difficult, if not impossible, for someone to notice it or read or understand it.</u>

She also justified the overbroad individual release not to sue Walmart, which never mentioned to me that it would be part of the settlement, by saying, **"It is not atypical that a named plaintiff enters into a release that is broader or different than the settlement class release,"** and mentioned: See <u>e.g. Roubert v. Capital One Fin. Corp., No. 8:21-cv-2852.</u> This is irrelevant since this is a case about a $5,000 award to the plaintiff as consideration for the general release of the defendant from liability for other claims she could assert against it.

But in this case, I did not receive any award or compensation of my expenses, neither for been overcharged thousand times and I was told I cannot opt out. What Mr. Nicholas Chimicles falsely

covenanted to me many times with Ms. Kimberly Donalson Smith as witness, was that **"we have a very strong base on which to assert that you are entitled to a special service award to a plaintiff such as yourself that we should get around or at least make a very good argument to get around that, and to make a request for a substantial award for you."** At the end of course naturally, they denied it.

Walmart falsely stated to the court that "Mr. Kukorinis waived and released many of the claims he attempts to re-assert here in his prior class settlement agreement. He unsuccessfully attempted to disavow the settlement in that case". The fact is that Plaintiffs' attorneys failed to inform the court that Walmart in the previous case committed to: **"Business Practice Commitments In addition to the monetary compensation provided to class members by the Settlement, Walmart has reviewed the examples of the Pricing Practices identified in Plaintiff's Second Amended Complaint and provided during mediation and committed to the remediation of the Pricing Practices. These commitments will be paid for by Walmart separate and apart from the Qualified Settlement Fund**. JAY Decl., ¶ 33"

Understandably, some of the Objectors requested: "Settlement does not, but must, include injunctive relief." Plaintiff's attorneys promised me just that, but they never delivered. Instead, as proven, they tried and succeeded in downplayed the seriousness of the case, which keep playing a major role in manipulated the true inflation.

Your Honor In conclusion, as the class representative, I am obligated to respectfully request that the Court thoroughly review the concerns raised in this letter, especially regarding my ex-attorneys Mr. Nicholas Chimicles and Kimberly Donalson Smith, and take appropriate action to ensure that the distribution of the Net Settlement Fund is conducted fairly and transparently. I believe that the integrity of the settlement process has been compromised, and I seek your guidance in ensuring that all class members receive their fair share of the settlement amount.

Thank you for your time and consideration.

Respectfully,

Vassilios Kukorinis

Tel: 347-837 1918 Email: vaskuko@gmail.com