UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**VASSILIOS KUKORINIS,**
individually and on behalf of all
others similarly situated,

*Plaintiff,*

v.  No. 8:22-cv-02402

**WALMART, INC.,**

*Defendant.*

## CLASS COUNSEL'S RESPONSES TO CORRESPONDENCE

In accordance with the Court's order at Dkt. 145, Class Counsel respectfully submit this response and the Declaration of Denise Earle Regarding Settlement Administration ("Earle Decl.") in response to: (1) Mr. Fishkin's and Mr. Taylor's correspondences concerning the processing of their claims (Dkts. 139, 144); and (2) Plaintiff's letter titled "Concerns Regarding the Distribution of the Net Settlement Fund" (Dkt. 141, the "Letter"). Class Counsel provided a preliminary response to the Letter in their December 31, 2024 Notice of Filing Concerning the Status of the Settlement Claims Processing (Dkt. 142, "Status Filing") at 3-4, and do not repeat those responses here.

**(1)** <u>Notice and Claims Administration Processes</u>

Class Counsel, in connection with both preliminary and final approval of the

1

Settlement,[1] submitted Declarations from Angeion,[2] the Court-appointed Claims Administrator, that set forth detailed information regarding the notice and claim administration processes to be employed and that were employed.[3] Most recently, with the claims processing winding up, Class Counsel filed the Declaration of Denise Earle Regarding the Status of Claims Processing (Dkt. 142-1). Class Counsel also note that the estimated costs of notice and claims administration were documented in filings made by Class Counsel prior to the June 12, 2024 final approval hearing ("FAH"), and discussed at the FAH,[4] contrary to the implication at page 2 of the Letter. *See* Dkt. 100 at 9; Dkt. 100-1 ¶95; Dkt. 100-2 ¶42.

The Letter at pages 1-2, 4, 7-8 makes wrong, speculative statements, about the emailed Notice, including that the emails used were not provided by Walmart. Prior

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated November 15, 2023 ("Settlement Agreement") and exhibits thereto, filed on November 16, 2023, at ECF No. 71-2.

[2] Angeion, selected pursuant to a request for proposal process among several experienced administrators (Dkt. 71 fn. 4; Dkt. 71-1 ¶28; Dkt. 101-1 ¶¶65-66), has extensive, long-standing experience in designing and implementing class action notice plans, and handling class action settlement administration. *See* Earle Decl. ¶¶3-7; Dkt. 71-4. Approved by both federal and state courts nationwide and abroad to provide notice and claims administration services, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. Earle Decl. ¶¶3-7.

[3] *See* Declaration of Steven Weisbrot, Esq. Re: Angeion Group Qualifications & The Proposed Notice Plan (Dkt. 71-4); Supplemental Declaration of Steven Weisbrot, Esq. Re: Proposed Notice Plan (Dkt. 74-3); Declaration of Steven Weisbrot Regarding Current Status of the Settlement Notice Plan, The Settlement Website and Toll-Free Number, Claim Forms Received, Opt-Outs, and Objections (Dkt. 100-2); Supplemental Declaration of Steven Weisbrot Regarding Current Status of the Settlement Notice Plan, The Settlement Website and Toll-Free Number, Claim Forms Received, Opt-Outs, and Objections (Dkt. 124-7); Unopposed Mot. for Preliminary Approval of Class Action Settlement (Dkt. 71 at 2 & n.4, 10-11, 28-29); Supplemental Submission Regarding Notice and an Updated Proposed Preliminary Approval Order (Dkt. 74 at 1-5); Unopposed Mot. for Final Approval of the Class Action Settlement (Dkt. 100 at 1, 6-9, 17-18, 27-29); Donaldson-Smith Decl. in Support of Plaintiff's Mot. For Final Approval of the Class Action Settlement and Motion for Attorneys' Fees, Costs and Expenses (Dkt. 100-1 ¶¶65-66, 84-99).

[4] June 12, 2024 Hearing Tr. at 67:25-68:24 (noting that the total of attorneys' fees and claims administration costs equating to "25 to 26 percent" is "still within the acceptable rate").

2

to preliminary approval (*see* Dkts. 74 and 74-1), and prior to the FAH (*see* Dkt. 100-2 at ¶¶6-7), Class Counsel and Angeion detailed for the Court that: Walmart identified from its data, persons who had likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart had an email address; Walmart provided that list to Angeion; and Angeion removed duplicate records from the list and applied industry-standard email cleansing processes to derive a list of approximately 81 million Unique Records to whom Email Notice was sent. *See* Dkt. 100-2 at ¶¶6-19; *see also* Earle Decl. ¶¶8-11.

Further, Angeion did not supplement or add to the Walmart-provided list, as the Letter at pages 1-2 speculates. *See* Earle Decl. ¶12. The Letter's out-of-context references and wrong speculation about "George N." (who *did not* receive an email Notice in this Settlement, and his BBB posting quoted in the Letter does not say he did) are addressed in the Earle Decl. ¶12.

Angeion, which has significant experience disseminating email notice to voluminous class sizes (Earle Decl. ¶7) deployed industry best practices to increase the deliverability of email notifications including to strategically stagger the release of the emails with such "priming" or "warming up" minimizing the probability of ISPs blocking email notices. Earle Decl. ¶¶7, 9-14; *see also* Dkt. 74-3 ¶13; Dkt. 100-2 ¶14. Emailing Notice is a commonly approved and preferred method of disseminating class action notices.[5]

---

[5] *See* Unopposed Mot. for Preliminary Approval of Class Action Settlement (Dkt. 71 at 27); *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262-63, 1265 (S.D. Fla. 2016) (finding notice primarily through email was "the best practicable notice" rejecting objector's argument that spam filters rendered email notice ineffective).

Moreover, the Notice Plan included a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign, search engine marketing, and print publication (plus a press release and social media monitoring). Earle Decl. ¶¶15-17; *see also* Dkt. 71-4 at ¶¶33-54; Dkt. 100-2 ¶¶24-25. Also, the Settlement received national news coverage. Dkt 100 at 9; Dkt. 100-1 ¶89. Further, contrary to the Letter's claims on page 7: non-English speaking claimants had access to a Spanish translated Long Form Notice, Summary Notice, and Claim Form; emails were not excluded based on IP addresses; and, the use of the Notice ID[6] as opposed to names in the email does not influence whether an email is classified as spam. *See* Earle Decl. ¶13.

The comprehensive media notice plan, combined with the direct notice efforts, exceeded expectations and the guidelines in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist, in terms of reaching potential class members. *See* Earle Decl. ¶16; Dkt. 124-7 ¶¶10, 28-30.

Additionally, contrary to the Letter's statements at page 1, there has not been a delay in making distributions from the Net Settlement Fund. In this regard, the Letter generally references complaints from unidentified purported class members, including complaints about "excuses for the delays of payments, due to ongoing appeals" (of which there were none). Rather, as discussed, the diligent and thorough administration of almost 4 million claims has been ongoing. It has proceeded apace, consistent with the processes set forth in the Declarations filed with the Court, and it is nearing its

---

[6] *See* Dkt. 71-4 ¶27; Dkt. 74-3 ¶¶5, 12; Dkt. 100 at 8; Dkt. 100-2 ¶8.

conclusion as Class Counsel reported in their recent Status Filing and here.

Finally, the September 16, 2024 email exchange between Plaintiff and Class Counsel, which is selectively quoted on page 2 of the Letter, simply reflects that Class Counsel accurately conveyed to Plaintiff that, as of that time, the administration of the claims was ongoing, and, thus, the numbers Plaintiff requested could not be provided.[7]

**(2)   Mr. Fishkin's and Mr. Taylor's Correspondences**

As detailed in the Earle Decl. ¶¶18-23, and in Angeion's prior-filed declarations (Dkt. 71-4 ¶¶61-64; Dkt. 100-2 ¶38), the submission of fraudulent claims is a serious problem in class action settlements. Fraudulent claims, if approved and paid as part of a settlement, can reduce the valid claimants' *pro rata* share of the net settlement fund. Accordingly, because of the material impact and harm to legitimate class members who have valid claims, Angeion's prior-filed declarations stated that the claims submitted would be reviewed for fraud and identified the processes that would be applied, including the application of the AngeionAffirm fraud detection system. Dkt. 71-4 ¶¶61-64; Dkt. 100-2 ¶¶37-38; *see also* Earle Decl. ¶¶18-23.

As reported by Angeion, 2,372,248 claims were flagged by AngeionAffirm or through internal reviews and considered initially rejected due to unverifiable information. Earle Decl. ¶¶25-31; Dkt. 142-1 at ¶6(a). Beginning on December 2, 2024, Rejection Notices were sent to claimants, who were given the opportunity to complete a simple one-time passcode process ("OTP Process") to verify the authenticity of the

---

[7] Further, Plaintiff's email included statements about other matters, including some of which appear in the Letter, which is why Class Counsel expressly referenced Plaintiff's possible representation by legal counsel with whom Class Counsel would communicate going forward. Plaintiff did not respond, and Class Counsel does not know whether Plaintiff was then or is now a represented party.

claimant and ensure that the claim was submitted by a legitimate Settlement Class Member. Earle Decl. ¶¶26-29. Angeion received feedback from some claimants who had received the Rejection Notices, but who wanted (for a variety of reasons) to use a phone number for the OTP Process that was different than the one appearing on their original claim; the OTP Process did not initially permit that (it required that the phone number associated with the selected payment method match the phone number provided on the claimant's original claim form as an additional fraud prevention mechanism). *Id.* at fn. 6. Upon consultation with Class Counsel, on December 10, 2024, Angeion implemented a change to the OTP Process that would allow claimants to use a different phone number to complete the OTP Process. *Id.* And, also upon consultation with Class Counsel, Angeion is sending Reminder Rejection Notices to those who have not yet responded, giving them an additional 21-days to respond and complete the OTP Process. *Id.* at ¶31. Once they complete the OTP Process their claim will be processed. *Id.* at ¶31-32.

As discussed in the Earle Decl. ¶¶38-41, Messrs. Fishkin and Taylor each received a Rejection Notice. Angeion has reviewed their correspondences to the Court (Dkts. 139, 144), and provided information to Class Counsel about the issues raised therein. *See* Earle Decl. ¶¶38-41. As to Mr. Fishkin, Angeion confirms that he had successfully completed the OTP process on December 12, 2024. *Id.* at ¶39. On January 3, 2025, Angeion communicated with him by email and phone to confirm its receipt of his verified claim. *Id.* As to Mr. Taylor, his correspondence references that he was unable to correct an incorrectly entered phone number to respond to the Rejection

6

Notice. Dkt. 144. Angeion does not have a record of receiving any phone or email contact from him concerning his issues. *Id.* at ¶40. As noted above, the OTP Process was modified on December 10 to permit the use of a corrected phone number. Angeion was in contact with Mr. Taylor on January 7, 2025, via phone and email and provided him with information on how to proceed with the OTP process, which he has completed. *Id.* at ¶41.

In addition, Mr. Taylor's correspondence indicates that he was unable to contact Angeion. In response to that concern, and to the extent some of the unidentified complaints noted in the Letter imply or state a concern with a class member's ability to communicate with Angeion, Angeion has confirmed the multiple ways that class members could and did communicate with Angeion, and confirmed that such systems have been operational and accessible throughout the Settlement process. *Id.* at ¶¶42-47. Indeed, as of January 6, 2025, millions of unique users accessed the Settlement Website, and Angeion received tens of thousands of phone calls, voicemails, and emails concerning this Settlement. *Id.* at ¶¶43-46.

**(3)** <u>**Additional Points in the Letter**</u>

Although not directly related to notice and claims administration, Class Counsel addresses here several other statements from the Letter that were not otherwise addressed by the information provided above or in the Status Filing.

The Letter is titled "Concerns Regarding the Distribution of the Net Settlement Fund," yet the Letter rehashes untimely arguments about the fairness of the Settlement and the individual release that were addressed during the FAH and in the Court's June

7

28, 2024 Order granting final approval of the Settlement (Dkt. 132, "Final Approval Order") and makes irrelevant (scurrilous) assertions that are not based in fact. *See* Status Filing, Dkt. 142 at 3-4.

Plaintiff's arguments about the fairness of the Settlement are incorrect, inapposite, and disregard the information that was detailed in court filings made (and provided to Plaintiff) in support of preliminary approval and final approval, discussed at the FAH, and addressed in the Court's Final Approval Order. Indeed, the Letter itself makes clear that the attacks are based on events and information known by the Plaintiff prior to the FAH.[8]

- The Letter at page 2 references the use of mystery shoppers. However, it was not necessary to use mystery shoppers for purposes of identifying the overcharges or damages because, as part of discovery, Class Counsel promptly received from Walmart nationwide transaction data, from which Class Counsel, in consultation with Plaintiff's data and damages expert, identified transactions with overcharges and calculated estimated damages. *See* Dkt. 71-1 ¶¶13, 17; Dkt. 100-1 ¶¶42-47.

- The Letter at page 2 notes that Plaintiff incurred costs from gathering evidence and proof over 6 years. That is inapposite. But Class Counsel does note that Plaintiff filed a prior class action against Walmart in 2019, and during that time and prior to his retaining Class Counsel in 2022, he was not represented by Class Counsel and certainly could not have then (if ever) been acting at the direction or request of or to benefit Class Counsel as the Letter claims or implies. *E.g.*, *Kukorinis v. Walmart, Inc.*, No. 19-CV-20592, 2021 U.S. Dist. LEXIS 259110 (S.D. Fla. Sep. 20, 2021).

- The Letter at page 2 correctly reflects that Plaintiff was notified that Plaintiff could not sue, but that Class Counsel could sue, Walmart again. But the Letter then incorrectly reflects that there is a non-disparagement clause in the Settlement; there is not. Final Approval Order, Dkt. 132 at 26-29.

- The statements in the Letter at page 2 about whether other fruits and

---

[8] The two *purported* post-FAH events cited in the Letter were address in Class Counsel's Status Filing, *See* Dkt. 142 at 3 n.4.

8

vegetables were to be included in the lawsuit is inapposite. The Settlement Class Member Released Claims did not cover other fruits and expressly covers only the specifically identified Bagged Citrus and Weighted Goods. Dkt. 71-2 ¶¶2.5, 2.45, 12; *see also* Dkt. 126 ¶7.

- The Letter at page 3 erroneously asserts that Class Counsel misrepresented to the Court the percentage of timely opt-outs received (152) compared to the over 80 million Email Notices the Claims Administrator sent. Class Counsel accurately stated that 152 timely opt-outs represented "about 1/10,000th of 1% of the email addresses that were sent an Email Notice." Dkt. 124 at 3. It appears that when doing the calculation, Plaintiff confused the resulting decimal calculation (152/80,000,000 = 0.00000190) with the percentage (0.00019%). Consistent with Class Counsel's statement, when .00000190 is multiplied by 100, to convert it into a percentage, it equals 0.00019%, *i.e.,* about 1/10,000th of 1%. Plaintiff, however, erroneously treats the 0.00019 as a raw decimal, expressing it to the Court as 1/5263. Therefore, he overstates the opt-outs by a factor of 100 and erroneously accuses Class Counsel of a misrepresentation. In any event, 152 opt-outs is an extremely low volume and rate of opt-outs, which weighed in favor of final approval. *E.g.*, *Grant v. Ocwen Loan Serv., LLC*, No. 3:15-cv-01376, 2019 U.S. Dist. LEXIS 14673, at *22 (M.D. Fla. Jan. 29, 2019) (finding that the low opt-out rate of 0.1% weighed in favor of approval).

- The Letter at pages 4, 6 makes erroneous assertions about the range of damages and percentage of recovery. Class Counsel was not "intentionally lying through her teeth" about the range of recovery at the FAH. The Motions for Preliminary and Final Approval stated (both of which were provided to Plaintiff) that the estimated damages as calculated by Plaintiffs' expert consultant ranged between $331 million and $421 million for a nationwide class, and the papers stated that $45 million represents a recovery of between 11% (as to the $331 million) and 14% (as to the $421 million). Dkt. 71 at 16; Dkt. 71-1 ¶17; Dkt. 100 at 15-16; Dkt. 100-1 ¶47. The 15% reference was an inadvertent error made at one point during the FAH, but the record at the FAH and in the Court's Final Approval Order is clear and unequivocal that the Court based Final Approval on 14% not 15%. Dkt. 132 at 12-13; *see also* Dkt. 135 at 8:18-20, 63:10-13; Dkt. 71 at 16; Dkt. 100 at 16.

- Likewise, the Letter at page 4 misstates the import of information about damages that was provided to Plaintiff (which also contradicts his accusations about transparency). The Motions for Preliminary and Final Approval, and Class Counsel's responses to the Objectors' filings, address similar arguments, explaining that (among other things): the lawsuit and Settlement do not involve every product sold in stores by Walmart; there was not an overcharge on every Weighted Good and Bagged Citrus

9

purchased during the Settlement Class Period; an overcharge is not equal to the purchase price of the affected product; and on average, there was a 2% overcharge on all relevant Weighted Goods and Bagged Citrus purchased. Dkt. 71 at 16-17; Dkt. 71-1 ¶16; Dkt. 100 at 21; Dkt. 100-1 ¶46; Dkt. 124 at 9-13; Dkt. 132 at 18-24.

The Letter at pages 3, 5, 7 rehashes arguments about the Plaintiff's individual release and that a service award was not sought. These matters were addressed by Plaintiff with the Court during the FAH and in Plaintiff's May 21, 2024 email titled "Notice of intention to appear and comment at Final hearing," filed with the Court at Dkt. 124-4. In fact, contrary to the Letter's accusations, the Court's June 28, 2024 Final Approval Order quotes extensively from and addresses the substance of the Plaintiff's May 21 email. *See* Dkt. 132 at 25-30. Further, despite the Letter's attempt at page 5 to impart a contrary impression, Class Counsel provided Plaintiff with the draft of the release on November 6, and it did not change as between the November 6 and November 15 Stipulation drafts. What the Letter quotes is not Plaintiff's individual release, but a *draft* of the Plan of Allocation (again, undermining the Plaintiff's transparency claim). Plaintiff also raises something at page 5 of the Letter that he thought was of such little consequence that he did not even mention it in his May 21 email, or during the FAH, namely, that Walmart had indicated some interest in hiring or retaining Plaintiff in some capacity. Class Counsel did convey, as they were obligated to do, Walmart's expressed interest in some such arrangement with Plaintiff. Class Counsel believed such indication of interest by Walmart was sincere, but no details were ever discussed, or agreement entered as far as Class Counsel is aware.

10

Class Counsel will not speculate as to why an arrangement between Walmart and Plaintiff has apparently not materialized.

In sum, there is no basis for the conclusory accusations throughout the Letter, and likewise, no basis for Plaintiff's assertions that the settlement and claims administration process has been compromised in any way.

## CONCLUSION

After all deadlines have passed for the claimants to respond to the Reminder Rejection Notices and Deficiency Notices, Angeion will process the claims submitted by those who responded to the Rejection and Reminder Rejection Notices, notify them of any deficiencies and how to cure, make final Claim determinations, calculate *pro rata* Settlement payments in accordance with the Plan of Allocation, and, subject to Court approval, proceed with the distribution of the Net Settlement Fund. Angeion estimates that, subject to Court approval, the distribution of the Net Settlement Fund can occur approximately by the end of the first quarter of 2025 or beginning of the second quarter of 2025. Earl. Decl. at ¶50.

Therefore, once the Claims Administrator has notified Class Counsel that the claims administration process has concluded and is prepared to make the distribution, Class Counsel will promptly file papers seeking Court approval to proceed with the distribution of the Net Settlement Fund.

Dated: January 10, 2025                     Respectfully submitted,

                                                                **CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

                                                                *By: /s/ Kimberly M. Donaldson-Smith*

>Nicholas E. Chimicles
>Kimberly M. Donaldson-Smith
>Zachary P. Beatty
>361 West Lancaster Avenue
>Haverford, PA 19041
>Phone: 610-642-8500
>Fax: 610-649-3633
>nec@chimicles.com
>kmd@chimicles.com
>zpb@chimicles.com
>
>***Class Counsel***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF, and on the following by email:

1. Gary Fishkin, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇;
2. Vassilios Kukorinis, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and
3. Curtis Taylor, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Dated: January 10, 2025            */s/ Kimberly M. Donaldson-Smith*
                                   Kimberly M. Donaldson-Smith