UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, on behalf of himself and any others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No. 8:22-cv-02402-VMC-TGW |

**DECLARATION OF DENISE EARLE**
**RE: SETTLEMENT ADMINISTRATION**

I, Denise Earle, hereby declare the following pursuant to 28 U.S.C. §1746:

1. I am a Senior Project Manager with Angeion Group ("Angeion"), located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Angeion is the Court-appointed Settlement Administrator in the above captioned action. I am over 21 years of age and am not a party to this action and I have personal knowledge of the facts set forth herein.

2. The purpose of this declaration is to provide the Parties and the Court with information pertaining to Settlement administration work performed, including responses that address the filings at Dkt. Nos. 139, 141, and 144.

**ANGEION'S BACKGROUND & QUALIFICATIONS**

3. Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action Settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

4. As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services. A comprehensive summary of judicial recognition Angeion has received

1

accompanied the Declaration of Steven Weisbrot, Esq. Re: Angeion Group Qualifications & the Proposed Notice Plan (Dkt. 71-4) ("Notice Plan Declaration").

5.     Angeion has extensive experience administering landmark Settlements involving some of the world's most prominent companies, including:

| Case Citation | Case No. | Court |
|---|---|---|
| Katz-Lacabe v. Oracle America Inc. | 3:22-cv-04792 | N.D. Cal. |
| In re: Kia Hyundai Vehicle Theft Litigation | 8:22-ml-03052 | C.D. Cal. |
| In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Product Litigation | MDL 3014 | W.D. Pa. |
| Esposito v. Cellco Partnership d/b/a Verizon Wireless | MID-L-6360-23 | N.J. Super. Ct. |
| Salinas et al. v. Block Inc. et al. | 3:22-cv-04823 | N.D. Cal. |
| Le v. Zuffa LLC d/b/a Ultimate Fighting Championship and UFC | 2:15-cv-01045 | D. Nev. |
| In re: Aqueous Film-Forming Foams Product Liability Litigation | 2:18-mn-02873 | D.S.C. |
| In re: Facebook Inc. Consumer Privacy User Profile Litigation | 3:18-md-02843 | N.D. Cal. |
| In re: Apple Inc. Device Performance Litigation | 5:18-md-02827 | N.D. Cal. |
| City of Long Beach, et al. v. Monsanto, et al. | 2:16-cv-03493 | C.D. Cal. |
| Beckett v. Aetna, Inc. | 2:17-cv-03864 | E.D. Pa. |

6.     Angeion has been regularly approved to serve as the administrator in class actions litigated in the Middle District of Florida, including:

| Case Citation | Case No. |
|---|---|
| Smith et al. v. Shoe Show, Inc. et al. | 1:20-cv-00813 |
| Venerus v. Avis Budget Car Rental LLC | 6:13-cv-00921 |
| Altamonte Pediatric Associates PA v. Greenway Health LLC | 8:20-cv-00604 |
| Llamas et al. v. TrueFire LLC and TrueFire Inc. | 8:20-cv-00857 |
| In re: 21st Century Oncology Customer Data Security Breach Litigation | 8:16-md-02737 |
| Cotter v. Checkers Drive-In restaurants Inc. | 8:19-cv-01386 |
| Hanley v. Tampa Bay Sports and Entertainment LLC | 8:19-cv-00550 |
| Williams v Bluestem Brands, Inc. | 8:17-cv-01971 |
| Grasso v. Electrolux Home Products, Inc. | 8:16-cv-00911 |
| Preman v. Pollo Operations Inc. | 6:16-cv-00443 |
| Daisy Inc. et al. v. Pollo Operations Inc. et al. | 2:14-cv-00564 |
| Calderone et al. v. Scott | 2:14-cv-00519 |

7.     In addition, Angeion has significant experience disseminating email notice to voluminous class sizes. Angeion strategically staggers the release of emails, starting with a smaller number of emails and gradually increasing the volume of emails sent to a given domain. In our experience,

this form of "priming" or "warming up" minimizes the probability of ISPs blocking email notices. A representative list of cases that involved disseminating email notice to over 50 million class members is provided below:

| Case | Case No. | Court | Approx. Class Size |
|---|---|---|---|
| Katz-Lacabe v Oracle | 3:22-cv-04792 | N.D. Cal. | 220,000,000 |
| In re Facebook Inc. Consumer Privacy User Profile Litigation | 3:18-md-02843 | N.D. Cal. | 200,000,000 |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. | 161,000,000 |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. | 124,000,000 |
| In re: Apple Inc. Device Performance Litigation | 5:18-md-02827 | N.D. Cal. | 90,000,000 |
| Salinas et al. v. Block Inc. et al. | 3:22-cv-04823 | N.D. Cal. | 85,000,000 |
| In re: TikTok Inc., Consumer Privacy Litigation | 1:20-cv-04699 | M.D. Fla. | 80,000,000 |
| Cottle et al. v. Plaid Inc. | 4:20-cv-03056 | N.D. Ill. | 60,000,000 |
| Esposito v. Cellco Partnership d/b/a Verizon Wireless | MID-L-6360-23 | N.D. Cal. | 59,000,000 |

### SUMMARY OF THE DISSEMINATION OF EMAIL NOTICE

8. Walmart provided Angeion with a list of persons who Walmart identified as having likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart has an email address. Angeion analyzed the potential class member data, removing duplicative records. This resulted in a total of 81,429,284 unique records. *See* Declaration of Steven Weisbrot, Esq. Regarding Current Status of the Settlement Notice Plan, the Settlement Website and Toll-Free Number, Claim Forms Received, Opt-Outs, and Objections (Dkt. No. 100-2, ¶¶ 6-9) ("Notice Implementation Declaration").

9. To maximize deliverability, Angeion performed an extensive email cleansing and validation process prior to disseminating the Email Notices. In addition, as mentioned in paragraph 7 *supra*, to reduce the risk that Email Notices would be blocked, Angeion strategically staggered the dissemination of Email Notice in order to "prime" the ISPs for the volume of Email Notices to be sent. *Id.* ¶¶ 10-14.

10. On February 20, 2024, Angeion began sending Email Notices to the 81,429,284 primary email addresses associated with the Unique Records. *Id.* ¶ 14.

11. Between April 8, 2024, and May 12, 2024, Angeion disseminated Reminder Email Notices to individuals whose Initial Email Notice was not a hard bounce, and who had not submitted a

Claim Form. In total, 76,590,007 Reminder Email Notices were sent. *See* Supplemental Declaration of Steven Weisbrot, Esq. Regarding Current Status of the Settlement Notice Plan, the Settlement Website and Toll-Free Number, Claim Forms Received, Opt-Outs, and Objections (Dkt. No. 124-7, ¶ 6) ("Supplemental Notice Implementation Declaration").

## **FILINGS' COMMENTS PERTAINING TO CLASS NOTICE**

12.   As stated above, Walmart provided Angeion with a list of individuals who Walmart identified as having likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart has an email address. Angeion sent notice of the Settlement to those individuals with valid email addresses from the list provided by Walmart. Angeion did not supplement or add to that list. That is why statements about the source of emails, including such statements attributed to "George N.", are unfounded and incorrect (Dkt. 141). Angeion has no record of "George N." filing a legitimate complaint with the Better Business Bureau ("BBB"). Instead, he posted a review on the BBB website. Angeion was neither notified of this review nor requested to provide a response. Had a formal complaint been filed, Angeion would have been informed and asked to respond accordingly. Further, while "George N." was identified as a Settlement Class Member and was on the Settlement Class list, he was not sent an email notice in connection with this Settlement. Angeion has previously interacted with "George N." in connection with several other Settlements, where Court-ordered notices were sent to him. Following these notices, "George N." submitted requests to be removed from class lists and excluded from all future correspondence. Angeion acknowledged and complied with these requests by removing him from each specific Settlement's email and/or mail list. In November 2023, at "George N.'s" direct request, he was added to Angeion's email suppression list. Consequently, "George N." will not receive email notice for any Settlements administered by Angeion unless he explicitly requests to be removed from the suppression list.

13.   Dkt. 141 on page 7 makes additional incorrect references about Notice:

Regarding non-English speaking claimants, the Claim Form, Summary Notice and Long Form

4

Notice were all translated in Spanish and made available on the Settlement Website (Dkt. 71-4 ¶ 56; Dkt. 100-2 ¶ 28). Regarding the reference to claimants with non-US IP addresses not receiving emailed Notice, these comments are without merit. Angeion does not analyze the origin of Defendant provided class data email addresses for noticing; the focus is solely on ensuring the email address is valid. Furthermore, the use of a control number (i.e. Notice ID) to identify claimants, as opposed to a customer's first and last name, does not influence whether an email is classified as spam.

14. As described herein, Angeion employed industry best practices to increase the deliverability of email notifications. Angeion also attempts to coordinate with email providers and other third-parties to reduce the possibility that Court-Ordered notifications are blocked, flagged as spam, or otherwise handled in a manner that reduces the likelihood of delivery. Regardless of best efforts made and best practices followed, invariably some percentage of emails will be incorrectly flagged as spam by the recipient's ISP. This is true in virtually every mass email campaign, whether in the class action or marketing context, as individual email recipients (or their email administrator) control the security settings via their ISP or email client. These are the settings that influence what is and what is not categorized as spam by the receiving entity irrespective of the actual authenticity of the email communication or best efforts taken to avoid spam filters.

## **SUMMARY OF THE MEDIA NOTICE**

15. In addition to the comprehensive direct notice efforts, the Notice Plan provided for the implementation of a robust, state-of-the-art internet advertising campaign consisting of programmatic display advertising (via internet banner ads), social media advertising via Facebook, Instagram, and X, and a paid search campaign via Google. Notice of the Settlement was also published in *People* magazine to complement the digital notice efforts. The Notice Plan also provided for the issuance of a press release. *See* Notice Plan Declaration, ¶¶ 19-20.

16. The comprehensive media notice plan, combined with the direct notice efforts, exceeded

expectations by achieving an approximate 81.43% reach with an average frequency of 3.47 times each. This approximate 81.43% reach is independent from, and does not include, the Settlement Website, toll-free telephone support or press release. This reach percentage exceeds the guidelines as set forth in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide to effectuate a notice program which reaches a high degree of class members. *See* Supplemental Notice Implementation Declaration, ¶¶ 10, 28.

## EARNED MEDIA COVERAGE

17. The press release, along with other forms of notice, resulted in a substantial amount of "earned media" coverage[1] (*i.e.*, other media outlets and/or publications will report the story), which supplemented the comprehensive notice efforts outlined herein, and led to increased awareness and participation amongst members of the Settlement Class.

## FRAUD DETECTION

18. Fraudulent claim filing has become an increasing danger in class action Settlements, having significantly increased in recent years.[2] The Second Annual "Digital Payments in Class Actions and Mass Torts" report, which pulled data from 597 class action and mass tort distributions from 24 Settlement administrators between 2019 and 2023, found that the number of claims with significant indicia of fraud skyrocketed 400% to over 80 million in 2023, from just under two million in 2022. An increase of 19,000% when comparing 2023 to 2021.[3]

19. To combat the rising tide of fraudulent claims in class action Settlements and the

---

[1] https://www.cnet.com/personal-finance/if-youve-shopped-at-walmart-over-the-last-few-years-you-could-claim-up-to-500-in-settlement-cash/;
https://www.npr.org/2024/04/06/1243257545/walmart-grocery-settlement-cash-payments;
https://www.washingtonpost.com/business/2024/04/08/walmart-settlement-meat-seafood-do-you-qualify/;
https://www.nytimes.com/2024/04/05/business/walmart-settlement-overcharge-refund.html;
https://www.today.com/food/groceries/walmart-weighted-groceries-settlement-rcna146388;
https://www.cnn.com/2024/04/05/business/walmart-shoppers-class-action-settlement/index.html;
https://www.cbsnews.com/news/walmart-settlement-claim-how-to-file/;
[2] https://www.law.com/newyorklawjournal/2023/07/26/the-increasing-danger-of-fraudulent-claims-in-class-action-settlements/; https://www.reuters.com/legal/us-class-action-settlements-flooded-with-fraudulent-claims-by-scammers-2024-05-02/;
https://www.repairerdrivennews.com/2024/04/19/fraudulent-ai-claims-inundating-class-action-lawsuits
[3] https://www.westernalliancebancorporation.com/industry-expertise/legal/2024-digital-payments-report

increasingly sophisticated technologies and techniques used by fraudulent actors in their attempt to perpetrate a fraud, Angeion has developed and deployed a real-time fraud detection system, AngeionAffirm, which is the first and only comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data.

20. AngeionAffirm makes a real-time assessment as to whether the filer is a real person or an electronic fraud. At a high level, AngeionAffirm works by reviewing multiple aspects of the claim submission to identify if the information is being submitted programmatically and/or otherwise falsified. This analysis is largely based on fraud signatures Angeion has identified through the analysis of over 100 million claims, and by verifying the veracity of all information provided by the claimant using a bespoke combination of sophisticated services.[4]

21. Courts have recognized the success of AngeionAffirm. By way of example, in the Court's July 26, 2024, Report and Recommendation, United States Magistrate Judge Stewart D. Aaron stated, "The Court finds that the claims process administered by Angeion has integrity and has been carried out in a diligent and thorough manner…Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case… Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." (*See In re: Novartis and Par Antitrust Litigation*, No. 1:18-cv-04361-AKH-SDA, S.D.N.Y, Report and Recommendation, ECF No. 667).

22. AngeionAffirm has been successfully deployed in several recent Settlements administered by Angeion, with the following results[5]:

| Case | Total Claims | Claims Identified as Fraudulent | Percentage of Fraudulent Claims | Non-Fraudulent Claims |
|---|---|---|---|---|
| 1 | 5,310,950 | 4,965,590 | 93% | 345,360 |
| 2 | 5,402,484 | 4,846,287 | 90% | 556,197 |
| 3 | 945,536 | 856,822 | 91% | 88,714 |
| 4 | 8,987,980 | 8,892,603 | 99% | 95,377 |
| 5 | 3,798,415 | 3,446,286 | 91% | 352,129 |

---

[4] https://www.angeiongroup.com/angeion-group-announces-angeionaffirm-2-0/
[5] Upon request, Angeion can provide the specific details associated with the representative cases referenced in the accompanying chart.

| 6 | 668,975 | 372,207 | 56% | 296,667 |
|---|---------|---------|-----|---------|
| 7 | 677,570 | 323,949 | 48% | 353,621 |

23. AngeionAffirm was used to evaluate the claim submissions received in this Settlement and has identified 2,372,068 claims as fraudulent.

## CLAIMS PROCESSING

24. As stated in the Declaration of Denise Earle Regarding Status of Claims Processing (Dkt. 142-1), the deadline for Settlement Class Members to submit a Claim Form was June 5, 2024.

25. Through December 4, 2024, Angeion received a total of approximately 3,997,434 Claim Form Submissions. Out of the 3,997,434 Claim Form Submissions, Angeion approved 1,468,051 claims for payment. The remaining 2,529,383 Claim Form Submissions are comprised of:

   a. 2,372,248 Initially Rejected Claims and Supplemental Initially Rejected Claims;

   b. 63,688 Deficient Claims;

   c. 50,690 Duplicate Claims;

   d. 37,529 Household Claims;

   e. 5,201 Denied Claims; and;

   f. 27 Withdrawn Claims.

   a. **Initially/Supplemental Initially Rejected Claims**

26. The Initially Rejected Claimants and the Supplemental Initially Rejected Claimants were flagged by AngeionAffirm, or through internal reviews, were considered initially rejected due to unverifiable information (Dkt. 142-1 ¶7), and were given the opportunity to verify their claim through a streamlined, one-time-passcode ("OTP") verification process. (Dkt. 142-1 ¶10),

27. Beginning on December 2, 2024, Angeion sent Rejection Notices via email to the identified Initially Rejected Claimants. *See* Dkt. 142-1. Initially Rejected Claimants were provided twenty-one (21) days to log into their existing claim via the Settlement Website and complete the required OTP verification process. The twenty-one day response period concluded on December 27, 2024.

28. Beginning on December 20, 2024, Angeion sent Rejection Notices via email to the

identified Supplemental Initially Rejected Claimants. *See* Dkt. 142-1. Supplemental Initially Rejected Claimants were provided twenty-one (21) days to log into their existing claim via the Settlement Website and complete the required OTP verification process. The twenty-one day response period will conclude on January 10, 2025.

29. The OTP verification process was implemented to verify the authenticity of the claimant and ensure that the claim was submitted by a legitimate Settlement Class Member. Below is a summary of the current OTP verification process for Initially Rejected Claimants and Supplemental Initially Rejected Claimants:

- Use log-in credentials provided on the rejection notice to access the previously submitted claim;
- Verify a one-time password sent to the email address provided on the claim form;
- Review and confirm their payment selection;
- Enter a mobile number when prompted;
- Verify a one-time password sent to the mobile number;[6]
- Sign, date and submit the claim.

30. As stated above, Initially Rejected Claimants had until December 27, 2024, to complete the OTP verification process and Supplemental Initially Rejected Claimants have until January 10, 2025 to complete the OTP verification process.

31. Upon consulting with Class Counsel, Angeion will send a follow-up Reminder Rejection Notice to the Initially Rejected Claimants and Supplemental Initially Rejected Claimants who did not submit a response, providing them with an additional opportunity to complete the verification process. The claimants will have 21-days to respond to the Reminder Rejection Notice. This will ensure that legitimate Settlement Class Members are afforded a second opportunity in light of the holiday season and to resolve any issue they may have previously had when using a different phone

---

[6] When the OTP process was initially implemented, it required that the phone number associated with the selected payment method match the phone number provided on the claimant's original claim form as an additional fraud prevention mechanism. However, after consulting with Class Counsel, on December 10, 2024, Angeion implemented a change to allow claimants to use a different phone number on the payment widget than the one submitted with the claim form. This change was made in response to feedback from claimants who indicated errors in the phone numbers provided on their claim forms, changes to their phone numbers, or the use of landline numbers.

9

number from the original claim form to complete the OTP process.

32. Once the 21-days to respond to the Reminder Rejection Notice has passed, Angeion will review the response information submitted by all Rejected Claimants, including supporting documents pertaining to the original claim submission (where applicable), and will make a determination on the claim status (i.e. Approved, Deficient, Duplicate, Household or Denied). Further noticing on these claims will be necessary for those with a Deficient, Household or Denial status.

### b. Deficient Claims

33. On December 20, 2024, Angeion began sending Deficiency Notices via email or mail to the identified Deficient Claimants. *Id.*

34. Claimants are allowed 21 days to respond to the Deficiency Notice and attempt to cure the identified deficiency with their Claim Form Submission. Claimants have the convenient option to log into their existing claim via the Settlement Website and provide the necessary information. Alternatively, claimants can email or mail their responses to Angeion. The 21-day response period ends on approximately January 10, 2025, after which Angeion will review the information submitted by the Claimants and re-process the claims as corrected and/or supplemented.

### c. Responses to Rejection and Deficiency Notices

35. As of January 7, 2025, Angeion has received approximately 184,922 responses to the Rejection Notice. This represents an approximate 7.8% response rate which, based on Angeion's experience, is an above average response rate for rejection notices, which supports the accessibility and ease of the OTP Process.

36. As of January 7, 2025, Angeion has received approximately 3,279 responses to the Deficiency Notices.

37. Angeion is in the process of evaluating all rejection and deficiency responses received, including performing validation audits, and reviewing for duplicative submissions.

### CLASS MEMBER CORRESPONDENCE

38. On December 18, 2024, the Court received correspondence from Settlement Class Member Gary Fishkin, in which he outlined issues related to submitting a response to the Rejection Notice he received (Dkt. 139). Relatedly, Mr. Fishkin called the toll-free line for the Settlement and left a message asking for a return call and he also sent an email correspondence.

39. On December 12, 2024, Angeion spoke to Mr. Fishkin via phone on three instances in an attempt to understand and help resolve the issues he was having submitting a response to the Rejection Notice. Mr. Fishkin was ultimately successful in completing the OTP process on the same day, December 12, 2024. On January 3, 2025, Angeion sent email confirmation of the successful submission to Mr. Fishkin and followed up with a phone call on the same day confirming successful receipt during this conversation. Angeion will review the information Mr. Fishkin provided in his response and re-process his claim accordingly.

40. On January 3, 2025, the Court received correspondence from Settlement Class Member Curtis Taylor, in which he outlined issues related to submitting a response to the Rejection Notice he received (Dkt. 144). Angeion does not have a record of any phone contact or email inquiries received from Mr. Taylor in relation to this.

41. As stated above, the deadline to respond to the Rejection Notice was December 27, 2024. However, in light of Mr. Taylor's correspondence, Angeion re-opened his form access so he could proceed with the OTP process. On January 7, 2025, Angeion contacted Mr. Taylor directly via email and phone, and provided him with information on how to re-submit his Rejection Notice response. Following Angeion's outreach, Mr. Taylor successfully submitted his Rejection Notice response on January 7, 2025. Angeion will review the information he provided in his response and re-process his claim accordingly.

### SETTLEMENT WEBSITE & TOLL-FREE TELEPHONE SUPPORT

42. Settlement Class Members were provided with multiple options to communicate with the Claims Administrator and to find information about the Settlement: (1) via the Settlement Website, including the page dedicated to providing responses to frequently asked questions; (2) by utilizing

11

Angeion's customized virtual chatbot which provides automated responses to frequently asked questions; and (3) via the toll-free telephone support number. In addition, Settlement Class Members can submit additional questions to an email address dedicated to this Settlement, which was listed in the Claim Form.

43. As of January 6, 2025, the Settlement Website has had 22,027,791 page views and 16,277,426 sessions by 14,264,385 unique users.

44. As of January 6, 2025, there have been approximately 26,939 Settlement Website visitors who engaged with the customized virtual chatbot.

45. As of January 6, 2025, the toll-free support number has received over 37,229 incoming calls, totaling over 143,984 minutes. Additionally, Settlement Class Members have left over 4,000 voicemails totaling over 4,843 minutes.

46. As of January 6, 2025, Angeion received over 23,888 emails sent by potential members of the Settlement Class.

47. The Settlement Website, customized virtual assistant, toll-free telephone support line, and dedicated email inbox have been fully operational and accessible throughout the Settlement process.

## **DISTRIBUTION**

48. Angeion will continue to process and review all rejection and deficiency responses received through the applicable deadlines.

49. After all deficiency and rejection responses have been reviewed and final audits performed, Angeion will calculate the payment amounts for Approved Claimants in accordance with the Plan of Allocation.

50. Angeion reasonably anticipates that the distribution can occur approximately at the end of the first quarter of 2025 or early in the second quarter of 2025, subject to (and the timing of) Court approval. Upon Court approval of the distribution, Angeion will proceed with distribution of payments to Approved Claimants in accordance with the Stipulation and Agreement of Class Action Settlement.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: January 10, 2025

_____
Denise Earle