**Katrina Elliott**

| | |
|---|---|
| **From:** | Andrea Gulley <andreagulleysunshine@yahoo.com> |
| **Sent:** | Friday, November 7, 2025 4:42 PM |
| **To:** | CHAMBERS FLMD COVINGTON |
| **Subject:** | Fw: Reminder Notice: File your Claim in the Kukorinis v. Walmart, Inc. Class Action Settlement |
| **Attachments:** | Final Approval Order.pdf; Plaintiff's Supplemental Submission Regarding Notice and an Updated Proposed Preliminary Approval Order Submitted in Support of the Class Action Settlement.pdf; Claim Form - Andrea Gulley.pdf; Letter of Stipulation and Closure Order - Andrea N Gulley.pdf; Walmart Settlement Claims Administrators 1st Automated Reply.docx; Andrea Gulley's Sworn Testimony to Honorable Hernandez Covington-2025.pdf |

**CAUTION - EXTERNAL:**

Good afternoon Honorable Hernandez Covington,

 I'm petitioning you today in the matter of the Vassilios Kukorinis and any other similarly situated vs. Walmart, Inc order as well as the Walmart Weighted Goods Settlement. I am a member of this settlement and did receive a settlement notice through email on April 27th, 2024, from the Claims Administrator with an email address of donotreply@walmartweightedgroceriessettlement.com . The notice is part of this email chain that I forwarded to you.

 On the Settlement there is a documented deadline to claim filing by June 5, 2024. However, I did not see this settlement notice along with a few more settlements that I am a member of until October 2025. My plausible clause for tardiness is a data breach or access to my personal information (email address and phone number)(I'm also part of the Katz privacy settlement that could have caused the breach). While this email was sent directly to me, I had over 34,000 emails in my inbox around that time and counting. I filed my claim for the Walmart Weighted Goods Settlement on November 3rd, 2025, at 1:55 PM since I had some other claims to file as well.

 I received an automated response back from info@walmartweightedgroceriessettlement.com on November 3rd, 2025, at 1:56 PM stating the following: "Your email (2189552) has been received and is being reviewed by our support staff. Please allow 3-5 business days for a response." To add additional comments, reply to this email."

 On November 3rd, 2025, at 2:02 PM I received another automated response from info@walmartweightedgroceriessettlement.com stating the following:
"Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator. If you are eligible for a distribution payment in this matter and there is an issue with sending your payment, you will be notified via email in a second chance process, or you will be sent your payment in an alternate method. Please be patient, as the second chance process will not commence until the first week of November. This message was sent automatically. If this did not resolve your inquiry, please reply with more information and an agent will respond. For more information, please visit www.WalmartWeightedGroceriesSettlement.com
Thank you,
Walmart Weighted Groceries Settlement"

 I replied back on November 3rd, 2025, at 8:13 PM through email stating the following:
Good afternoon,

I am someone who is hoping for a second chance process to submit my claim form due to the circumstances noted in the last email that I sent to you. It is my hope that I don't miss a disbursement period for this settlement. Thank you for your consideration,
Andrea Gulley
501-467-4932


On November 6th, 2025, at 10:12 AM I received a reply from
info@walmartweightedgroceriessettlement.com  stating the following:
Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator.
The claim filing deadline was June 5, 2024. Late claims are no longer being accepted in this matter.
For more information, please visit www.WalmartWeightedGroceriesSettlement.com
Thank you,
Walmart Weighted Groceries Settlement
Claims Administrator
www.WalmartWeightedGroceriesSettlement.com


I did not respond back to that email. I decided to take another path and reach out to you since I believe you were the last Judge to rule on this matter and close the case per page 48 (23) of the order that was filed on June 28th, 2024. I also noticed on that same page that the Class Settlement Fund shall be returned in accordance with the terms of the Settlement Agreement. I do not wish to be left out of any settlement that I may obtain benefits from. With that being said I have included the following with my sworn testimony as attachment to this email:

1.  Stipulation for Installment Settlement, Order Approving Stipulation and Closure

2.  Claim Form

3.  Final Approval Order

4.  Plaintiff's Supplemental Submission Regarding Notice and an Updated Proposed Preliminary Approval Order Submitted in Support of the Class Action     Settlement
5.  Walmart Settlement Claims Administrators 1st Automated Email Reply


I did not include an Affidavit since I did email them requesting my portion of this settlement and the case is not closed. Please let me know if anything else is needed. I'm happy to proceed in any way that you suggest.


**Case No.** 8:22-cv-2402-VMC-TGW
**Notice ID:** WWG10031720532
**Confirmation Code:** hQTFyQ61de9w


 Thank you for your time and consideration,

Andrea Gulley

501-467-4932

*Dear friend, I pray that you may enjoy good health and that all may go well with you, even as your soul is getting along well!*

----- Forwarded Message -----
**From:** Walmart Weighted Goods Settlement <info@walmartweightedgoceriessettlement.com>
**To:** Andrea Gulley <andreagulleysunshine@yahoo.com>
**Sent:** Thursday, November 6, 2025 at 10:12:51 AM CST
**Subject:** Re: Fw: Reminder Notice: File your Claim in the Kukorinis v. Walmart, Inc. Class Action Settlement

Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator.

The claim filing deadline was June 5, 2024. Late claims are no longer being accepted in this matter.

For more information, please visit www.WalmartWeightedGroceriesSettlement.com

Thank you,
Walmart Weighted Groceries Settlement
Claims Administrator
www.WalmartWeightedGroceriesSettlement.com

On November 3, 2025 at 8:13:26 PM UTC, andreagulleysunshine@yahoo.com wrote:
Good afternoon,

I am someone who is hoping for a second chance process to submit my claim form due to the circumstances noted in the last email that I sent to you. It is my hope that I don't miss a disbursement period for this settlement.

Thank you for your consideration,
Andrea Gulley
501-467-4932

On Monday, November 3, 2025 at 02:02:54 PM CST, Walmart Weighted Goods Settlement <info@walmartweightedgoceriessettlement.com> wrote:

Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator.

If you are eligible for a distribution payment in this matter and there is an issue with sending your payment, you will be notified via email in a second chance process, or you will be sent your payment in an alternate method. Please be patient, as the second chance process will not commence until the first week of November.

This message was sent automatically. If this did not resolve your inquiry, please reply with more information and an agent will respond

For more information, please visit www.WalmartWeightedGroceriesSettlement.com

Thank you,
Walmart Weighted Groceries Settlement

Claims Administrator
www.WalmartWeightedGroceriesSettlement.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening
attachments or clicking on links.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASSILIOS KUKORINIS,
on behalf of himself and any
others similarly situated,

    Plaintiff,

v.                      Case No. 8:22-cv-2402-VMC-TGW

WALMART, INC.,

    Defendant.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement and Motion for Award of Attorneys' Fees, Costs, and Expenses, both filed on May 8, 2024. (Doc. ## 100, 101). The Court held a hearing on the Motions on June 12, 2024. For the reasons set forth below, the Motions are granted.

**I.   Background**

    **A.   Procedural History**

    Plaintiff Vassilios Kukorinis initiated this putative class action against Defendant Walmart on October 19, 2022, asserting "nationwide claims against Walmart for alleged violations [of] state consumer protection acts and unjust

1

enrichment." (Doc. # 1; Doc. # 71 at 3). More specifically, Plaintiff alleged that people who bought weighted goods or bagged citrus at Walmart stores paid more than the lowest in-store advertised price for the products. (Doc. # 71 at 3-4, 7; Doc. # 56 at ¶¶ 37-88).

After the Court granted in part Walmart's motion to dismiss (Doc. # 52), Plaintiff filed an amended complaint on July 20, 2023, asserting claims for (1) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts I, III.A), (2) declaratory relief pursuant to FDUTPA (Count II), (3) violations of other state consumer protection statutes, brought in the alternative to Count III.A, including the Connecticut Unfair Trade Practices Act (Count III.B), the New Jersey Consumer Fraud Act (Count III.C), and the New York General Business Law § 349 (Count III.D), among others (Count III.E), and (4) unjust enrichment (Count IV). (Doc. # 56). Walmart filed a motion to dismiss Count III of the amended complaint on August 10, 2023 (Doc. # 60), which Plaintiff opposed. (Doc. # 63).

Shortly thereafter, on September 22, 2023, the parties filed a joint status report and motion to stay the case, notifying the Court that they had reached a settlement in principle. (Doc. # 64). Plaintiff filed an unopposed motion

2

for preliminary approval of the class action settlement on November 16, 2023, and supplemental information on January 9, 2024. (Doc. ## 71, 74). The Court granted the motion on January 19, 2024. (Doc. # 75).

**B.  Preliminary Approval of Class Action Settlement**

In the order preliminarily approving the class action settlement, the Court defined the class for settlement as:

> [A]ll Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ("Walmart Store") during the Settlement Class Period. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart Inc.'s directors, officers, and executives; (3) Class Counsel; and (4) Settlement Class Members who submit a valid and timely Opt-Out Request approved by the Court.

(Id. at ¶ 5). The Court defined the settlement class period as October 19, 2018, through and including January 19, 2024. (Id.; Doc. # 71-2 at ¶ 2.47).

"Weighted goods" were defined as "variable weight meat, poultry, pork and seafood products that are labeled with a price embedded bar code and designated by Walmart as part of its Department 93 products," as listed on Addendum A, with Addendum A subject to updates through the date of the Court's order granting preliminary approval. (Doc. # 71-2 at ¶ 2.58). "At times, Weighted Goods that [were] nearing their

3

expiration dates may have been labelled with a yellow sticker that provided a discounted 'You Pay!' price." (Id.). "Bagged citrus" was defined as "the organic oranges, grapefruit, tangerines, and navel oranges sold in bulk in mesh or plastic bags and bearing UPC Codes listed on Addendum B" to the Settlement Agreement, with Addendum B subject to updates through the date of the Court's order granting preliminary approval. (Id. at ¶ 2.5).

Pursuant to the preliminarily approved settlement, Walmart was directed to pay $45,000,000 into an escrow account for distribution to class members. (Id. at ¶ 5.1). This settlement fund is non-reversionary. (Id. at ¶ 2.12).

To recover under the settlement, class members were required to submit claim forms for reimbursements by June 5, 2024. (Id. at ¶ 5.4(a)); see (Doc. # 75 at ¶ 19) (stating that "all Claim Forms must be postmarked or submitted electronically no later than seven (7) Days prior to the Final Approval Hearing"). If an approved class member did not have receipts, proof of purchase, or other documentation, they could attest to purchasing the following levels of Weighted Goods and/or Bagged Citrus to receive the corresponding reimbursement: (1) up to 50 Weighted Goods and/or Bagged Citrus for $10.00, (2) 51-75 Weighted Goods and/or Bagged

4

Citrus for $15.00, (3) 76-100 Weighted Goods and/or Bagged Citrus for $20.00, or (4) 101 or more Weighted Goods and/or Bagged Citrus for $25.00. (Doc. # 71-2 at ¶ 5.4(a)(i)-(iv)). If an approved class member did have receipts, proof of purchase, or other documentation substantiating their purchases of Weighted Goods and/or Bagged Citrus from Walmart and the price paid for those goods, the class member was entitled to receive 2% of the total costs of the substantiated goods, capped at $500.00. (Id. at ¶ 5.4(a)(v)).

These reimbursements are subject to a potential pro rata increase or decrease. (Id. at ¶ 5.4(a)). If additional monies remain in the settlement fund after full payment of the claims, the Claims Administrator will make supplemental distributions on a pro rata basis to approved claimants until additional distributions are no longer economically feasible. (Id. at ¶ 5.4(b)). "In the event that supplemental distributions are no longer economically feasible, Class Counsel [will], after consultation with Walmart regarding the appropriate non-profit organizations, apply to the Court for approval of the payment of such residual to one or more non-profit organizations." (Id.).

The preliminarily approved settlement also outlined procedures for potential class members to file objections to

the settlement or to exclude themselves from the settlement by May 22, 2024. (Doc. # 75 at ¶¶ 25-32).

In the Order, the Court preliminarily appointed Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty as class counsel, and Vassilios Kukorinis as class representative. (<u>Id.</u> at ¶ 7).

The Court also appointed Angeion Group as Claims Administrator. (<u>Id.</u> at ¶ 11). The Claims Administrator was responsible for implementing the Notice Plan, including sending direct email notice to potential class members, creating the Settlement Website, and publishing notice of the settlement in various publications. (<u>Id.</u> at ¶¶ 13-14). According to the settlement agreement, the Claims Administrator is paid "promptly and on a non-recourse basis from the Class Settlement Fund upon Class Counsel's receipt of invoices from the Claims Administrator." (Doc. # 71-2 at ¶ 5.3(a)). Through April 30, 2024, the Claims Administrator had incurred $1,425,365.70 in costs to provide notice and administration services. (Doc. # 124-7 at ¶ 27). Class counsel anticipated that the Claims Administrator would be paid a total of $2,450,000 - $2,600,000. (Doc. # 100 at 9).

The Court also scheduled the Final Approval Hearing for June 12, 2024, at 10:00 AM. (Doc. # 71-2 at ¶ 8).

### C.   Motion for Final Approval of Class Action Settlement

Plaintiff filed the instant Unopposed Motion for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses on May 8, 2024. (Doc. ## 100, 101). Counsel supplemented these Motions on June 5, 2024, providing an update on the Notice Plan and the number of opt-outs, and responding to the objections filed. (Doc. # 124). In response to Mr. Kukorinis's notice of intent to appear at the Final Approval Hearing and raise concerns about his individual release, Walmart also filed a memorandum in support of the Motion for Settlement. (Doc. # 126). Plaintiff filed a supplemental declaration from the Claims Administrator regarding opt-outs on June 10, 2024. (Doc. ## 127, 127-1).

### D.   Class Member Filings

In total, as of June 2, 2024, the Claims Administrator had received 3,905,158 claim forms. (Doc. # 124-7 at ¶ 20). These claim forms represent a 4.87% claims rate. However, of the claim forms filed, 1,240,998 have been preliminarily identified as suspected fraud. (Id.). The Claims

7

Administrator also received 160 timely opt-out requests as of June 10, 2024. (Doc. # 127-1 at ¶ 7).

The Court and counsel received six objections, from Shena McHenry, Lerandle Pace, Wayne Anderson, Joan Johnson, Angela Taylor Sweet, and Queen Akhenaten II Montgomery Bey. (Doc. ## 106, 110, 119, 120, 123, 124-2). The Court also received a brief in opposition to the settlement from Dana Albrecht. (Doc. # 130).

In the weeks before the Final Approval Hearing, two potential class members, Dana Albrecht and Joan Johnson, also filed motions that included requests to be joined as co-plaintiffs or to intervene. (Doc. ## 99, 118). The Court denied both requests. (Doc. ## 115, 128). The Court also denied Mr. Albrecht's request to extend the deadline for class members to object to comment on or exclude themselves from the settlement. (Doc. # 115). However, the Court granted his request to file future pleadings and receive notice of additional filings through CM/ECF. (Id.).

The Court also received Notices of Intent to Appear at the Final Approval Hearing from class representative, Vassilios Kukorinis, and potential class member Kimberlee Curtis Parker. (Doc. ## 113, 124-3). Only Mr. Kukorinis appeared at the hearing. (Doc. # 131).

8

II.   **Motion for Final Approval of the Class Action Settlement**

   A.   **Fairness**

   A class action may be settled only with court approval. Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

   (A)   the class representative and class counsel have adequately represented the class;

   (B)   the proposal was negotiated at arm's length;

   (C)   the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

   (D)   the proposal treats the class members equitably relative to each other.

Id. In addition, courts in the Eleventh Circuit must also consider the following factors, known as the Bennett factors:

   (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4)

the complexity, expense and duration of litigation;
(5) the substance and amount of opposition to the
settlement; and (6) the stage of proceedings at
which the settlement was achieved.

In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d
1247, 1273 (11th Cir. 2021), cert. denied sub nom. Huang v.
Spector, 142 S. Ct. 431 (2021), and cert. denied sub nom.
Watkins v. Spector, 142 S. Ct. 765 (2022) (citing factors
originally enunciated in Bennett v. Behring Corp., 737 F.2d
982 (11th Cir. 1984)) (internal quotation marks omitted).

"The Rule 23(e) analysis should be 'informed by the
strong judicial policy favoring settlements as well as the
realization that compromise is the essence of settlement.'"
Jairam v. Colourpop Cosmetics, LLC, No. 19-cv-62438-RAR, 2020
WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) (citing In re
Chicken Antitrust Litig. Am. Poultry, 669 F.2d 228, 238 (5th
Cir. Unit B 1982)). The policy favoring settlement is
especially relevant in class actions and other complex
matters, where the inherent costs, delays, and risks of
continued litigation might otherwise overwhelm any potential
benefit the class could hope to obtain. See Ass'n for Disabled
Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D.
Fla. 2002) ("There is an overriding public interest in favor
of settlement, particularly in class actions that have the

well-deserved reputation as being most complex." (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977))).

"In evaluating a proposed class action settlement, 'the district court may rely upon the judgment of experienced counsel for the parties.'" Colourpop Cosmetics, 2020 WL 5848620, at *3 (quoting Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 434 (11th Cir. 2012)). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." Id. (citations and internal quotation marks omitted).

Having considered the factors set forth in Rule 23(e)(2) and Bennett, the Court determines that the settlement is fair, reasonable, and adequate. There is no indication of fraud or collusion behind this settlement. See Leverso v. SouthTrust Bank of Ala., N.A., 18 F.3d 1527, 1530 & 1530 n.6 (11th Cir. 1994) (citing evidence of fraud or collusion as a factor that courts should consider); see also Warren v. City of Tampa, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed parties conducted discovery and negotiated the terms of settlement for an extended period of time).

Furthermore, the class representative and class counsel have adequately represented the class. Mr. Kukorinis retained

counsel with extensive experience in large class-action lawsuits who have vigorously represented the class during this matter. (Doc. # 100 at 30; Doc. # 100-1 at ¶ 77; Doc. # 101 at 15-16). The settlement agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case, with the assistance of a neutral and experienced JAMS mediator, Robert Meyer. See Wilson v. EverBank, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (concluding that settlement negotiations overseen by a "nationally renowned" mediator weighed in favor of final settlement approval); Poertner v. Gillette Co., 618 F. App'x 624, 630 (11th Cir. 2015) (stating that "self-dealing contention" was "belied" by involvement of experienced mediator). Counsel for the parties were therefore well-positioned to evaluate the benefits of the agreement, considering the risk, expense, and uncertainty of protracted litigation.

The relief provided for the class is adequate. Again, the parties have agreed on the following relief: the establishment of a common fund of $45,000,000. (Doc. # 71-2 at ¶ 5.1). This settlement value represents between 11% and 14% of a complete nationwide recovery, had Plaintiff fully

prevailed in the litigation.[1] (Doc. # 100 at 16). This percentage of recovery is in line with settlements approved within the Eleventh Circuit. See, e.g., In re Health Ins. Innovations Secs. Litig., No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051, at *24 (M.D. Fla. Mar. 23, 2021) (recommending approval of a settlement that established a settlement fund for approximately 10% of the estimated value of potential recovery), report and recommendation adopted, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 60100 (M.D. Fla. Mar. 30, 2021); Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the recovery of $3.50 a share is not indicative of an inadequate compromise. A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorney's fees, the relief provided for

---

[1] Walmart disputes the calculations and conclusions made by Plaintiff's expert regarding the maximum potential recovery. (Doc. # 100 at 16 n.17).

13

the class is adequate. The settlement treats all class members equitably relative to one another. While it distinguishes between the recovery available to class members who can provide receipts to support their claims and those who cannot, this approach has been approved in other class action settlements. E.g., Cotter v. Checkers Drive-In Rests., Inc., No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *23 (M.D. Fla. Aug. 25, 2021). Thus, the factors laid out in Rule 23(e)(2) are satisfied here.

Turning to the Bennett factors, the class members' likelihood of success at trial is far from certain. Class counsel note that Walmart's remaining arguments included that "(a) damages classes, and any nationwide class, are not certifiable; (b) claims were barred by a prior settlement and the Court's July Motion to Dismiss Order; (c) Plaintiff could not overcome hurdles of proof of misrepresentations on the Shelf Tags in over 4,000 Walmart Stores; and (d) Walmart complied with all applicable laws and regulations." (Doc. # 100 at 15). The uncertainty of recovery suggests that the Settlement Agreement is a better result for the class than continued litigation. As for the range of possible recovery, the settlement here is within the range of reasonableness. See Behrens, 118 F.R.D. at 541 ("The second and third

considerations of the <u>Bennett</u> test are easily combined. A court first determines the range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie.").

As for the complexity, expense, and duration of litigation, the issues raised in this case were complex, including the potential to apply FDUTPA to a nationwide class. (Doc. # 101 at 25). The parties also represent that the settlement negotiations were extended, lasting approximately eight months, and were conducted through the use of an experienced JAMS mediator. (<u>Id.</u> at 6, 18; Doc. # 100 at 14). This factor weighs in favor of approving the Settlement Agreement.

The reaction of the class to the settlement is also an important factor. <u>Saccoccio v. JP Morgan Chase Bank, N.A.</u>, 297 F.R.D. 683, 694 (S.D. Fla. 2014). "[A] low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." <u>Id.</u>

Here, six objections were filed to the settlement and 160 people have timely opted out. (Doc. # 124 at 1; Doc. # 127-1 at ¶ 7). As discussed further below, the Court overrules

all objections because they do not provide sufficient reason to modify the settlement or deny approval. The number of people who have opted out of the settlement is about 1/10,000th of 1% of the email addresses sent an Email Notice. (Doc. # 124 at 3). "This lack of opposition and [s]ettlement [c]lass [m]ember support weigh strongly in favor of Court approval of the Settlement Agreement." Hanley v. Tampa Bay Sports & Ent. LLC, No. 8:19-cv-550-CEH-CPT, 2020 WL 2517766, at *4 (M.D. Fla. Apr. 23, 2020).

"The stage of the proceedings at which settlement is achieved is [also] 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" Saccoccio, 297 F.R.D. at 694 (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." Id. (citations omitted). The parties here reached a settlement before Plaintiff filed a motion for class certification. Even so, the parties had experienced counsel who had sufficient information to evaluate the merits of the case and who engaged in significant discovery. The parties also reached the class settlement after mediation before an

experienced mediator. This factor also weighs in favor of settlement.

The opinions of class counsel and the absent class members further favor approval of the settlement. Class counsel are very experienced and only six potential class members have filed objections, in contrast to the almost four million who have submitted claims forms. See Hall v. Bank of America, N.A., No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting that where objections from settlement class members equated to less than 1/10th of a percentage of the class and no attorney general or regulator submitted an objection, "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"). While Mr. Kukorinis, the class representative, did raise concerns about the settlement both in an email to counsel and at the Final Approval Hearing (Doc. # 124-4), as discussed further below, these concerns do not suggest that the settlement should not be approved.

### B.  Objections

The Court received five objections to the preliminarily approved settlement. (Doc. ## 106, 110, 119, 120, 123). Class counsel received one additional objection, which they provided to the Court (Doc. # 124-2), making a total of six

objections. Counsel filed a brief on June 5, 2024, addressing the objections received. (Doc. # 124). Additionally, the Court received a brief in opposition to the settlement on June 11, 2024. (Doc. # 130).

While several of the objections did not comply with the requirements for filing objections that were outlined in the order preliminarily approving the settlement, see (Doc. # 75 at ¶¶ 26-32), even on the merits, the objections do not suggest that the settlement is deficient or otherwise should not be approved.

First, this Court received an objection from Shena McHenry. (Doc. # 106). Ms. McHenry objected to the class action settlement because it does not allow people to submit receipts for online shopping at Walmart. (Id.). However, Ms. McHenry's online purchases do not fall within the scope of the settlement class because the settlement covers only in-store purchases. (Doc. # 100 at 21 n.23). Online purchases were excluded because the misconduct occurred at Walmart stores and because the terms and conditions for online purchases from Walmart include an arbitration agreement and class action waiver. (Id.). Therefore, Ms. McHenry's objection is overruled. The settlement is appropriately limited to in-store purchases and would not prevent Ms.

18

McHenry from pursuing claims against Walmart for any overcharges she experienced while online shopping.

Second, the Court received an objection from Lerandle Pace. (Doc. # 110). The settlement provides that, if an approved claimant has receipts or other documentation of their purchases, including which goods were purchased and the money spent, they will be entitled to receive 2% of the total cost of the substantiated goods purchased, capped at $500. (Doc. # 71-2 at ¶ 5.4(a)(v)). Mr. Pace objected to the 2% reimbursement and the $500 limit, as he believes that these values are too low. (Doc. # 110 at 1-2). Instead, he argued, every class member should be made completely whole. (Id.). Relatedly, he also raised concerns about the amount of documentation needed to file a claim form. (Id. at 1).

Mr. Pace also expressed concerns about the online system for submitting claim forms. (Id. at 4, 24-25). While he submitted a claim form online, he did not receive a confirmation email and did not receive timely security codes when he sought to later modify his claim form. (Id.). He also had difficulties with the phone line and asserted that both the website and phone line often fail simultaneously, frustrating claim members seeking to file claims. (Id.). He

noted that he has reported his concerns to several Walmart employees. (Id.).

Mr. Pace's objection is also overruled. Importantly, the 2% limit is appropriate, given that class members were, on average, overcharged by 2%. See (Doc. # 100 at 16). The $500 limit also does not unreasonably constrain reimbursements. Further, while the settlement agreement did impose several requirements for filing a claim form, including to sign the claim form and include supporting documentation, when applicable, see (Doc. # 75 at ¶ 21), these requirements were not unduly burdensome and the information provided is useful to the Court and counsel. Additionally, the Claims Administrator spoke with Mr. Pace about his concerns and confirmed receipt of his claim form. (Doc. # 124-7 at ¶ 26). Mr. Weisbrot attested that "Angeion did not identify any technical issues with the Settlement Website or the toll-free telephone system." (Id.). At the Final Approval Hearing, class counsel also stated that the phone and website issues described did not appear to be recurring.

Third, this Court received an objection from Wayne Anderson. (Doc. # 119). Mr. Anderson objected to the settlement because it does not require Walmart to change its practices and because the settlement value is most likely to

benefit Plaintiff's attorneys, given the comparatively small payout for each class member. (Id.). Mr. Anderson urged the Court to reject the settlement or, if the Court approves the settlement, award Plaintiff's attorneys very low compensation. (Id.). At the hearing, class counsel highlighted that they did not seek injunctive relief as part of the settlement because counsel are not in the best position to monitor Walmart's compliance with injunctive relief. Instead, several other entities are already working with Walmart to address overcharging practices. The Court agrees with this explanation of why the settlement was limited to monetary relief. Accordingly, Mr. Anderson's objection is overruled.

Fourth, the Court received an objection from Joan Johnson. (Doc. # 120). Ms. Johnson's objection raised concerns about the settlement's requirement that class members submit receipts to receive reimbursements over a certain value. (Id.). She highlighted that people using SNAP or EBT cards to purchase food cannot view a history of their grocery purchases nor itemized receipts beyond the last three months. (Id. at 1). Further, she noted that many people using these forms of payment do not have bank accounts and, thus, cannot receive the reimbursement. (Id. at 3). Ms. Johnson

also requests that the settlement value be increased to billions of dollars and that the attorney's fees be capped at $200,000 - 500,000. (Id. at 2-3).

As class counsel discussed in their response to this objection, class members may be reimbursed for up to $25 under the settlement without submitting receipts, which should cover most of the class members' purchases during the class period. (Doc. # 124 at 10-11). Additionally, the settlement recovers 11% to 14% of the total potential recovery nationwide. (Doc. # 100 at 16). This percent recovery is within the acceptable range. See Behrens, Inc., 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."). Therefore, Ms. Johnson's concerns about the total value of the settlement and the ability of SNAP or EBT card users to recover under it do not provide sufficient justification to deny approval of the settlement. Because the settlement value is appropriate, this value does not indicate that the Court should decline to grant the requested attorney's fees. Ms. Johnson's objection is overruled.

Fifth, the Court received an objection from Angela Taylor Sweet. (Doc. # 123). Ms. Sweet objected to the

22

settlement value, Walmart's failure to admit wrongdoing, and the requested attorney's fees and expenses. (Id.). She asserts that the value of the settlement is too low to motivate Walmart to use better practices in the future, particularly regarding its product quality inspections. (Id.). The Court also overrules Ms. Sweet's objection. As discussed above, the settlement value is acceptable, as are the other conditions of the settlement. Additionally, Ms. Sweet does not present any specific objections to the requested attorney's fees or expenses.

Sixth, class counsel received an objection from Queen Akhenaten II Montgomery Bey, which they shared with the Court. (Doc. # 124-2). In the objection, Ms. Bey objects because she was not provided with a full reimbursement or groceries up to a value of $500 when requested at a Walmart store. (Id. at 10, 15). In doing so, she appears to object to the settlement value. She also appears to assert other claims against Walmart. (Id. at 1-2, 6). As discussed above, the settlement value is within an acceptable range. Accordingly, this objection is also overruled.

Mr. Albrecht also filed an additional brief in opposition to the settlement on June 11, 2024. (Doc. # 130). The brief questions how vigorously Class Counsel prosecuted

23

the lawsuit. (Id. at 4-5). Additionally, Mr. Albrecht asserts that Class Counsel and the Claims Administrator violated provisions of the CAN-SPAM Act that govern commercial emails when sending the email notices by (1) improperly identifying the sender of the email notices, (2) failing to disclose an advertisement, (3) failing to provide a valid physical postal address for the Claims Administrator, (4) not including a working opt-out hyperlink, and (5) providing an invalid reply-to email address. (Id. at 6-7).

However, the provisions discussed in Mr. Albrecht's motion do not appear to apply to the email notices sent by the Claims Administrator, as these notices were legal in nature. See 15 U.S.C. § 7704(a)(1) (applying to transmissions of commercial electronic mail messages and transactional or relationship messages); Id. § 7704(a)(5)(A) (applying to transmissions of commercial electronic mail messages); Id. § 7704(a)(3) (applying to transmissions of commercial electronic mail messages). Accordingly, Mr. Albrecht's concerns do not weigh against approval of the settlement. To the extent that Mr. Albrecht intended his brief to qualify as an objection to the settlement, the objection is overruled.

In sum, all objections to the settlement are overruled.

**C.   Concerns Raised by the Class Representative**

On May 21, 2024, both class counsel and Walmart's counsel received an email from Vassilios Kukorinis, the preliminarily approved class representative, expressing concern about a provision applicable only to him that includes both an individual release of claims and a covenant not to sue. (Doc. # 124-4). In this email, Mr. Kukorinis expressed that he intended to attend the Final Approval Hearing to "ask the court[] to review and rule for the legality of the provisions/demands stated at STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT, paragraph 12.9 'Plaintiff's Individual Release.'" (Id. at 1). Mr. Kukorinis believes that this release is overly broad, stating that he will not recover any money for over six years of work exposing Walmart's practices. (Id.). He asserts that the attorneys agreed, through the provision, that Walmart could fully control his future and those of people close to or related to him. (Id.).

Mr. Kukorinis also raised concerns that Paragraph 12.9 did not comply with Rules 3.4(f) and 5.6(b) of the American Bar Association's Model Rules for Professional Conduct. (Id.). He also raises concerns about confidentiality, non-disparagement, and non-participation clauses in settlement agreements, and asks whether the provision interferes with

25

his First Amendment rights. (Id.). Finally, he notes that he recently challenged an instance of overcharging at a Walmart store. (Id. at 1-2). He asks whether he is permitted to upload shopping experiences like this to social media or whether he risks facing a defamation lawsuit from Walmart. (Id. at 2).

At the hearing, Mr. Kukorinis raised these objections. He was also concerned that he would not be able to help family and friends in Walmart stores if they were being overcharged, would not be able to shop at Walmart, and that Walmart would continue to overcharge customers. He also raised concerns about the low claims rate and the settlement provision that prevents class members from suing as to these overcharges, even if they have not filed a claim form or received actual notice of the settlement.

As part of the settlement agreement, Mr. Kukorinis is providing a broader release than that applicable to other class members and signing a covenant not to sue. (Doc. # 100 at 12 n.13). The provision states:

> i. Subject to the Court's final approval of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, and in addition to the Settlement Class Member Released Claims, the Plaintiff on behalf of himself and any and all spouses, representatives, heirs, successors, assigns, devisees, and executors (excluding the Releasing Settlement Class Members he seeks to

represent), releases, acquits, and forever discharges the Walmart Released Parties from any and all allegations, claims, causes of action, demands, obligations, or liability, of whatever kind or nature, whether for injunctive relief, damages, penalties, or any other form of recovery, in this Court or in any other court or forum, whether known or unknown, suspected or unsuspected, that he may now have, has ever had, or hereafter may have, and whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local, relating to items of any kind he purchased or attempts to purchase at Walmart or at or from any Walmart affiliated entity, up through the date on which the Judgment becomes Final;

ii. Plaintiff covenants that he will not in the future, directly or indirectly, initiate, assign, maintain or prosecute, or in any way aid or assist in the initiation, maintenance, or prosecution of individual or class claims related to overcharges related to the purchase of items of any kind at Walmart or at or from any Walmart affiliated entity; and,

iii. Plaintiff represents and warrants that he has knowledge and an understanding of the price and weight discrepancies alleged in the Complaint and Amended Complaint; provided, however, that (a) nothing in this ¶12.9 and Plaintiff's Individual Release shall preclude Plaintiff from being an Approved Claimant in this Litigation or being an absent class member in a class action and submitting a claim as an absent class member in other class action settlements involving Walmart that are not covered by the Release in this Litigation; and (b) Plaintiff is not releasing any claims for personal injury or wrongful death.

iv. Plaintiff's execution of this Agreement signifies that he has read and understood this ¶12.9.

(Doc. # 71-2 at ¶ 12.9).

Mr. Kukorinis is not receiving any individual or additional compensation in exchange for this relief. (Doc. # 100 at 12 n.13). He also admits that he signed the settlement agreement, despite having concerns and considering opting out from the case. (Doc. # 124-4 at 1).

Named plaintiffs often enter into broader or general releases as part of class action settlements. E.g., Blessinger v. Wells Fargo & Co., No. 8:22-cv-1029-TPB-SPF, 2023 U.S. Dist. LEXIS 215726, at *2 (M.D. Fla. Dec. 5, 2023) (preliminarily approving a class action settlement that included a general release for the named plaintiff, but directing that all references to a general release payment be stricken). Further, "the assent of named plaintiffs is not a prerequisite to the approval of a settlement." Pettway v. Am. Cast Iron Pipe Co., 576 F.2d 1157, 1216 (5th Cir. 1978). Therefore, the Court can approve the settlement despite Mr. Kukorinis's concerns.

Importantly, Mr. Kukorinis appears to have understood the provision at the time he signed the settlement agreement. Class counsel state that they discussed the terms of the settlement and the individual release with Mr. Kukorinis frequently, including through emails, Zoom videoconferences,

and telephone calls. (Doc. # 124 at 15 & n.28). Both parties note that the individual release provision was considered a material term of the settlement because Mr. Kukorinis has sued Walmart twice in three years. (Id. at 15; Doc. # 126 at 3). At the Final Approval Hearing, class counsel confirmed that they had discussed the version of the individual release included in the final settlement agreement with Mr. Kukorinis and that he expressed that he understood and agreed to the provision.

Class counsel and Walmart's counsel also stated that the provision does not limit Mr. Kukorinis in several of the ways that Mr. Kukorinis believes it might. Both class counsel and Walmart's counsel emphasized that the settlement provision does not include a non-disparagement clause. (Doc. # 124 at 15 n.29; Doc. # 126 at 3). Class counsel also stated that Mr. Kukorinis may choose to continue to shop at Walmart if he wishes. Walmart's counsel further stated that the provision does not prevent Mr. Kukorinis from helping relatives address issues they have at Walmart stores, though it does limit his ability to help them bring future lawsuits.

Class counsel have also repeatedly emphasized Mr. Kukorinis's efforts in support of the settlement and his

prioritization of the common good. E.g., (Doc. # 124 at 15, 17).

### D.   Opt-Outs

Any member of the class who did not wish to be bound by the settlement agreement was required to opt out of the settlement by mailing the opt-out notice to the Settlement Administrator by May 22, 2024. (Doc. # 75 at ¶ 25(a)). Steven Weisbrot, President and CEO of the class's Claims Administrator, Angeion Group, LLC ("Angeion"), reported that, as of June 10, 2024, the Claims Administrator had received 160 timely Opt-Out Requests. (Doc. # 127-1 at ¶ 7). The names of the individuals who have timely opted out of the settlement are listed in Exhibit A.

The Claims Administrator also received two opt-outs with late postmarks from Da Hee An and Ryan Neel B. Laforteza. (Id. at ¶ 5). Because these opt-outs were sent after the deadline, these names have been omitted from the opt-out list.

## III. **Motion for Award of Attorney's Fees, Costs, and Expenses**

In class counsel's Motion for Award of Attorneys' Fees, Costs, and Expenses, counsel seeks an award of $9,000,000 in attorney's fees, "plus any interest on such fees, costs, and expenses at the same rate and for the same periods as earned by the Class Settlement Fund (until paid)." (Doc. # 124 at 13

n.24; Doc. # 101 at 11). Counsel also seek $114,870.41 in litigation expenses. (Doc. # 101 at 28).

**A.   Attorney's Fees**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, an attorney's fee award "shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991). In evaluating attorney's fees requests in common fund cases, the Court may, but is not required to, verify the results through the lodestar method. In re Equifax, 999 F.3d at 1280 n.26.

The percentage method requires a district court to consider a number of relevant factors called the Johnson factors to determine if the requested percentage is reasonable. See Camden I, 946 F.2d at 772 & n.3, 775 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the

attorney as a result of her/his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the clients; and (12) fee awards in similar cases. Id. at 772 n.3.

"The percentage applies to the total fund created, even where the actual payout following the claims process is lower." Pinto v. Princess Cruise Lines, Ltd., 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citing Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1295-96 (11th Cir. 1999)); see also Montoya v. PNC Bank, N.A., No. 14-20474, 2016 WL 1529902, at *23 (S.D. Fla. Apr. 13, 2016) ("[T]he valuation of counsel's fee should be based on the opportunity created for the Settlement Class . . . . [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement.").

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," an award of one-third of the common fund

is "consistent with the trend in this Circuit." <u>Hanley</u>, 2020 WL 2517766, at \*6 (quoting <u>In re Sunbeam Sec. Litig.</u>, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)); <u>see</u> <u>also</u> <u>Camden I</u>, 946 F.2d at 775 ("[D]istrict courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case . . . ."). In the Eleventh Circuit, this percentage remains consistent even in "megafund" cases, cases larger than this case where parties agreed to settlements totaling over \$100 million in value. <u>See</u> William B. Rubenstein, Newberg on Class Actions § 15:81 (6th ed. 2024) ("Most courts define mega-funds as those in excess of \$100 million . . . ."); <u>In re Equifax</u>, 999 F.3d at 1278 (affirming the district court's award of "20.36% of the \$380.5 million common settlement fund"); <u>In re Checking Account Overdraft Litig.</u>, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) ("[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements.").

As applied to this action, the <u>Johnson</u> factors demonstrate that the requested fee is reasonable and justified.

The record demonstrates that the prosecution and settlement of these claims required substantial time and labor – including time spent investigating the case, significant discovery including analysis of over 100 gigabytes of data provided by Walmart, briefing in opposition to two motions to dismiss, and extensive mediation and settlement negotiations that continued for eight months. (Doc. # 100 at 4-5; Doc. # 101 at 18). The issues involved here were difficult and required the skill of experienced, capable attorneys, given the scope of the lawsuit and, among other issues, the challenge of applying a FDUTPA claim to a nationwide class. (Doc. # 101 at 25). Class counsel have extensive experience in large class-action lawsuits. (Id. at 15-16; Doc. # 100 at 30; Doc. # 100-1 at ¶ 77). Class counsel also state that they pursued this case to the preclusion of other employment. (Doc. # 101 at 22-23). Class counsel thereafter achieved a successful result, negotiating a settlement agreement with Defendant that provided monetary relief. (Doc. # 71-2 at ¶ 5.1). Further, at the Final Approval Hearing, class counsel estimated that class members who have submitted claim forms would receive 60-65% of the value of their claims.

Continued litigation of the class's claims would have presented serious risks. In a related vein, class counsel took on considerable risk by agreeing to pursue this action on a purely contingent basis. See Fruitstone v. Spartan Race, Inc., No. 20-cv-20836, 2021 WL 2012362, at *12 (S.D. Fla. May 20, 2021) (noting that "the risks of failure and nonpayment in a class action are extremely high" and that counsel undertook "significant risk" in undertaking the litigation "and would not have recovered any fee or their expenses had the Court declined to certify a class or had they lost at trial").

Finally, as to the value of the attorney's fees, the requested fee comports with fees awarded in other common fund class settlements, including settlements of larger values. See Hanley, 2020 WL 2517766, at *6 (noting that an award of one-third of the common fund is "consistent with the trend in this Circuit" (quoting In re Sunbeam Sec. Litig., 176 F. Supp. 2d at 1333); In re Equifax, 999 F.3d at 1278 (affirming the district court's award of "20.36% of the $380.5 million common settlement fund"); Camden I Condo. Ass'n, 946 F.2d at 775 ("[D]istrict courts are beginning to view the median of this 20% to 30% range, i.e., 25% as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual

35

circumstances of each cases . . . .”). Additionally, it is appropriate to include interest in the attorney's fee award. See In re Health Insurance Innovations Secs. Litig., No. 8:17-cv-2186-TPB-SPF, 2021 WL 1186838, at *1 (M.D. Fla. Mar. 30, 2021) (awarding 33% of the settlement fund as attorney's fees, consisting of $245,631.85, plus interest); In re Sunbeam Secs. Litig., 176 F. Supp. 2d at 1337 (awarding attorney's fees of 25% of the common fund plus interest).

In short, the Court approves the award of $9,000,000 in attorney's fees to counsel, plus any interest on such fees at the same rate and for the same periods as earned by the Class Settlement Fund (until paid).

**B. Litigation Expenses**

Class counsel requested $114,870.41 in costs, plus interest. (Doc. # 101 at 28; Doc. # 124 at 13 n.24). These litigation costs include “expert fees, mediation fees, travel expenses for the in-person mediation, legal research costs, court filings, photocopying costs, clerical overtime, costs incurred in gathering evidence at Walmart stores, and postage.” (Doc. # 101 at 28). These costs appear to have been necessary to build the case on the class's behalf, particularly in light of the data-driven approach to determining the overcharges paid by Walmart's customers.

Class counsel indicate that $78,145 of these expenses were for expert fees incurred for work performed by the data and class expert. (Id.). This expert helped class counsel to understand and analyze the voluminous data that Walmart produced in response to discovery requests. (Id.). The expert also analyzed estimated damages. (Id. at 29). The next highest category of expenses is $20,640.70 incurred for mediation with Mr. Robert Meyer, a nationally renowned JAMS mediator. (Id.). The remaining costs included "travel and lodging expenses for settlement meetings and mediations, LEXIS and PACER online legal research charges, photocopying expenses, filing and service fees, clerical overtime costs, postage expenses, and reimbursements to Class Counsel's agents for evidence relevant to this action purchased at Walmart stores." (Id.).

The expenses represent 0.26% of the settlement value and appear reasonable. See In re Equifax Inc. Customer Data Security Breach Litig., 1:17-md-2800-TWT, 2020 WL 256132, at *2, *40 (N.D. Ga. Mar. 17, 2020) (approving a settlement that authorized reimbursement of up to $3 million in expenses by class counsel out of a common fund valuing $380,500,000), aff'd in part, rev'd in part on other grounds, 999 F.3d 1247 (11th Cir. 2021); Hanley, 2020 WL 2517766, at *18 (approving

37

class counsel's request to recover "costs and expenses [that] equated to approximately 1.2% of the settlement fund" and noting that this value "is considered in line with normal expenditure amounts as a percentage of the total recovery amount"). Additionally, the fees requested are often approved as part of class settlements. <u>See</u>, <u>e.g.</u>, <u>Gevaerts v. TD Bank, N.A.</u>, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *40 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of $300,666.95 in expenses, including, "among others, fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"); <u>Denning v. Mankin Law Grp., P.A.</u>, No. 8:21-cv-2822-MSS-MRM, 2023 U.S. Dist. LEXIS 50371, at *20-21 (M.D. Fla. Feb. 15, 2023) (approving expenses including travel and dining expenses, mediation fees, and filing fees); <u>In re Belmac Corp. Sec. Litig.</u>, No. 8:92-1814-SDM, 1994 U.S. Dist. LEXIS 21584, at *192 (M.D. Fla. Apr. 6, 1994) (approving a class action settlement where expenses submitted by class counsel included clerical overtime).

Thus, the Court awards the requested costs and expenses to counsel.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement (Doc. # 100) is **GRANTED.**

(2)  Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Expenses (Doc. # 101) is **GRANTED.**

(3)  This Final Judgment and Order of Dismissal ("Judgment") incorporates by reference: (a) the Settlement; and (b) the Notice, Summary Notice, and Declaration of the Claims Administrator with respect to Notice, all filed with this Court.

(4)  This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

(5)  Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court affirms its determinations in the Order and finally certifies, for purposes of settlement only, a Settlement Class defined as: all Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ("Walmart Store") during the Settlement Class Period. Excluded from the Settlement Class are:

a.   (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart

Inc.'s directors, officers, and executives; (3) Class Counsel; and

b. Settlement Class Members who timely and validly requested exclusion from the Class who are listed on Exhibit A hereto as having submitted an exclusion request allowed by the Court.

(6) The Court hereby affirms its determination in the Order and finds, for the purposes of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the Class is so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Class; (c) Plaintiff's claims are typical of those of the Class; (d) Plaintiff and Class Counsel have fairly and adequately represented the Class's interests and will continue to do so; (e) questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(7) Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only,

the Court hereby affirms its determinations in the Order and finally appoints Plaintiff as Class Representative and Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty of Chimicles Schwartz Kriner & Donaldson-Smith LLP as Class Counsel.

(8) The Notice of Pendency and Proposed Settlement of Class Action ("Notice") given to the Class was the best notice practicable under the circumstances, including the individual notice to all Class Members who could be identified through reasonable effort. The Notice provided the best notice practicable to Class Members under the circumstances of those proceedings and of the matters set forth in the Notice, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure (including Rules 23(c)-(e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and other applicable laws. No Settlement Class Member is relieved from the terms of the Settlement, including the Releases provided for therein, based upon the contention or proof that such

Settlement Class Member failed to receive actual or adequate notice.

(9)   A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the Final Approval Hearing. There have been six objections to the Settlement each of which was addressed by the Court at the Final Approval Hearing.

(10)  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determinations in the Order, fully and finally approves the Settlement set forth in the Settlement Agreement in all respects and finds that:

a.   the Settlement is, in all respects, fair, reasonable, adequate and in the best interest of the Settlement Class;

b.   the Settlement was the result of informed, serious, extensive arm's-length negotiations among experienced counsel following mediation under the direction of an experienced mediator;

c.   there was not collusion in connection with the Settlement; and,

d.   the record is sufficiently developed and complete to have enabled Plaintiff and Walmart to have

adequately evaluated and considered their positions.

(11) Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Settlement Agreement, as well as the terms and provisions hereof. Except as to any individual claim of those Persons (identified in Exhibit A attached hereto) who have validly and timely requested exclusion from the Settlement Class (for whom Walmart can and expressly does retain any defenses to such excluded claims), the Court hereby dismisses the Action and all Released Claims with prejudice as provided in the Settlement Agreement.

(12) The Parties are to bear their own costs, except as and to the extent provided in the Settlement Agreement and herein.

(13) Pursuant to Federal Rule of Civil Procedure 23(h), the Court hereby awards Class Counsel Attorney's Fees in the amount of $9,000,000, plus litigation costs totaling $114,870.41, payable pursuant to the terms of the Settlement Agreement.

(14) The Releases set forth in Section 12 of the Settlement Agreement, together with the definitions contained in

the Settlement Agreement relating thereto in Section 12, are expressly incorporated herein by reference. Accordingly, this Court orders that:

a.  Upon the Effective Date of the Settlement, by operation of this Judgment, Settlement Class Member Releasing Parties shall have fully and forever released, compromised, settled, resolved, relinquished, waived and discharged each and every Settlement Class Member Released Claim against Walmart Released Parties.

b.  Upon the Effective Date, and by operation of the Judgment, Walmart Releasing Parties shall have fully and forever released, compromised, settled, resolved, relinquished, waived and discharged each and every Walmart Released Claim against Settlement Class Member Released Parties. Nothing in this Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of the Stipulation or the Judgment.

c.  Notwithstanding any provision in the Judgment and Settlement Agreement, Plaintiff and Settlement Class Members are not releasing any claims for personal injury or wrongful death. Further, this

agreement does not affect claims by any
governmental authority.

(15) Any order entered concerning the allocation of the Net
Settlement Fund to Authorized Claimants, shall in no way
disturb or affect this Judgment and shall be considered
separate from this Judgment.

(16) The Settlement, the Settlement Agreement (whether or not
consummated) and the Exhibits thereto, including the
contents thereof, the negotiations leading to the
execution of the Settlement Agreement, any proceedings
taken pursuant to or in connection with the Settlement,
and/or approval of the Settlement (including any
arguments proffered in connection therewith), and any
communication relating thereto, are not evidence, nor an
admission or concession by any Party or its counsel, of
any fault, liability or wrongdoing whatsoever, as to any
facts or claims alleged or asserted in the Litigation,
or any other actions or proceedings, or as to the
validity or merit of any of the claims or defenses
alleged or asserted in any such action or proceeding.

(17) Neither the Settlement, the Settlement Agreement, the
negotiations leading to the execution of the Settlement
Agreement, nor any proceedings taken pursuant to or in

connection with the Settlement and Settlement Agreement, and/or approval of the Settlement (including any arguments proffered in connection therewith), nor any communication relating thereto, shall be:

a.   offered or received against any Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Party of the truth of any allegations by Plaintiff, or the validity of any claim or defense that has been or could have been asserted in the Litigation, or the validity or deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Claims, or that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than the Settlement; or,

b.   offered or received against any Party as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission, the absence of any fault, misrepresentation, or omission, with respect to any statement or written document

approved or made by Walmart, or against Plaintiff or any Member of the Settlement Class as evidence of any infirmity in the claims of Plaintiff and the Settlement Class.

(18) However, the Parties may reference or file the Settlement Agreement and/or Judgment from this Litigation in any other action that may be brought against them in order to (a) effectuate the Releases granted them hereunder; and (b) support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

(19) Walmart has denied and continues to deny liability and maintain that it has meritorious defenses and have represented that it entered into the Settlement solely in order to avoid the cost and burden of litigation.

(20) Without affecting the finality of this Judgment in any way, this Court hereby retains jurisdiction up to and including December 31, 2024.

(21) If the Settlement does not become effective in accordance with the terms of the Settlement Agreement,

or the Effective Date does not occur, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement, and the Class Settlement Fund shall be returned in accordance with the terms of the Settlement Agreement.

(22) Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

(23) The Clerk is directed to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of June, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

VASSILIOS KUKORINIS, on behalf
of himself and any others similarly
situated,

      Plaintiff,

v.

WALMART INC.,

      Defendant.

Case No. 8:22-cv-02402-VMC-TGW

## PLAINTIFF'S SUPPLEMENTAL SUBMISSION REGARDING NOTICE AND AN UPDATED PROPOSED PRELIMINARY APPROVAL ORDER SUBMITTED IN SUPPORT OF THE CLASS ACTION SETTLEMENT

This Supplemental Submission is filed in accordance with Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement[1] at pages 2-3, 30 (Dkt. No. 71, "Plaintiff's Motion") and pursuant to the Court's November 29, 2023 Order.

*First, Plaintiff hereby informs the Court of the number of email addresses to which direct Email Notice will be sent.* As detailed in Plaintiff's Motion at pages 11-12, 27-30 and in the Notice Plan Decl. (Dkt. No. 71-4) at ¶¶17-66, the Notice Plan provides that (among other things, including a robust digital media campaign) the Email Notice will be sent directly, by email, to Walmart customers who are likely to have purchased

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Stipulation and Agreement of Settlement ("Agreement" or "SA ¶ _").

Weighted Goods and Bagged Citrus at a Walmart Store during the Settlement Class Period.

Identification of customers' email addresses was a time-consuming process undertaken by Walmart, particularly due to the volume of the data being queried by Walmart. Walmart was able to identify for this Action, based on records reasonably available to it, one or more email addresses potentially associated with persons who may have purchased Weighted Goods and/or Bagged Citrus items at a Walmart Store during the Settlement Class Period.

Walmart has provided the Claims Administrator with a data file containing 81,429,269 unique records, with each record containing a customer's first name, last name, at least one email address, and a unique customer ID ("Unique Records"). *See* Supplemental Declaration of Steven Weisbrot, Esq. re: Proposed Notice Plan, filed concurrently herewith ("Suppl. Weisbrot Decl."), at ¶¶4-5. The Claims Administrator has reviewed the file and data provided by Walmart. *Id.*[2] The Claims Administrator identified a total of 134,131,376 unique email addresses associated with the approximately 81 million Unique Records; there are more email addresses than unique customers because Walmart identified from their records more than one email address for some customers. *Id.* at ¶6.

---

[2] For purposes of sending Notice and the effective administration of Claim Forms, the Claims Administrator will assign each Unique Record a Notice Identification number that is unique to the individual for purposes of submitting their claim, and then for tracking their claim, as part of the proposed Settlement (the "Unique Notice ID"). *Id.* at ¶¶5, 12.

In the manner described below, the Claims Administrator will send Email Notices to over 81 million email addresses, with the objective of reaching the more than 81 million Walmart customers identified in the data, to notify them of the proposed Settlement, and their options to participate in the Settlement, and to provide them with a direct link through which they can submit their Claim Form. The number of customer email addresses, and thus the magnitude of the direct Email Notice plan being conducted in this Settlement, is exceptional.[3] *See* Plaintiff's Motion at pages 27-30. As intended by Class Counsel, the use of direct Email Notice here will maximize Settlement Class Members' participation in the Settlement.[4]

***Second, Plaintiff hereby informs the Court of the start and end dates for disseminating the Email Notice and the Reminder Email.*** As detailed in Plaintiff's Motion at pages 11-12, 27-30, in the Notice Plan Decl. (Dkt. No. 71-4) at ¶¶23-32, and in the Suppl. Weisbrot Decl. at ¶¶7-12, the direct Email Notice[5] will be disseminated as follows, subject to the Court granting preliminary approval of the proposed Settlement and entering the proposed Updated Preliminary Approval Order, which is attached as Exhibit 1 hereto:

(a) First, the Claims Administrator will conduct an email cleansing and validation process that is applied to all 134 million unique email addresses;

---

[3] The Claims Administrator has significant experience disseminating emailed Notice to email recipients comparable in volume to what is involved in this Notice Plan. Suppl. Weisbrot Decl. at ¶11.

[4] Requiring direct email notice (the first time in a Walmart consumer class action settlement of this magnitude) was a significant Settlement term negotiated and insisted upon by Plaintiff.

[5] The Email Notice was attached as Exhibit B to the Notice Plan Decl., Dkt. 71-4, and described therein at ¶¶26-31. *See also*, Plaintiff's Motion at pages 11-12, 27-30.

among other things, the emails will be compared to known bad email addresses and will be verified as currently in existence. Suppl. Weisbrot Decl. at ¶¶7-10. The Claims Administrator expects that process will take up to three weeks to complete. *Id.* ¶10. Contemporaneously, the Claims Administrator will also, as described in the Notice Plan Declaration, prepare and finalize all necessary components for the comprehensive Media Notice (*see* Dkt. 71-4 at ¶¶33-53), the Settlement Website, and the toll-free telephone line (*id.* at ¶¶55-60).

(b) Then, beginning <u>30 days after the entry of the PAO</u>, the Claims Administrator will start sending direct Email Notices to a valid email address for each Unique Record, in the manner detailed in the Notice Plan Declaration (*see id.* at ¶¶29-31). For example, the Claims Administrator strategically staggers the release of emails, starting with a smaller number of emails and gradually increases the volume of emails sent to a given domain. *Id.* Based on the Claims Administrator's experience, this form of "priming" or "warming up" minimizes the probability of ISPs[6] blocking the emails. *Id. See also* Suppl. Weisbrot Decl. ¶¶10-13.  If the Claims Administrator's validation process identifies an email address that no longer exists, or an Email Notice is identified as not having been delivered, and there is an additional email address in the data for that Unique Record, the Claims Administrator will then cause the Email Notice to be sent

---

[6] The term "internet service provider (ISP)" refers to a company that provides access to the internet to both personal and business customers, and may provide other services, including email services, domain registration, web hosting, and browser packages. https://www.investopedia.com/terms/i/isp.asp (last visited 1.8.2024).

to that alternate email address. *Id.* The Claims Administrator will repeat that process, as necessary, for those individuals who Walmart provided multiple email addresses. *Id.* The Claims Administrator has allotted <u>45 days to complete</u> the emailing of the direct Email Notices.[7]

(c) Also beginning <u>30 days after the entry of the Preliminary Approval Order</u>, the Claims Administrator will commence the comprehensive Media Notice (*see* Notice Plan Decl. at ¶¶33-53) and launch the Settlement Website and the toll-free telephone line (*id.* at ¶¶55-60). *See also,* Suppl. Weisbrot Decl. ¶14.

(d) Next, to remind Settlement Class Members of the settlement-related deadlines, including the deadline by which they need to file their Claim Form, approximately three days after the direct Email Notice is completed, the Claims Administrator will begin a staggered dissemination of Reminder Email Notices (Exhibit C to Notice Plan Decl., Dkt. 71-4) to the valid email addresses used for the direct Email Notice. Suppl. Weisbrot Decl. ¶10. The Claims Administrator has allotted 35 days to complete the emailing of the Reminder Email Notices.

---

[7] The Claims Administrator has advised that disseminating Email Notice in this manner and using a Unique Notice ID will have several pragmatic advantages, such as: (a) Reducing the number of duplicative claims submitted by a Settlement Class Member who may receive multiple notices; (b) Reducing administrative costs in sending duplicate Notices and in processing duplicate Claims from the same Settlement Class Member, which ultimately results in more money available to pay Settlement Class Members who submit timely and valid claim forms; and (c) Avoiding the creation of unnecessary confusion amongst Settlement Class Members. Suppl. Weisbrot Decl. ¶12.

Therefore, in sum, <u>30 Days</u> after the Court signs and enters the proposed Preliminary Approval Order (the "Notice Date"), the Claims Administrator shall commence dissemination of direct Email Notice, which will be completed in approximately <u>45 Days</u>.

***Third, Plaintiff attaches hereto as Updated Exhibit 1*** an updated [Proposed] Order Preliminarily Approving Settlement and Providing for Notice. The PAO was updated solely to identify the proposed Settlement-related deadlines and timing for the Final Approval Hearing. The Updated PAO provides as follows:

(1) **PAO ¶11**: **thirty (30) Days** after the Court signs and enters the proposed PAO (the "Notice Date"), the Claims Administrator shall commence dissemination of direct Email Notice, commence the digital and media notice as set forth in the Notice Plan, and cause the Settlement Website to go-live.

(2) **PAO ¶12**: **thirty (30) Days** after the Court signs and enters the proposed PAO, the Claims Administrator shall cause the publication over PRNewswire of the Summary Notice, and **ninety (90) Days** after the Court enters the proposed PAO, shall publish notice of the Settlement in *People* Magazine.

(3) **PAO ¶17**:  Claim Forms must be postmarked or submitted electronically no later than **seven (7) Days prior to the Final Approval Hearing** (the "Claim Filing Deadline").

(4) **PAO ¶5**: Plaintiff requests that the Final Approval Hearing be scheduled for a date that is approximately **<u>145 calendar days from the date the Court</u>**

**enters the Preliminary Approval Order**.

(5) The PAO already identified deadlines for other Settlement-related events, *e.g.* (a) thirty-five Days before the Final Approval Hearing, Plaintiff shall file all opening briefs and supporting documents in support of the Settlement and Plaintiff's Attorneys' Fees, Costs, and Expenses (PAO ¶32); (b) a Settlement Class Member has up to twenty-one Days prior to the Final Approval Hearing to opt-out, or to object to the Settlement or Class Counsel's application for Attorneys' Fees, Costs, and Expenses (PAO ¶¶23-24; SA ¶¶9-10); and, (c) Plaintiff's replies to any objections shall be filed and served seven Days before the Final Approval Hearing (PAO ¶32).[8]

For the Court's convenience, Plaintiff has attached as Exhibit 2 hereto a table illustrating the timeline of events detailed in the Updated PAO.

The proposed timing of 145 calendar days between the entry of the Updated PAO and the Final Approval Hearing gives the Claims Administrator ample time to effectuate the robust email cleaning and validation processes, effectively disseminate the Email Notice to over 81 million email addresses, conduct the comprehensive Media Notice described in the Notice Plan Declaration, and effectively disseminate the Reminder Email Notice.  Suppl. Weisbrot Decl. ¶13.

---

[8] Thus, the Settlement Class Members will have the benefit of Plaintiff's motion in support of final approval of the Settlement and application for an award of Attorneys' Fees, Costs, and Expenses, both of which will be filed with the Court (and put on the Settlement Website) in advance of the opt-out and objection deadlines. PAO ¶¶ 24, 32.

And, importantly, the proposed schedule, including scheduling the Final Approval Hearing 145 calendar days after the entry of the PAO, provides Settlement Class Members, from the day the last direct Email Notice is sent by the Claims Administrator, approximately 49 days to opt-out or object to the proposed Settlement and approximately 63 days to file and meet the Claim Filing Deadline. As the Eleventh Circuit has noted: "Courts have consistently held that 30 to 60 days between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords class members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement." *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 634 (11th Cir. 2015) (citations omitted). The Court of Appeals then held that a forty-five day period to submit a claim, opt-out, or object was reasonable. *Id.* In addition, the exclusion, objection and claim form deadlines in the proposed PAO are consistent with other comparable settlements that the Claims Administrator has administered. Suppl. Weisbrot Decl. ¶13.

For all the foregoing reasons, and those set forth in Plaintiff's Motion, Plaintiff respectfully requests that the Court enter the proposed PAO: (1) preliminarily approving the proposed Settlement; (2) certifying the proposed Settlement Class for Settlement purposes only; (3) appointing Class Counsel and Plaintiff to represent the Settlement Class; (4) appointing Angeion Group as the Claims Administrator; (5) approving the Notice Plan; (6) establishing procedures for Settlement Class Members to opt-out or to object; and, (7) setting the settlement-related deadlines and scheduling

the Final Approval Hearing.


Dated:  January 9, 2024                          Respectfully submitted,

                                                 */s/ Kimberly M. Donaldson-Smith*
                                                 Kimberly M. Donaldson-Smith
                                                 Kimdonaldsonsmith@chimicles.com
                                                 Nicholas E. Chimicles
                                                 Nick@chimicles.com
                                                 Zachary P. Beatty
                                                 Zpb@chimicles.com
                                                 **Chimicles Schwartz Kriner &
                                                 Donaldson-Smith LLP**
                                                 361 W. Lancaster Avenue
                                                 Haverford, PA 19041
                                                 Telephone: (610) 642-8500
                                                 Fax: (610) 649-3633

                                                 *Attorneys for Plaintiff and the Putative
                                                 Class*

**LOCAL RULE 3.01(g) CERTIFICATION**

    This certifies that Plaintiff's counsel conferred with Walmart's counsel regarding this Motion and Walmart's counsel does not oppose the relief requested herein.

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2024 the foregoing document was served on

Defendant's counsel by the Court's electronic filing system.

*/s/ Kimberly M. Donaldson-Smith*
Kimberly M. Donaldson-Smith

# UPDATED

# EXHIBIT 1

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| VASSILIOS KUKORINIS, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | CASE NO. 8:22-CV-02402-VMC-TGW |
| v. | |
| WALMART, INC., | |
| *Defendant.* | |

## [PROPOSED] ORDER
## PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT

**WHEREAS**, an action is pending before this Court entitled *Kukorinis v. Walmart Inc.*, No. 8:22-CV-02402-VMC-TGW (M.D. Fla.) ("Litigation");

**WHEREAS**, Plaintiff has made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order preliminarily approving the Settlement of this Litigation, in accordance with a Stipulation and Agreement of Class Action Settlement dated as of November 15, 2023 ("Agreement" or "Settlement Agreement"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed Settlement of the Litigation and for dismissal of the Litigation with prejudice upon the terms and conditions set forth therein; and the Court having read and considered the Stipulation and the Exhibits annexed thereto; and

**WHEREAS**, unless otherwise defined, all terms used herein have the same

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

meanings as set forth in the Settlement Agreement.

**WHEREAS**, the Court preliminarily finds that the proposed Settlement should be approved as:

(i)     the result of informed, serious, extensive arm's-length and non-collusive negotiations between experienced counsel following mediation under the direction of an experienced mediator;

(ii)     eliminating the risks to the Parties of continued litigation;

(iii)    has no obvious deficiencies;

(iv)    it does not provide undue preferential treatment to the Settlement Class Representative or segments of the Settlement Class; and

(v)     it appears to fall within the range of possible approval and is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the proposed Settlement to Settlement Class Members and further consideration of the Settlement at the Final Approval Hearing described below.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.     The Court has reviewed the Settlement Agreement and preliminarily approves the Settlement set forth therein as fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Final Approval Hearing described below.

2.     Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for purposes of this Settlement only, the Court preliminarily certifies

the following Settlement Class: means all Persons who Purchased Weighted Goods and/or Bagged Citrus in-person at a Walmart retail store, supercenter, or neighborhood market in the United States or Puerto Rico ("Walmart Store") during the Settlement Class Period. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation and members of their direct families; (2) Walmart Inc.'s directors, officers, and executives; (3) Class Counsel; and (4) Settlement Class Members who submit a valid and timely Opt-Out Request approved by the Court.

3.    The Court finds, for the purposes of the Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Class; (c) Plaintiff's claims are typical of those of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented the Settlement Class's interests and will continue to do so; (e) questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Plaintiff is preliminarily certified as Class Representative and Kimberly M. Donaldson-Smith, Nicholas E. Chimicles, and Zachary P. Beatty of Chimicles Schwartz Kriner & Donaldson-Smith, LLP is

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

preliminarily certified as Class Counsel.

### Final Approval Hearing

5.     A hearing ("Final Approval Hearing") shall be held before this Court on

_____, 2024 [a date approximately **145 calendar days** from the date of this

Order], at the United States District Court for the Middle District of Florida, Tampa

Division, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue,

Tampa, Florida 33602, to determine: whether the proposed Settlement on the terms

and conditions provided for in the Agreement is fair, reasonable, and adequate to

the Settlement Class and should be approved; whether the proposed Judgment

and Order of Dismissal should be entered; whether the Settlement Class should be

finally certified for purposes of the Settlement only; whether Plaintiff and Class

Counsel should be finally appointed as Class Representative and Class Counsel,

respectively, for purposes of the Settlement only; the amount of Attorneys' Fees, Costs,

or Expenses to be awarded to Class Counsel; and, such other matters relating to this

Settlement as may properly be before the Court.

6.     The Court may adjourn the Final Approval Hearing, or hold the hearing

electronically via Zoom, without further notice to Settlement Class Members,

provided that the time or the date of the Final Approval Hearing shall not be set at a

time or date earlier than the time and date set forth in ¶ 5 and any new date / time will

be promptly posted on the Settlement Website upon being ordered.

7.     The Court retains jurisdiction to consider all applications arising out of

or connected with the proposed Settlement.

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

8.      The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class.

## Notice and Claims Administration

9.      Pursuant to Fed. R. Civ. P. 23(c), the firm of Angeion Group is hereby appointed to supervise and administer the Notice Plan as well as the processing of Claims as more fully set forth below ("Claims Administrator").

10.     The Notice Plan, including the form of the notices and methods for notifying the Settlement Class of the Settlement and its terms and conditions, and the Attorneys' Fees, Costs and Expenses to be sought by Class Counsel:

   a.   meet the requirements of the Federal Rules of Civil Procedure (including Rules 23(c)-(e) the United States Constitution (including the Due Process Clause), and the Rules of this Court;

   b.   constitute the best notice to Settlement Class Members practicable under the circumstances;

   c.   are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of (i) the proposed Settlement of this Litigation; (ii) their right to exclude themselves from the Class; (iii) their right to object to any aspect of the proposed Settlement; (iv) their right to appear at the Final Approval Hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the Settlement Class; and (v) the binding effect of the proceedings,

rulings, orders and judgments in this Litigation, whether favorable or unfavorable, on all persons not excluded from the Settlement Class; and,

    d. are reasonable and constitute due, adequate and sufficient notice to all Persons entitled thereto.

11.     Not later than **thirty (30) Days** after the Court signs and enters this Order (the "Notice Date"), the Claims Administrator shall:

    a. commence dissemination of direct notice as set forth in the Notice Plan;

    b. commence digital and media notice as set forth in the Notice Plan;

    c. cause the Settlement Website (www.WalmartWeightedGroceriesSettlement.com) to go live and post on the Settlement Website the Settlement Agreement and exhibits, including the Notice and Claim Form, substantially in the form of Exhibits 1A and 1B, hereto.

12.     Not later than **thirty (30) Days** after the Court signs and enters this Order, the Claims Administrator shall cause the publication over PRNewswire the Summary Notice substantially in the form of Exhibit 1C, hereto, and no later than **ninety (90) Days** after the Court signs and enters this Order publish notice of the Settlement in *People* Magazine, as set forth in the Notice Plan.

13.     At least seven (7) Days prior to the Final Approval Hearing, Class Counsel shall serve on Walmart's Counsel and file with the Court proof, by affidavit or declaration, of effectuating the Notice Plan in accordance with ¶¶9-12.

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

14.     All Notice and Administration Costs shall be paid promptly and on a non-recourse basis from the Class Settlement Fund upon Class Counsel's receipt of invoices from the Claims Administrator. All Taxes and Tax Expenses shall be paid promptly and on a non-recourse basis from the Class Settlement Fund.

**Effect of the Judgment and Order of Dismissal**

15.     All Settlement Class Members (which excludes Persons who timely and validly request exclusion pursuant to ¶ 23 below) shall be bound by all determinations and judgments in the Litigation concerning the Settlement, including, but not limited to, the Releases provided for therein, whether favorable or unfavorable to the Settlement Class regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Claim Form or any similar document, any distribution from the Class Settlement Fund or the Net Class Settlement Fund.

**Claim Form**

16.     Class Members who wish to participate in the Settlement shall complete and submit a Claim Form (Exhibit 1B hereto) in accordance with the terms of the Settlement Agreement and the instructions contained in the Claim Form.

17.     Unless the Court orders otherwise, all Claim Forms must be postmarked or submitted electronically no later than **seven (7) Days prior to the Final Approval Hearing**.

18.     Any Settlement Class Member who files a Claim Form shall reasonably cooperate with the Claims Administrator, including by promptly responding to any

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

inquiry made by the Claims Administrator. Any Settlement Class Member who does not timely submit a Claim Form within the time provided for, shall be barred from sharing in the distribution of the proceeds of the Class Settlement Fund but shall nonetheless be bound by entry of the Judgment by the Court. Notwithstanding the foregoing, Class Counsel may, in its discretion, accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Class Settlement Fund to Approved Claimants is not materially delayed thereby, but shall not incur any liability for declining to do so.

19. The Claim Form submitted by each Settlement Class Member must satisfy the following conditions, unless otherwise ordered by the Court: (i) it must be properly completed, signed and submitted in a timely manner; (ii) to the extent applicable, it must be accompanied by adequate supporting documentation as identified in Claim Form; (iii) if the person executing the Claim Form is acting in a representative capacity, a certification of his, her, or its current authority to act on behalf of the Settlement Class Member must be included therein; (iv) it must be complete and contain no material deletions or modifications of any of the printed matter contained therein; and (v) it must be signed under penalty of perjury.

20. Once the Claims Administrator has considered a timely submitted Claim Form, it shall determine whether such Claim is valid, deficient, or rejected. For each Claim determined to be either deficient or rejected, the Claims Administrator shall notify the Settlement Class Member of the deficiencies ("Deficiency Notice") and give the Settlement Class Member twenty-one (21) Days to cure the deficiencies by

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

informing the Claims Administrator of the reasons the Claimant contests the rejection along with supporting documentation. The Deficiency Notice shall be sent via e-mail, unless the Claimant did not provide an e-mail address, in which case it shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Claims Administrator, fails to do so, the Claims Administrator shall notify the Settlement Class Member of that determination within a reasonable time. The Settlement Administrator may consult jointly with Class Counsel and Defense Counsel in making such determinations. The Deficiency Notice will inform the Claimant that if an issue concerning a Claim cannot otherwise be resolved, the Claimant may thereafter present the request for review to the Court.

21.    No discovery shall be allowed on the merits of the Action or the Settlement in connection with processing any Claim Form.

22.    As part of the Claim Form, each Settlement Class Member shall submit to the jurisdiction of the Court with respect to the Claim submitted, and shall, upon the Effective Date, release all Released Claims as provided in the Settlement Agreement.

**Request for Exclusion**

23.    Any Person falling within the definition of the Settlement Class may, upon request, be excluded or "opt out" from the Settlement Class.

    a. Any such Person must submit to the Claims Administrator a request for exclusion ("Opt-Out Request"), by First-Class Mail such that it is postmarked no later than twenty-one (21) calendar days before the Final

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

Approval Hearing ("Opt-Out Deadline").

b. An Opt-Out Request must (i) be signed; (ii) state the full name, current address, email address, and telephone number of the Person requesting exclusion; and (iii) contain a statement that the Person wishes to be excluded from the Settlement Class. The Opt-Out Request shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

c. The Claims Administrator may invalidate mass-generated Opt-Out Requests. "Mass" or "class" requests for exclusion will not be allowed unless signed by each Settlement Class Member who seeks to opt out.

d. All Persons who submit valid and timely Opt-Out Request in the manner set forth in this paragraph shall have no rights under the Settlement Agreement, shall not share in the distribution of the Net Class Settlement Fund, and shall not be bound by the Settlement Agreement or any Final Judgment. Walmart retains any defenses to such excluded claims

e. Settlement Class Members may not submit both an Opt-Out Request and a Claim Form. If a Settlement Class Member submits both an Opt-Out Request and a Claim Form, the Claim Form will govern and the Opt-Out Request will be considered invalid.

f. The Claims Administrator shall maintain a list of persons who have submitted Opt-Out Requests and shall provide such list to the Parties on

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

a weekly basis. Seven (7) days after the Opt-Out Deadline, the Claims

Administrator shall provide to counsel for Defendant and Class Counsel

a complete list of the names and addresses of the members of the

Settlement Class who have opted out.

## Commenting on or Objecting to the Settlement

24.     A Settlement Class Member who does not submit a timely and valid Opt-

Out Request may comment on or object to the Settlement on or before twenty-one

(21) calendar days before the Final Approval Hearing (the "Objection Deadline") by:

(i) filing such objections, papers, and briefs with the Clerk of the United States District

Court for the Middle District of Florida, Tampa Division, Sam M. Gibbons United

States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602, <u>and</u> (ii) serving

by first-class mail copies of the same papers upon Counsel for the parties:

> Kimberly M. Donaldson-Smith
> Chimicles Schwartz Kriner & Donaldson-Smith, LLP
> One Haverford Centre
> 361 West Lancaster Avenue
> Haverford, PA 19041
>
> and
>
> Naomi G. Beer
> Greenberg Traurig, LLP
> 1144 15th Street, Ste. 3300
> Denver, Colorado 80202

25.     The objection must (a) be personally signed by the Settlement Class

Member; and, (b) include the following information: (i) the full name, current address,

and current telephone number of the Settlement Class Member; (ii) documentation

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

sufficient to establish membership in the Settlement Class; (iii) a statement of the position the objector wishes to assert, including the factual and legal grounds for the position and objection; and (iv) copies of any other documents that the objector wishes to submit in support of his/her/its position. In addition, the objecting Settlement Class Member must identify any previously filed objections filed by the Settlement Class Member and/or his/her/its counsel in any state or federal court. This listing must contain (i) the name of the case; (ii) the case number; (iii) the court in which the objection was filed; and (iv) the outcome of the objection.

26.     The objection must be filed with the Court and received (not just postmarked) by the Parties' Counsel on or before the Objection Deadline.

27.     The Court will consider a Settlement Class Member's objection only if the Settlement Class Member has complied with the above requirements.

28.     Any Settlement Class Member who does not provide a notice of intention to appear in complete accordance with the deadlines and other specifications set out in the Notice, and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this Settlement and the Notice, subject to the approval of the Court, will be deemed to have waived any objections to the Settlement and can be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

29.     Settlement Class Members who do not file and serve timely written objections in accordance with the procedures set forth above will be deemed to have waived any objections to the Settlement and are forever foreclosed from making any

*Exhibit 1 to Settlement Agreement*
EXECUTION VERSION- 1/8/2024 updated

objection (whether by appeal or otherwise) to the Settlement, or any aspect of the Settlement, or any aspect of the settlement, including, without limitation, the fairness, reasonableness, or adequacy of the proposed settlement, or any award of Attorneys' Fees, Costs or Expenses.

30.    Attendance at the Final Approval Hearing is not necessary. Subject to approval of the Court, any objecting Settlement Class Member may appear in person or by counsel at the Final Approval Hearing to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any petition for Attorneys' Fees, Costs, and Expenses. Any Settlement Class Member who wishes to be heard orally at the Final Approval Hearing must, by the Objection Deadline, file with the Court a written notice of objection and a notice of intention to appear at the Final Approval Hearing. The notice of intention to appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or his/her/its counsel) will present to the Court at the Final Approval Hearing.

**Escrow Account**

31.    All funds held by the Escrow Agent in the Escrow Account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement, Judgment, and/or further order(s) of the Court.

**Filings in Support of the Settlement**

32.    All opening briefs and supporting documents in support of the Settlement

and Plaintiff's Attorneys' Fees, Costs, and Expenses, shall be filed and served by a date thirty-five (35) Days before the Final Approval Hearing. Replies to any objections shall be filed and served a date seven (7) Days before the Final Approval Hearing.

### Notice and Claims Administration Expenses

33.    All reasonable expenses incurred in identifying and notifying Class Members, as well as administering the Escrow Account and Class Settlement Fund, shall be paid as set forth in the Settlement Agreement. If the Settlement is not approved by the Court or the Effective Date otherwise does not occur, neither Plaintiff nor its Counsel shall have any obligation to repay any amounts incurred and properly disbursed pursuant to ¶¶5.2(a)-(b) of the Stipulation.

### No Admissions

34.    Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed an admission or concession by any Party or its counsel, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or asserted in the Litigation, or any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or asserted in any such action or proceeding.

35.    Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be used by any person in the Litigation, or in any other action or proceeding, whether civil, criminal, or administrative, in any court, administrative agency, or other tribunal,

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

except in connection with any proceeding to enforce the terms of the Stipulation. The Released Parties and each of their counsel may file the Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

**Additional Matters**

36.    If the Settlement and Settlement Agreement are not approved or consummated for any reason whatsoever, the Settlement, Settlement Agreement, and all proceedings had in connection therewith shall be without prejudice to the rights of the Parties *status quo ante* as set forth in ¶17.1 of the Stipulation.

37.    Until otherwise ordered by the Court, the Court stays all proceedings in the Litigation other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement and Settlement Agreement. Pending final determination of whether the proposed Settlement should be approved, neither Plaintiff nor any Settlement Class Member, directly or indirectly, representatively, or in any other capacity, shall commence or prosecute against Walmart, any action or proceeding in any court or tribunal asserting any of the Released Claims.

38.    The Court retains exclusive jurisdiction over the Litigation to consider all further matters arising out of or connected with the Settlement.

*Exhibit 1 to Settlement Agreement*
**EXECUTION VERSION- 1/8/2024 updated**

**IT IS SO ORDERED.**

DATED: _____          _____

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

EXHIBIT 2

**Exhibit 2**

**Chart of Proposed Settlement-Related Deadlines
In Proposed Preliminary Approval Order ("PAO")**

| Event | Timing/Deadline | PAO Paragraph |
|---|---|---|
| PAO Entered | n/a | n/a |
| Commencing direct Email Notice Per Notice Plan | 30 days following entry of PAO | 11.a |
| Commencing Digital and Media Notice Per Notice Plan | 30 days following entry of PAO | 11.b |
| Settlement Website Posted | 30 days following entry of PAO | 11.c |
| Publication of Summary Notice over PRNewswire | 30 days following entry of PAO | 12 |
| Publication of Notice in *People* Magazine | 90 days following entry of PAO | 12 |
| Plaintiff's Motion for Final Approval | 35 days prior to Final Approval Hearing date | 32 |
| Plaintiff's Motion for Attorneys' Fees, Costs and Expenses | 35 days prior to Final Approval Hearing date | 32 |
| Request for Exclusion / Opt-Out Deadline | 21 days prior to Final Approval Hearing date | 23 |
| Objection Deadline | 21 days prior to Final Approval Hearing date | 24 |
| Claim Form Submission Deadline (Postmarked or Submitted Electronically) | 7 days prior to Final Approval Hearing date | 17 |
| Plaintiff's Reply to any Objections | 7 days prior to Final Approval Hearing date | 32 |
| Class Counsel Affidavit/Declaration re: Proof of Effectuating the Notice Plan | 7 days prior to Final Approval Hearing date | 13 |
| Final Approval Hearing Date | A date 145 days from entry of PAO | 5 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASSILIOS KUKORINIS, on behalf of
himself and any others similarly situated,

     Plaintiff,

v.

WALMART INC.,

     Defendant.

Case No. 8:22-cv-02402-VMC-TGW

**SUPPLEMENTAL DECLARATION OF STEVEN WEISBROT, ESQ.
RE: PROPOSED NOTICE PLAN**

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2.     My credentials were provided in my prior declaration describing the proposed notice plan ("Notice Plan Declaration") (Dkt. No. 71-4).

3.     The purpose of this declaration is to provide the Court with additional information regarding the class data, email notice, and proposed schedule for disseminating notice.

**SETTLEMENT CLASS MEMBER DATA**

4.     On or about December 23, 2023, Angeion received from Walmart the list of persons who Walmart has identified as having likely purchased at least one Weighted Good or Bagged Citrus product during the Settlement Class Period and for whom Walmart has an email address. The list contained first name, last name, email address and a unique customer ID number for each record.

5.     Angeion analyzed the data, removing duplicative records and identified a total of 81,429,269 unique records (the "Unique Records") (which total number is consistent with the total Unique Records provided by Walmart). Each Unique Record will be assigned a Notice Identification number

that is unique to the individual for purposes of submitting their claim, and then for tracking their claim, as part of the proposed Settlement (the "Unique Notice ID").

6.      Angeion also identified a total of 134,141,376 unique email addresses associated with those 81,429,269 Unique Records ("Class Email List"), due to Walmart having identified in their records more than one email address associated with several customers.

## **DISSEMINATION OF EMAIL NOTICE**

7.      As described in my prior Notice Plan Declaration, Angeion will send direct email notice ("Email Notice") to persons who have valid email addresses included on the Class Email List, following best practices to both validate emails and increase deliverability. Specifically, prior to distributing the Email Notice, Angeion will subject the email addresses on the Class Email List to a cleansing and validation process.

8.      The email cleansing process removes extra spaces, fixes common typographical errors in domain names, and corrects insufficient domain suffixes (*i.e.*, gmal.com to gmail.com, gmail.co to gmail.com, yaho.com to yahoo.com, etc.).

9.      The email addresses will then be subjected to an email validation process whereby each email address will be compared to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

10.     Angeion will subject all 134,141,376 unique email addresses to the cleansing and validation process described above, which Angeion estimates will take approximately three weeks to complete. If the process identifies an email that no longer exists, or an Email Notice that was sent is identified as not delivered, and there is an additional email address in the Class Email List for the Unique Record, Angeion will cause the Email Notice to be sent to that alternate Email Address.  Angeion will repeat that process, as necessary, for those individuals who Walmart has multiple email

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior campaigns. Where an address has been returned as a hard bounce within the last year, that email is designated as a known bad email address.

addresses. Angeion will then disseminate the Reminder Email Notices to the valid email addresses used for the Email Notice.

11.     Angeion has significant experience disseminating emailed Notice to email recipients comparable in volume to what is involved in this Notice Plan.

12.     Disseminating Email Notice in the manner described above and use of the Unique Notice ID have several pragmatic advantages, such as: (a) Reducing the number of duplicative claims submitted by a Settlement Class Member who may receive multiple notices; (b) Reducing administrative costs in sending duplicate Notices and in processing duplicate Claims from the same Settlement Class Member, which ultimately results in more money available to pay Settlement Class Members who submit timely and valid claim forms; and (c) Avoiding creating unnecessary confusion amongst Settlement Class Members.

## PROPOSED NOTICE SCHEDULE

13.     After analyzing the Settlement Class Member data, Angeion consulted with the Parties to craft a strategic proposed notice schedule that allows for (a) the robust email cleaning and validation processes and (b) effective dissemination of approximately 80 million Email Notices. This was discussed in my prior Notice Plan Declaration (*see* ¶¶ 29-31). For example, Angeion strategically staggers the release of emails, starting with a smaller number of emails and gradually increasing the volume of emails sent to a given domain. In our experience, this form of "priming" or "warming up" minimizes the probability of ISPs blocking our emails. *Id.*

14.     Further, the proposed notice schedule strategically accounts for the dissemination of the Reminder Email Notice and the comprehensive Media Notice, as described in the Notice Plan Declaration (*see* ¶¶ 33-53). Specifically, the Media Notice plan will commence and run concurrently with the dissemination of the Email Notice to maximize awareness of the Settlement.

15.     The exclusion, objection and claim form deadlines in the proposed notice schedule are consistent with other comparable settlements that Angeion has administered.

**CONCLUSION**

16.     The Notice Plan includes direct notice via email to reasonably identifiable Settlement Class Members combined with a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign, search engine marketing, and print publication. Further, the Notice Plan provides for issuing a press release and social media monitoring. The Notice Plan also provides for the implementation of a dedicated Settlement Website and toll-free hotline to further inform Settlement Class Members of their rights and options in the Settlement.

17.     In my professional opinion, the Notice Plan, disseminated in accordance with the proposed notice schedule, will provide full and proper notice to Settlement Class Members providing them with more than adequate time before, and to meet, the claims, opt-out, and objection deadlines.  Moreover, it is my opinion that the Notice Plan is the best notice that is practicable under the circumstances, and fully comports with due process and Fed. R. Civ. P. 23.  After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 9, 2024

STEVEN WEISBROT

<table>
<tr><td>Your claim form must be submitted online or postmarked by: June 5, 2024</td><td>**United States District Court**<br>**Middle District of Florida**<br><br>*Kukorinis v. Walmart Inc.*<br>Case No. 8:22-CV-02402-VMC-TGW</td><td>WAL</td></tr>
</table>

### CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at www.WalmartWeightedGroceriesSettlement.com or by U.S. Mail to the following address: *Walmart Weighted Groceries Settlement*, c/o Claims Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

2. Please type or write your responses legibly.

3. Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned.

4. If your Claim Form is incomplete or missing information, the Claims Administrator may contact you for additional information. If you do not respond, the Claims Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5. Each Class Member can only submit one Claim Form. The Claims Administrator will limit the number of payments per household absent sufficient documentation or proof of separate purchases by individuals residing at the same address.

6. **You may only submit a Claim for Purchases of Weighted Goods and Bagged Citrus from October 19, 2018 through and including January 19, 2024.** Weighted Goods are sold-by-weight meat, poultry, pork, and seafood products. Bagged Citrus are organic oranges, grapefruit, tangerines, and navel oranges sold in bulk in mesh or plastic bags. Product descriptions and a searchable list of UPC Codes for the Weighted Goods and Bagged Citrus are on the Settlement Website, www.WalmartWeightedGroceriesSettlement.com.

7. Only purchases of Weighted Goods and/or Bagged Citrus that were made in person at a Walmart retail store, supercenter, or neighborhood market in the United States and/or Puerto Rico are eligible. **Purchases of Weighted Goods and Bagged Citrus products that were done online, for resale, or that were returned, are not part of the Litigation and Settlement and are not eligible for payment.**

8. If you have any questions, please contact the Claims Administrator: by email at Info@WalmartWeightedGroceriesSettlement.com; or by mail at the address listed above; or by calling 1-833-987-9998.

9. **You must notify the Claims Administrator if your email, mobile number, and/or address changes. If you do not, you may not receive your payment.**

10. **DEADLINE -- Your claim must be submitted online by June 5, 2024. Claim Forms submitted by mail must be mailed to the Claims Administrator postmarked no later than June 5, 2024.**

**The amount that a Settlement Class Member will receive depends on the number of people who submit valid Claim Forms because all amounts are subject to a potential pro rata increase or decrease.**

<table>
<tr><td>

Your claim form
must be submitted
online or
postmarked by:
**June 5, 2024**

</td><td>

**United States District Court**
**Middle District of Florida**

*Kukorinis v. Walmart Inc.*
Case No. 8:22-CV-02402-VMC-TGW

</td><td>

**WAL**

</td></tr>
</table>

## CLAIM FORM

---

### I. YOUR CONTACT INFORMATION AND MAILING ADDRESS

---

Provide your name and contact information below.

| ANDREA | GULLEY |
|---|---|
| **First Name** | **Last Name** |

1240 GRAYSON CIRCLE

**Street Address**

| MALVERN | AR | 72104 |
|---|---|---|
| **City** | **State** | **Zip Code** |

| ANDREAGULLEYSUNSHINE@YAHOO.COM | 501-467-4932 |
|---|---|
| **Email Address** | **Mobile Phone Number** |

IF YOU RECEIVED AN EMAIL, PROVIDE THE FOLLOWING FROM THE EMAIL:

**Notice ID:** | **Confirmation Code:**

| WWG10031720532 | hQTFyQ61de9w |
|---|---|

**QUESTIONS? Visit** www.WalmartWeightedGroceriesSettlement.com **or call toll-free 1-833-987-9998**

<table>
<tr><td>Your claim form must be submitted online or postmarked by: June 5, 2024</td><td>United States District Court<br>Middle District of Florida<br><br>*Kukorinis v. Walmart Inc.*<br>Case No. 8:22-CV-02402-VMC-TGW</td><td>WAL</td></tr>
</table>

## II. BAGGED CITRUS AND/OR WEIGHTED GOODS PURCHASED

Select from **one** of the following two options:

\* The dollar amounts shown below are *not* guaranteed; they are subject to a potential pro rata increase or decrease depending on the number of people who submit valid Claim Forms.

**OPTION 1**

☒ I do not have receipts, proof of purchase, or other documentation but attest to having Purchased the following number of Weighted Goods and/or Bagged Citrus in-person in a Walmart Store from October 19, 2018 through January 19, 2024 (select one only):

☐ **up to 50** Weighted Goods and/or Bagged Citrus to receive $10.00*

☒ **between 51 and 75** Weighted Goods and/or Bagged Citrus to receive $15.00*

☐ **between 76 and 100** Weighted Goods and/or Bagged Citrus to receive $20.00*

☐ **101 or more** Weighted Goods and/or Bagged Citrus to receive $25.00*

Describe the types of Weighted Goods and/or Bagged Citrus you Purchased, and identify the Years Purchased:

GRAPEFRUITS, ORANGES, LEMONS,EVERY YEAR FROM 10/19/2018 THROUGH 1/19/2024, AS I EAT THESE SEPARATELY, JUICE THEM,

AND COOK WITH THEM.

**OPTION 2**

☐ I have receipts, proof of purchase, or other documentation that documents (a) each Weighted Good and/or Bagged Citrus product I Purchased in-person in a Walmart Store from October 19, 2018 through January 19, 2024, and (b) the amount I paid for each Weighted Good and/or Bagged Citrus Purchased.

Enter the number of Weighted Goods and/or Bagged Citrus you are providing documentation for: _____

Enter the total amount paid for the Weighted Goods and/or Bagged Citrus that you submitted documentation for: $_____. [You may receive 2% of this amount capped at $500.00*]

3

<table>
<tr><td>Your claim form must be submitted online or postmarked by: June 5, 2024</td><td>**United States District Court Middle District of Florida**<br><br>*Kukorinis v. Walmart Inc.*<br>Case No. 8:22-CV-02402-VMC-TGW</td><td>**WAL**</td></tr>
</table>

---

## III. PAYMENT SELECTION

Please select from **one** of the following payment options:

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __   or Email Address: _____

☐ **Virtual Prepaid Card -** Enter your email address: _____

☒ **Physical Check -** Payment will be mailed to the address provided in Section I above.

---

## IV. VERIFICATION AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified in Section I and the information provided in this Claim Form, including any accompanying supporting documentation, is true and correct, this is the only Claim Form that I have submitted, and nobody has submitted another claim in connection with this Settlement on my behalf.

I further understand, acknowledge, and agree that the amount I will receive shall be calculated in accordance with the terms of the Settlement Agreement and I am subject to the terms of the Settlement Agreement, including the release of claims as more fully described in the Settlement Agreement.

_Andrea Gulley_ (signature)
Your signature

Andrea Gulley
Your name

Date: 11/3/2025
MM    DD    YYYY

**QUESTIONS? Visit** www.WalmartWeightedGroceriesSettlement.com **or call toll-free 1-833-987-9998**

VASSILIOS KUKORINIS,
on behalf of himself and any
others similarly situated-
ANDREA GULLEY

PLAINTIFF,

vs.

WALMART, INC.,

DEFENDANT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:22-cv-02402-VMC-TGW
DIVISION: TAMPA DIVISION

## STIPULATION FOR INSTALLMENT SETTLEMENT, ORDER APPROVING STIPULATION AND CLOSURE

Plaintiff and defendants(s), by the signature below, stipulate that defendant(s) is/are indebted to plaintiff in the sum of $ ALL UNCLAIMED MONIES, plus court costs $ TBD BY THE COURT & CAN BE PULLED FROM THE UNCLAIMED MONIES, interest of $ 0, and attorney fees of $ 0 , which defendant(s) agree to pay in installments of $1 LUMP SUM PAYMENT. The first such payment to be due on TBD BY THE COURT and continuing on or before the TBD BY THE COURT of each month thereafter until the balance is paid in full. If the total sum is paid timely and in full, the plaintiff agrees that no judgment shall be entered against the defendant(s), and that additional costs, interest, and attorney's fees, if any, shall be waived. If the defendant(s) shall default in payment hereunder, plaintiff shall be entitled to judgment, execution, costs, and interest at the rate provided by law, and attorney's fees, after written application to the court, without further hearing. Defendant(s) acknowledge(s) delivery of a true copy hereof at the United States District Court Middle District of Florida, Tampa Florida.

**ALL PAYMENTS ARE TO BE MADE PAYABLE TO:** ANDREA NICOLE GULLEY, **and mailed to** 1240 GRAYSON CIRCLE, MALVERN ARKANSAS, 72104 .

Final Judgment will not be entered for the Plaintiff unless the Affidavit of Default is sworn to and certifies that the Plaintiff has delivered or mailed a copy of the Affidavit of Default to the Defendant with the date of the delivery or mailing.

Plaintiff/Attorney for Plaintiff (signature): _____ Telephone: 501-467-4932
Address: _____  E- Mail: andreagulleysunshine@yahoo.com

Defendant(signature):_____  Telephone: _____
Address: _____  E-Mail:_____

Defendant(signature): _____  Telephone: _____
Address: _____  E-Mail: _____

## ORDER CLOSURE CAUSE AND APPROVING STIPULATION

On the foregoing stipulation signed, delivered, and conformed at the United States District Court Middle District of Florida, Tampa Division the cause is closed. This court retains jurisdiction to enforce the terms of this stipulation. ORDERED at, the United States District Court Middle District of Florida, Tampa Division on_____.

Conformed copies furnished by hand delivery to:
Plaintiff/Attorney for Plaintiff & Defendant(s)

_____
County Court Judge



ANDREA N. GULLEY
andreagulleysunshine@yahoo.com
501-467-4932

United Stated District Judge
Virginia M. Hernandez Covington
United States District Court
Middle District of Florida
Tampa Division

Good afternoon Honorable Hernandez Covington,

I'm petitioning you today in the matter of the Vassilios Kukorinis and any other similarly situated vs. Walmart, Inc order as well as the Walmart Weighted Goods Settlement. I am a member of this settlement and did receive a settlement notice through email on April 27th, 2024, from the Claims Administrator with an email address of donotreply@walmartweightedgroceriessettlement.com . The notice is part of this email chain that I forwarded to you.

On the Settlement there is a documented deadline to claim filing by June 5, 2024. However, I did not see this settlement notice along with a few more settlements that I am a member of until October 2025. My plausible clause for tardiness is a data breach or access to my personal information (email address and phone number)(I'm also part of the Katz privacy settlement that could have caused the breach). While this email was sent directly to me, I had over 34,000 emails in my inbox around that time and counting. I filed my claim for the Walmart Weighted Goods Settlement on November 3rd, 2025, at 1:55 PM since I had some other claims to file as well.

I received an automated response back from info@walmartweightedgroceriessettlement.com on November 3rd, 2025, at 1:56 PM stating the following:
"Your email (2189552) has been received and is being reviewed by our support staff. Please allow 3-5 business days for a response." To add additional comments, reply to this email."

On November 3rd, 2025, at 2:02 PM I received another automated response from info@walmartweightedgroceriessettlement.com stating the following:
"Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator. If you are eligible for a distribution payment in this matter and there is an issue with sending your payment, you will be notified via email in a second chance process, or you will be sent your payment in an alternate method. Please be patient, as the second chance process will not commence until the first week of November.
This message was sent automatically. If this did not resolve your inquiry, please reply with more information and an agent will respond
For more information, please visit www.WalmartWeightedGroceriesSettlement.com
Thank you,
Walmart Weighted Groceries Settlement"

I replied back on November 3rd, 2025, at 8:13 PM through email stating the following:
Good afternoon,
I am someone who is hoping for a second chance process to submit my claim form due to the circumstances noted in the last email that I sent to you. It is my hope that I don't miss a disbursement period for this settlement.

1

ANDREA N. GULLEY
andreagulleysunshine@yahoo.com
501-467-4932

Thank you for your consideration,
Andrea Gulley
501-467-4932

On November 6th, 2025, at 10:12 AM I received a reply from info@walmartweightedgroceriessettlement.com  stating the following:
Thank you for contacting the Walmart Weighted Groceries Settlement Claims Administrator. The claim filing deadline was June 5, 2024. Late claims are no longer being accepted in this matter.
For more information, please visit www.WalmartWeightedGroceriesSettlement.com
Thank you,
Walmart Weighted Groceries Settlement
Claims Administrator
www.WalmartWeightedGroceriesSettlement.com

I did not respond back to that email. I decided to take another path and reach out to you since I believe you were the last Judge to rule on this matter and close the case per page 48 (23) of the order that was filed on June 28th, 2024. I also noticed on that same page that the Class Settlement Fund shall be returned in accordance with the terms of the Settlement Agreement. I do not wish to be left out of any settlement that I may obtain benefits from. With that being said I have included the following with my sworn testimony as attachment to this email:

1. Stipulation for Installment Settlement, Order Approving Stipulation and Closure
2. Claim Form
3. Final Approval Order
4. Plaintiff's Supplemental Submission Regarding Notice and an Updated Proposed Preliminary Approval Order Submitted in Support of the Class Action Settlement
5. Walmart Settlement Claims Administrators 1st Automated Email Reply

I did not include an Affidavit since I did email them requesting my portion of this settlement and the case is not closed. Please let me know if anything else is needed. I'm happy to proceed in any way that you suggest.

**Case No.** 8:22-cv-2402-VMC-TGW
**Notice ID:** WWG10031720532
**Confirmation Code:** hQTFyQ61de9w

_Andrea n. gulley_      11/7/2025
ANDREA N. GULLEY      DATE:

2